1  **KAPLAN FOX & KILSHEIMER LLP**
2  Laurence D. King (CA Bar No. 206423)
   *lking@kaplanfox.com*
3  Mario M. Choi (CA Bar No. 243409)
   *mchoi@kaplanfox.com*
4  1999 Harrison Street, Suite 1560
   Oakland, CA 94612
5  Telephone: (415) 772-4700
   Facsimile: (415) 772-4707

6  **KAPLAN FOX & KILSHEIMER LLP**
   Maia C. Kats (to be admitted *pro hac vice*)
7  *mkats@kaplanfox.com*
   850 Third Avenue, 14th Floor
8  New York, NY  10022
   Telephone: (202) 669-0658
9  Facsimile:  (212) 687-7714

10 **REESE LLP**
   Michael R. Reese (CA Bar No. 206773)
11 *mreese@reesellp.com*
   100 West 93rd Street, 16th Floor
12 New York, NY 10025
   Telephone: (212) 643-0500
13 Facsimile: (212) 253-4272

14 **REESE LLP**
   George V. Granade II (CA Bar No. 316050)
15 *ggranade@reesellp.com*
   8484 Wilshire Boulevard, Suite 515
16 Los Angeles, CA 90211
   Telephone:  (212) 643-0500
17 Facsimile:  (212) 253-4272

18 Counsel *for Plaintiffs Marc Silver, Heather Peffer,*
   *Donovan Marshall, Alexander Hill, and the Proposed Class*
19

20 **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

21 MARC SILVER, HEATHER PEFFER,          Case No. 3:20-cv-0633
   DONOVAN MARSHALL, ALEXANDER
22 HILL, individually and on behalf of all others   **CLASS ACTION**
   similarly situated,
23                                        **CLASS ACTION COMPLAINT**
24              Plaintiffs,
25       vs.                              **DEMAND FOR JURY TRIAL**
26 BA SPORTS NUTRITION, LLC,
27              Defendant.
28

Plaintiffs Marc Silver, Heather Peffer, Donovan Marshall, and Alexander Hill (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against BA Sports Nutrition, LLC ("Defendant" or "BA"), and on the basis of personal knowledge, information, and belief, and investigation of counsel, allege as follows:

## NATURE OF THE ACTION

1.      This is an action under the consumer protection laws of California, New York, and Pennsylvania against BA for unjust enrichment and false, deceptive, and unlawful marketing and sales of BA's BodyArmor SuperDrink sports drinks ("BodyArmor").

2.      BA produces and sells BodyArmor, with flavors such Banana Strawberry, Orange Mango, and Pineapple Coconut among others, online and through a network of retail stores.

3.      BA markets that Americans need to attend to their hydration and that BodyArmor provides "SUPERIOR HYDRATION."

4.      BA also markets that BodyArmor hydration is "More Natural Better" hydration.

5.      BA markets BodyArmor as having these "superior" and "better" hydration attributes in the context of other marketing—whether in-store displays, social media, or television—comparing it to water and/or competing sports drinks.

6.      Beyond superior and better natural hydration claims, BA markets that BodyArmor is good for you because it is packed with essential vitamins and nutrients.

7.      BA targets the general public, including children, parents of children, and adults who engage in recreational or no exercise—that is, non-endurance athletes—with its marketing claims.

8.      BodyArmor does not provide "superior" or "better" hydration to Plaintiffs and other consumers than other beverages, nor are Plaintiffs or the general public hydration deficient and/or in need of its characteristics to replenish them from dehydration.

9.      BodyArmor is not comprised of "natural" ingredients and/or more natural ingredients than water or other sports drinks.

10.      BodyArmor on balance is not nutrient beneficial for the general public BA targets with its marketing, but is instead an unlawfully fortified junk food.

11.     Instead of providing the marketed qualities and characteristics, BodyArmor is a sugar-sweetened-beverage ("SSB") that scientifically links to serious medical conditions, including obesity, type 2 diabetes, and cardiovascular disease, when regularly consumed.

12.     In essence, BodyArmor is a dressed-up soda masquerading as a health drink. A single 16-ounce serving of BodyArmor has 36 grams of sugar, which is the equivalent of nine teaspoons of sugar. The daily limit of added sugars recommended by the American Heart Association for women and children is only six teaspoons from all food sources in any given day, and nine for adult men.

13.     Plaintiffs would not have purchased BodyArmor, purchased as much of it, or paid as much for it, had they understood that consumption does not provide them with superior or better hydration, including as compared to water and/or other sports drinks.

14.     Plaintiffs would not have purchased BodyArmor, purchased as much of it, or paid as much for it, had they understood that consumption does not provide them with a drink comprised of natural ingredients and/or that was more, natural, better for them than other drinks.

15.     Plaintiffs would not have purchased BodyArmor, purchased as much of it, or paid as much for it, had they understood that consumption does not provide them with a nutritious beverage overall, and/or provided them with vitamins they did not require in the context of a junk food.

16.     Plaintiffs would not have purchased BodyArmor, purchased as much of it, or paid as much for it, had they understood that instead of superior or better hydration, and/or a natural, and/or overall nutritious, beverage, they were consuming a sugar-sweetened beverage that, according to the leading health authorities, scientific research links with disease and health epidemics when regularly consumed—thereby causing such health authorities to call for replacing such drinks with water and/or a reduction in consumption.

17.     Plaintiffs would not have purchased BodyArmor, for which they paid a price premium, had they understood that it is an unlawfully fortified junk food, and thus an unlawful product.

18.     Plaintiffs relied on BA's marketing when they purchased BodyArmor and were harmed thereby because they would not have made the purchases, or would have paid less for their purchases, or purchased fewer of them, had they known the truth about BodyArmor.

19.     Plaintiffs would consider purchasing BodyArmor again if they knew that they could rely on the label and marketing as truthful when making purchases, including that the product they purchased matched the marketing claims and inferences made by BA, and/or was a lawfully marketed and sold product.

<b><u>PARTIES</u></b>

**A.     Plaintiffs**

20.     Plaintiff Marc Silver is a resident of Santa Rosa, California.

21.     During the relevant class period, and specifically between 2014 and 2018, Mr. Silver purchased BodyArmor from Walmart and other locations in Santa Rosa and Plumas Lake, California. Mostly, he purchased the Orange Mango, Grape, and Tropical Punch varieties.

22.     Mr. Silver saw and believed BA's representations, including on product labels, in-store displays, and otherwise, that BodyArmor would provide needed nutrients and superior hydration to him as compared to other beverages, including water, and was beneficial to his overall well-being. He also believed the claims that it was more natural and better for him than other beverage options, and that BodyArmor was a lawfully marketed and sold product.

23.     Mr. Silver was not an endurance athlete who exercised intensively during the relevant period, but understood from the marketing that BodyArmor was appropriate and optimal for him.

24.     Mr. Silver relied on BA's marketing to such effects, and was misled thereby.

25.     Mr. Silver purchased more of, or paid more for, BodyArmor than he would have had he known the truth about the product.

26.     Mr. Silver was injured in fact and lost money as a result of Defendant's improper conduct.

27.     If Mr. Silver knew that BA's marketing and sale was truthful and non-misleading, and lawful, he would purchase BodyArmor in the future. At present, however, he cannot purchase

the product because he cannot be confident that the marketing of the products is, and/or will be, truthful and non-misleading and/or lawful.

28. Plaintiff Heather Peffer is a resident of Paxinos, Pennsylvania.

29. During the relevant class period, and specifically during 2018 and 2019, Ms. Peffer purchased BodyArmor from the Walmart and other locations in in Coal Township, Pennsylvania. Mostly, she purchased the Blackout Berry, Watermelon Strawberry, and Fruit Punch varieties.

30. Ms. Peffer saw and believed BA's representations, including on product labels, in-store displays, via social influencers, and otherwise, that BodyArmor would provide needed nutrients and superior hydration to her as compared to other beverages, including water, and was beneficial to her overall well-being. She also believed the claims that BodyArmor was more natural and better for her than other options, and was a lawfully marketed and sold product.

31. In addition, Ms. Peffer believed that BodyArmor would enhance her production of breast milk during the period that she was breastfeeding because of its allegedly superior hydration abilities, and that its advertised nutrients would be a net benefit for her baby. Such alleged abilities were actively promoted online by BA's paid influencers, and reposted or otherwise re-promoted by BA itself.

32. Ms. Peffer was not an endurance athlete who exercised intensively during the relevant period but understood from the marketing that BodyArmor was appropriate and optimal for her.

33. Ms. Peffer relied on BA's marketing about such effects, and was misled thereby.

34. Ms. Peffer purchased more of, or paid more for, BA's BodyArmor than she would have had she known the truth about the product, or had she known that the product was unlawful.

35. Ms. Peffer was injured in fact and lost money as a result of Defendant's improper conduct.

36. If Ms. Peffer knew that BA's marketing was truthful and non-misleading, and lawful, she would purchase BodyArmor in the future. At present, however, she cannot purchase

the product because she cannot be confident that the marketing of the products is, and will be, truthful and non-misleading and/or lawful.

37.     Plaintiff Donovan Marshall is a resident of San Francisco, California.

38.     Between 2013-2019, Mr. Marshall purchased BodyArmor from Walgreens on Potrero Avenue, Target on Geary Boulevard, Costco and other locations in and around San Francisco, California. Mostly, he purchased the Strawberry Banana and Grape varieties.

39.     Mr. Marshall believed BA's representations, including on product labels, in-store displays, social media, and television advertisements, including representations by celebrity brand ambassadors, that BodyArmor would provide needed nutrients and superior hydration to him as compared to other beverages, including water, and was beneficial to his overall well-being. He also believed that it was more natural and therefore better for him than other options, and a lawfully marketed and sold product.

40.     Mr. Marshall was not an endurance athlete who exercised intensively during the relevant period but understood from the marketing that BodyArmor was appropriate and optimal for him.

41.     Mr. Marshall relied on BA's marketing to such effects, and was misled thereby.

42.     Mr. Marshall purchased more of, or paid more for, BA's BodyArmor than he would have had he known the truth about the product.

43.     Mr. Marshall was injured in fact and lost money as a result of Defendant's improper conduct.

44.     If Mr. Marshall knew that BA's marketing was truthful and non-misleading, and lawful, he would purchase BodyArmor in the future. At present, however, he cannot purchase the product because he cannot be confident that the marketing of the products is, and will be, truthful and non-misleading, or lawful.

45.     Plaintiff Alexander Hill is a resident of Astoria, New York.

46.     During the relevant class period, and specifically from 2013 on, Mr. Hill purchased BodyArmor from CVS on 86th and Second Avenue, Duane Reed stores at 17th and

Third Avenue, and Ditmars Boulevard and 31st Street, and otherwise, in New York, New York. Mostly, he purchased the Fruit Punch, Strawberry Banana, and Grape varieties.

47.     Mr. Hill believed BA's representations, including on product labels, in-store displays, social media, and television, and otherwise, that BodyArmor would provide needed nutrients and superior hydration to him as compared to other beverages, including Gatorade, and was beneficial to his overall well-being. He also believed that it was more natural and better for him than other options, and a lawfully marketed and sold product.

48.     Mr. Hill was not an endurance athlete who exercised intensively during the relevant period but understood from the marketing that BodyArmor was appropriate and optimal for him.

49.     Mr. Hill relied on BA's marketing to such effects, and was misled thereby.

50.     Mr. Hill purchased more of, or paid more for, BA's BodyArmor than he would have had he known the truth about the product.

51.     Mr. Hill was injured in fact and lost money as a result of Defendant's improper conduct.

52.     If Mr. Hill knew that BA's marketing was truthful and non-misleading, and lawful, he would purchase BodyArmor in the future. At present, however, he cannot purchase the product because he cannot be confident that the marketing of the products is, and will be, truthful and non-misleading or lawful.

**B.     Defendant**

53.     Defendant BA is a limited liability corporation organized and existing under the laws of the State of Delaware.

54.     Defendant's principal place of business is 1720 Whitestone Expressway, Suite 501, New York, New York 11357.

55.     Defendant is the third largest sports drink company, after PepsiCo (Gatorade), and Coca-Cola (Powerade). Coca-Cola recently acquired an ownership interest in BA.

**JURISDICTION AND VENUE**

56.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, which provides for the original jurisdiction of federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiffs Silver and Marshall are citizens of the State of California and Defendant is a citizen of the States of Delaware and New York, at least one member of the proposed Class is a citizen of a state different from Defendant. Further, Plaintiffs allege the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiffs allege "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

57.     This Court has personal jurisdiction over Defendant for several reasons, including that Defendant has continuous and systematic contacts with California; and Plaintiffs' claims arise out of Defendant's conduct within California, in part because Plaintiffs Silver and Marshall purchased BodyArmor within California based on Defendant's dissemination of false and misleading information about the product.

58.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District, including the purchase by Plaintiffs Silver and Marshall of BodyArmor based on BA's dissemination of false and misleading information about the product.

59.     Pursuant to Civil Local Rule 3-2(c), an intra-district assignment to the San Francisco or Oakland Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Plaintiffs Silver and Marshall made purchases of BodyArmor in Santa Rosa and San Francisco, respectively.

**FACTUAL ALLEGATIONS**

60.     BA deceptively markets that consumers need or would benefit from supplementing their hydration.

61.     To that end, BA deceptively markets that BodyArmor is a "super drink" that delivers "superior" and "better" hydration to everyone.

62.     BA deceptively markets that BodyArmor offers "More Natural Better" hydration.

63.     The claims "SUPERIOR HYDRATION" and "SuperDrink" appear prominently on BodyArmor front of pack labels. *See* Image 1.

**Image 1**



CLASS ACTION COMPLAINT

64.    BA also extends its claims of superior and better hydration across myriad other advertising platforms, including by way of compensated social media influencers, in-store promotions, television, and brand ambassadors, and when doing so, deceptively compares BodyArmor as the superior and better to alternate hydration sources including water and competing sports drinks. *See, e.g.*, Image 2.[1]

**Image 2**



SARAH

*Hey Ya'll! I'm Sarah, a clean-eating, adventure-seeking homeschool mom living in the desert of Palm Springs, CA. I aspire everyday to be a faithful follower, doting wife, nurturing mom and unforgettable human being. You'll find me camping, eating vegan food, taking pictures and watching Virginia Tech football. I may be a West Coast transplant, but I have an East Coast heart. <3*

BODYARMOR contains more electrolytes than the leading sports drink, coconut water, and vitamins with NO artificial flavors, colors, or sweeteners. It is also low in sodium and high in potassium – all-in-all, the perfect sports drink for all of us, especially growing kids.



[1] Sarah, *Kid-Friendly Sports Drink {BodyArmor}*, IN THE KNOW MOM (Sept. 29, 2014), http://intheknowmom.net/kidfriendly-sports-drink-bodyarmor/. *See also, e.g.*, Amy Blevins, *Body Armor – Rethink Your Sports Drink Review*, ENCOURAGING MOMS AT HOME, https://encouragingmomsathome.com/body-armor-rethink-your-sports-drink-review/ (last viewed January 8, 2020); Samantha Jo, *BODYARMOR Sports Drinks*, BUFFALO MOMS (Aug. 22, 2016), http://buffalomoms.com/bodyarmor-sports-drinks/; Jen, *Superior Hydration for the Whole Family with BodyArmor*, PORTLAND MOMS BLOG (Sept. 11, 2016), https://portland.citymomsblog.com/food-nutrition/bodyarmor-natural-sports-drink/.

> Top athletes are backing the brand, like Andrew Luck, Richard Sherman, Mike
> Trout and James Harden... not to mention Kobe Bryant, who is a major
> investor.  If there is anyone who knows the importance of refueling sports drinks,
> it's these athletes at the top of their game!

65.     Indeed, basketball giant James Harden and others aggressively and prolifically market BodyArmor as the "More Natural Better Hydration" drink. *See, e.g.*, Images 3-4.[2]

**Image 3**



**Image 4**



---

[2] @BodyArmor, TWITTER (May 14, 2018, 4:12 PM),
https://twitter.com/DrinkBODYARMOR/status/996166287616368641 (unknown location);
Tiffane V., https://houston.citymomsblog.com/want-to-meet-james-harden/ (July 30, 2015)
(advertising free month's supply of "natural" BodyArmor and camp opportunity for winning kids
in grades 1-12).

66.     In conjunction with its "superior hydration" claims, BA's "more natural better" and "more natural better hydration" claims, alone and/or with its comparator claims, are almost ubiquitous on social media, labels, on-line, television, and in-store displays. *See, e.g.*, Images 3-11.[3]

**Image 5**



**Image 6**



---

[3] *Id.*; *see also* Samantha Jo, http://buffalomoms.com/bodyarmor-sports-drinks/; @BodyArmor, Twitter (Apr. 13, 2018, 5:45 PM),
https://twitter.com/DrinkBODYARMOR/status/984955833627889665 (Sam's Club);
@BodyArmor, Twitter (Jan. 29, 2018, 8:47 PM),
https://twitter.com/DrinkBODYARMOR/status/958018822702817282 (Kroger); @BodyArmor,
Twitter (May 6, 2018, 4:40 PM),
https://twitter.com/DrinkBODYARMOR/status/993265300438175745 (unknown location);
BodyArmor, https://www.drinkbodyarmor.com/products/ (last visited Jan. 8, 2020) (product
flavors).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Image 7**

### THREE THINGS ABOUT BODYARMOR:

First, let me start off by saying that BODYARMOR is made of natural ingredients, which is really important to me especially because our kids are so little still. I cringe when our daughter asks for "Gator" (Gatorade) at the store, simply because I know it is full of so many sugars and unhealthy preservatives. BODYARMOR is made of mainly coconut water, which makes it not only taste light and refreshing, but also makes it a healthier alternative! The drinks are gluten free, caffeine free, and Certified Kosher.

**Image 8**



**Image 9**



Case No. 3:20-cv-0633

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8

**Image 10**



9

**Image 11**



10
11
12
13
14
15
16
17
18
19
20
21
22
23

24      67.      BA's claims are deceptive and misleading because BodyArmor does not provide

25 superior or better hydration to its targeted consumers, including Plaintiffs, than do other drinks as

26 a general matter and/or because of their purported "more natural better" ingredients.

27      68.      As BA admitted before the administrative tribunal of the Council of the Better

28 Business Bureaus—the National Advertising Division ("NAD")—there is no scientific

substantiation for its "superior" or "better" hydration claims, or its claims that BodyArmor is "more natural better," and there is no way to substantiate such claims.

69.     According to BA itself, hydration is a "subjective concept" for which "there is no universal formula that provides a baseline for "good" hydration, much less "better" (or "worse") hydration," and that consumers understand this to be the case regardless of its marketing claims. *BA Sports Nutrition LLC, BodyArmor Sports Drink*, Decision of the NAD, Case No. 6215, at 8-9 (Nov. 23, 2018) (citing and rejecting BA's arguments in support of its contention that such marketing is not misleading and recommending discontinuance of claims).[4]

70.     BA thus employs marketing claims of "superior" and "better" hydration—which convey to consumers an objective claim—despite knowing that its claims are unsubstantiated and scientifically indefensible.

71.     Similarly, BA's claims that BodyArmor is "natural," "more natural better," and "more natural better hydration" are deceptive because BodyArmor is not comprised of natural ingredients and/or there is no substantiation that it hydrates better than other drinks either generally or because it has "more natural" ingredients. As set forth by the NAD when it recommended that BA cease such advertising, among BodyArmor's many unnatural ingredients are: Dipotassium Phosphate (Electrolyte); Ascorbic Acid (Vitamin C); Magnesium Oxide (Electrolyte); Calcium D-Pantothenate (Vitamin B5); Niacinamide (Vitamin B3); Alpha-Tocopheryl Acetate (Vitamin E); Zinc Oxide (Electrolyte); Pyridoxine Hydrochloride (Vitamin B6); Vitamin A Palmitate (Vitamin A); Folic Acid (Vitamin B9); and Cyanocobalamin (Vitamin B12). *See* NAD Decision at 8.

72.     Instead of sports drinks, the Centers for Disease Control ("CDC") has declared that water is the "healthier choice" for purposes of hydration.[5]

---

[4] *See also*, *e.g.*, Carl Heneghen, *Forty Years of Sports Performance Research and Little Insight Gained*, BMJ (Sept. 11, 2012), https://www.bmj.com/content/345/bmj.e6085 (cataloging the methodological flaws of industry-sponsored research on sports drinks).

[5] *Getting the Facts: Drinking Water and Intake*, CDC (last updated Aug. 9, 2016), https://www.cdc.gov/nutrition/data-statistics/plain-water-the-healthier-choice.html.

73.     The CDC's recommendation focuses on the amount of sugar in SSBs, including BodyArmor,[6] and the established link between SSB consumption and obesity, type 2 diabetes, and cardiovascular disease—coupled with the fact that water more than adequately hydrates Americans (with the *possible* exception of the most active endurance athletes).[7]

74.     Sugar is the second ingredient in BodyArmor—after water. *See* Image 12.[8]

**Image 12**



INGREDIENTS
Filtered Water, Pure Cane Sugar, Coconut Water Concentrate, Citric Acid, Dipotassium Phosphate (Electrolyte), Vegetable Juice Concentrate (Color), Ascorbic Acid (Vitamin C), Gum Arabic, Magnesium Oxide (Electrolyte), Natural Strawberry Banana Flavor with Other Natural Flavors, Calcium D-Pantothenate (Vitamin B5), Niacinamide (Vitamin B3), alpha-Tocopheryl Acetate (Vitamin E), Ester Gum, Zinc Oxide (Electrolyte), Pyridoxine Hydrochloride (Vitamin B6), Vitamin A Palmitate (Vitamin A), Folic Acid (Vitamin B9), beta-apo-8' Carotenal (Color), Cyanocobalamin (Vitamin B12).

75.     A single 16-ounce bottle of BodyArmor has *36 grams*, or approximately ***nine teaspoons of sugar***, and a single 28-ounce bottle has *63 gra*ms, or approximately ***15 teaspoons of sugar***.

76.     The American Heart Association ("AHA") recommends that adult women and children consume no more than six teaspoons of added sugar a day, and that adult men consume no more than nine teaspoons.[9] *A single small-size serving of BodyArmor exceeds those limits for*

---

[6] "Sugar-sweetened beverage" refers to any carbonated or non-carbonated drink that is sweetened with sugar or high fructose corn syrup, or other caloric sweetener, including soda, fruit drinks, teas, coffees, *sports drinks*, and energy drinks. *The CDC Guide to Strategies for Reducing the Consumption of Sugar-Sweetened Beverages* (Mar. 2010), at 4, https://stacks.cdc.gov/view/cdc/51532.

[7] Even with respect to hard-core athletes, for whom the sports drink industry developed electrolyte-infused beverages, the benefits of sports drinks are scientifically unclear and hotly debated. Scientists are increasingly concerned that hyponatremia, caused by excess fluids and over-dilution of sodium levels from sports drinks, poses more of a threat than dehydration even to true endurance athletes, including marathoners. *See, e.g.*, Christie Ashwanden, *You Don't Need Sports Drinks to Stay Hydrated*, FiveThirtyEight (Feb. 4, 2019), https://fivethirtyeight.com/features/you-dont-need-sports-drinks-to-stay-hydrated/.

[8] *Nutrition Facts & Ingredients, Strawberry Banana*, BodyArmor. https://www.drinkbodyarmor.com/product/strawberry-banana/ (last visited Jan. 8, 2020).

[9] *Added Sugars*, AHA (Apr. 17, 2018), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

*women and children*, even without considering other sources of sugar in the diet, and reaches the recommended limit for men. *A large size exceeds the recommended limits on added sugar for men, women, and children.*

77.      In addition to the CDC and AHA, virtually every leading health authority warns of the link between SSB consumption and obesity, type-2 diabetes, and cardio-vascular disease, and recommends *reducing* their consumption because of the health risks—especially as seven out of every ten adults in the United States are now overweight or obese (71.6%),[10] and approximately 110 million Americans overall are diabetic or pre-diabetic.[11][12]

---

[10] *Obesity and Overweight*, CDC (June 13, 2016), https://www.cdc.gov/nchs/fastats/obesity-overweight.htm.  https://www.cdc.gov/chronicdisease/resources/publications/aag/diabetes.htm.

[11] *New CDC Report: More than 100 million Americans have diabetes or prediabetes*, CDC (July 18, 2017), https://www.cdc.gov/media/releases/2017/p0718-diabetes-report.html.

[12] Among the health authorities recognizing the link between SSB consumption and obesity and disease are:

Food & Drug Administration ("FDA"): "strong and consistent evidence" shows an association between sugar drinks and excess body weight in children and adults. 81 Fed. Reg. at 33,803;

CDC: "Frequently drinking sugar-sweetened beverages is associated with weight gain/obesity, type 2 diabetes, heart disease, kidney diseases, non-alcoholic liver disease, tooth decay and cavities, and gout, a type of arthritis. Limiting the amount of SSB intake can help individuals maintain a healthy weight and have a healthy diet." *Get the Facts: Sugar-Sweetened Beverages and Consumption*, CDC (last reviewed Feb. 7, 2017), https://www.cdc.gov/nutrition/data-statistics/sugar-sweetened-beverages-intake.html. *See also Beverage Consumption Among High School Students—United States, 2010*, CDC MORBIDITY AND MORTALITY WEEKLY REPORT (June 17, 2011), https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6023a2.htm (sugar drinks are "contributing to the prevalence of obesity among adolescents in the United States");

World Health Organization ("WHO"): "Current evidence suggests that increasing consumption of sugar-sweetened beverages is associated with overweight and obesity in children. Therefore, reducing consumption of sugar-sweetened beverages would also reduce the risk of childhood overweight and obesity." *Reducing Consumption of Sugar-sweetened Beverages to Reduce the Risk of Childhood Overweight and Obesity*, WHO, https://www.who.int/elena/titles/ssbs_childhood_obesity/en/ (last visited Jan. 8, 2020); *Reducing Consumption of Sugar-sweetened Beverages to Reduce the Risk of Unhealthy Weight Gain in Adults*, WHO, https://www.who.int/elena/titles/ssbs_adult_weight/en/ (last visited Jan. 8, 2020);

2015 U.S. Dietary Guidelines Advisory Council: "Strong and consistent evidence shows that intake of added sugars from food and/or sugar sweetened beverages are associated with excess body weight in children and adults"; "[s]trong evidence shows that higher consumption of added sugars, especially sugar sweetened beverages, increases the risk of type 2 diabetes among adults and this relationship is not fully explained by body weight." *Scientific Report of the 2015 Dietary Guidelines Advisory Committee*, at pt. D, ch. 6, p. 20, U.S. DEP'T OF AGRIC. & U.S. DEP'T OF HEALTH & HUMAN SERV. (2015), available at https://health.gov/dietaryguidelines/2015-

78.     Despite this, BA persists in targeting the general public, including children and their parents, and non-endurance athletes, with its deceptive "health halo" marketing claims when BodyArmor is effectively camouflaged junk food for them.

79.     Social media too is rife with BA's deceptive claims, such as BodyArmor having a "benefit over water by providing a small amount of carbohydrate to the working muscles which gives kids a constant amount of fuel and helps to delay fatigue," or that "pure cane sugar is the preferred fuel for our brains and bodies." *See* Image 13.[13]

scientific-report/PDFs/Scientific-Report-of-the-2015-Dietary-Guidelines-Advisory-Committee.pdf (last visited Jan. 8, 2020).

American Medical Association ("AMA"): adopting policy supporting, among other strategies, "warning labels to educate consumers on the health harms of SSBs," and "work[ing] with 'local school districts to promote healthy beverage choices for students." Sara Berg, *AMA Backs Comprehensive Approach Targeting Sugary Drinks*, AMA (June 14, 2017), https://www.ama-assn.org/delivering-care/public-health/ama-backs-comprehensive-approach-targeting-sugary-drinks;

Institute of Medicine ("IOM"): "researchers have found strong associations between intake of sugar-sweetened beverages and weight gain"; "their link to obesity is stronger than that observed for any other food or beverage . . . ." *Accelerating Progress in Obesity Prevention: Solving the Weight of the Nation*, at ch. 6, p. 169, IOM (May 2012), available at https://www.ncbi.nlm.nih.gov/pubmed/24830053;

AHA, "There is a robust body of evidence that SSB consumption is detrimental to health and has been associated with increased risk of CVD mortality, hypertension, liver lipogenesis, [type 2 diabetes], obesity, and kidney disease." Linda Van Horn, et al., *Recommended Dietary Pattern to Achieve Adherence to the American Heart Association/American College of Cardiology (AHA/ACC) Guidelines: A Scientific Statement from the American Heart Association*, 134 CIRCULATION 22 (Oct. 27, 2016), available at https://www.ahajournals.org/doi/full/10.1161/cir.0000000000000462. "Therefore, it is recommended that children and adolescents limit their intake of SSBs to 1 or fewer 8-oz beverages *per week* (Class I; Level of Evidence A)." Miriam B. Vos, et al., *Added Sugars and Cardiovascular Disease Risk in Children: A Scientific Statement from the American Heart Association*, 135 CIRCULATION 19 (Aug. 22, 2016) (emphasis added), available at https://ahajournals.org/doi/full/10.1161/CIR.0000000000000439;

American Public Health Association ("APHA"), "Consumption of [sugar] drinks is a significant contributor to the obesity epidemic and increases the risk of type 2 diabetes, heart disease, and dental decay." *Taxes on Sugar-Sweetened Beverages*, APHA (Oct. 30, 2012), available at https://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2014/07/23/13/59/taxes-on-sugar-sweetened-beverages; and

American Diabetes Association ("ADA"), "Research has also shown that drinking sugary drinks is linked to type 2 diabetes. The American Diabetes Association recommends that people avoid drinking sugar-sweetened beverages and switch to water whenever possible to help prevent type 2 diabetes." *Myths about Diabetes*, ADA available at https://www.diabetes.org/diabetes-risk/prediabetes/myths-about-diabetes (last visited Jan. 9, 2020).

[13] *Why do we use pure cane sugar?*, BA (May 10, 2018), https://www.drinkbodyarmor.com/faq/why-do-we-use-pure-cane-sugar/.

**Image 13**



80.     BA even promotes BodyArmor, through compensated social influencers and re-posts of bloggers and influencers, as helpful to nursing mothers of newborns. Because of its purported "superior hydration," mothers who drink it are claimed to produce more breast milk. Omitted from mention is the tsunami of sugar that both baby and mother ingest, especially at two to three bottles a day, and that plain water is healthy, has no sugar, and hydrates excellently. *See* Images 14-16.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

**Image 14**



**Image 15**



**Image 16**



81.     Indeed, BA's promotes BodyArmor as superior, better, and beneficial hydration for myriad activities and lifestyles that fall far short of high exertion levels that some industry scientists contend justify consuming such ingredients. BodyArmor is widely promoted for the playground, school lunch bag, bit of play in the creek, toddler soccer games, among other non-endurance activities. *See, e.g.*, Images 17-19.

CLASS ACTION COMPLAINT

**Image 17**



**Image 18**

CLASS ACTION COMPLAINT

**Image 19**



82.     BA's competitors do not market similarly with respect to their "superior" and "better" hydration claims and/or target consumers so broadly. Instead, BA's competitors have modified their advertising to be more transparent and less deceptive about who, if anyone, might benefit from sports drink consumption and how their product compares to other beverages.

83.     For instance, BA's leading competitor, PepsiCo, now advises that Gatorade is for serious endurance athletes only and that other consumers should instead drink its low-sugar beverages.[14]

84.     For example, in its published "Open Letter to Athletes and Consumers," PepsiCo explains that "Gatorade wasn't developed for just any purpose," but for "the special goal of helping serious athletes." More, it explains, "the ingredients in our products—including carbohydrates in the form of sugar, are functional for athletes. The sugar in Gatorade is there for physical, athletic use. *For less intense workouts, we have lower- / no-sugar solutions like G2 and Propel. But when you're working out for **multiple hours in the hot sun, in full pads doing two-a-***

---

[14] *See generally FAQs*. GATORADE, https://contact.pepsico.com/gatorade/faqs;itemsPerPage=100 (last visited Jan. 9, 2020).

*days, or* just ***starting mile #7** of your training run*, you know how important carbohydrates are….” *See* Image 20 (emphasis added).

**Image 20**



85.     Further camouflaging BodyArmor's true character and effects, BA unlawfully fortifies BodyArmor with various nutrients and then aggressively promotes their alleged health benefits.

86.     For example, BA markets that BodyArmor is: "PACKED WITH VITAMIN E" . . . "which helps limit the damage of muscles and soreness through exercise and increases energy"; "PACKED WITH VITAMIN A" . . . "which helps protect your vision and your immune

system!"; "PACKED WITH VITAMIN C" which "is an antioxidant that is critical for immunity and helps lower blood pressure"; and "PACKED WITH VITAMIN B," which "boosts metabolism and breaks down protein and carbohydrates for energy during exercise." *See* Images 21-25.[15]

**Image 21**



**Image 22**



**Image 23**



**Image 24**



---

[15] Blevins, Body Amor – Rethink Your Sports Drink Review.

**Image 25**

My family was asked to review a case of **BODYARMOR — the new sports drink**. Frankly, I'm in love. The ingredients are so good for you. Coconut water. Vitamins. All the good things, and nothing artificial. From a mom's perspective it doesn't get any better then that. Of the four boys who tried BODYARMOR — three were also enamored. We like it. And I especially like that it's a healthy choice.



87.    Independent of deception, such marketing and fortification is unlawful because the U.S. Food and Drug Administration ("FDA") prohibits fortification of junk food, including sugar drinks, with nutrients when there is a "relative" claim for the product, such as "superior" or "better" hydration, or "health" claim, such as "lowers blood pressure." 21 C.F.R. § 101.54(e)(1), § 101.65(d)(2).

88.    The rationale for the FDA's prohibition on fortification of junk foods is precisely to prevent what BA does here: the deceptive promotion of foods as healthy that do not have a net nutritional benefit, or which are otherwise problematic nutritionally, simply by infusing them with some vitamin or vitamins—let alone with vitamins for which the vast majority of Americans have no deficiency.

89.    Because BodyArmor is illegally fortified, the drink violates FDA regulations, and is therefore misbranded and unlawful. *See* Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act ... shall be the food labeling regulations of this state.").

Case No. 3:20-cv-0633

**ECONOMIC INJURY**

90.     When purchasing BodyArmor, Plaintiffs sought products that were consistent with the superior, better, and natural hydration claims in addition to the overall health attributes and benefits marketed by BA.

91.     Plaintiffs saw and relied on BA's misleading advertising of BodyArmor.

92.     Plaintiffs believed that BodyArmor had the aforementioned qualities and benefits advertised, and that the beverage was lawful.

93.     As a result, Plaintiffs received beverages that lacked the net nutritional and/or hydration benefits that they reasonably believed the products had, and which were not superior nutritionally or in hydration terms to less expensive options.

94.     Plaintiffs lost money and thereby suffer injury as they would not have purchased BodyArmor, purchased as much BodyArmor, and/or paid as much for the drink absent these misrepresentations.

95.     Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amounts they paid for the BodyArmor they purchased.

96.     Plaintiffs would purchase BodyArmor again in the future should it have the natural, nutritional, superior and/or better hydration benefits advertised, and should it be lawful.

97.     By engaging in false and misleading marketing, BA reaped, and continues to reap, increased sales and profits.

98.     BA knows that the qualities it markets are material to a consumer's decision to purchase BodyArmor.

99.     BA deliberately cultivates these misperceptions through its marketing of BodyArmor. Indeed, BA relies and capitalizes on consumer misconceptions about BodyArmor.

**CLASS ACTION ALLEGATIONS**

100.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action individually and on behalf of four proposed classes defined as follows:

**The California Class**. All persons residing in the State of California who purchased one or more BodyArmor sports drinks during the applicable limitations period.

**The New York Class**. All persons residing in the State of New York who purchased one or more BodyArmor sports drinks during the applicable limitations period.

**The Pennsylvania Class**. All persons residing in the State of Pennsylvania who purchased one or more BodyArmor sports drinks during the applicable limitations period.

**The Nationwide Class**. All persons residing in the United States who purchased one or more BodyArmor sports drinks during the applicable limitations period.

101.    Collectively, the California Class, New York Class, Pennsylvania Class, and Nationwide Class are referred to as the "Class."

102.    Excluded from the Class are: (a) Defendants; (b) Defendants' board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (c) governmental entities; (d) the Court, the Court's immediate family, and Court staff; and (e) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

103.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove the elements in individual actions alleging the same claims.

104.    **Numerosity**. The Class consists of many thousands of persons throughout the states of California, New York, and Pennsylvania. The Class is so numerous that joinder of all members is impracticable, and the disposition of each of the Class's claims in a class action will benefit the parties and the Court.

105.    **Commonality and Predominance**. Common questions of law and fact predominate over any questions affecting only individual Class members. These common questions have the capacity to generate common answers that will drive resolution of this action. These common questions include whether:

      a.    BA is responsible for the conduct alleged herein;

      b.    BA's conduct constitutes the violations of law alleged herein;

c.      BA acted willfully, recklessly, negligently, or with gross negligence in committing the violations of law alleged herein;

d.      Plaintiffs and the Class members are entitled to injunctive relief; and

e.      Plaintiffs and the Class members are entitled to restitution and damages.

106.    Because they were subject to the same deceptive and unlawful marketing and sales practices, and because they purchased BodyArmor, all Class members were subject to the same wrongful conduct.

107.    Absent BA's material deceptions, misstatements, and omissions, Plaintiffs and the other Class members would not have purchased BodyArmor.

108.    **Typicality**. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and the Class members all purchased BodyArmor and were injured thereby. The claims of Plaintiffs and the Class members are based on the same legal theories and arise from the same false and misleading conduct.

109.    **Adequacy of Representation**. Plaintiffs are adequate representatives of the Class because their interests do not conflict with those of the Class members.  Each Class member seeks damages reflecting a similar and discrete purchase, or similar and discrete purchases, that each Class member made. Plaintiffs have retained competent and experienced class action counsel who intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

110.    **Injunctive or Declaratory Relief**. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

111.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The amount at stake for each Class member, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Additionally, adjudication of this controversy as a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the

claims asserted herein. Plaintiffs anticipate no difficulty in the management of this action as a class action.

112.    **Notice to the Class**. Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Violation of California's Unfair Competition Law,**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***
**Unlawful Conduct Prong**
**(By Plaintiffs Silver and Marshall, on Behalf of the California Class)**

113.    Plaintiffs Silver and Marshall repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

114.    Plaintiffs Silver and Marshall bring this claim on behalf of the California Class for violation of the "unlawful" prong of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

115.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

116.    Defendants' acts, omissions, misrepresentations, practices, non-disclosures, and illegal fortification of junk food, concerning BodyArmor, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FFDCA"), and its implementing regulations, including, at least, the following sections:

a.    21 U.S.C. § 343(a), which deems food misbranded when its labeling contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material;"

b.     21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

c.     21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

d.     21 C.F.R. § 102.5(c), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

e.     21 C.F.R. § 101.54(e)(1), which prohibits fortification of junk food in conjunction with "relative" labeling claims;

f.     21 C.F.R. § 101.65(d)(2), which prohibits fortification of junk food in conjunction with health-based labeling claims; and

g.     21 U.S.C. §§ 331, 333, which prohibits the introduction of misbranded foods into interstate commerce.

117.     BA's conduct is further "unlawful" because it violates California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL"), and California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* (the "CLRA"), as discussed in the claims below.

118.     BA's conduct also violates California's Sherman Food, Drug, and Cosmetic Law, CAL. HEALTH & SAFETY CODE § 109875 *et seq.* (the "Sherman Law"), including, at least, the following sections:

a.     Section 110100 (adopting all FDA regulations as state regulations);

b.     Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");

c.     Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

d.      Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

e.      Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

f.      Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

g.      Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

119.    Each of the challenged advertising statements made, and actions taken, by BA violates the FFDCA, CLRA, FAL, and Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

120.    BA leveraged its deception to induce Plaintiffs Silver and Marshall and the members of the California Class to purchase products that were of lesser value and quality than advertised.

121.    BA's deceptive marketing and labeling caused Plaintiffs Silver and Marshall and the members of the California Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain. Had Plaintiffs Silver and Marshall and the members of the California Class been aware of BA's false and misleading marketing and labeling tactics, and unlawful fortification, they would not have purchased BodyArmor, purchased as much BodyArmor, or paid as much for BodyArmor.

122.    In accordance with California Business and Professions Code section 17203, Plaintiffs Silver and Marshall seek an order enjoining BA from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

123.    Plaintiffs Silver and Marshall also seek an order for the disgorgement and restitution of all monies from the sale of BodyArmor that BA unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

124.    Therefore, Plaintiffs Silver and Marshall pray for relief as set forth below.

## SECOND CLAIM

**Violation of California's Unfair Competition Law,**
**CAL. BUS. & PROF. CODE § 17200,** *et seq.*
**Unfair and Fraudulent Conduct Prongs**
**(By Plaintiffs Silver and Marshall, on Behalf of the California Class)**

125.    Plaintiffs Silver and Marshall repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

126.    Plaintiffs Silver and Marshall bring this claim on behalf of the California Class for violation of the "unfair" and "fraudulent" prongs of the UCL.

127.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

128.    Defendants' false and misleading marketing of BodyArmor, as alleged herein, constitute "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of BA's conduct outweighs any conceivable benefit of such conduct.

129.    The acts, omissions, misrepresentations, practices, and non-disclosures of BA, as alleged herein, constitute "fraudulent" business acts and practices, because BA's conduct is false and misleading to Plaintiffs Silver and Marshall and the members of the California Class.

130.    BA's marketing and labeling of BodyArmor is likely to deceive reasonable consumers about their true ingredient and nutritional profile.

131.    BA either knew or reasonably should have known that the claims in the marketing, advertising, and labeling of BodyArmor were likely to deceive reasonable consumers.

132.    In accordance with California Business & Professions Code section 17203, Plaintiffs Silver and Marshall seek an order enjoining BA from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

133.    Plaintiffs Silver and Marshall also seek an order for the disgorgement and restitution of all monies from the sale of BodyArmor that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

134.     Therefore, Plaintiffs Silver and Marshall pray for relief as set forth below.

## THIRD CLAIM

**Violation of California's False Advertising Law,**
**CAL. BUS. & PROF. CODE § 17500, *et seq.***
**(By Plaintiffs Silver and Marshall, on Behalf of the California Class)**

135.     Plaintiffs Silver and Marshall repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

136.     Plaintiffs Silver and Marshall bring this claim on behalf of the California Class for violation of the FAL.

137.     The FAL prohibits making any false or misleading advertising claim. CAL. BUS. & PROF. CODE § 17500.

138.     As alleged herein, BA, in its marketing and labeling of BodyArmor, makes "false [and] misleading advertising claim[s]," as it deceives consumers about the drink's true characteristics and benefits.

139.     In reliance on these false and misleading advertising claims, Plaintiffs Silver and Marshall and the members of the California Class purchased BodyArmor believing that it conveyed net nutritional benefits and superior hydration, as promoted by BA's marketing.

140.     BA knew or should have known that the marketing and labeling of BodyArmor was likely to deceive consumers.

141.     As a result, Plaintiffs Silver and Marshall and the California Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which BA was unjustly enriched.

142.     Therefore, Plaintiffs Silver and Marshall pray for relief as set forth below.

## FOURTH CLAIM

**Violation of California's Consumers Legal Remedies Act,**
**CAL. CIV. CODE § 1750, *et seq.***
**(By Plaintiffs Silver and Marshall, on Behalf of the California Class)**
**(Injunctive Relief Only)**

143.     Plaintiffs Silver and Marshall repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

144.     Plaintiffs Silver and Marshall bring this claim on behalf of the California Class for violation of the CLRA, seeking injunctive relief only.

145.     The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

146.     BA's policies, acts, and practices were designed to, and did, result in the purchase and use of BodyArmor primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.     Section 1770(a)(5), which prohibits representing that goods have a particular composition or contents that they do not have;

b.     Section 1770(a)(5), which also prohibits representing that goods have characteristics, uses, or benefits that they do not have;

c.     Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

d.     Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

e.     Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

147.     As a result, in accordance with California Civil Code section 1780(a)(2), Plaintiffs Silver and Marshall and the members of the California Class have suffered irreparable harm and seek injunctive relief in the form of an order:

a.     Enjoining BA from continuing to engage in the deceptive practices described above;

b.     Requiring BA to provide public notice of the true nature of BodyArmor; and

c.     Enjoining BA from such deceptive business practices in the future.

148.     Pursuant to section 1782 of the CLRA, Plaintiffs Silver and Marshall hereby notify BA in writing of its particular violations of section 1770 of the CLRA and are demanding, among

other actions, that BA cease marketing BodyArmor as set forth in detail above and correct, repair, replace, or otherwise rectify BodyArmor is in violation of section 1770. If BA fails to respond to Plaintiffs' demand within 30 days of this notice, pursuant to section 1782 of the CLRA, Plaintiffs will amend this Class Action Complaint to request, in addition to the above relief, statutory damages, actual damages, punitive damages, interest, and attorneys' fees.

149.    Therefore, Plaintiffs Silver and Marshall pray for relief as set forth below.

## **FIFTH CLAIM**

**Violation of New York's Consumer Protection from
Deceptive Acts and Practices Law,
N.Y. GEN. BUS. LAW § 349, *et seq.*
(By Plaintiff Hill, on Behalf of the New York Class)**

150.    Plaintiff Hill repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

151.    Plaintiff Hill brings this claim on behalf of the New York Class for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

152.    Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 349(a).

153.    BA's labeling and marketing of BodyArmor, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Hill and the New York Class.

154.    Subsection (h) of section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. GEN. BUS. LAW § 349(h).

- 34 -

Case No. 3:20-cv-0633

155.    In accordance with subsection (h) of section 349, Plaintiff Hill seeks an order enjoining BA from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, and as evidenced by its lack of response to the BBB's NAD recommendations, BA will continue its false and misleading marketing campaign and, in doing so, irreparably harm each of the New York Class members.

156.    As a consequence of BA's deceptive acts and practices, Plaintiff Hill and other members of the New York Class suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Hill and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

157.    Therefore, Plaintiff Hill prays for relief as set forth below.

## SIXTH CLAIM

**Violation of New York's Consumer Protection from
Deceptive Acts and Practices Law,
N.Y. GEN. BUS. LAW § 350, *et seq.*
(By Plaintiff Hill, on Behalf of the New York Class)**

158.    Plaintiff Hill repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

159.    Plaintiff Hill brings this claim on behalf of the New York Class for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350.

160.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 350.

161.    New York General Business Law section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. GEN. BUS. LAW § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the

light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

162.    BA's labeling, marketing, and advertising of BodyArmor, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent BodyArmor as being beneficial nutritionally and providing necessary and/or superior hydration.

163.    Plaintiff Hill seeks an order enjoining BA from continuing this false advertising. Absent enjoining this false advertising, BA will continue to mislead Plaintiff Hill and the other members of the New York Subclass and, in doing so, irreparably harm each of the New York Class members.

164.    As a direct and proximate result of BA's violation of New York General Business Law section 350, Plaintiff Hill and the other members of the New York Class have also suffered an ascertainable loss of monies.

165.    By reason of the foregoing, Plaintiff Hill and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

166.    Therefore, Plaintiff Hill prays for relief as set forth below.

## SEVENTH CLAIM

**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.***
**(By Plaintiff Peffer on Behalf of the Pennsylvania Class)**

167.    Plaintiff Peffer repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

168.    Plaintiff Peffer brings this claim on behalf of the Pennsylvania Class for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq*.

169.    BA is a "person," as meant by 73 P.S. § 201-2(2).

170.    Plaintiff Peffer and Pennsylvania Class members purchased goods and services in "trade" and "commerce," as meant by 73 P.S. § 201-2(3), primarily for personal, family, and/or household purposes.

171.    BA engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 P.S. § 201-3, including the following:

       a.    Representing that its goods and services have characteristics, uses, benefits, ingredients, and qualities that they do not have (73 P.S. § 201-2(4)(v));

       b.    Representing that its goods and services are of a particular standard or quality if they are of another (73 P.S. § 201-2(4)(vii)); and

       c.    Advertising goods or services with intent not to sell them as advertised (73 P.S. § 201-2(4)(ix)).

172.    BA's labeling, marketing, and advertising of BodyArmor, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent BodyArmor as being beneficial nutritionally and providing necessary and/or superior hydration.

173.    BA's representations and omissions were material because they were likely to deceive reasonable consumers.

174.    BA intended to mislead Plaintiff Peffer and Pennsylvania Class members and induce them to rely on its misrepresentations and omissions.

175.    BA acted intentionally, knowingly, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff Peffer and Pennsylvania Class members' rights.  BA's knowledge of BodyArmor put it on notice that BodyArmor was not as it advertised.

176.    As a direct and proximate result of BA's unfair methods of competition and unfair or deceptive acts or practices and Plaintiff Peffer's and Pennsylvania Class members' reliance on them, Plaintiff Peffer and Pennsylvania Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing BodyArmor.

177.    Therefore, Plaintiff Peffer prays for relief as set forth below.

**EIGHTH CLAIM FOR RELIEF**

**Unjust Enrichment / Quasi-Contract**
**(By Plaintiffs Silver, Marshall, Peffer, and Hill, on Behalf of the Nationwide Class)**

178.     Plaintiffs incorporate by reference each allegation set forth above

179.     As a result of BA's unlawful and misleading labeling, marketing, and sale of BodyArmor, BA was enriched at the expense of Plaintiffs.

180.     BA sold BodyArmor drinks to Plaintiffs that were either not capable of being sold legally and that were worthless, or were not worth the amounts that Plaintiffs paid for them.

181.     Plaintiffs paid a premium price for BodyArmor, which is more expensive than water and more expensive than its competitors, Gatorade and Powerade.

182.     It is against equity and good conscience to permit BA to retain the ill-gotten benefits received from Plaintiffs and the Nationwide Class members given that the BodyArmor was not what BA purported it to be.

183.     It would be unjust and inequitable for BA to retain the benefit, warranting restitutionary disgorgement to Plaintiffs and the Nationwide Class members of all monies paid for BodyArmor, and/or all monies paid for which Plaintiffs and the Nationwide Class members did not receive benefit.

184.     As a direct and proximate result of BA's actions, Plaintiffs and the Nationwide Class members have suffered damages in an amount to be proven at trial.

185.     Therefore, Plaintiffs pray for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the members of each Class, respectfully request the Court to enter an Order:

A.     Certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.     Declaring that Defendant has committed the violations of law alleged herein;

1        D.       Providing for any and all injunctive relief the Court deems appropriate;

2        E.       Awarding statutory damages in the maximum amount for which the law provides;

3        F.       Awarding monetary damages, including but not limited to any compensatory,

4 incidental, or consequential damages in an amount that the Court or jury will determine, in

5 accordance with applicable law;

6        G.      Providing for any and all equitable monetary relief the Court deems appropriate;

7        H.      Awarding punitive or exemplary damages in accordance with proof and in an

8 amount consistent with applicable precedent;

9        I.       Awarding Plaintiffs their reasonable costs and expenses of suit, including

10 attorneys' fees;

11       J.       Awarding pre- and post-judgment interest to the extent the law allows; and

12       K.      For such further relief as this Court may deem just and proper.

13 **<ins>DEMAND FOR JURY TRIAL</ins>**

14        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

15 trial by jury on all claims so triable.

16

17                                        Respectfully submitted,

18 DATED:  January 28, 2020         **KAPLAN FOX & KILSHEIMER LLP**

19                                 By:  /s/ *Laurence D. King*
                                          Laurence D. King

20                                Laurence D. King (CA Bar No. 206423)

21                                *lking@kaplanfox.com*
                                Mario M. Choi (CA Bar No. 243409)

22                                *mchoi@kaplanfox.com*
                                1999 Harrison Street, Suite 1560

23                                Oakland, CA 94612
                                Telephone: (415) 772-4700

24                                Facsimile: (415) 772-4707

25                                **KAPLAN FOX & KILSHEIMER LLP**
                                Maia C. Kats *(to be admitted pro hac vice*)

26                                *mkats@kaplanfox.com*
                                850 Third Avenue, 14th Floor

27                                New York, NY  10022
                                Telephone: (202) 669-0658

28                                Facsimile:  (212) 687-7714

**REESE LLP**
Michael R. Reese (CA Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade II (CA Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, CA 90211
Telephone: (212) 643-0500
Facsimile: (212) 643-0500

*Counsel for Plaintiffs Marc Silver, Heather Peffer, Donovan Marshall, Alexander Hill, and the Proposed Class*