J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
  kwasniewski@braunhagey.com
Tracy O. Zinsou, Esq. (SBN: 295458)
  zinsou@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

ATTORNEYS FOR DEFENDANT
BA SPORTS NUTRITION, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC SILVER, HEATHER PEFFER, DONOVAN MARSHALL, ALEXANDER HILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BA SPORTS NUTRITION, LLC,<br><br>Defendant. | Case No: 3:20-cv-00633-SI<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT BA SPORTS NUTRITION, LLC TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6); MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** May 8, 2020<br>**Time:** 10:00 a.m.<br>**Judge:** Hon. Susan Illston<br>**Ctrm.:** 1, 17th Floor<br><br>Complaint filed: January 28, 2020 |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 8, 2020 at 10:00 a.m., in Courtroom 1 of the above captioned Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Defendant BA Sports Nutrition, LLC ("BodyArmor") will and hereby does move this Court for an order dismissing the claims asserted by Plaintiffs Marc Silver, Heather Peffer, Donovan Marshall, and Alexander Hill (collectively, "Plaintiffs") against BodyArmor in the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support of the Motion, the Declarations of Matthew Borden and Lee Soffer, the Request for Judicial Notice in Support of the Motion, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated:  March 23, 2020

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  ___/s/ Matthew Borden_____
　　　　　Matthew Borden

*Attorney for Defendant*
*BA Sports Nutrition, LLC*

1

## **TABLE OF CONTENTS**

2

NOTICE OF MOTION AND MOTION ........................................................................................ 1

3

TABLE OF CONTENTS ............................................................................................................... I

4

TABLE OF AUTHORITIES ........................................................................................................ III

5

INTRODUCTION .......................................................................................................................... 1

6

FACTUAL BACKGROUND ......................................................................................................... 3

7

    A.    The Parties .................................................................................................................. 3

8

        1.    BodyArmor ................................................................................................... 3

9

        2.    Plaintiffs ....................................................................................................... 3

10

        3.    The Recruitment of Plaintiffs to Bring this Case .......................................... 4

11

    B.    The Accused Product Labels ....................................................................................... 4

12

    C.    Plaintiffs' Allegations ................................................................................................. 5

13

ARGUMENT ................................................................................................................................. 6

14

I.    PLAINTIFFS' CLAIMS ARE IMPLAUSIBLE .............................................................. 8

15

    A.    Statements Touting BodyArmor's Superiority Are Puffery ........................................ 9

16

    B.    Plaintiffs' Claims that BodyArmor's Statements Misled Them About
Sugar or "Health" Are Implausible ............................................................................ 10

17

    C.    The Gatorade Claims Are Irrelevant .......................................................................... 13

18

II.    PLAINTIFFS' "FORTIFICATION" CLAIM IS MERITLESS ....................................... 13

19

III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT ................... 15

20

    A.    Plaintiffs' Regulation Does Not Survive *Central Hudson* .................................... 16

21

    B.    Plaintiffs' Regulation Does Not Survive *NIFLA/Zauderer* .................................. 17

22

        1.    Plaintiffs' Regulation Is an Unconstitutional Content-Based
Restriction on Speech .................................................................................. 17

23

        2.    Plaintiffs' Regulation Does Not Fall under Either Exception
to *NIFLA* .................................................................................................. 18

24

25

IV.    PLAINTIFFS DO NOT STATE A CLAIM FOR UNJUST ENRICHMENT ................. 19

26

V.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF ........................... 20

27

VI.    LEAVE TO AMEND SHOULD BE DENIED ............................................................... 23

28

CONCLUSION........................................................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BA SPORTS NUTRITION, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca-Cola Co.*,
  No. CV–09–0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................... 14, 15

*Ahern v. Apple, Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 9

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir. 1988) ............................................................................. 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 6

*Ass'n v. San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ................................................................. 15, 16, 19

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ...................................................................... 20, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 6, 7

*Central Hudson Gas & Electric Corporation v. Public Service Commission*,
  447 U.S. 557 (1980) .......................................................................................... 16

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................ 21

*Clark v. Perfect Bar, LLC*,
  No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ............. passim

*Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) ...................................................................... 1, 9, 10

*Corsale v. Sperian Energy Corp.*,
  412 F. Supp. 3d 556 (W.D. Pa. 2019) ................................................................. 9

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) .................................................................................. 19, 20

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (2018) .......................................................................................... 22

*Debbs v. Chrysler Corp.*,
  810 A.2d 137 (Pa. Super. Ct. 2002) ................................................................... 8

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ........................................................................... 7

*Ebin v. Kangadis Food Inc.*,
  No. 13–CV–2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec.11, 2013) .................. 20

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ...................................................................... 12, 19

*Edmunson v. Procter & Gamble Co.*,
  537 F. App'x 708 (9th Cir. 2013) ....................................................................... 10

*Figy v. Frito-Lay N. Am. Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ............................................................... 21

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................... 20

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015) ........................................................................ 20

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) .................................................................................. 21

*Hunt v. United States Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) ...................................................................................... 7

In *CTIA-The Wireless Association v. Berkeley*,
928 F.3d 832 (9th Cir. 2019) ............................................................................. 15, 18

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012)................................................................. 9, 10

*In re NJOY, Inc. Consumer Class Action Litig.*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014)........................................................ 10

*In re Tobacco II* Cases,
46 Cal. 4th 298 (2009).............................................................................................. 7

*Jones v. ConAgra Foods, Inc.*,
912 F. Supp. 2d 889 (N.D. Cal. 2012)........................................................................ 5

*Kane v. Chobani, Inc.*,
973 F. Supp. 2d 1120 (N.D. Cal. 2014)...................................................................... 7

*Koenig v. Boulder Brands, Inc.*,
995 F. Supp. 2d 274 (S.D.N.Y. 2014) ...................................................................... 20

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) ........................................................................................ 9

*McMorrow v. Mondelez Int'l, Inc.*,
No. 17-cv-02327-BAS-JLB, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ...... 13, 14

*National Institute of Family and Life Advocates v. Becerra*,
138 S. Ct. 2461 (2018)..................................................................... 15, 17, 18, 19

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) ............................................................................. 1, 9

*Nguyen v. Medora*,
No. 14-cv-00618, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015)........................... 21

*Orlander v. Staples*,
802 F.3d 289 (2d Cir. 2015) ...................................................................................... 7

*O'Shea v. Littleton*,
414 U.S. 488 (1974).................................................................................................. 21

*Paulino v. Conopco, Inc.*,
2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .................................................... 19, 20

*Police Dept. v. Mosley*,
408 U.S. 92 (1972)..................................................................................................... 17

*Pom Wonderful LLC v. Tropicana Prod., Inc.*,
No. CV 09-00566-DSF, 2010 WL 11519185 (C.D. Cal. Nov. 1, 2010).................... 13

*Pom Wonderful, LLC v. Coca-Cola Co.*,
679 F.3d 1170 (9th Cir. 2012) ................................................................................... 7

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015)............................................................................................... 17

*Romero v. Flowers Bakeries, LLC*,
No. 14–cv–05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ..................... 21

*Schwartz v. Rockey*,
932 A.2d 885 (Pa. 2007)............................................................................................ 8

*Sexton v. PNC Bank*,
  792 A.2d 602 (Pa. Super. Ct. 2002).................................................................... 8
*Silva v. Smucker Nat. Foods, Inc.*,
  2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..................................................... 20
*Sitt v. Nature's Bounty, Inc.*,
  2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ..................................................... 20
*SodexoMAGIC, LLC v. Drexel Univ.*,
  333 F. Supp. 3d 426 (E.D. Pa. 2018) .................................................................. 19
*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011).......................................................................................... 16
*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir.1997) ......................................................................... 9, 10
*Swartz v. KPMG LLP*,
  476 F. 3d 756 (9th Cir. 2007) ............................................................................. 4
*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007) ................................................................................ 9
*Truxel v. General Mills Sales, Inc.*,
  No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019)................................ passim
*Toy v. Metro. Life Ins. Co.*,
  928 A.2d 186 (Pa. 2007).................................................................................... 8
*United States v. Caronia*,
  703 F.3d 149 (2d Cir. 2012) .............................................................................. 16
*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................................. 5
*Weinberg v. Sun Co.*,
  777 A.2d 442 (Pa. 2001).................................................................................... 7
*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................... 20
*Weiss v. Trader Joe's Co.*,
  Case No. 8:18-cv-01130-JLS-GJS, 2018 WL 6340758 (N.D. Cal. Nov. 20, 2018) ................... 19
*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  584 A.2d 425 (Pa. 2004)..................................................................................... 7
*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................... 10
*Zauderer v. Office of Disciplinary Counsel*,
  471 U.S. 626 (1985)......................................................................................... 15

## STATUTES

21 U.S.C. § 343........................................................................................................ 13
21 U.S.C. § 343(r)(1) ............................................................................................... 14
21 U.S.C. § 343-1(a)(5) ........................................................................................... 14
Cal. Bus. & Prof. Code § 17204 ............................................................................... 7
Cal. Bus. & Prof. Code §§ 17200 ............................................................................. 7
Cal. Bus. & Prof. Code §§ 17500 ............................................................................. 7
Cal. Civ. Code §§ 1750............................................................................................. 7
New York General Business Law ("GBL") §§ 349 and 350......................................... 7

BA SPORTS NUTRITION, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS

1

## RULES

2

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1

3

## REGULATIONS

4

21 C.F.R. § 101.13 ........................................................................................................... 14
21 C.F.R. § 101.14 ........................................................................................................... 14
21 C.F.R. § 101.54(e) ...................................................................................................... 15
21 C.F.R. § 101.65 ........................................................................................................... 14
21 C.F.R. § 101.65(d)(2)(iv) ........................................................................................... 14
21 C.F.R. § 104.20 ........................................................................................................... 14
81 Fed. Reg. 33,798 ......................................................................................................... 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BA SPORTS NUTRITION, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS

1   Defendant BA Sports Nutrition, LLC ("BodyArmor") respectfully submits this

2 Memorandum in support of its Motion to Dismiss the Complaint for failure to state a claim.

3            **<u>INTRODUCTION</u>**

4   This is a "false advertising" case in which the Complaint fails to identify any advertising

5 that is actually untrue.  Defendant's BodyArmor Sports Drink® is a premium sports drink made

6 with coconut water and natural flavors and formulated with electrolytes and vitamins.  All of its

7 labeling and advertising truthfully discloses its ingredients and nutritional information.

8   Plaintiffs are a ragtag crew of mercenaries – some with lengthy criminal records – who

9 were recruited by their lawyers over the Internet, rather than injured.  They have sued BodyArmor

10 for "false advertising" without identifying any false statement in BodyArmor's labeling or

11 marketing.  Their Complaint seeks to air various grievances made by one of BodyArmor's

12 competitors, Gatorade, regarding comparative advertising between sports drink products – but

13 without identifying what statement(s) supposedly caused Plaintiffs to buy BodyArmor, when they

14 saw them, where they saw them, or any of the other *sine qua non* of a false advertising case.

15   The Complaint's central contention appears to be that BodyArmor's marketing language

16 "Superior Hydration" somehow deceived Plaintiffs.  But the language is not false and does not

17 have any objective meaning.  Rather, it is paradigmatic advertising puffery protected under the

18 First Amendment and which cannot give rise to a claim as a matter of law.  *Newcal Indus., Inc. v.*

19 *Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting *Cook, Perkiss, & Liehe v. N.*

20 *Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)) ("a general, subjective claim about a

21 product is non-actionable puffery").

22   The Complaint also asserts that Plaintiffs were misled to believe that BodyArmor was

23 "healthy" when it contained "too much" sugar.  In support, Plaintiffs cite billboards from states

24 where they do not reside, third-party internet posts, and other sundry historical materials.  What

25 they do not cite are the labels on the products themselves.  That is because the amount of sugar in

26 BodyArmor products is transparently and properly disclosed on each and every bottle under the

27 Nutrition Facts, in accordance with United States Food and Drug Administration ("FDA")

28 regulations.  Everyone knows sports drinks contain sugar.  Indeed, that is one reason people buy

1   them.  To the extent any Plaintiff actually cared how much sugar was in the product, he or she was

2   free to read the label and decide whether the listed amount was what he or she wanted.  That is the

3   whole purpose of the Nutrition Facts.  BodyArmor is under no legal obligation to tell people about

4   Plaintiffs' lawyers' theory about how much sugar should be in a sports drink, nor guess at vague,

5   protean standards imposed by Plaintiff lawyers.

6          For this reason, Courts have begun to reject identical claims.  In *Clark v. Perfect Bar, LLC*,

7   The Honorable William Alsup dismissed with prejudice plaintiffs' claims that they were misled

8   into thinking that a protein bar was "healthy," when it supposedly contained "excessive sugar."

9   2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018).  Judge Alsup reasoned that plaintiffs could

10  have simply looked at the ingredients to "decide for themselves how healthy or not the sugar

11  content would be" and that they could not have "reasonably overestimate[d] the health benefits of

12  the bar merely because the packaging elsewhere refers to it as a health bar."  *Id.*  Because "the

13  honey/sugar content was properly disclosed — that is the end of it — period."  *Id.*[1]  Similarly, in

14  *Truxel v. General Mills Sales, Inc.*, the Honorable Jeffrey S. White rejected plaintiffs' contention

15  that sugar in breakfast cereals rendered health and wellness claims misleading where the label

16  "plainly discloses the sugar content."  2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019).  The

17  same analysis is dispositive here.

18         In addition to failing to plausibly allege that any Plaintiff reasonably and detrimentally

19  relied on any statement by BodyArmor or suffered any injury, the Complaint fails for numerous

20  other separate and independent reasons.  The claims are barred by the First Amendment.

21  BodyArmor does not violate any FDA regulations.  And the labels and advertising cited in the

22  Complaint were changed for business reasons before this case was filed.

23         When pressed to identify any other supposed defect outside of the Complaint, Plaintiffs'

24  lawyers were unable to do so.  Amendment would be futile, and leave to amend should be denied.

25

26

27  [1] The Appeal from Judge Alsup's decision in *Perfect Bar* was deemed submitted without oral
    argument on February 14, 2020.  To the extent the Court disagrees with Judge Alsup, BodyArmor
28  respectfully asks that the Court hold its ruling in abeyance pending the Ninth Circuit's decision to
    conserve judicial and party resources.

# FACTUAL BACKGROUND

This motion is based on the factual allegations in the Complaint, documents and things cited therein, as well as judicially noticeable public materials set forth in BodyArmor's Request for Judicial Notice ("RJN").

## A.    The Parties

### 1.    BodyArmor

Defendant BodyArmor was founded in 2011 with the goal of producing hydrating, nutrient-enhanced beverages.  Unlike Gatorade, BodyArmor SuperDrink® is made with coconut water, pure cane sugar, and natural flavors, as well as a proprietary blend of electrolytes and vitamins. BodyArmor's product has now become one of the most popular sports drinks in the country. (Soffer Decl. ¶ 2.)

### 2.    Plaintiffs

There are four plaintiffs in this case.  Only one of them resides near to where any of their lawyers are based.

Plaintiff **Donovan Marshall** is a convicted felon (sale of methamphetamines, possession of drugs with intent to sell, and felony possession of cocaine) with a separate misdemeanor conviction for lewd conduct.  (RJN, Ex. 1.)  Mr. Marshall has at least nine other pieces of litigation to his name, including a putative class action currently pending before Judge Seeborg, where he claims that he was fooled about the fat content of coconut milk.  (*Id.*, Ex. 2.)  Mr. Marshall resides in San Francisco.

Plaintiff **Heather Peffer** is a twice convicted felon (manufacture of a controlled substance, retail theft) with a separate conviction for receiving stolen property.  (RJN, Exs. 3-6.)  Ms. Peffer allegedly lives in Pennsylvania.

Plaintiff **Marc Silver** resides in Santa Rosa, California.  He has previously been involved in four unsuccessful lawsuits of various natures.  (RJN, Exs. 7-10.)

Plaintiff **Alexander Hill** lives in New York City.  (Compl. ¶ 45.)

### 3. The Recruitment of Plaintiffs to Bring this Case

Rather than being injured, Plaintiffs appear to have been recruited through a misleading advertisement.

On November 25, 2019, Plaintiffs' lawyers posted an ad on the TopClassActions website, stating: "Join a Free BodyArmor Class Action Lawsuit Investigation." (Declaration of Matthew Borden ("Borden Decl."), Ex. 1.) This statement was misleading because there was no true investigation occurring. The lawyers had already devised their claims, and it never costs any money to participate in an investigation. The lawyers were simply using the guise of an "investigation" to recruit plaintiffs.[2]

Plaintiffs' lawyers' solicitation further stated: "Attorneys working with Top Class Actions are investigating whether BA lacks sufficient scientific evidence to back up such claims, which may render their labeling and advertising deceptive and unlawful." (*Id.*) This statement was also misleading because Plaintiffs' lawyers had not commissioned any such scientific investigation, lacked the scientific credentials to perform one themselves, and did not need any information from Plaintiffs to conduct such a purported inquiry. Moreover, Plaintiffs' lawyers never conducted such any scientific investigation; they simply seek to resurrect allegations made by Gatorade once they had recruited Plaintiffs.

The solicitation further stated: "They are also investigating other important matters with respect to their advertising, including the implication that BodyArmor SuperDrink is good for your body and health." (*Id.*) This statement was doubly misleading because nothing on the label of the product or its advertising states that it is "good for your body and health." Further, Plaintiffs' lawyers have never done any study about the effects of BodyArmor on one's health, and do not attach one to their pleading.

### B. The Accused Product Labels

BodyArmor's labels comply with all FDA regulations and accurately state the contents of the products. Because the Complaint references the label on BodyArmor's products, the Court may

---

[2] Courts have warned that using such websites to obtain "shills" to act as plaintiffs can give rise to malicious prosecution claims. *See Citizens of Humanity, LLC v. Hass*, No. D074790 (certified for publication on March 16, 2020), Slip Op. at 17-18 & n.5 (using plaintiff who registered her name with Top Class Actions or classaction.com).

1  consider the actual label (shown below) in dismissing Plaintiffs' claims.  A true and correct copy of

2  the labels is attached to the concurrently submitted Declaration of Lee Soffer ("Soffer Decl.").  *See*

3  *Swartz v. KPMG LLP*, 476 F. 3d 756, 763 (9th Cir. 2007) ("in order to prevent plaintiffs from

4  surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are

5  based, a court may consider a writing referenced in a complaint but not explicitly incorporated

6  therein if the complaint relies on the document and its authenticity is unquestioned") (internal

7  quotation and alterations omitted); *see also Jones v. ConAgra Foods, Inc*., 912 F. Supp. 2d 889,

8  903 n.7 (N.D. Cal. 2012) (product label "is properly judicially noticeable because it is referenced in



24  the complaint"); *Viggiano v. Hansen Natural Corp*., 944 F. Supp. 2d 877, 882-83 (C.D. Cal. 2013)

25  (taking judicial notice of product labels and packaging).

26  (Soffer Decl., Ex. 1.)

27          **C.**      **Plaintiffs' Allegations**

28

1    Except for Image 1 on page 8 of the Complaint, none of the various images and materials

2    depict the label of the product.  The images in the Complaint include a billboard in a location

3    "unknown" to Plaintiffs (Image 3), Twitter feeds, third-party posts, such as the In the Know Mom

4    website, store displays and other sources.

5    Each Plaintiff similarly alleges that he or she purchased BodyArmor's sports drink because

6    of "BA's representations, including on product labels, in-store displays, and otherwise" (Compl.

7    ¶¶ 22, 30, 39, 47), without explaining any specific statement he or she saw, what he or she thought

8    it meant, when he or she saw it, where he or she saw it, how he or she relied on it in making any

9    purchase, much less the successive purchases on unspecified dates alleged in the pleading.

10   Plaintiffs generally allege that they believed BodyArmor was healthy and "good" for them, but

11   after several years of buying and drinking the product, they now believe that it contains more sugar

12   than they wanted.  (*Id.* ¶¶ 10-17, 72-80.)  They assert that now that they know the sugar content,

13   they would like to have paid less than they paid for their alleged purchases.  (*Id.* ¶¶ 25, 34, 42, 50.)

14   The Complaint does not identify any allegedly false statement.  The only statement on the

15   label identified by Plaintiffs is "Superior Hydration." (Compl. ¶ 63, Image 1.)  They also point to

16   the statement "More Natural | Better Hydration" from old advertising on billboards and store

17   displays that BodyArmor no longer uses.  (Compl. ¶¶ 65-66, Images 3-11.)

18   The Complaint also cites social media posts from 2016 and 2017 stating that BodyArmor is

19   "packed" with vitamins.  (Compl. ¶ 86, Images 21-24.)  Plaintiffs do not contend that

20   BODYARMOR is not, in fact, packed with vitamins.

21   Plaintiffs' complaint appears to be inspired by a competitor grievance Gatorade filed

22   against BodyArmor before the National Advertising Division ("NAD"), a non-adjudicative private

23   industry organization (the "Gatorade Claims").  For example, Paragraphs 5-10, 64-71 and 78-84

24   parrot the premise of the Gatorade Claims, citing to the NAD's resolution, and even praise

25   Gatorade for its "less deceptive" advertising.

26   ## **ARGUMENT**

27   A complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as

28   true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

1   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires a

2   plaintiff to plead "factual content that allows the court to draw the reasonable inference that the

3   defendant is liable for the misconduct alleged." *Id.*  When the allegations in a complaint could not

4   entitle the plaintiff to relief, "this basic deficiency should ... be exposed at the point of minimum

5   expenditure of time and money by the parties and the court." *Id.* at 558 (quotation omitted).

6          Plaintiffs here seek to assert claims under the California Consumer Legal Remedies Act

7   ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

8   Code §§ 17200, *et seq.*, and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500,

9   *et seq.*; under the New York General Business Law ("GBL") §§ 349 and 350, *et seq.*; and under

10  Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*

11  ("UTPCPL").  Plaintiffs also assert claims for "unjust enrichment."

12         The causes of action in the Complaint confusingly swirl around one another, *e.g.*, ¶ 117

13  (claiming that BodyArmor's products contravene the unlawful prong of the UCL because the labels

14  contravene the misleading prong of the UCL).  But each of Plaintiffs' claims requires them to show

15  that they were misled to their detriment.  *E.g.*, Cal. Bus. & Prof. Code § 17204 (plaintiff asserting

16  claim under UCL must prove loss of money and property as a result of the alleged unlawful

17  conduct); *Pom Wonderful, LLC v. Coca-Cola Co*., 679 F.3d 1170, 1178 (9th Cir. 2012), *overruled*

18  *on other grounds* in 573 U.S. 102 (plaintiff seeking to sue under UCL must show that he or she

19  "has suffered injury in fact and has lost money or property as a result of" alleged violation); *Kane*

20  *v. Chobani, Inc*., 973 F. Supp. 2d 1120, 1129 (N.D. Cal. 2014), *vacated on other grounds*, 645 Fed.

21  Appx. 593 (9th Cir. 2016) (FAL and CLRA require allegations of reliance on misleading statement

22  and economic injury); *In re Tobacco II* Cases, 46 Cal. 4th 298, 326 (2009) (plaintiff "proceeding

23  on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual

24  reliance on the allegedly deceptive or misleading statements" and "must show that the

25  misrepresentation was an immediate cause of the injury-producing conduct"); *Durell v. Sharp*

26  *Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (dismissing CLRA claim where plaintiff failed to

27  allege facts showing that he "relied on any representation by" defendant); *Orlander v. Staples*, 802

28  F.3d 289, 300 (2d Cir. 2015) (to state claim under GBL §§ 349 or 350, plaintiff must allege

1   materially misleading conduct that caused plaintiff injury); *Hunt v. United States Tobacco Co.*, 538

2   F.3d 217, 221-27 (3d Cir. 2008) (citing *Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001); *Yocca v.*

3   *Pittsburgh Steelers Sports, Inc.*, 584 A.2d 425, 438 (Pa. 2004); *Toy v. Metro. Life Ins. Co.*, 928

4   A.2d 186 (Pa. 2007); *Schwartz v. Rockey*, 932 A.2d 885 (Pa. 2007); *Debbs v. Chrysler Corp.*, 810

5   A.2d 137 (Pa. Super. Ct. 2002); *Sexton v. PNC Bank*, 792 A.2d 602 (Pa. Super. Ct. 2002))

6   (UTPCPL requires reliance, causation and injury).

7         Plaintiffs cannot state a claim as a matter of law for at least the following reasons:

8         ***First***, Plaintiffs cannot plausibly allege that they were misled, which is an element of each

9   of their claims.

10        ***Second***, Plaintiffs' claim that BodyArmor is unlawfully fortified is meritless.  Both of the

11  FDA regulations cited by Plaintiffs are inapplicable to BodyArmor's alleged statements.

12        ***Third***, Plaintiffs' claims are barred by the First Amendment.  Under Plaintiffs' amorphous

13  regulation, truthful companies would always be exposed to the expense and burden of litigation

14  based on the shifting health theories of Plaintiffs' lawyers.  That view nullifies the First

15  Amendment's basic guarantee that the law cannot be used to chill truthful speech.

16        ***Fourth***, BodyArmor is constantly changing its advertising.  Prior to this suit, BodyArmor

17  had changed virtually every statement on the internet and other random advertising cited in the

18  pleading (which Plaintiffs do not claim they actually read).  Plaintiffs cannot identify any current

19  statement on the label or otherwise, which they say should be "enjoined."  As such, they cannot

20  seek injunctive relief.  Plaintiffs further lack standing to seek injunctive relief because there is no

21  ongoing threat that would necessitate an injunction.  Plaintiffs' alleged belief that BodyArmor is

22  unhealthy precludes them from plausibly alleging that they would buy BodyArmor again.

23  **I.   PLAINTIFFS' CLAIMS ARE IMPLAUSIBLE**

24        Plaintiffs allege that the term "Superior Hydration" caused them to buy the product.  They

25  also claim that they believed that BodyArmor was healthy and beneficial to their "overall well-

26  being," but that, because of BodyArmor's sugar content, it allegedly is not.  Such claims are

27  implausible as a matter of law.  *Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL

28  7048788, at *1 (N.D. Cal. Dec. 21, 2018); *Truxel v. General Mills Sales, Inc.*, No. C 16-04957

1   JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019).  Because Plaintiffs cannot plausibly allege that

2   they were misled, each of their causes of action fails as a matter of law.

3       **A.    Statements Touting BodyArmor's Superiority Are Puffery**

4           Plaintiffs' claims fail because the statements cited in the complaint are textbook "puffery."

5   Even assuming that Plaintiffs saw the statement "Superior Hydration" on the label, or historical

6   store advertisements stating, "More Natural | Better Hydration," both of these statements are

7   puffery and Plaintiffs could not have plausibly been misled by them.

8           Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable

9   buyer would rely" and cannot form the basis of a false advertising suit.  *In re Clorox Consumer*

10  *Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (citing *Southland Sod Farms v. Stover Seed*

11  *Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).  A company may only be sued for misrepresenting

12  objectively provable facts, not for unprovable, subjective claims.  *Newcal Indus., Inc. v. Ikon*

13  *Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting *Cook, Perkiss, & Liehe v. N. Cal.*

14  *Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)) ("a general, subjective claim about a

15  product is non-actionable puffery"); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159

16  (2d Cir. 2007) (puffery consists of "subjective claims about products, which cannot be proven

17  either true or false") (citing *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (internal

18  quotation marks omitted)); *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 563 (W.D. Pa.

19  2019) ("puffery—exaggeration or overstatement expressed in broad, vague, and commendatory

20  language—is not actionable under the UTPCPL").

21          The term "Superior Hydration" is precisely the type of unquantifiable, subjective language

22  that cannot give rise to a false advertising claim.  The phrase lacks any comparator.[3]  The word

23  "superior" simply suggests that a product is good.  That is not quantifiable.  For this reason,

24  numerous courts have declared similar statements to be non-actionable as a matter of law because

25  there is no objective benchmark or criteria in the statement for measuring or quantifying the claim.

26  For example, in *Ahern v. Apple, Inc.*, 411 F. Supp. 3d 541, 556 (N.D. Cal. 2019), Judge Koh found

27
28  _____
    [3] One Plaintiff alleges that he thought "superior" meant superior to Gatorade, even though the label
    does not say that.  (Compl. ¶ 47.)  The other Plaintiffs allege that they thought "superior" meant
    superior to water.  (Compl. ¶¶ 22, 30, 39.)  The label does not say that either.

1   that statements of superiority such as "highest quality" and "most advanced, most brilliant" were

2   non-actionable puffery that were "all boasts, all-but-meaningless superlatives."

3         Even in cases where, unlike here, products have claimed to be "superior" to other brands,

4   courts have still viewed the term "superior" as puffery.  For example, in *Cook*, the Ninth Circuit

5   affirmed dismissal with prejudice because advertising that contains "general assertions of

6   superiority rather than factual misrepresentations" is "not actionable, and "no amendment would

7   have been able to cure this defect."  911 F.2d at 246-47.  *See also Edmunson v. Procter & Gamble*

8   *Co.*, 537 F. App'x 708, 708 (9th Cir. 2013) (to be actionable, "a claim must be sufficiently specific,

9   either by reference to particular product characteristics or 'criteria for measuring a "better" shave,'

10  such that the claim can be tested"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d at 1233 (citing

11  *Southland*, 108 F.3d at 1145) ("Product superiority claims that are vague or highly subjective often

12  amount to nonactionable puffery.").

13        Similarly, the statement in BodyArmor's old advertising "More Natural | Better Hydration"

14  is also puffery.  It, too, has no comparator.  More natural than what?  Better than what?  It is simply

15  a positive statement about the product that cannot be objectively tested or proven true or false.

16       **B.**    **Plaintiffs' Claims that BodyArmor's Statements Misled Them About Sugar or "Health" Are Implausible**

17        Plaintiffs assert that they saw BodyArmor's "representations" and came away with the

18  impression that the product was healthy or "nutritious" overall, when in fact it had too much sugar.

19  (*See, e.g.*, Compl. ¶¶ 12-16, 22, 30, 39, 47.)  BodyArmor's label, however, truthfully states its

20  ingredients and nutritional content.  In addition to failing to identify what statements each Plaintiff

21  relied upon each time he or she bought the product and failing to allege any of the other requisite

22  details for pleading fraud,[4] such allegations cannot state a claim.

23        Plaintiffs essentially allege that BodyArmor cannot make any positive statements about its

24  own product, simply because it contains sugar.  A 16 oz. glass of orange juice, however, contains

25

---

26  [4] *See, e.g.*, *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *11 (C.D. Cal. Oct. 20, 2014) (plaintiffs insufficiently pled the "what," "when," "where," and "how," and noting

27  that "[n]o presumption arises that a plaintiff saw allegedly false misrepresentations simply because they purportedly appeared on product packaging"); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d

28  1117, 1124 (C.D. Cal. 2010) (dismissing under Rule 9(b) false advertising claims because plaintiff failed to allege specific packaging she saw and relied upon and where she saw packaging).

over 40 grams of sugar.  *See* https://www.fatsecret.com/calories-nutrition/usda/orange-juice.  This is *more sugar* than the 36 grams cited in the Complaint or the 28 grams on Body's Armor's current label.  Under Plaintiffs' made up rule, an orange juice company could be sued for putting a picture of a child playing in a yard on its label (or social media) because this could suggest that the product was "healthy."  The same theory could be applied to any product containing fat, carbs, too little protein, too much protein, etc.  No product would be safe from suit.

For this reason, Courts have begun dismissing such claims at the pleading stage.  Judge Alsup, in dismissing a similar complaint with prejudice in *Perfect Bar*, rejected the same theory put forth by Plaintiffs here:

> Plaintiffs' grievance is that the packaging led them to believe that the bars would be "healthy" when, in supposed point of fact, the added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed. This is untenable. The actual ingredients were fully disclosed. Reasonable purchasers could decide for themselves how healthy or not the sugar content would be. No consumer, on notice of the actual ingredients described on the packing including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar and describes its recipe as having been handed down from a health-nut parent. The honey/sugar content was properly disclosed — that is the end of it — period. The argument in the alternative that plaintiffs would have paid less had they known that the health benefits had been overstated is like saying a sports car wasn't sporty enough so please give a partial refund.

*Perfect Bar*, 2018 WL 7048788, at *1.

The Court's observations in *Perfect Bar* are all the more pertinent here, where consumers expect – and want – their sports drinks to contain sugar.  If they care about sugar, they are free to choose how sporty they want their sports drink to be.

Judge White likewise dismissed a complaint alleging that health and wellness claims in the marketing of certain breakfast cereals was "deceptive because they are incompatible with the significant dangers of the excessive added sugar consumption to which these foods contribute."  *General Mills*, 2019 WL 3940956 at *1.  Citing *Perfect Bar*, Judge White similarly found that plaintiffs' claims were implausible:

> Similarly here the Court finds that Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products, on both the side panel of ingredients and the front of the products' labeling. Here too, the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them.

*Id.* at *4.

General Mills applies to this case with even more force.  In *General Mills*, defendant actually made "health and wellness claims" about its products.  *Id*. at *1.  The Court held that plaintiffs still could not state a claim based on sugar content because they could simply read the label to figure out how much sugar was in the products.  *Id.* at 4.  Here, none of the litany of statements recited in the Complaint (most of which Plaintiffs never saw) uses the words "healthy" or "nutritious."  Plaintiffs' claims are thus even less plausible than those in *General Mills* because Plaintiffs cannot seriously contend to be misled by claims BodyArmor did not make.  Indeed, aside from the complying FDA labeling requirements, BodyArmor's labels and advertising make no mention of sugar content and in no way suggest that it is low in sugar. [5]

As in *Perfect Bar* and *General Mills*, BodyArmor's actual ingredients were fully disclosed on the label – where Plaintiffs claimed to have seen BodyArmor's advertising statements.  (Compl. ¶¶ 22, 30, 39, 47.)  Plaintiffs do not allege that BodyArmor's labels were inaccurate or that it somehow violated any law regarding disclosure of sugar content.  Nor could they.  Plaintiffs were therefore "on notice of the actual ingredients," and it was up to them "to come to their own conclusions about whether or not the sugar content was healthy for them."  *Perfect Bar*, 2018 WL 7048788, at *1; *General Mills*, 2019 WL 3940956 at *4*; see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (finding it is implausible to be misled about the contents of a product when the content was properly disclosed).  BodyArmor was "under no obligation to warn" Plaintiffs that "certain levels of sugar may be associated with" certain health results.  *General Mills*, 2019 WL 3940956 at *4 (noting that "federal express preemption bars that demand as federal

---

[5] BodyArmor Lyte on the other hand is low in sugar and truthfully advertises that it contains no added sugar, and BodyArmor SportWater contains no sugar.  (Soffer Decl. ¶ 3.) Starting in 2017, Plaintiffs could have purchased one of those products if they were as concerned about sugar content as their complaint suggests, and the complaint itself even depicts these products in various advertisements.  (Compl. at 10, Image 3; 12-13, Images 9-11.)

1    law for the disclosure of sugar content in food imposes no such requirement").  Thus, the sugar

2    content "was properly disclosed — that is the end of it — period." *Perfect Bar*, 2018 WL

3    7048788, at *1.  For this reason, the Court should dismiss the Complaint with prejudice.

4         **C.    The Gatorade Claims Are Irrelevant**

5         Plaintiffs' claims separately fail because they are premised on the Gatorade Claims.  In the

6    Complaint, Plaintiffs call out the NAD's decision in those proceedings and in the next breath

7    romanticize Gatorade's advertising.  The Gatorade Claims are wholly irrelevant to these

8    proceedings.

9         First, NAD's proceedings have no evidentiary value.  *Pom Wonderful LLC v. Tropicana*

10   *Prod., Inc.*, No. CV 09-00566-DSF, 2010 WL 11519185, at *4 (C.D. Cal. Nov. 1, 2010) ("[q]uasi-

11   governmental agencies like the NAD" that "provide only informal and non-binding reports and

12   opinions, and whose review process is not subject to any evidentiary or procedural safeguards…are

13   inadmissible").

14        Second, the Gatorade Claims are moot.  BodyArmor changed the advertising that was the

15   subject of those claims last year.  (Soffer Decl. ¶ 4.)  Plaintiffs' attempt to resurrect Gatorade's

16   grievances in a lawsuit is unavailing.

17        In sum, each of Plaintiffs' claims requires them to prove that they reasonably and

18   detrimentally relied on a misleading statement by BodyArmor.  Because Plaintiffs have not and

19   cannot plausibly allege this, all of their causes of action fail.

20   **II.   PLAINTIFFS' "FORTIFICATION" CLAIM IS MERITLESS**

21        Plaintiffs' First Cause of Action asserts, inter alia, that BodyArmor's labeling violates FDA

22   regulations on fortification.  In addition to failing to establish any injury giving rise to standing, this

23   claim fails for the additional separate and independent reason that the regulations Plaintiffs cite are

24   applicable only under narrow circumstances not present here, thus the FDA's fortification policy

25   does not even come into play.

26        The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 et seq. ("FDCA"), grants the

27   FDA broad authority over food labeling and empowers it to "develop[] regulations governing the

28   labeling of food products." *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2018

1   WL 3956022, at *4 (S.D. Cal. Aug. 17, 2018).  In 1990, Congress passed the Nutritional Labeling

2   and Education Act ("NLEA"), which amended the FDCA by, among other things, "impos[ing]

3   limitations on health claims," and "standardiz[ing] the definitions of all nutrient content claims."

4   *Ackerman v. Coca-Cola Co.*, No. CV–09–0395, 2010 WL 2925955, at *3 (E.D.N.Y. July 21,

5   2010).  As described in the NLEA, the FDA has promulgated regulations concerning express

6   nutrient-content claims, implied nutrient-content claims, and health claims.  *See* 21 C.F.R.

7   §§ 101.13 (defining express and implied nutrient-content claims), 101.14 (defining health claims).

8   An express nutrient-content claim is "a direct statement about the level or range of a nutrient in a

9   food, such as 'low sodium' or '100 calories.'"  *Ackerman*, 2010 WL 2925955, at *3 (citing 21

10  C.F.R. § 101.13(b)(1)).  An "implied nutrient-content claim" is a statement suggesting "that a

11  nutrient or an ingredient is absent or present in a certain amount." *Id.* (citing 21 C.F.R.

12  §§ 101.13(b)(2)(i)-(ii); 21 C.F.R. § 101.65).  A claim that a product is "healthy" is generally an

13  implied nutritional content claim. *Id.*  "Health claims" by contrast, specifically "characterize[ ] the

14  relationship of any substance to a disease or health-related condition." *Id.* (citing 21 C.F.R.

15  § 101.14).  The FDA's fortification policy (21 C.F.R. § 104.20) applies in two situations cited by

16  Plaintiffs, neither of which is applicable here.

17       First, where a manufacturer uses the precise term "healthy" (or grammatical variations

18  thereof) in making a nutrient-content claim, fortification to reach the required 10 percent nutrient

19  threshold is only permitted if it complies with the fortification policy.  *See* 21 C.F.R.

20  § 101.65(d)(2)(iv).  This regulation does not apply here because Plaintiffs do not allege that

21  BodyArmor's labeling makes any nutrient content claims at all, much less any that use the term

22  "healthy," or any "health claims."[6]  *See Ackerman*, 2010 WL 2925955, at *10 (The so-called "jelly

23

---

24  [6] Even if Plaintiffs could plausibly allege that BodyArmor's labeling makes such nutrient content
    or health claims (which they cannot), their claims would be preempted in any event. The NLEA
25  contains an express preemption provision for nutrient content and health claims.  21 U.S.C. § 343-
    1(a)(5); *See Ackerman*, 2010 WL 2925955, at *3 (quoting 21 U.S.C. § 343(r)(1)).  Plaintiffs
26  attempt to impose a requirement that BodyArmor is prohibited from making nutrient or health
    claims because it contains what their lawyers believe is too much added sugar.  But because the
27  FDA has expressly declined to recognize sugar as a disqualifying nutrient for purposes of health
    claims, "'any claim under state law solely premised on the notion that [a product's] high sugar
28  content made its health or implied nutrient content claims misleading is preempted.'"  *McMorrow*,
    2018 WL 3956022, at *7 (quoting *Ackerman*, 2010 WL 2925955, at *8).

bean rule" poses "no bar to nutrient-content claims generally; it is applicable only to (1) health claims; and (2) nutrient-content claims that use the word "'healthy'").  Plaintiffs' alleged belief that it was healthy has no bearing on this determination.

Second, the FDA precludes the use of the specific words "more," "fortified," "enriched," "added," "extra," or "plus" for a product containing added nutrients if the addition of the nutrients itself violates the fortification policy.  *Ackerman*, 2010 WL 2925955, at *10 (citing 21 C.F.R. § 101.54(e)).  Plaintiffs' two-paragraph fortification allegations fail to identify any prohibited use of these words in BodyArmor's statements.  Plaintiffs' conclusory allegations that this regulation applies to any 'relative' claim "such as "superior" or "better" hydration" is inaccurate.  (Compl. ¶ 87.)

Thus, in addition to failing to establish the elements of reliance, causation and injury, Plaintiffs' First Cause of Action separately and independently fails to state a claim to the extent that it is based on inapplicable FDA fortification regulations.

## III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Each cause of action in the Complaint is separately and independently barred by the First Amendment.  Plaintiffs' proposed state-law regulation punishing BodyArmor's truthful speech violates the First Amendment under any test.  There is no governmental interest in preventing BodyArmor from making truthful statements on its labels or compelling it to disclose Plaintiffs' lawyers' health theories.  Nor is their regulation in any way tailored to achieving such interest; it is so nebulous that no business could comply with it, resulting in a substantial suppression of protected speech.

In *CTIA-The Wireless Association v. Berkeley*, 928 F.3d 832 (9th Cir. 2019), the Ninth Circuit stated that *Central Hudson* scrutiny applies "in commercial speech cases where the government acts to restrict or prohibit speech," and that the standard in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), as refined by *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2461 (2018) ("*NIFLA*"), applies to regulations that compel speech.  *See also Am. Bev. Ass'n v. San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc).  Plaintiffs' complaint seeks to both punish BodyArmor for its speech and to compel a "corrective

advertising campaign." (Compl. ¶¶ 122, 132.)  Regardless of which standard is applied, Plaintiffs'
claims cannot withstand scrutiny.

### A.    Plaintiffs' Regulation Does Not Survive *Central Hudson*

To the extent *Central Hudson Gas & Electric Corporation v. Public Service Commission*,
447 U.S. 557 (1980), applies, Plaintiffs' claims fail.  Under *Central Hudson*, "the government may
restrict or prohibit commercial speech that is neither misleading nor connected to unlawful activity,
as long as the governmental interest in regulating the speech is substantial.  The restriction or
prohibition must directly advance the governmental interest asserted, and must not be more
extensive than is necessary to serve that interest." *Am. Bev.*, 916 F.3d at 755 (citations and
quotations omitted).

Plaintiffs' proposed regulation does not serve any substantial government interest.  After
years of study and analyzing over 300,000 submissions, the FDA, which is responsible for
regulating food advertising, rejected establishing a daily recommended value for sugar.  81 Fed.
Reg. 33,798.  It also rejected a proposal that products with added sugar carry a warning asserting
they are "linked to obesity, Type II Diabetes, [and other health risks]" because it believes that such
a statement is "not consistent with [its] review of the evidence" and because "some added sugars
can be included as part of a healthy dietary pattern." *Id.* at 33,829.  Because the FDA has
considered, and rejected, regulating "health claims" based on sugar content, and because
BodyArmor's labels truthfully disclose all ingredients, Plaintiffs cannot meet their burden of
showing a substantial government interest. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571-72
(2011); *see also United States v. Caronia*, 703 F.3d 149, 166-67 (2d Cir. 2012) (proscribing off-
label drug use did not directly advance a substantial governmental interest because off-label use is
"generally lawful" and the promotion was entirely true).

Nor is Plaintiffs' proposed regulation tailored to achieve any interest beyond litigation.
Plaintiffs' regulation has no limits.  It would allow anyone to sue BodyArmor on any theory of
what a "healthy" sports drink should, or should not, have based on any daisy-chain of inferences.
Could BodyArmor truthfully state it contains electrolytes without fear of suit for implying the
product is "healthy?"  Could BodyArmor truthfully explain how it is made with coconut water

without someone inferring that coconuts are "healthy"?  Could BodyArmor put an image of

someone playing a sport on the label of its sports drink?  Plaintiffs' amorphous rule would chill

truthful speech and is the definition of overbreadth.

**B.     Plaintiffs' Regulation Does Not Survive *NIFLA/Zauderer***

To the extent *NIFLA/Zauderer* applies, Plaintiffs' regulation fails because it is a content-

based restriction that does not qualify for anything less than strict scrutiny.

**1.     Plaintiffs' Regulation Is an Unconstitutional Content-Based Restriction on Speech**

Regulations that "target speech based on its communicative content … are presumptively

unconstitutional and may be justified only if the government proves that they are narrowly tailored

to serve compelling state interests." *NIFLA*, 138 S. Ct. at 2371 (citing *Reed v. Town of Gilbert*, 135

S. Ct. 2218, 2226 (2015)) (quotation omitted).  "This stringent standard reflects the fundamental

principle that governments have 'no power to restrict expression because of its message, its idea, its

subject matter, or its content.'"  *NIFLA*, 138 S. Ct. at 2371 (quoting *Reed*, 135 S. Ct. at 2226

(quoting *Police Dept. v. Mosley*, 408 U.S. 92, 95 (1972))).

In *NIFLA*, the Court held that a law mandating that private crisis pregnancy centers

operated by groups opposed to abortion disclose the availability of state-sponsored services,

including abortion, was content-based because it altered the content of the speech.  *NIFLA*, 138 S.

Ct. at 2371 ("By requiring petitioners to inform women how they can obtain state-subsidized

abortions – at the same time petitioners try to dissuade women from choosing that option – the

licensed notice plainly alters the content of petitioners' speech." (quotation omitted)).  Similarly

here, Plaintiffs seek to hold BodyArmor liable because its labels implied to them that BodyArmor

contains a "healthy" amount of sugar, when in their view, it does not.  This claim is based purely

on the (supposed) content of BodyArmor's advertising.

Since Plaintiffs' regulation is content-based, it must survive strict scrutiny.  *Id.*  It cannot,

for the reasons stated above.

2.      **Plaintiffs' Regulation Does Not Fall under Either Exception to *NIFLA***

In *NIFLA*, the Court rejected the idea that content-based restrictions on "professional" or "commercial" speech are generally subject to a lower level of scrutiny.  The Court confirmed its reluctance to "mark off new categories of speech for diminished constitutional protection" or to "exempt a category of speech from the normal prohibition on content-based restrictions."  138 S. Ct. 2372 (citations and quotations omitted); *see also id.* ("This Court's precedents do not permit governments to impose content-based restrictions on speech without persuasive evidence of a long (if heretofore unrecognized) tradition to that effect." (citations and quotations omitted)).

The Court acknowledged just two instances where commercial speech may be afforded less protection:  "laws that require professionals to disclose factual, noncontroversial information;" and regulations of "professional conduct, even though that conduct incidentally involves speech."  *Id.* (collecting cases).  The second exception does not apply here because Plaintiffs are not claiming BodyArmor engaged in some sort of professional malpractice.

The first exception is also inapplicable because Plaintiffs do not only seek to compel BodyArmor to disclose purely factual, noncontroversial information.  As noted above, there is excessive scientific debate, and no consensus, about sugar.

The Ninth Circuit recently examined this aspect of *NIFLA* in the context of an ordinance mandating a disclosure about radio-frequency ("RF") radiation emitted from cellphones.  In *CTIA*, the Court of Appeals concluded that a compelled disclosure which was "literally true," referenced the applicable federal regulations, and used language identical to the federal regulations, was subject to more deferential review.  928 F.3d at 847-48.  For the reasons above, nothing is "literally true" about the disclosures Plaintiffs would impose.

Indeed, nutrition guidance is constantly evolving and often disputed.  *See, e.g.*, R. Primack, *Researchers Now Have a Much More Nuanced Understanding of Whether We Should Eat Pasta*, WASH. POST (July 6, 2016), *available at* https://www.washingtonpost.com/news/wonk/wp/2016/07/06/researchers-nowhave-a-much-more-nuanced-understanding-of-whether-we-should-eat-pasta/.  Just as with pasta, fat, salt, wine, coffee, and countless other nutrients and foods, the FDA and scientists continue to debate the impact of

1   consuming sugar and how much sugar one should consume.  What makes food healthy, including

2   its sugar content, is "anything but an 'uncontroversial' topic." *NIFLA*, 138 S. Ct. at 2372.

3   Accordingly, as in *NIFLA*, "*Zauderer* has no application here." *Id.*

4          Finally, even if *Zauderer* did apply, Plaintiffs' claims would still fail because they are not

5   reasonably related to a substantial governmental interest, as *Zauderer* requires.  *See Am. Bev.*, 916

6   F.3d at 755 ("Under *Zauderer*, the government may compel truthful disclosures in commercial

7   speech as long as the compelled disclosure is reasonably related to a substantial governmental

8   interest." (internal citations and quotations omitted)).  Plaintiffs offer no evidence or facts to

9   support their theory that foods with a certain quantity of added sugar is unhealthy.  Nor do they

10  provide any reason to believe consumers lack sufficient information to evaluate the healthiness of

11  BodyArmor drinks given all the truthful disclosures on the product packaging.

12         In sum, the First Amendment is an additional separate and independent ground for

13  dismissing all of Plaintiffs' claims with prejudice.

14  **IV.     PLAINTIFFS DO NOT STATE A CLAIM FOR UNJUST ENRICHMENT**

15         For the reasons above, BodyArmor's advertising is not misleading. There has thus been no

16  injustice and so no enrichment.  Plaintiffs' unjust enrichment claims therefore fail.  *Weiss v. Trader*

17  *Joe's Co.*, Case No. 8:18-cv-01130-JLS-GJS, 2018 WL 6340758 *8 (N.D. Cal. Nov. 20, 2018)

18  (where false advertising claims concerning ionized water failed, tag-along unjust enrichment claim

19  also failed); *see also Ebner v. Fresh, Inc.,* 838 F.3d 958, 968 (9th Cir. 2016) (unjust enrichment

20  claim mooted where complaint failed to state a claim as to other causes of action); *SodexoMAGIC,*

21  *LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 473 (E.D. Pa. 2018) ("Where the unjust enrichment

22  claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim

23  will rise or fall with the underlying claim.").

24         Under New York law, "an unjust enrichment claim is available 'only in unusual situations

25  when, though the defendant has not breached a contract nor committed a recognized tort,

26  circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Paulino*

27  *v. Conopco, Inc*., 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (quoting *Corsello v. Verizon*

28  *N.Y., Inc*., 18 N.Y.3d 777, 790 (2012)).  "It is not a 'catchall cause of action to be used when others

1    fail,' and is typically limited to instances where 'the defendant, though guilty of no wrongdoing,

2    has received money to which he or she is not entitled.'"  *Id*. (citation omitted).  "An unjust

3    enrichment claim that merely, 'duplicates, or replaces, a conventional contract or tort claim' is

4    insufficient."  *Id*. (citation omitted).

5         Where, as here, an unjust enrichment claim is based on the same allegations as other claims,

6    the claim should be dismissed as duplicative.  *See Sitt v. Nature's Bounty, Inc*., 2016 WL 5372794,

7    at *18 (E.D.N.Y. Sept. 26, 2016) (dismissing claim as duplicative where "Plaintiff's unjust

8    enrichment claims under New York law are based on the same allegations as her claims of

9    violations of GBL sections 349 and 350"); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,

10   148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015) (dismissing unjust enrichment claim with prejudice

11   where it was "based on identical facts as the [GBL] Section 349 claim"); *Goldemberg v. Johnson &*

12   *Johnson Consumer Companies, Inc.,* 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (dismissing unjust

13   enrichment claim relating to allegations of deceptive labeling and advertising of personal care

14   products); *Silva v. Smucker Nat. Foods, Inc.,* 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015)

15   (dismissing unjust enrichment claim as duplicative of other claims, including GBL §§ 349 and

16   350); *Koenig v. Boulder Brands, Inc.,* 995 F. Supp. 2d 274, 290-291 (S.D.N.Y. 2014) (dismissing

17   unjust enrichment claim as duplicative in case alleging deceptive milk product labeling); *Paulino*,

18   2015 WL 4895234, at *3-4 (noting various "decisions involving the deceptive labeling of consumer

19   goods have dismissed unjust enrichment claims as duplicative or otherwise unavailable at the

20   motion to dismiss stage."); *Ebin v. Kangadis Food Inc.,* No. 13–CV–2311 (JSR), 2013 WL

21   6504547, at *7 (S.D.N.Y. Dec.11, 2013) (dismissing unjust enrichment claim as duplicative);

22   *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (dismissing unjust

23   enrichment claim as duplicative of contract and tort claims).  Accordingly, Plaintiffs' unjust

24   enrichment claim should be dismissed.

25   **V.     PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF**

26        In their Prayer, Plaintiffs seek "injunctive relief."  (Compl. at 39 (Prayer for Relief), ¶ 122.)

27   Plaintiffs lack standing to do so. To establish standing to seek injunctive relief, a plaintiff must

28   demonstrate "a real and immediate threat of repeated injury."  *Bates v. United Parcel Serv., Inc.*,

1   511 F.3d 974, 985 (9th Cir. 2007). "In addition, the claimed threat of injury must be likely to be

2   redressed by the prospective injunctive relief." *Id.* "In the context of a class action, '[u]nless the

3   named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class

4   seeking that relief.'" *Romero v. Flowers Bakeries, LLC*, No. 14–cv–05189-BLF, 2015 WL

5   2125004, *7 (N.D. Cal. May 6, 2015) (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045

6   (9th Cir. 1999)). Plaintiffs cannot establish such a threat, and their request for an injunction should

7   therefore be dismissed for lack of standing.

8          First, Plaintiffs' entire complaint is based on old labels and advertising. (Soffer Decl. ¶ 4.)

9   BodyArmor has changed its advertising since then, completely independent of Plaintiffs' lawsuit,

10  and now makes only one statement that Plaintiffs challenge: "Superior Hydration." [7]  As discussed

11  above, this statement is mere puffery, and Plaintiffs could not have relied on it. Plaintiffs' claim

12  for injunctive relief is moot. *Figy v. Frito-Lay N. Am. Inc.*, 67 F. Supp. 3d 1075, 1085 (N.D. Cal.

13  2014) (dismissing claims for injunctive relief because "[d]efendant has furnished two declarations

14  showing the current labeling for the Products and specifically stating that the allegedly offending

15  labels were no longer being printed when Plaintiffs filed their complaint"); *Nguyen v. Medora*, No.

16  14-cv-00618, 2015 WL 4932836, at *8 (N.D. Cal. Aug. 18, 2015) ("even if Plaintiffs did offer

17  evidence of injury-in-fact and redressability, they still lack standing to pursue injunctive relief

18  because Medora changed the packaging back in December 2013, before this suit was even filed").[8]

19         Second, Plaintiffs allege that they would not have purchased BodyArmor if they had

20  understood what they allegedly know now, that BodyArmor "does not provide them with a

21  nutritious beverage overall" and that it is, in their eyes, a "fortified junk food" that contains a

22  "tsunami of sugar." (Compl. ¶¶ 17, 80.) It is implausible that Plaintiffs would continue to

23  purchase BodyArmor given this belief. Accordingly, they are unlikely to purchase the product

24  again and face no threat of repeated injury. Plaintiffs' allegations to the contrary do not satisfy the

25

26  [7] The Complaint does not identify any specific changes Plaintiffs seek to BodyArmor's labeling,
    and it is unclear what they could expect to change.

27  [8] *See also City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S.
    488, 495–96 (1974)) ("Past exposure to illegal conduct does not in itself show a present case or

28  controversy regarding injunctive relief if unaccompanied by any continuing, present adverse
    effects.").

1   Ninth Circuit's ruling in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, cert. denied, 139 S. Ct.

2   640 (2018).

3          In *Davidson*, the Ninth Circuit held that "previously deceived" consumers such as Plaintiffs

4   may establish a threat of future injury in certain limited circumstances, by plausibly alleging either

5   (1) that they will not be able to rely on a product's advertising or labeling in the future and

6   therefore will not purchase the product, even though they would like to, or (2) that they might

7   purchase the product in the future because they reasonably, but incorrectly, believe that, although

8   the label remains the same, the product has been improved. *Id.* at 969-70.

9          Plaintiffs attempt to meet the requirements of *Davidson* by making boiler-plate allegations

10  that if they "knew that BA's marketing was truthful and non-misleading, and lawful," they would

11  "purchase BodyArmor in the future."  They contend, however, that "[a]t present," they "cannot

12  purchase the product because [they] cannot be confident that the marketing of the products is, and

13  will be, truthful and non-misleading, or lawful."  (Compl. ¶¶ 27, 36, 44, 52.)

14         Plaintiffs' allegations are not plausible and do not satisfy *Davidson*.  Throughout the

15  complaint, Plaintiffs belabor the amount of sugar in a serving of BodyArmor (an indication that

16  they've read the label and know how much sugar it presently contains) as the reason they do not

17  believe it is a "nutritious beverage overall."  (Compl. ¶¶ 10-17, 72-80.)  Unlike in *Davidson*,

18  Plaintiffs will be able to rely on the label in the future, because it has always correctly listed the

19  amounts of sugar and added sugar in each product.  By the same token, Plaintiffs will not buy

20  BodyArmor under the mistaken belief that it has been reformulated with less sugar, because

21  Plaintiffs can readily read the Nutrition Facts to make this determination.  This case is unlike the

22  situation in *Davidson* where the plaintiff could have erroneously believed that wipes labeled as

23  "flushable" had been improved and were now truly flushable, even though they had not been

24  before.  889 F.3d at 970-72.  Here, Plaintiffs would presumably only purchase BodyArmor in the

25  future if it contained less or no sugar.  Should BodyArmor change its formulation in the future (and

26  Plaintiffs allege no facts indicating that this may occur in any event), Plaintiffs can simply check

27  the label to determine if it contains the amount of sugar they find acceptable and "nutritious" –

28

whatever that means to them.  Plaintiffs therefore face no immediate threat of future injury, and their claim for injunctive relief should be dismissed.

## VI.     LEAVE TO AMEND SHOULD BE DENIED

Leave to amend is denied when "the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (quotation omitted).  For the reasons above, and as articulated in *Perfect Bar* and *General Mills*, Plaintiffs' claims fail as a matter of law.  Prior to filing this motion, BodyArmor identified the deficiencies in Plaintiffs' complaint and requested to meet and confer about them with Plaintiffs.  Plaintiffs declined, stating, "[w]e are comfortable with the adequacy of our complaint" and would not seek to amend it.  (Borden Decl. Ex. 2.)  Under such circumstances, granting leave to amend would be futile.  Accordingly, Plaintiffs' claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  March 23, 2020

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:   _/s/ Matthew Borden_____
         Matthew Borden

*Attorney for Defendant*
*BA Sports Nutrition, LLC*