**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
*lking@kaplanfox.com*
*mchoi@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Maia C. Kats (*pro hac vice*)
6109 32nd Place, Northwest
Washington, DC 20015
Telephone: (202) 669-0658
*mkats@kaplanfox.com*

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade II (SBN 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, CA 90211
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARC SILVER, HEATHER PEFFER, and ALEXANDER HILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BA SPORTS NUTRITION, LLC,<br><br>Defendant. | Case No. 3:20-cv-00633-SI<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BA SPORTS NUTRITION, LLC'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Judge: Hon. Susan Illston<br>Courtroom: 1, 17th Floor<br>Date: June 5, 2020<br>Time: 10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   ISSUES TO BE DECIDED ..................................................................................... 3

III.  FACTUAL BACKGROUND ................................................................................... 3

IV.   LEGAL STANDARDS ........................................................................................... 5

V.    THE COMPLAINT CLEARLY STATES CLAIMS SUFFICIENT TO
      WITHSTAND BA'S MOTION TO DISMISS........................................................ 7

      A.    BA's Advertising Is Not Mere Puffery; It's Deception That
            Increases Profits. ....................................................................................... 7

      B.    Plaintiffs' Science-Based Allegations Are Plausible. ............................ 11

      C.    The Gatorade Comparator Allegations Are Relevant. ........................... 14

      D.    Plaintiffs Unlawful Fortification Claims Under the UCL Are Meritorious. ......... 15

      E.    The First Amendment Does Not Protect Defendant's Misleading
            Representations. ...................................................................................... 17

      F.    Plaintiffs State A Claim For Unjust Enrichment.................................... 18

      G.    Plaintiffs Have Standing To Pursue Injunctive Relief. ......................... 19

      H.    Leave To Amend Should Be Freely Granted. ........................................ 21

VI.   CONCLUSION ......................................................................................................22

PLTFS' MPA IN OPPOSITION TO DEF'S MOT. TO DISMISS THE COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. Coca Cola Co.*,
  No. CV-09-0395 (JG)(RML), 2010 WL 2925955 (E.D.N.Y. Feb. 26, 2018) .............. 11, 15, 16

*Ahern v. Apple, Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................................... 1, 7

*Animal Legal Defense Fund v. HVFG LLC*,
  939 F. Supp. 2d 992 (N.D. Cal. 2013) ............................................................................ 10

*Arora v. GNC Holdings, Inc.*,
  No. 19-cv-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019) .............................. 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 5

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .......................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 5

*Brickman v. Fitbit, Inc.*,
  No. 15-cv-02077-JD, 2016 WL 3844327 (N.D. Cal. July 15, 2016) ............................... 6

*Bruton v. Gerber Prods. Co., ,*
  961 F. Supp. 2d 1062 (N.D. Cal. 2013) .......................................................................... 17

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) ........................................................................................... 17

*Centr. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980) .................................................................................................... 1, 18

*Clark v. Perfect Bar, LLC*,
  No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) .......................... 12

*Coe v. Gen. Mills, Inc.*,
  No. 15-cv-05112-TEH, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ...................... 8, 13

*Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ............................................................................................ 7

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .......................................................................................... 20

*Fed. Trade Comm'n v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999) ........................................................................................ 20

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*,
  No. 10-cv-04879-JCS, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014) ............................. 18

*Freedline v. O Organics, LLC.*,
  No. 19-cv-01945-JD, 2020 WL 1643697 (N.D. Cal. Mar. 31, 2020) .............................. 6

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ..................................................................................................... 19

*Hadley v. Kellogg Sales Company*,
273 F. Supp. 3d 1053 (N.D. Cal. 2017) ...................................................................... 14

*Henry v. Daytop Vill., Inc.*,
42 F.3d 89 (2d Cir. 1994) ............................................................................................ 19

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ........................................................................ 8

*In re Coca-Cola Products Marketing & Sales Practices Litig.*,
No. 14-md-02555-JSW, 2020 WL 759388 (N.D. Cal. Feb. 14, 2020) ....................... 21

*In re R. M. J.*,
455 U.S. 191 (1982) ..................................................................................................... 17

*Jones v. Nutiva, Inc.*,
No. 16-CV-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sep. 22, 2016) ...................... 8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ................................................................................. 6, 18

*Krommenhock v. Post Foods, LLC*,
255 F. Supp. 3d 938 (N.D. Cal. 2017) ....................................................................... 14

*Krommenhock v. Post Foods, LLC*,
No. 16-cv-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ...................... 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .................................................................................... 22

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018) .......................................................................................... 2

*McDonald v. Kiloo ApS*,
236 F. Supp. 3d 1022 (N.D. Cal. 2019) ........................................................................ 6

*National Institute of Family and Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018) ................................................................................................ 18

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) ...................................................................................... 7

*Pizza Hut Inc. v. Papa John's International, Inc.*,
227 F.3d 489 (5th Cir. 2000) .......................................................................... 10, 11, 15

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
No. 19-cv-03613-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .................... 11

*Smith v. Keurig Green Mountain, Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019) ....................................................................... 18

NOTICE OF MOT. AND MOT. FOR ATTY FEES AND EXPENSES; MPA ISO THEREOF

**TABLE OF AUTHORITIES (cont.)**

Page(s)

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ............................................................................... 7

*St. John's Univ., New York v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010) ................................................................. 19

*Swearingen v. Late July Snacks LLC*,
No. 13-cv-04324-EMC, 2017 WL 1806483 (N.D. Cal. May 5, 2017) ..................... 6

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) .................................................................................. 7

*Truxel v. General Mills Sales, Inc.*,
No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ................... 13

*Tsan v. Seventh Generation, Inc.*,
No. 15-cv-00205-JST, 2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ..................... 15

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
No. 14-1842, 2015 WL 3498761 (E.D. Pa. June 3, 2015) ................................... 17

*Virgin Enterpr. Ltd. v. Am. Longevity*,
No. 99-cv-9854(CSH), 2001 WL 34142402 (S.D.N.Y. Mar. 1, 2001) ................... 17

*Warner v. StarKist Co.*
No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ......... 18

*Williams v. Gerber Products Company*,
552 F.3d 934 (9th Cir. 2008) ...................................................................... *passim*

**Statutes**

California Business & Professions Code
§§ 17200, *et seq.* (Unfair Competition Law ["UCL"]) ................................... 11, 16

California Law and Safety Code
§§ 109875, *et seq.* (Sherman Food, Drug, and Cosmetic Law ["Sherman Law"]) ............... 5, 16

U.S.C.A. Const.
Art. 3, § 1, *et seq.* .............................................................................................. 19

**Rules**

Federal Rules of Civil Procedure
Rule 8(d)(2) ........................................................................................................ 19
Rule 8(d)(3) ........................................................................................................ 19
Rule 9(b) .............................................................................................................. 6
Rule 12(b)(6) ................................................................................................... 5, 17
Rule 15(a) ........................................................................................................... 22

**TABLE OF AUTHORITIES (cont.)**

Page(s)

**Regulations**

21 Code of Federal Regulations
§ 101.54(e) ............................................................................................ 5
§ 101.54(e)(1)(ii)............................................................................... 5, 16
§ 104.20................................................................................................ 5, 15

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms,
58 FED. REG. 2302, 2360-62 (Jan. 6, 1993) ............................................. 16

**Other Authorities**

Miriam B. Vos, et al., *Added Sugars and Cardiovascular Disease Risk in Children: A Scientific Statement from the American Heart Association*,
135 CIRCULATION 19 (Aug. 22, 2016) ..................................................... 13

1

## I.  INTRODUCTION

2

On March 23, 2020, Defendant BA Sports Nutrition, LLC ("Defendant" or "BA"), maker

3

of BodyArmor Sports Drink ("BodyArmor"), filed its motion to dismiss this action.[1]  Although

4

inflammatory in style, BA's motion is notably thin on the law.  This comes as no surprise: BA has

5

already lost several deceptive advertising actions before the Better Business Bureau's National

6

Advertising Division ("NAD")—only to disregard the adverse findings and recommended

7

marketing changes.  ¶¶ 68-71.[2]  As Plaintiffs are entitled to show through this litigation, however,

8

BA irrefutably harmed Plaintiffs and the putative class and is therefore liable to them.

9

Indeed, many of the arguments advanced by BA in its motion to dismiss are wrong.  For

10

example, that advertising alleged to be deceptive is protected by the First Amendment is a meritless

11

contention.  It is axiomatic that deceptive speech is *not* constitutionally protected; commercial

12

speech must, to be protected, "at least … not be misleading."  *Centr. Hudson Gas & Elec. Corp. v.*

13

*Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).  More, there is no attempt to *compel*

14

any speech here, rendering this case vastly different from others where a First Amendment

15

argument might be appropriate.

16

Similarly lacking in merit is BA's description of its marketing as mere puffery given its

17

clear promotion of specific traits and functions, like superior *hydration*, as well as its comparisons

18

with other beverages.  It is well-established that statements that "arguably promised consumers that

19

the product was capable of producing some effect" are actionable.  *Ahern v. Apple, Inc.*, 411 F.

20

Supp. 3d 541, 556 (N.D. Cal. 2019) (internal alterations omitted).  So too, BA's reliance on the

21

Nutrition Facts Panel ("NFP") as a cure-all for deception is baseless.  In *Williams v. Gerber*

22

*Products Company*, the Ninth Circuit rejected this argument and held that consumers need only

23

consult front of pack claims when making their purchases, and need not consult disclaimers on the

24

back or information in the NFP.  552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should

25

---

26

[1] *See* Mot. of Def. BA Sports Nutrition, LLC to Dismiss the Compl. Pursuant to Rule 12(b)(6), dated Mar. 23, 2020 (the "MTD") [Dkt. 20].

27

[2] "¶" or "¶¶" refer to paragraphs in the Class Action Complaint, filed Jan. 28, 2020 (the "Complaint") [Dkt. 1].  A compendium of NAD decisions and recommendations on BA's deceptive advertising is attached as Exhibit 1 to the Declaration of Maia C. Kats, dated April 20, 2020 ("Kats Decl.").

28

[not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *see also Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (under New York consumer protection laws, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth" elsewhere on the packaging.).

Even if *Williams* was not governing law here (which it is), the NFP here would at best only partially address *one* component of BA's deception by revealing sugar content without fully unmasking the "more natural better" or "superior hydration" claims. Even more startling is BA's contention that its marketing is not deceptive because consumers purchase BodyArmor precisely because of its sugar content—that its sugar content *"is the one reason people buy [BodyArmor]*." MTD at 1-2. This argument defies the reality of BA's marketing scheme, which trumpets vitamins, electrolytes, coconut water, and vitamins. Sugar is the *only* main ingredient that BA routinely *omits* from its marketing.

Finally, although irrelevant to the issues before the Court on this motion to dismiss, BA's accusations of misconduct by named Plaintiffs and their counsel are equally baseless. BA takes aim at Plaintiffs' counsel, for example, making serious accusations of impropriety about purportedly false claims of an investigation into BodyArmor's marketing and the science of hydration and sugar. MTD at 4. BA makes its accusations **without any factual support, let alone prior inquiry**, and could not be more wrong. Plaintiffs' counsel retained and consulted extensively with a leading expert in nutrition and sugar-sweetened beverages—from Harvard University's T.H. Chan School of Public Health and the University of Toronto—prior to filing the Complaint. Kats Decl. ¶¶ 2-5. Thus, contrary to BA's careless aspersions, there was and is serious investigation and expertise behind this litigation. Similarly, BA's assertion that "only one of the [Plaintiffs] resides near to where any of their lawyers are based" is groundless. MTD at 3. The Court need look no further than the caption and signature pages here to see that it is untrue.[3]

---

[3]  BA's comments about Plaintiffs are equally improper.

In sum, while BA does it best to distract, the facts alleged in the Complaint and law compel denial of its motion to dismiss.  Plaintiffs are entitled to proceed with their case before this Court.

## II.    ISSUES TO BE DECIDED

1.    Whether Plaintiffs state viable claims for violations of the consumer protection laws under California, New York, and Pennsylvania.

2.    Whether Plaintiffs state a viable claim for unjust enrichment.

3.    Whether Plaintiffs have standing to assert a claim for injunctive relief.

4.    Whether Defendant's motion to dismiss the Complaint should be denied

## III.    FACTUAL BACKGROUND

Plaintiffs each purchased BodyArmor during the relevant class period.  ¶¶ 21, 29, 46.  They did so after viewing and relying on the labeling and other marketing, including but not limited to in-store displays, and prolific marketing via social media and influencers compensated by BA.  *See* ¶¶ 22, 24, 30-33, 47, and *passim*.  The BodyArmor label itself bears the dominant claim, "SUPERIOR HYDRATION," as well as explanatory claims that it contains 100% or 200% of the recommended daily intake ("RDI") for various vitamins, "more" natural ingredients, and electrolytes, and is a "SUPER DRINK."  *See* ¶¶ 86, 121, 139, 162, and *passim*.  Other forms of advertising were equally explicit including, but not limited to, statements such as "UPGRADE YOUR SPORTS DRINK," "rethink your sports drink," "contains more electrolytes than your leading sports drink," provides "benefit over water," and "I cringe when my daughter asks for Gator[ade]."  ¶¶ 64-66, 79.

BA's labeling of BodyArmor, as well as other marketing, caused Plaintiffs to believe that it would provide them, none of whom are endurance athletes, with "superior" and "better" hydration than other beverage options (including Gatorade, water, and other sports drinks) given its ingredients and special formula, and also left them with the impression that BodyArmor was beneficial to their well-being.  *See* ¶¶ 5, 22, 30, 47-48, 66, 71, 79, 86.  However, BodyArmor did not provide Plaintiffs with "superior" or "better" hydration—whether with respect to other sports drinks, Gatorade specifically, or water—nor was it beneficial to their well-being overall.  ¶¶ 8-10. As BA itself admitted over the course of several complaints against it for false advertising before

the NAD, it **_has not and cannot substantiate its claim of superior hydration on any basis_**—that is, whether with respect to its formula overall, vitamin content, or purportedly natural ingredients. ¶¶ 67-70; *see also* Kats Decl., Ex. 1.  Abundant science has confirmed as much by showing that sugar sweetened beverages ("SSBs"), such as BodyArmor, instead are linked to obesity, type 2 diabetes, and cardiovascular disease—now serious epidemics in the United States. ¶¶ 11, 73 & n.6. According to virtually all the leading health authorities, including but not limited to the Centers for Disease Control and Prevention ("CDC"), World Health Organization ("WHO"), American Medical Association ("AMA"), American Heart Association ("AHA"), the federal Dietary Guidelines Advisory Council ("DGAC"), and American Public Health Association, consumption of SSBs should be avoided because "there is a robust body of evidence that SSB consumption is detrimental to health." ¶ 77 & n. 12.  The CDC has a dedicated webpage to promoting water for hydration instead.  ¶¶ 72-73 ("water-the-healthier-choice").

Like PepsiCo, ¶ 84, The Coca-Cola Company ("Coke"), one of BA's principal investors, also has implicitly rejected the notion of BodyArmor as providing "superior hydration" to Plaintiffs and the consumer class—on the basis of its sugar content alone.  In its recent letter to the Chair of the federal 2020 Dietary Guidelines Advisory Council, Coke characterized SSB sports drinks as potentially beneficial for purposes of performance, but *not as hydration* for Plaintiffs or the general public.  Instead, SSB sports drinks are "[f]or specific sub-populations, including individuals who engage in prolonged vigorous physical activity (athletes, people with physically demanding work, members of the military, etc.) or those sweating for extended hours due to warm temperatures…." Feb. 7, 2020 Letter to Barbara Shneeman, Ph.D., from Coke, at 4 (emphasis added).[4]

Because of BA's deception, Plaintiffs received products different from what they paid for and suffered economic injury thereby.  ¶¶ 13-18, 90-99.  They would like to purchase BodyArmor in the future if BA's marketing and sale are truthful and lawful, but at present they are not confident that such marketing is, or will be, truthful, lawful, and non-misleading.  *Id.*

---

[4] https://www.foodpolitics.com/wp-content/uploads/The_Coca-Cola_Company_Comments_to_the_2020_Dietary_Guidelines_Advisory_Committee_02072020-1.pdf (last visited Apr. 24, 2020).

BA's advertising of BodyArmor as "Superior Hydration" continues today, both expressly on the label and in many other forms alleged in the Complaint, notwithstanding that BA claims to have dropped a slogan, "more natural better," from its advertising campaign.  MTD at 8, 21; Decl. of Lee Soffer in Supp. of Def. BA Sports Nutrition, LLC's Mot. to Dismiss the Compl., filed Mar. 23, 2020 ("Soffer Decl."), at ¶ 4 [Dkt. 20-2].  Likewise, an adjunct of its prior advertising continues in the labeling claim "natural flavors and sweeteners." MTD at 5.  BA makes no commitment to refrain from marketing and labeling BodyArmor as "superior hydration," or to commit prospectively to excluding from its advertising and labeling representations substantially similar to any claims cited in the Complaint.  Soffer Decl. ¶ 4.

Finally, in addition to being deceptively advertised, Plaintiffs allege that BodyArmor is also unlawfully fortified.  BA's labeling claims of "superior hydration," as well as its claims of "super," "best," "premium," "upgrade your sports drink," and "200%" and/or "100% RDI" of vitamins B3, B5, B6, B9, B12, A, C, and E, imply that there are more of these nutrients in BodyArmor relative to other drinks.  ¶¶ 86-89.  However, where a "relative" labeling claim is based on a nutrient that has been added to the food, the fortification [must] be in accordance with the policy on fortification of foods in § 104.20."  21 C.F.R. § 101.54(e)(1)(ii).  Plaintiffs allege that BA violates 21 C.F.R. § 101.54(e)(1)(ii) and California's Sherman Food, Drug, and Cosmetic Law, CAL. HEALTH & SAFETY CODE §§ 109875, *et seq.* ("Sherman Law") because BA's fortification of BodyArmor violates the U.S. Food and Drug Administration's ("FDA") policy on fortification of sugar and junk foods.  *See* ¶¶ 87, 116(e) (citing 21 C.F.R. § 101(e)(1)).  BA does not controvert that its fortification of BodyArmor violates the policy in 21 C.F.R. § 104.20, but instead it merely asserts that it lacks any relative terms under § 101.54(e).  MTD at 14-15.

## IV.    LEGAL STANDARDS

The standards governing a motion to dismiss are well-established.  To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, Plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires enough factual content to allow "the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In so

1  proceeding, a court "must accept all factual allegations in the complaint as true and construe the

2  pleadings in the light most favorable to the non-moving party." *Knievel v. ESPN*, 393 F.3d 1068,

3  1072 (9th Cir. 2005) (citation omitted).

4          With respect to Rule 9(b), the allegations must "be specific enough to give defendants notice

5  of the particular misconduct … so that they can defend against the charge and not just deny that

6  they have done anything wrong." *Brickman v. Fitbit, Inc*., No. 15-cv-02077-JD, 2016 WL

7  3844327, at *2 (N.D. Cal. July 15, 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

8  1103-04 (9th Cir. 2003)).  Whereas conclusory allegations of the who, what, where, when, and how

9  of the misconduct will not suffice, "Rule 9(b) does not require absolute particularity or a recital of

10  the evidence." *Freedline v. O Organics, LLC.*, No. 19-cv-01945-JD, 2020 WL 1643697, at *2

11  (N.D. Cal. Mar. 31, 2020) (quoting *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th

12  Cir. 2016)).  Put another way, the "complaint need not allege 'a precise timeframe,' 'describe in

13  detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *Id.*

14  at *2 (quoting *United Healthcare*, 848 F.3d at 1180) (denying motion to dismiss where complaint

15  provided ample notice of the fraud claim despite lack of precise allegations as to where or when

16  the product was purchased); *see also McDonald v. Kiloo ApS*, 236 F. Supp. 3d 1022, 1039 (N.D.

17  Cal. 2019); *Arora v. GNC Holdings, Inc.*, No. 19-cv-02414-LB, 2019 WL 6050750, at *7 (N.D.

18  Cal. Nov. 15, 2019) (Rule 9(b) requires notice sufficient to enable a defense beyond mere denial of

19  claims).[5]

20          For the reasons stated herein, and because Plaintiffs have clearly pled reliance on BA's

21  advertising, on its label, in-store displays, and otherwise, Plaintiffs have adequately stated claims

22  against BA.[6]

---

23  [5] *Accord Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 WL 1806483, at *6-

24  *7 (N.D. Cal. May 5, 2017) ("The plaintiffs alleged that the "*who*" was the defendants, the "*what*"
    was the statement that product was "all natural," the "*when*" was "since at least 2006," and

25  "throughout the class period," and the "*where*" was on the product labels.  [] This Court found
    that these allegations sufficiently explained the "who, what, when, where, and how" of the alleged

26  deception.") (citing *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL
    2111796, at *6 (N.D. Cal. May 26, 2011)).

27  [6] In a footnote, BA makes passing reference to Plaintiffs' purported failure to plead reliance.  MTD
    at 7, 10 & n.4.  This is inaccurate.  *See* ¶¶ 18, 19, 22, 30, 39, 90-99 ("Plaintiffs relied on BA's

28

## V.   THE COMPLAINT CLEARLY STATES CLAIMS SUFFICIENT TO WITHSTAND BA'S MOTION TO DISMISS.

### A.   BA's Advertising Is Not Mere Puffery; It's Deception That Increases Profits.

BA's opening legal argument is that its marketing constitutes "textbook puffery" by which Plaintiffs "could not plausibly have been misled."  MTD at 9.  BA's contention fails.

In making its puffery argument, BA ignores that its "superior," "more," and "better" claims are made with reference to particular traits and functions—hydration and natural, to be precise—and not as abstract or generalized hyperbole.  As the very cases BA cites make clear, general and exaggerated commendations about a product constitute puffery, but claims that misdescribe specific characteristics of a product are actionable, as are claims that assert superiority over other products and competitors.  In *Ahern*, for example, the court explained that statements that Apple computers are "'clear and remarkably vivid' do not say anything about specific characteristics or components—or even how clear or vivid the screens actually are."  *Id.*, 411 F. Supp. 3d at 556.  However, statements that "arguably promised consumers that the product was capable of producing some effect" do say something specific and are actionable.  *Id.* (internal alterations omitted); *accord Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1145 (9th Cir. 1997) (finding general "less is more" claim to be puffery but permitting "50% less mowing" claim to proceed because "misdescriptions of specific [] characteristics of a product are actionable").[7]

---

marketing when they purchased BodyArmor and were harmed thereby because…"; "Mr. Silver saw and believed BA's representations, including on product labels, in-store displays, and otherwise…").

[7] Notably, *none* of the authorities relied on by BA offer it support.  *See, e.g.*, *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (general hyperbole constitutes puffery; claims concerning specific characteristics do not); *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("'Puffing' has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers….  However, misdescriptions of specific or absolute characteristics of a product are actionable.") (citations omitted); *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 159 (2d Cir. 2007) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.  'Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer….") (citation omitted); *Ahern*, 411 F. Supp. 3d at 557 (noting that context matters: "in context with the other representations on the Staminol label, the statement "[f]ormulated with premium ingredients to provide maximum potency" arguably promises consumers that the product is capable of producing

1   Here, BA's claims of "superior," "more," and "better" were understood by Plaintiffs to

2   mean that BodyArmor was capable of producing the effect of "superior hydration," and that it is

3   "better" at hydration because it is more "natural."  Plaintiffs certainly did not realize that BA's

4   claims were intended as a hollow promise and/or discountable opinion.  *E.g.*, ¶¶ 63 & Image 1, 69,

5   70 ("BA thus employs marketing claims of 'superior' and 'better' hydration—which convey to

6   consumers an objective claim—despite knowing that its claims are unsubstantiated and

7   scientifically indefensible."), 71.

8   Indeed, BA's "superior hydration" statement is a claim in-and-of-itself about the attribute

9   of hydration, but in addition, it is consistently supplemented by adjoining claims about the attributes

10  of BodyArmor's formula that leads consumers to believe the claim of superiority.  As courts in this

11  District and others have routinely made clear, analyzing the complete marketing context is

12  necessary to evaluate not only Plaintiffs' claims of deception, but also Defendant's defense of

13  puffery.  *See, e.g.*, *Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2018 WL 1335867,

14  at *11 (N.D. Cal. Mar. 15, 2018) ("In order to assess whether a statement is mere puffery, it must

15  be considered in the context of the whole label.") (citation omitted).[8]

16  Here, the BodyArmor label, as well as general advertising, trumpets that it provides

17  SUPERIOR HYDRATION because it "provides your body with the hydration it needs to perform

18  at its best."  *See* Image 1.[9]  This statement immediately adjoins claims about ingredients, including

19  "VITAMINS," "ELECTROLYTES," "NATURAL FLAVORS AND SWEETENERS," and

---

20  some effect on male potency") (citing *Vigil v. General Nutrition Corp.*, No. 15-cv-0079 JM

21  (DBH), 2015 WL 2338982, at *9 (S.D. Cal. May 13, 2015)).  *Cf. In re Clorox Consumer Litig.*,
    894 F. Supp. 2d 1224, 1232-33 (N.D. Cal. 2012) (claim that cats were "smart" enough to like a

22  particular kitty litter could not be proven or disproven).

23  [8] *Accord Williams*, 552 F.3d at 939 (affirming denial of motion to dismiss where "statement
    ['nutritious'] certainly contributes [] to the deceptive context of the packaging as a whole"); *Coe v.*

24  *Gen. Mills, Inc.*, No. 15-cv-05112-TEH, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016)
    (considering statements in context of other representations on package and declining to dismiss "a

25  great start to your day," "start your school day right," and "kick-start your day" as mere puffery);
    *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *7 (N.D. Cal. Sep. 22, 2016)

26  ("considered in the context of Defendant's entire Virgin Coconut Oil label, this statement could
    'certainly contribute [ ] … to the deceptive context of the package as a whole.").

27  [9] *See* https://www.oasissnacks.com/body-armor-superdrink-16-oz-fruit-punch-pack-of-12.html;
    *see also* MTD at 5 (black and white image).

28

PLTFS' MPA IN OPPOSITION TO DEF'S MOT. TO DISMISS THE COMPLAINT

"COCONUT WATER."  *Id.*  And it admonishes consumers to "UPGRADE YOUR SPORTS DRINK."  *Id.*

**Image 1**

 

*See also* ¶¶ 5 ("BA markets BodyArmor as having these "superior" and "better" hydration attributes in the context of other marketing –whether in-store displays social media, or television—comparing it to water and/or competing sports drinks"), 22, 30, 47, 86 & Images 21-25 ("Did you know that Vitamin C is an antioxidant that is critical for immunity and lowers blood pressure?  BodyArmor [] contains 100% of the recommended daily intake in every bottle! #Switch2BodyArmor.").

- 9 -

"Upgrade" from what?  "Superior" to what?  "More" and "better" than what?  The answer is other beverages.  And BA's comparisons are not just implicit but, as alleged in the Complaint, explicit.  *See, e.g.*, ¶¶ 64-66 & Images 1-11, 79 & Image 13 ("rethink your sports drink;" "contains more electrolytes than your leading sports drink;" "upgrade to the #1 Natural Sports Drink;" "UPGRADE your sports drinks;" "Lights Out On Artificial Sports Drinks;" "I cringe when my daughter asks for Gator;" delivers "benefit over water.").

Highly instructive here is the court's decision in *Animal Legal Defense Fund v. HVFG LLC*, 939 F. Supp. 2d 992 (N.D. Cal. 2013).  In *Animal Legal Defense Fund*, the plaintiffs claimed that Hudson Valley Foie Gras misled consumers with its claim to be the "humane choice."  Noting that the definition of "humane" in legislation relates to the issue of pain, the court rejected the defendant's claims of puffery and found instead that "[a] claim that its product is 'the humane choice' might therefore constitute a statement that could either be proved false or reasonably interpreted as a statement of objective fact."  *Id.* at 1002 (internal citations omitted).

Similarly instructive is the decision of the Fifth Circuit in *Pizza Hut Inc. v. Papa John's International, Inc.*, 227 F.3d 489 (5th Cir. 2000), a decision frequently referenced in this District.  Papa John's slogan touted "Better ingredients. Better pizza."  In upholding the district court's findings that the slogan was more than mere puffery in the context of other marketing, the Fifth Circuit explained:

> a reasonable consumer would understand the slogan, *when considered in the context of the comparison ads*, as conveying the following message: Papa John's uses "better ingredients," which produces a "better pizza" because Papa John's uses "fresh-pack" tomatoes, fresh dough, and filtered water.  In short, Papa John's has given definition to the word "better."  Thus, when the slogan is used in this context, it is no longer mere opinion, but rather takes on the characteristics of a statement of fact.  When used in the context of the sauce and dough ads, the slogan is misleading for the same reasons….

*Id*. at 501-02 (emphasis in original).  Precisely the same reasoning applies here.  And to be clear, it did not matter whether the claims were "true" in order to deceive.  As the Fifth Circuit explained in articulating the longstanding principle of consumer protection law, "we conclude by saying that although the ads were true about the ingredients Papa John's used, it is clear that there was sufficient evidence in the record to support the jury's conclusion that Papa John's sauce and dough ads were

misleading—but not false—in their suggestion that Papa John's ingredients were superior." *Id.* at 501;[10] *see also Ackerman v. Coca Cola Co.*, No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *15 (E.D.N.Y. Feb. 26, 2018) (rejecting puffery defense because "the collective effect of the challenged statements was to mislead a reasonable consumer…"). In sum, that Plaintiffs interpreted BA's claim that BodyArmor provides "superior hydration" as a genuine and not hollow claim is clearly plausible—especially given that it is only in the "rare situation" where granting a motion to dismiss a claim under the California's Unfair Competition Law ("UCL") is appropriate. *Williams*, 552 F.3d at 939.[11]

### B. Plaintiffs' Science-Based Allegations Are Plausible.

BA's second legal argument is that any claim by Plaintiffs of having been misled about BodyArmor's sugar content is implausible. MTD at 10-13. To begin with, BA's reductionist contention misstates the claims. As indicated above, Plaintiffs readily state plausible claims of deception based on BA's "superior hydration" labelling and marketing. Plaintiffs additionally allege that BA offers consumers a bait and switch: instead of providing a drink with "superior hydration," it gave them a sugar-sweetened beverage scientifically linked to disease, thereby exposing them to harm.[12] *See* ¶¶ 3-12, 16, 73-78, 79 & Image 13, 81 & Images 17-19. As the FDA, CDC, WHO, AMA, DGAC, and a host of other leading health authorities have stated, regular consumption of a sugar-sweetened beverage, like BodyArmor, is linked with obesity, type 2 diabetes, cardiovascular disease, and more. ¶¶ 72-77. To be clear, this is not what Plaintiffs understood or bargained for when purchasing BodyArmor.

---

[10] *Accord Williams*, 552 F.3d at 938 ("The California Supreme Court has recognized that these laws prohibit 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (internal citations omitted).

[11] *See also id.* at 938-39 ("California courts [] have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."); *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03613-WHO, 2020 WL 1245130, at *9 (N.D. Cal. Mar. 16, 2020) ("Because what a reasonable person would believe is generally a question of fact, it is a 'rare situation' in which a motion to dismiss will be granted for failure to satisfy this test") (citing *Williams*, 552 F.3d at 938).

[12] Also as indicated above, independent of the science-based sugar-sweetened beverage allegations, Plaintiffs readily state plausible claims of deception.

1    BA relies heavily on *Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788

2  at *1 (N.D. Cal. Dec. 21, 2018), to support its position.  But *Perfect Bar* consists of only two

3  paragraphs and contains no meaningful analysis of any claim—let alone a claim comparable to

4  Plaintiffs' here.  In that case, plaintiffs alleged that the product label mislead consumers as to the

5  healthfulness of the bar.  According to the company website (there is no image in the court's

6  opinion), however, the product's front label makes *no* claim whatsoever about specific ingredients

7  or attributes—it merely showcases the product name "Perfect Bar."  *See* Image 2.[13]  Thus, *Perfect*

8  *Bar* is inapposite here.

9                                    **Image 2**



25    BA is similarly mistaken that the court's decision in *Truxel v. General Mills Sales, Inc.*,

26  No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019), supports it.  In *Truxel*, Judge

---

[13] https://perfectsnacks.com/products/dark-chocolate-chip-peanut-butter-with-sea-salt (last visited
Apr. 8, 2020).

White dismissed the plaintiffs' expansive lawsuit claiming that sugar is "toxic" and that General Mills's breakfast cereals and breakfast bars were deceptively marketed merely because sugar was an ingredient. *Id.* at *4. On its face, that is far different from the allegations in this case about *one product* and its marketing of the attribute "superior *hydration.*"

Equally, as alleged, scientific evidence clearly supports Plaintiffs' claim in this case, whereas Judge White found it did not in *Truxel*—a finding that the plaintiffs immediately appealed. *Compare id.* at *4 ("In this regard, there is no consensus on just how much sugar is healthy for consumption") *with* ¶ 77 & n.12 (citing, *inter alia*, CDC: "Frequently drinking sugar-sweetened beverages is associated with weight gain/obesity, type 2 diabetes, heart disease, kidney diseases, non-alcoholic liver disease, tooth decay [], and gout"; 2015 DGAC: "Strong evidence shows that higher consumption of added sugars, especially sugar sweetened beverages, increases the risk of type 2 diabetes among adults and this relationship is not fully explained by body weight"; AHA: "There is a robust body of evidence that SSB consumption is detrimental to health and has been associated with increased risk of CVD mortality, hypertension, liver lipogenesis, [type 2 diabetes], obesity, and kidney disease").[14] And finally, in *Truxel*, the sugar content of each cereal was stated on the *front* panel of each box. *Id.*, 2019 WL 3940956, at *4. That is not the case with BodyArmor, where that information is included only in the NFP–where Plaintiffs did not, and are not required, to focus. *See Coe*, 2016 WL 4208287, at *5 ("even if sugar content is accurately displayed in the Nutrition Facts box, that does not mean that the labeling as a whole cannot be misleading. The Ninth Circuit has explained that reasonable consumers should not 'be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.'") (quoting *Williams,* 552 F.3d at 939).

In addition to all this, in *Hadley v. Kellogg Sales Company*, 273 F. Supp. 3d 1053 (N.D. Cal. 2017), Judge Koh reached a different result than Judge White on almost identical claims. In

---

[14] Substantial research has been performed on sugar-sweetened beverages establishing their link to disease. *Id*. For many reasons, this research is *distinct* from science relating to sugar in solid foods. *See, e.g.*, Miriam B. Vos, et al., *Added Sugars and Cardiovascular Disease Risk in Children: A Scientific Statement from the American Heart Association*, 135 CIRCULATION 19 (Aug. 22, 2016), available at https://ahajournals.org/doi/full/10.1161/CIR.0000000000000439.

*Hadley*, Judge Koh concluded:

> Plaintiff alleges that these statements imply that Defendant's products are healthy, but that the amount of added sugar in Defendant's products causes the products to be unhealthy. [] Based on the fact that the terms "nutritious," "essential nutrients," and "wholesome" might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements. ... [T]hese statements involve questions of fact ill-suited for resolution on a motion to dismiss.

*Id*. at 1083-84 (citing *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014)).  Judge Koh's approach is the same approach adopted by Judge Orrick in *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), where the plaintiffs alleged deception based on the sugar content of cereals, which defendant advertised as healthy.  In the words of the court, "plaintiffs have plausibly alleged that added sugar created health risks such that Post's 'health' claims were misleading."  *Id.* at 963, n.31.

In short, BA offers no viable support for its contention that Plaintiffs' science-based deception allegations are implausible.  To the contrary, and as addressed further below, the FDA is clear that fortifying sugary food confuses consumers and therefore leads to deception.  Certainly, Plaintiffs believed that they were purchasing a beneficial product that provided superior (and useful) hydration; instead of superior hydration, they got fortified sugar water that is associated with serious disease.  Their claims readily pass the plausibility test.

## C.   The Gatorade Comparator Allegations Are Relevant.

BA's third argument is made without citation to any legal authority and is erroneous.  BA contends that its claims of superiority over Gatorade are irrelevant.  MTD at 13.  For the reasons stated above, BA's references to other beverages, including but not limited to Gatorade, give important context to its marketing of BodyArmor as "superior hydration" and "more natural better," showing them to be far more than innocuous puffery.[15]

---

[15] *See also*, *e.g.*, https://www.oasissnacks.com/bodyarmor-superdrink-variety-pack-two-of-each-flavor-12-flavors-24-pack.html ("Message from the Manufacturer … What is the difference between BODYARMOR SPORTS Drink and other sports drinks?  BODYARMOR is a better-for-you hydration option to traditional sports drinks.  It has more electrolytes, higher in vitamins and potassium, lower in sodium, contains coconut water, naturally sweetened with pure cane sugar, natural flavors and no colors from artificial sources.  Other sports drinks are high in sodium, low in potassium, have artificial flavors and colors with little to no nutrients.") (last accessed Apr. 15, 2020).

1    And with respect to PepsiCo's multiple complaints against BA before the NAD, Plaintiffs

2    do not contend that NAD's findings are binding on this Court.  However, they are "at least material

3    to the question of how a reasonable consumer would interpret [the claims]."  *Tsan v. Seventh*

4    *Generation, Inc.*, No. 15-cv-00205-JST, 2015 WL 6694104, at *8 (N.D. Cal. Nov. 3, 2015).  They

5    are also relevant to BA's claim of a once-and-done advertising campaign because they help

6    establish that BA's ads are successive chapters in one long book of deception.  *See Papa John's*,

7    277 F.3d at 501 (affirming context of "2½ year campaign during which [] advertising served as

8    'chapters' to demonstrate the truth of the Better Ingredients. Better Pizza. book").  As such, BA's

9    contention that its claims about Gatorade, as well as the successive findings by an industry

10   association of its continuous deception, are wrong.

11       **D.**    **Plaintiffs Unlawful Fortification Claims Under the UCL Are Meritorious.**

12       BA's next contention that Plaintiffs' unlawful claims lack merit also fails.

13       The cornerstone of Plaintiffs' claim is the FDA's policy against fortification of junk food,

14   often referred to as the "Jelly Bean Rule."  Therein the FDA explains that it does not condone the

15   "indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify …

16   sugars; … or snack foods…," as well as the rationale for its position: Because such fortification

17   "could result in deceptive or misleading claims for certain foods" and thereby induce consumption

18   of unhealthy food mistakenly.  21 C.F.R. § 104.20.

19       The rationale behind the Jelly Bean Rule is supportive of Plaintiffs' deception claims,[16] and

20   the Jelly Bean Rule itself forms the basis of Plaintiffs' unlawful claim.  ¶¶ 87-89.  Under the

21   regulations, where a "relative" "claim is based on a nutrient that has been added to the food, the

22   fortification [must] be in accordance with the policy on fortification of foods in § 104.20."

23   21 C.F.R. § 101.54(e)(1)(ii).  "Relative" claims encompass those "meaning that there is more of a

24   nutrient in a food compared to another food."  Food Labeling: Nutrient Content Claims, General

25

26   _____

     [16] *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *15 (the claims are "misleading because consumers
     would be purchasing the food, in part, to achieve a more healthful diet"; "the collective effect [of
27   the advertising] was to mislead a reasonable consumer into believing that vitaminwater is … a
     beneficial source of nutrients rather than a food of little or no nutritional value") (internal citations
28   omitted).

Principles, Petitions, Definition of Terms, 58 FED. REG. 2302, 2360-62 (Jan. 6, 1993).  Plaintiffs have alleged precisely this.  ¶¶ 87, 116(e) (citing 21 C.F.R. § 101(e)(1)).  Specifically, that BA's labeling claims of "superior hydration," as well as its claims of "super," "best," "premium," "upgrade your sports drink," and "200%" and/or "100% RDI" of vitamins B3, B5, B6, B9, B12, A, C, and E, imply that there are more of these nutrients in BodyArmor than other sports drinks. *Compare* Image 1, *supra*, and MTD at 5 (BodyArmor label) to Image 2, *supra* (Perfect Bar label, which makes no claim about specific ingredients or attributes).[17]

More, BA has not established, or even argued, that BodyArmor complies with the FDA's fortification policy.  MTD at 13-15.  Its only defense with respect to Plaintiffs' relative claim is contrary to the FDA's express guidance—that is, its claims of "superior," "better," "more," "100%," "200%," "premium," "best," and "upgrade," are not relative terms.  This argument is absurd on its face.  According to Merriam Webster, the terms are inherently relative as "superior" means of "higher rank, quality, and importance."[18]  And "better" means "more attractive, favorable, commendable."[19]

Because Plaintiffs allege that BA unlawfully fortified BodyArmor in violation of FDA regulations, and because such contravention also violates the Sherman Law, CAL. HEALTH & SAFETY CODE ¶¶ 109875, *et seq.*, they readily state a claim under the unlawful prong of the UCL. BA's motion to dismiss should be denied on this basis as well.[20]

---

[17] Plaintiffs concede that BA is not making health-based implied nutrient content claims on BodyArmor labels—although it makes them regularly elsewhere.  *See, e.g.*, ¶ 86 & Images 21-24 (contains 100% of Vitamin C, "*which is an antioxidant that is critical for immunity* and *lowers blood pressure*"); *id.*, Image 7 (touting BodyArmor as "healthy" and "cringing" at Gatorade); *see also*  https://www.drinkbodyarmor.com/product/strawberry-banana/  (curated  top  review  on BodyArmor website touts advice of doctor and states "it's healthy") (last visited Apr. 10, 2020).

[18] https://www.merriam-webster.com/dictionary/superior (last visited Apr. 7, 2020).

[19] https://www.merriam-webster.com/dictionary/better (last visited Apr. 7, 2020).

[20] BA makes a passing reference to preemption of the unlawful claim.  MTD at 14 & n. 6.  This is not a serious argument nor is the citation to *Ackerman* proper.  As the decision in *Ackerman* makes clear, there is *no* preemption of unlawful fortification claims.  *Id.*, 2010 WL 2925955, at *11-12.

1

2

**E.**     **The First Amendment Does Not Protect Defendant's Misleading Representations.**

3       Defendant concedes that the labeling and advertising at issue is commercial speech, but

4   argues that Plaintiffs' claims somehow "punish[] BodyArmor's truthful speech" and thus violates

5   the First Amendment.  MTD at 15-19.  BA is wrong.

6       Plaintiffs have plausibly alleged BA's marketing representations are deceptive and

7   misleading.  Accordingly, Defendant's First Amendment argument is legally untenable as "it is

8   well settled that false commercial speech is not protected by the First Amendment and may be

9   banned entirely." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993) (citing *Bates v.

10  State Bar of Ariz.*, 433 U.S. 350 383 (1977); *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("[O]ur

11  cases make clear that the State may ban commercial expression that is fraudulent or deceptive

12  without further justification[.]") (citations omitted); *In re R. M. J.*, 455 U.S. 191, 203 (1982)

13  ("Misleading advertising may be prohibited entirely.").  Here, Plaintiffs adequately allege that

14  Defendant's marketing representations are misleading.  The First Amendment does not protect

15  deceptive and misleading commercial speech.

16      Indeed, BA does not cite a single decision holding that First Amendment protections

17  mandate dismissal of consumer protection claims concerning allegedly deceptive and misleading

18  marketing under Rule 12(b)(6).  Courts instead have consistently rejected this defense.  *See, e.g.*,

19  *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1092-93 (N.D. Cal. 2013) (explaining that

20  "[t]o the extent that Defendants attempt to dispute the merits of Bruton's allegations"—i.e., that

21  Defendants' baby food labels were misleading—"by virtue of invoking a First Amendment defense,

22  the Court finds such arguments inappropriate for a motion to dismiss brought pursuant to Federal

23  Rule of Civil Procedure 12(b)(6)"); *U.S. ex rel. Cestra v. Cephalon, Inc.*, No. 14-1842, 2015 WL

24  3498761, at *12 (E.D. Pa. June 3, 2015) (holding "the question of First Amendment protection is

25  not properly disposed of on a motion to dismiss"); *Virgin Enterp. Ltd. v. Am. Longevity*, No. 99-

26  cv-9854(CSH), 2001 WL 34142402, at *8 (S.D.N.Y. Mar. 1, 2001) ("[b]ecause it is well settled

27  that false commercial speech is not protected by the First Amendment and may be banned

28

1   entirely … the plaintiff's allegations in their complaint [] that the utterances in question are false

2   and commercial in nature are sufficient to survive a Rule 12(b)(6) motion") (citations omitted).

3        Neither *Central Hudson*, 447 U.S. 557, nor *National Institute of Family and Life*

4   *Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*"), cited by Defendant, is applicable here.

5   *NIFLA* is inapplicable because Plaintiffs do not seek to compel any particular speech but rather

6   seeks to enjoin BA from making deceptive and misleading representations.   Indeed, as BA

7   concedes, "[t]he Complaint does not identify any specific changes Plaintiffs seek to BodyArmor's

8   labeling, and it is unclear what they could expect to change."  MTD at 21, n.7.  Similarly, BA's

9   marketing does not meet the threshold prong of *Central Hudson* in that the statements at issue do

10  not merit any First Amendment protection as "there can be no constitutional objection to the

11  suppression of commercial messages that do not accurately inform the public about lawful activity."

12  *Id.*, 447 U.S. at 563; *see Fed. Trade Comm'n v. Wellness Support Network, Inc.*, No. 10-cv-04879-

13  JCS, 2014 WL 644749, at *10 (N.D. Cal. Feb. 19, 2014) (concluding *Central Hudson* inapplicable

14  to causes of action based on a defendant's allegedly misleading advertising); *Smith v. Keurig Green*

15  *Mountain, Inc.*, 393 F. Supp. 3d 837, 849 (N.D. Cal. 2019) (citing *NIFLA* and rejecting the

16  defendant's First Amendment arguments because the defendant "cites to no persuasive case law for

17  the principle that a prohibition against deceiving consumers constitutes compelled speech").  And

18  certainly neither case stands for the proposition that a manufacturer or seller of any product has a

19  First Amendment right to make claims that are false or deceptive.   In short, BA's alleged

20  misconduct is not shielded by the First Amendment on a motion to dismiss.

21       **F.**    **Plaintiffs State A Claim For Unjust Enrichment.**

22       Defendant asks the Court to dismiss Plaintiffs' unjust enrichment claim because

23  "BodyArmor's advertising is not misleading."  MTD at 19.  This obviously is not a valid basis for

24  dismissal because this Court is required to accept as true the facts alleged in the Complaint.  *Knievel*,

25  393 F.3d at 1072.

26       BA then asks the Court to dismiss Plaintiffs' unjust enrichment claim brought under New

27  York law because it duplicates their other claims.  MTD at 19-20.  But, as the court in *Warner v.*

28  *StarKist Co.* recently explained, an unjust enrichment claim is different than Plaintiffs' statutory

claims because "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350…." No. 1:18-cv-406 (GLS/ATB), 2019 WL 1332573, at *2-3 (N.D.N.Y. Mar. 25, 2019) (citations omitted). Thus, "a reasonable trier of fact could find unjust enrichment without establishing all the elements for one of [plaintiff's other] claims sounding in law." *Id.* (internal quotations and citations omitted).

Furthermore, dismissal is inappropriate at this stage because the Federal Rules of Civil Procedure explicitly permit Plaintiffs to assert claims in the alternative, regardless of consistency. Fed. R. Civ. P. 8(d)(2), (3); *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994); *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183-85 (E.D.N.Y. 2010); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("To the extent the district court concluded that the cause of action [for unjust enrichment under California law] was nonsensical because it was duplicative of or superfluous to [the plaintiff's] other claims, this is not grounds for dismissal.").

## G.    Plaintiffs Have Standing To Pursue Injunctive Relief.

Plaintiffs have standing to pursue injunctive relief. Plaintiffs' inability to rely on the Products' labels in the future, which causes them to avoid purchasing the Products even though they would like to if they could trust the labels, constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–86 (2000). Defendant's arguments to the contrary hold no water.

First, BA contends that Plaintiffs' claim for injunctive relief is moot because "Plaintiff's entire complaint is based on old labels and advertising." MTD at 21. Yet BA concedes that it still touts "Superior Hydration," *id.* at 21, and "BodyArmor is constantly changing its advertisement," *id.* at 8. Given BA's own admission that it still represents "Superior Hydration" and that it frequently changes its advertisement, BA cannot meet the heavy burden of mootness by making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quoting *U.S. v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). BA states only that it ceased a specific advertising slogan. It certainly does

not commit to refrain from marketing and labeling that make similar representations. *See* Soffer Decl. ¶ 4. Moreover, as a general rule, mere voluntary cessation of the violative conduct does not render the case moot. If it did, courts would be compelled to leave the defendant free to return to its old ways. *Fed. Trade Comm'n v. Affordable Media,* 179 F.3d 1228, 1238 (9th Cir. 1999) ("The reason that the defendant's conduct, in choosing to voluntarily cease some wrongdoing, is unlikely to moot the need for injunctive relief is that the defendant could simply begin the wrongful activity again."). BA's mootness argument fails.

Next, BA argues that "Plaintiffs are unlikely to purchase the product again and face no threat of repeated injury." MTD at 21. Plaintiffs, however, each allege they would consider purchasing BodyArmor again if they knew that they could rely on the label and marketing as truthful when making purchases, specifically that "BodyArmor would provide needed nutrients and superior hydration to [them] as compared to other beverages, including water," that BodyArmor was "beneficial to [their] overall well-being," that BodyArmor was "more natural and better for [them] than other beverage options," and that BodyArmor "was a lawfully marketed and sold product." ¶¶ 19-37, 45-52. This is more than sufficient to establish standing to seek injunctive relief under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) ("the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"). Just as in *Davidson*, Plaintiffs allege they would like to purchase the Products in the future, but they cannot easily discover prior to repurchase whether Defendant's previous misrepresentations have been cured.

BA deliberately misconstrues the Complaint as merely objecting to the amount of sugar in the Products. MTD at 22. This simply is not so. As alleged in detail in the Complaint, BA misled Plaintiffs into believing that the Products provided superior hydration than over beverages as well as an overall nutritional benefit. ¶¶ 60-71; 91-96. BA's NFP may list ingredients, but it does not inform consumers whether the ingredients provide the superior benefits touted by BA. Thus, Plaintiffs cannot "simply check the label to determine if it contains the amount of sugar they find acceptable and 'nutritious'—whatever that means to them." MTD at 22-23. Nor critically, given

their permissible reliance on conspicuous and deceptive front panel claims, are they required to further review the NFP.  *See Williams*, 552 F.3d at 939.

Even assuming for purposes of argument, however, that the ingredients were listed on the front panel, the recent decision in *In re Coca-Cola Products Marketing & Sales Practices Litig.*, No. 14-md-02555-JSW, 2020 WL 759388 (N.D. Cal. Feb. 14, 2020), is instructive.  The plaintiffs in that case alleged that Coca-Cola misled the public by representing on Coke's labels that Coke is, and always has been, free of artificial flavors and chemical preservatives.  Coca-Cola listed phosphoric acid in the ingredients list on Coke's labels, but the plaintiffs alleged Coca-Cola omitted the fact that phosphoric acid is used as an artificial flavoring and chemical preservative.  *Id.* at *1. Coca-Cola made the same argument, as made by BA here, that the plaintiffs lacked standing to pursue injunctive relief because the plaintiffs are now aware of how phosphoric acid allegedly is used in Coke and they cannot show an imminent threat that they will be deceived in the future.  *Id.* at *5.  The court rejected Coca-Cola's argument.  The court explained:

> It is undisputed that Coca-Cola includes phosphoric acid in the Coke ingredient list, but the question of whether Coca-Cola's labels are deceptive does not depend on the fact that phosphoric acid is an ingredient.  *Rather, the issue is the nature and function of that ingredient, which is disputed and which is not readily apparent from the labels themselves….*  In light of the parties' positions on the nature and function of phosphoric acid, the Court also *cannot conclude Plaintiffs have a true understanding of what the statements on the labels mean.*

*Id.* at *7 (emphasis added).  The court thus concluded that the plaintiffs there had sufficient standing to seek injunctive relief.

As in *Coca-Cola*, the issue here is not simply the ingredients in BodyArmor but whether the nature and function of those ingredients provide the superior nutritional and/or hydration benefits that BA represented.  Plaintiffs therefore have plausibly alleged that they will not be able to rely on the Product's advertising or labeling in the future, so will not purchase the Product although they would like to.  Plaintiffs face an actual and imminent threat of future harm, and they have standing to seek injunctive relief.

### H.    Leave To Amend Should Be Freely Granted.

Finally, BA argues that the Complaint should be dismissed with no leave to amend.  MTD at 23.  BA argues that granting leave to amend would be futile here because "[p]rior to filings this

motion, BodyArmor identified the deficiencies in Plaintiffs' complaint and requested to meet and

confer about them with Plaintiffs," but "Plaintiffs declined." *Id.* (BA's offer to confer was limited.)

Of course, it is this Court's decision about the sufficiency of Plaintiffs' allegations that matters, not

BA's opinion.  To the extent that this Court is inclined to dismiss any of Plaintiffs' claims, Plaintiffs

respectfully request an opportunity to amend their complaint, which as a general rule is freely

granted.  Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny BA's motion to dismiss the Complaint in

its entirety.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  April 27, 2020          By:   /s/ *Laurence D. King*
                                          Laurence D. King

Laurence D. King
Mario M. Choi
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707

**KAPLAN FOX & KILSHEIMER LLP**
Maia C. Kats (*pro hac vice*)
6109 32nd Place, Northwest
Washington, DC 20015
Telephone: (202) 669-0658

**REESE LLP**
Michael R. Reese (SBN 206773)
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade II (SBN 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, CA 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs*