UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC SILVER, *et al*.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BA SPORTS NUTRITION, LLC,<br><br>    Defendant. | Case No. 20-cv-00633-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 20 |

Defendant's motion to dismiss the complaint is scheduled for a hearing on June 5, 2020. Pursuant to Civil Local Rule 7-1(b) and General Order 72-3, the Court VACATES the hearing on this matter. For the reasons set forth below, the Court GRANTS defendant's motion and GRANTS leave to amend. If plaintiffs wish to amend the complaint they must do so by **June 22, 2020**. The Court CONTINUES the initial case management conference to **September 4, 2020** at **2:30 p.m.**

**BACKGROUND**

This is a consumer class action. Defendant BA Sports Nutrition, LLC ("BA") is a sports drink company which produces and sells BodyArmor SuperDrink sports drinks ("BodyArmor") with flavors such as Banana Strawberry, Blackout Berry, Fruit Punch, Orange Mango and Grape. Compl ¶¶ 2, 55, 63. According to the complaint, BodyArmor is a sugar-sweetened-beverage ("SSB") "that scientifically links to serious medical conditions, including obesity, type 2 diabetes, and cardiovascular disease, when regularly consumed." *Id*. ¶ 11. Plaintiffs allege that BodyArmor is a "dressed-up soda masquerading as a health drink." *Id*. ¶ 12.

BA advertises that BodyArmor provides "Superior Hydration" on the label of its sports drinks, and through other marketing such as in-store displays, social media and television. *Id*. ¶ 5. The complaint also references non-label advertising, such as on billboards, promoting BodyArmor as the "More Natural Better Hydration" drink. *See, e.g. id*. ¶¶ 65-66, Images 3-11.[1] The complaint alleges that "[b]eyond superior and better natural hydration claims, BA markets that BodyArmor is good for you because it is packed with essential vitamins and nutrients." *Id*. ¶ 6; *see also id*. ¶ 86 (citing on-line advertising from 2017 marketing BodyArmor as "PACKED WITH VITAMINE E" "which helps limit the damage of muscles and soreness through exercise and increases energy" and "PACKED WITH VITAMIN C" which "is an antioxidant that is critical for immunity and helps lower blood pressure").

However, "BodyArmor does not provide 'superior' or 'better' hydration to Plaintiffs and other consumers than other beverages, nor are Plaintiffs or the general public hydration deficient and/or in need of its characteristics to replenish them from hydration." *Id*. ¶ 8. In addition, "BodyArmor is not comprised of 'natural' ingredients and/or more natural ingredients than water or other sports drinks," and "BodyArmor on balance is not nutrient beneficial for the general public BA targets with its marketing, but is instead an unlawfully fortified junk food." *Id*. ¶¶ 9-10.

The complaint alleges that BA "admitted" to the administrative tribunal of the Council of the Better Business Bureaus – the National Advertising Division ("NAD") – that there is no substantiation for its "superior" or "better" hydration claims, or its claims that BodyArmor is "more natural better," and that there is no way to substantiate such claims. *Id*. ¶ 68.[2] "According to BA itself, hydration is a 'subjective concept' for which 'there is no universal formula that provides a baseline for 'good' hydration, much less 'better' (or 'worse') hydration," and "consumers under-

---

[1] Defendant asserts that "More Natural Better Hydration" (and variations thereof) is an old advertising campaign that stopped running by the end of 2019, and defendant has submitted the declaration of its general counsel in support of that assertion. Soffer Decl. ¶ 4. Defendant also states that BodyArmor does not intend to run advertising containing the statement "More Natural, Better Hydration" in the future. *Id*.

[2] Although the complaint does not provide the context for the NAD decision, the parties' briefing on the instant motion states that the decision was related to a competitor complaint filed by Gatorade about BodyArmor's advertising. Mtn. at 6 (Dkt. No. 20); Opp'n at 14 (Dkt. No. 31).

stand this to be the case regardless of its marketing claims." *Id*. ¶ 69 (quoting Nov. 23, 2018 NAD decision). The complaint also cites recommendations from the Centers for Disease Control, the American Heart Association and other health authorities regarding the link between SSB consumption and various health problems, as well as the benefits of drinking water instead of SSBs. *Id*. ¶¶ 72-77. The complaint alleges that sugar is the second listed ingredient in BodyArmor, after water, and that a single 16-ounce bottle has 36 grams of sugar.[3] *Id*. ¶¶ 74-75. The product label discloses the amount of sugar in each sports drink bottle, and plaintiffs do not allege that the Nutrition Facts are false.

A copy of an "exemplar" product label is reproduced below:[4]



---

[3] According to defendant, the current BodyArmor label for a 16-ounce drink states that it contains 28 grams of sugar.

[4] The complaint includes one picture of the front of a Fruit Punch BodyArmor label. Compl. ¶ 63, Image 1. Defendant has submitted a copy of the front and back of an "exemplar" label for the Fruit Juice sports drinks. Soffer Decl. Ex. 1. Plaintiffs do not object to defendant's request. Accordingly, the Court takes judicial notice of the full product label. *See Jones v. ConAgra Foods*,

Plaintiffs are residents of California, Pennsylvania and New York.[5] Each plaintiff alleges that he or she purchased BodyArmor sports drinks because of "BA's representations, including on product labels, in-store displays and otherwise, that BodyArmor would provide needed nutrients and superior hydration to [him/her] as compared to other beverages, including water,[6] and was beneficial to [his/her] overall well-being. [He/she] also believed the claims that it was more natural and better for him than other beverage options, and that BodyArmor was a lawfully marketed and sold product." *Id*. ¶¶ 22, 30, 47. Plaintiffs allege that they "would not have purchased BodyArmor, purchased as much of it, or paid as much for it, had they understood that instead of superior or better hydration, and/or a natural, and/or overall nutritious beverage, they were consuming a sugar-sweetened beverage that, according to the leading health authorities, scientific research links with disease and health epidemics when regularly consumed – thereby causing such health authorities to call for replacing such drinks with water and/or a reduction in consumption." *Id*. ¶ 16.

Plaintiff Silver asserts causes of action under the following California consumer protection statutes: (1) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, for unlawful business practices[7]; (2) the UCL for unfair and fraudulent business practices; (3) the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, for misleading and deceptive advertising; and (4) the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*,

---

*Inc.*, 912 F. Supp. 2d 889, 903 n.7 (N.D. Cal. 2012) (product label "is properly judicially noticeable because it is referenced in the complaint").

[5] After defendant moved to dismiss, plaintiff Donovan Marshall, a California resident, dismissed his claims as a named plaintiff without prejudice and reserved his right to proceed as an absent class member. Dkt. No. 25. Plaintiff Marc Silver resides in Santa Rosa, California; plaintiff Heather Peffer lives in Pennsylvania, and plaintiff Alexander Hill lives in New York City.

[6] Plaintiffs Silver and Peffer allege that they believed BodyArmor would provide superior hydration as compared to water, and Hill alleges that he believed BodyArmor provided superior hydration as compared to Gatorade.

[7] The complaint alleges that BA violated the unlawful prong of the UCL by, *inter alia*, violating the Federal Food, Drug and Cosmetic Act ("FFDCA") and its implementing regulations which prohibit false and misleading food labels and advertising and prohibit fortification of junk food in conjunction with "relative" and health-based labeling claims. *Id*. ¶ 116(a) (citing 21 C.F.R. § 101.54(e)(1) and 21 C.F.R. § 101.65(d)(2); *id*. ¶¶ 87-88 (describing fortification theory).

1 for deceptive practices in connection with the sale of misbranded products and misrepresentations regarding those products. Plaintiff Hill alleges two causes of action under New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law §§ 349-350, for deceptive labeling and marketing and false advertising. Plaintiff Peffer alleges one cause of action under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 *et seq.*, for unfair competition and unfair or deceptive acts or practices. All plaintiffs allege a claim for unjust enrichment/quasi-contract.

Plaintiffs seek certification of a nationwide class as well as California, Pennsylvania and New York subclasses, and they request declaratory relief, damages and injunctive relief.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. While a court deciding a motion to dismiss must take a complaint's well-pleaded factual allegations as true, it also must determine, relying on its "judicial experience and common sense," whether those allegations amount to a "plausible" claim. *Iqbal*, 556 U.S. at 664.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

5

**DISCUSSION**

Defendant moves to dismiss plaintiffs' claims for failure to state a claim. Defendant contends that plaintiffs cannot plausibly allege that they were misled by BodyArmor's labeling and advertising because the statements "Superior Hydration" and "More Natural Better Hydration" are non-actionable puffery, and the product labels accurately disclose the contents of the sports drinks, including the sugar content. In addition, defendant contends that the FDA regulations upon which plaintiffs rely for their "fortification" claims are inapplicable. Defendant argues that because BodyArmor's labels and advertising are not deceptive, plaintiffs' unjust enrichment claim fails. Finally, defendant argues that all of plaintiffs' claims are barred by the First Amendment, and that plaintiffs cannot seek injunctive relief.

### I. "Reasonable Consumer" Standard

Although plaintiffs have alleged numerous causes of action under different statutes, the parties' briefing groups plaintiffs' claims into three categories: (1) the "superior hydration" allegations challenging the use of "Superior Hydration" on the product labels, or advertisements promoting "More Natural Better Hydration"; (2) the allegations regarding BodyArmor's sugar content, namely that BodyArmor's label and advertisements promoted a beneficial, hydrating sports drink when in fact the drinks are unhealthy SSBs; and (3) the "fortification" allegations based upon violations of FDA regulations.[8] .

The parties do not explicitly state what standard the Court should employ when evaluating whether plaintiffs have stated a claim challenging defendant's labeling and advertising as misleading under California, New York and Pennsylvania law. The Court finds that for the first two categories of allegations – the "Superior Hydration" allegations and the unhealthiness/sugar content allegations – the governing standard for such claims is whether a reasonable consumer would be deceived by the product labels and advertising. *See Williams v. Gerber Prods. Co.*, 552

---

[8] Plaintiffs do not dispute that the unjust enrichment claim is based on the allegations of unlawful and misleading labeling and marketing of BodyArmor, and thus the Court does not separately analyze that cause of action.

6

F.3d 934, 938 (9th Cir. 2008) (holding false or deceptive advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the "reasonable consumer" standard); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189-90 (E.D.N.Y. 2018) ("[S]ections 349 and 350 [of N.Y. Gen. Bus. Law] require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation material"); *Landau v. Viridian Energy PA, LLC*, 223 F. Supp. 3d 401, 418 (E.D. Penn. 2016) ("The elements of a deception claim [under the Pennsylvania UTPCPL] are (1) 'a deceptive act,' meaning 'conduct that is likely to deceive a consumer acting reasonable under similar circumstances' . . . .").

As the Ninth Circuit has explained, the "reasonable consumer" standard

> requires more than a mere possibility that [Defendants'] label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486, 4954 (2003). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

However, with respect to the "fortification" allegations (plaintiff Silver's first cause of action under the UCL's unlawful prong), because the predicate violation is based on FDA regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply. *See Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 472 (9th Cir. 2017) ("[T]he reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation.").

II.     **"Superior Hydration" Allegations**

Defendant contends that plaintiffs' claims challenging the statements "Superior Hydration" on the product label, or advertising promoting BodyArmor as "More Natural Better Hydration," are implausible because they are directed to puffery that is not actionable under the California, New York, and Pennsylvania consumer protection statutes asserted in the complaint. *See In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (dismissing claims under UCL, FAL and CLRA directed at puffery); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300-

7

1    301 (S.D.N.Y. 1998) (claims based on puffery not actionable under sections 349 and 350 of N.Y.
2    Gen. Bus. Law); *Landau*, 223 F. Supp. 3d at 416 (dismissing claim under Pennsylvania UTPCPL
3    based on non-actionable puffery).

4          Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable
5    buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).
6    "Product superiority claims that are vague or highly subjective often amount to nonactionable
7    puffery." *Id*. On the other hand, "[a] specific and measurable claim of product superiority based
8    on product testing is not puffery." *Id*. "The common theme that seems to run through cases
9    considering puffery in a variety of contexts is that consumer reliance will be induced by specific
10   rather than general assertions." *Cook, Perkiss, & Liehe, Inc. v. Northern Cal. Coll. Serv., Inc.*, 911
11   F.2d 242, 246 (9th Cir. 1990). "Thus, a statement that is quantifiable, that makes a claim as to the
12   'specific or absolute characteristics of a product,' may be an actionable statement of fact while a
13   general, subjective claim about a product is non-actionable puffery." *Newcal Indus., Inc. v. Ikon
14   Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting *Cook*, 911 F.2d at 246). "[T]he
15   determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere
16   puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Id.*

17         Defendant argues that "Superior Hydration" and "More Natural Better Hydration" are "too
18   vague to be actionable absent detailed language explaining the basis of the comparison and the
19   measuring stick being used." Reply at 4 (Dkt. No. 32). Defendant cites a number of cases in which
20   courts have dismissed as puffery statements about a product's or service's superiority. *See, e.g.*,
21   *Cook*, 911 F.2d at 246 ("The statement that 'we're the low cost commercial collection experts' and
22   any implication that NCC has comparable services to attorneys at lower rates are general assertions
23   of superiority rather than factual misrepresentations."); *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d
24   210, 235 (N.D. Cal. 2019) (statements that truck had "superior gas mileage and performance to
25   previous Ford models" and is a "better truck with better performance" were non-actionable puffery);
26   *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing as puffery
27   the following claims about a computer: "faster, more powerful, and more innovative than competing
28   machines," "higher performance," "longer battery life," "richer multimedia experience," "faster

United States District Court
Northern District of California

access to data" and "ensure optimum performance"); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at *5-6 (C.D. Cal. Nov. 8, 2013) ("statements about dependability and superiority ('built to last,' 'dependable,' 'unequaled tradition of quality production,' 'unrivaled performance') are too vague to be actionable").

Plaintiffs contend that BA's "superior," "more" and "better" claims are made with reference to particular traits and functions – hydration and natural – not as abstract or generalized hyperbole. Opp'n at 7. Plaintiffs argue that courts have held that statements that "arguably promise consumers that the product was capable of producing some effect" do say something specific and actionable, citing *Vigil v. General Nutrition Corp.*, No. 15-cv-0079 JM (DBH), 2015 WL 2338982 (S.D. Cal. May 13, 2015), and *Apple v. Ahern*, 411 F. Supp. 3d 541, 557 (N.D. Cal. 2019). Plaintiffs contend that they understood BA's claims of "superior," "more," and "better" to mean that BodyArmor was capable of producing the effect of "superior hydration" and that it is "better" at hydration because it is more "natural." Opp'n at 8. Plaintiffs claim that BA's marketing of "superior" and "better" hydration conveys to consumers an objective claim about the attribute of hydration. Plaintiffs also assert that statements such as "Upgrade Your Sports Drink" (on the product label)[9] and "contains more electrolytes than your leading sports drink" or that BodyArmor delivers "benefit over water by providing a small amount of carbohydrate to the working muscles . . ." (on social media posts) show that BA is comparing BodyArmor's hydration attributes to those of Gatorade and water.

The Court agrees with defendant that the statements "Superior Hydration" and "More Natural Better Hydration" are non-actionable puffery. These are general, vague statements about product superiority rather than a misdescription of a specific or absolute characteristic of the product. *See Southland Sod Farms*, 108 F.3d at 1145. Plaintiffs do not allege that BodyArmor is not, in fact, hydrating – for example, plaintiffs do not allege that BodyArmor is dehydrating. In addition, BA has not made "[a] specific and measurable advertisement claim of product superiority based on product testing." *Id.* (citing as example *W.L. Gore & Assocs., Inc. v. Totes Inc.*, 788 F. Supp. 800, 809 (D. Del. 1992), in which "numerical comparison that product is seven times more

---

[9] Defendant states that "upgrade your sports drink" is from an outdated product label and no longer appears on the current label.

breathable 'gives the impression that the claim is based upon independent testing' and 'is not a claim of general superiority or mere puffing.'"). Plaintiffs do not claim that there is a way that "superior" or "better" hydration could be measured, or that one could measure whether "more naturalness" enhanced hydration. The Court finds it implausible that a reasonable consumer would view the BodyArmor label and other marketing about "superior," "more" or "better" and believe that BA was making a specific, verifiable claim about BodyArmor's superior hydrating attributes.

The Court finds the challenged statements about superiority are similar to those found to be puffery in the cases cited by defendant, and that the cases cited by plaintiffs are distinguishable. In *Vigil*, the court denied a motion to dismiss challenges to labeling and marketing for an over-the-counter supplement for men where the packaging stated, *inter alia*, it was "formulated with premium ingredients to provide maximum potency," "scientifically formulated to provide maximum potency"; the label contained an endorsement by an "internationally acclaimed urological surgeon" stating that "[t]his premium formula combines the best herbs with guaranteed potencies to support vitality and enhance performance"; and under "How Does Staminol Work?" stated "Staminol combines L-arginine, an important amino acid that supports nitric oxide production, with herbs traditionally used to support sexual health such as horny goat weed and yohimbe." *Vigil*, 2015 WL 2338982, at *1. The plaintiffs alleged that the labeling was false because studies showed that the product's primary ingredients, including L-arginine and horny goat weed, did not provide any of the promised health or sexual benefits. *Id*. The court analyzed whether the statement "Formulated with premium ingredients to provide maximum potency" was non-actionable puffery:

> It is true that the words "premium" and "maximum," viewed in isolation, are the kinds of subjective terms that are typical of puffery... However, in context with the other representations on the Staminol label, the statement "[f]ormulated with premium ingredients to provide maximum potency" arguably promises consumers that the product is capable of producing some effect on male potency (as opposed to maximum potency of the product). If plaintiff can prove that Staminol is totally incapable of doing so, this statement is provably false to the extent that it makes that representation, or at least contributes to the likelihood that the packaging is deceptive as a whole.

*Id*. at *9.

Unlike the representations in *Vigil*, there is nothing specific in the statements "Superior Hydration" or "More Natural Better Hydration" that is measurable, capable of verification, or

10

1    capable of being proved false.  Similarly, in *Ahern*, Judge Koh dismissed as puffery statements about
2    "clear and remarkably vivid" computer screens and that desktop displays were "the most advanced,
3    most brilliant," but held that "[t]he alleged claim that Apple products underwent 'rigorous testing
4    methods that simulated customers' experiences' arguably promises that Apple subjected its products
5    to *some form of testing* and is therefore 'a specific factual assertion which could be established or
6    disproved.'"  *Ahern*,  411 F. Supp. 3d 557 (emphasis in original).  The other cases plaintiffs cite are
7    similarly distinguishable.  *See e.g., Animal Legal Defense Fund*, 939 F. Supp. 2d 992, 1002 (N.D.
8    Cal. 2013) (advertising slogan promoting Hudson Valley's foie gras as "the humane choice" was
9    not puffery where plaintiffs alleged foie gras was produced by force-feeding ducks resulting in
10   significant illness and injuries and "in some contexts, including the treatment of food animals,
11   Congress has found that 'humane' is susceptible of definition. . . and might reference treatment that
12   does not cause undue pain to an animal.  A claim that its product is 'the humane choice' might
13   therefore constitute a statement that could either be proved false or 'reasonably interpreted as a
14   statement of objective fact.'");  *see also Pizza Hut Inc. v. Papa Johns Int'l, Inc.*, 227 F.3d 489, 498-
15   500 (5th Cir. 2000) (terms "Better Pizza" and "Better Ingredients," on their own, were puffery, but
16   in context of series of comparative ads comparing Papa John's sauce and dough with ingredients
17   used by its competitors conveyed "objective, quantifiable, and fact-specific meaning to the slogan";
18   nevertheless jury verdict in favor of plaintiff reversed for lack of evidence of consumer reliance).

19          Accordingly, the Court holds that "Superior Hydration" and "More Natural Better
20   Hydration" are non-actionable puffery.

21

22   **III.    "Bait and Switch"/Sugar Content Allegations**

23          Plaintiffs claim that BA "offers consumers a bait and switch:  instead of providing a drink
24   with 'superior hydration,' it gave them a sugar-sweetened beverage scientifically linked to disease,
25   thereby exposing them to harm."  Opp'n at 11 (citing Compl. ¶¶ 3-12, 16, 73-78, 79 and Images 13,
26   17-19, 81).  Plaintiffs allege that they believed they were purchasing a beneficial product containing
27   vitamins and nutrients and that provided superior hydration when instead they got fortified sugar
28   water that is associated with serious disease.  Plaintiffs emphasize the complaint's citation to

11

1    numerous scientific studies showing the deleterious health impacts of consuming sugar and
2    particularly SSBs.

3            Defendant contends that plaintiffs' claims that they were misled about BodyArmor's
4    healthiness are implausible because they are based on puffery ("superior hydration") and because
5    BodyArmor's label truthfully states its ingredients and nutritional content, including listing sugar as
6    the second ingredient and accurately stating the amount of sugar in each bottle. Defendant argues
7    that this Court should adopt the reasoning of recent decisions by Judge Alsup and Judge White in
8    which they dismissed claims brought by consumers who alleged they were misled by packaging and
9    advertising about a product's healthiness where the product accurately disclosed the amount of
10   sugar. *See Clark v. Perfect Bar*, No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec.
11   21, 2018 ) (dismissing claims under the UCL, FAL, CLRA and N.Y. Gen. Bus. Law § 350 alleging
12   that the packaging and labeling of high-sugar Perfect Bars misleadingly conveyed health and
13   wellness message because "No consumer, on notice of the actual ingredients described on the
14   [packaging] including honey and sugar, could reasonably overestimate the health benefits of the bar
15   merely because the packaging elsewhere refers to it as a health bar and describes its recipe as being
16   handed down from a health-nut parent. The honey/sugar content was properly disclosed – that is
17   the end of it – period."); *Truxel v. General Mills Sales*, No. C 16-04957 JSW, 2019 WL 3940956,
18   at *1, 4 (N.D. Cal. Aug. 13, 2019) (agreeing with reasoning of *Perfect Bar* and dismissing claims
19   under UCL, FAL and CLRA where the plaintiffs alleged that they bought breakfast cereals based
20   on "health and wellness labeling statements . . . [making] the products seem like healthy food
21   choices" when in fact the products contained high level of sugar because "Plaintiffs cannot plausibly
22   claim to be misled about the sugar content of their cereal purchases because Defendant provided
23   them with all truthful and required objective facts about its products, both on the side panel of
24   ingredients and the front of the products' labeling. Here too, the actual ingredients were fully
25   disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions
26   about whether or not the sugar content was healthy for them."). Defendant argues that the case for
27   dismissal is even stronger here than in *Perfect Bar* and *Truxel* because plaintiffs do not allege that
28   the label explicitly marketed BodyArmor as "healthy" or "nutritious," and as in *Perfect Bar* and

*Truxel*, the Nutrition Facts accurately disclosed the sugar content and thus a reasonable consumer can assess for him/herself the healthiness of the beverage.

Citing *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), plaintiffs argue that "consumers need only consult front of pack claims when making their purchases, and need not consult disclaimers on the back or information in the [Nutrition Facts Panel.]" Opp'n at 1. In *Williams*, parents of small children brought a class action alleging that Gerber used deceptive packaging to market its Fruit Juice Snacks, a food product for toddlers, whose two most prominent ingredients were sugar and corn syrup. *Id.* at 936. The plaintiffs alleged the packaging was deceptive because, *inter alia*, the product was named "Fruit Juice Snacks" and there were images of oranges, peaches, strawberries and cherries on the box, but the only fruit or juice content was white grape juice from concentrate; the package stated it was made with "fruit juice and other all natural ingredients" which "could easily be interpreted as a claim that all the ingredients in the product were natural, which appears to be false"; and the package stated it was "one of a variety of nutritious Gerber Graduates foods and juices that have been specifically designed to help toddlers grow up strong and healthy," a statement the court found "adds to the potential deception." *Id*. at 936, 939. Under those circumstances, the Ninth Circuit held that reasonable consumers should not be expected "to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."

. However, as the Ninth Circuit later clarified in *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016), "*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." (emphasis in original). In *Ebner*, the Ninth Circuit rejected the claim that a reasonable consumer would be deceived as the amount of lip product in a tube where the label disclosed the correct weight of the included lip product and the tube design used a screw mechanism that allowed only 75% of the product to advance up the tube. The Ninth Circuit held that a reasonable consumer "understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube to anchor the bullet in place[,]" and *Williams* was distinguishable because "[a]part from the accurate weight label, there are no other words, pictures, or diagrams adorning the

13

1   packaging, as there were in *Williams*, from which *any* inference could be drawn or on which *any*
2   reasonable belief could be based about how much of the total lip product can be accessed by using
3   the screw mechanism." *Ebner*, 838 F.3d at 965-66 (emphasis in original).

4         Plaintiffs also argue that *Perfect Bar* and *Truxel* were wrongly decided, and they cite several
5   other cases from this district in which courts have allowed claims to go forward where plaintiffs
6   challenged product labels and advertising of sugar sweetened cereals where the labels accurately
7   disclosed the amount of sugar in the products. For example, plaintiffs cite *Coe v. General Mills,
8   Inc.*, Case No. 15-cv-05112 TEH, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016), in which the
9   plaintiffs challenged the labeling and marketing of Cheerios Protein cereal as misleading because it
10  implied that the product is essentially the same as Cheerios but with added protein. *Id.* at *1. The
11  plaintiffs alleged that although Cheerios Protein had more protein than regular Cheerios, the amount
12  of additional protein was not material considering the larger serving size and calories per serving of
13  Cheerios Protein, and because a single serving of Cheerios contained 1 gram of sugar versus 16 or
14  17 grams of sugar in Cheerios Protein. Judge Henderson held that although he was "skeptical" that
15  a reasonable consumer would be misled by the labeling of Cheerios Protein, he allowed the claims
16  to proceed because, *inter alia*, the sugar content and word "sweetened" were less prominent and in
17  smaller font than other components of the label, including the "Cheerios Protein" name and number
18  of grams of protein in each serving. *Id.* at *5; *see also Hadley v. Kellogg Sales Co.*, 273 F. Supp.
19  3d 1053, 1083-84 (N.D. Cal. 2017) (denying motion to dismiss where plaintiffs alleged that labeling
20  of sugar-sweetened cereals with terms like "healthy" 'nutritious,' "essential nutrients' and
21  'wholesome' because such terms "might cause a reasonable consumer to think that a product is
22  healthy, [and thus] the Court cannot conclude that as a matter of law that no reasonable consumer
23  would rely on these statements."); *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 963
24  (N.D. Cal. 2017) (denying motion to dismiss similar allegations that health and wellness claims for
25  sugar-sweetened cereals were deceptive).

26        The Court concludes that the complaint fails to state a claim that plaintiffs were misled about
27  the healthiness of BodyArmor because a reasonable consumer would not be deceived about the
28  nature of sports drink they were buying. As an initial matter, the Court finds it notable that plaintiffs

14

do not challenge any explicit statements marketing BodyArmor as "healthy," "nutritious," "wholesome" or the like, thus distinguishing this case from the sugar-sweetened cereal cases upon which plaintiffs rely. Plaintiffs also do not claim that the label or other advertisements contain false statements, such as the pictures of the fruit on the Fruit Snacks in *Williams*, nor do they claim that BodyArmor is not actually hydrating.

Instead, plaintiffs' claim about the "bait and switch" is premised on the theory that promoting the attribute "Superior Hydration" implies that BodyArmor is beneficial to one's health and "overall well-being," but that because of high sugar content, BodyArmor is not in fact beneficial to one's health and overall well-being. The Court finds that this claim is implausible because it requires unsupported inferences – that "Superior Hydration" conveys something more generally about overall healthiness and positive impact on one's well-being – and it requires that a reasonable consumer ignore the prominently displayed Nutrition Facts disclosing the total amount of sugar, as well as the ingredient list stating that "pure cane sugar" is the second ingredient. A reasonable consumer purchasing a sports drink (in such flavors as Fruit Punch, Berry Blast, Tropical Fruit and Grape) would not be misled into thinking that simply because the label states that it provides "Superior Hydration" and contains vitamins and electrolytes, that this necessarily means anything about the overall health benefits of the product given the disclosure of the sugar content. The claim for a "bait and switch" was much stronger in *Coe* (and even there, Judge Henderson was "skeptical" of the claims), where the plaintiffs alleged that Cheerios Protein was marketed as the same as regular Cheerios but just with more protein, but that larger serving sizes and significantly more sugar in Cheerios Protein rendered that marketing misleading.

Accordingly, the Court holds that plaintiffs' allegations that they were misled by BodyArmor's label into believing that they were purchasing a beneficial hydrating health drink when in fact they were buying an unhealthy SSB are not actionable because they do not meet the reasonable consumer standard.[10]

---

[10] In light of the Court's rulings, there is no need to address defendant's arguments about the First Amendment.

### IV. Fortification Allegations

Plaintiffs allege that BA violates FDA regulations which "prohibit fortification of junk food, including sugar drinks, with nutrients when there is a 'relative' claim for the product, such as 'superior' or 'better' hydration, or 'health' claim, such as 'lowers blood pressure.' 21 C.F.R. § 101.54(e)(1), § 101.65(d)(2)." Compl. ¶ 87.

The FDA's fortification policy, colloquially termed "the jellybean rule," was "developed in order to prevent food producers from encouraging the consumption of 'junk foods' by fortifying them with ingredients." *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *9 (E.D.N.Y. July 21, 2010). 21 C.F.R. § 104.20 sets forth a "uniform set of principles that will serve as a model for the rational addition of nutrients to foods" and addresses under what circumstances various nutrients may be added to foods.

Defendants contend that the FDA's fortification policy as set forth in the specific regulations cited by plaintiffs do not apply here. First, 21 C.F.R. § 101.54(e)(1) does not permit the use of the words "more," "fortified," "enriched," "added," "extra," or "plus" with respect to a product containing added nutrients if the addition of the nutrients itself violates the fortification policy in 21 C.F.R. § 104.20.[11] Second, 21 C.F.R. § 101.65(d)(2) addresses when a manufacturer may use the term "healthy" or grammatical variations thereof, such as "health," "healthful" or "healthiness" in making a nutrient-content claim.[12] Defendants argues that plaintiffs' allegations fail because BodyArmor's label and marketing do not use any of the terms listed in the regulations.

Plaintiffs' opposition concedes that BA is not making "health" based implied nutrient content claims on the BodyArmor label. Opp'n at 16 n.17. However, plaintiffs assert – in the same footnote – that BA "makes [health-based claims] regularly elsewhere," citing a "curated top review" on the BodyArmor website and other online posts. It is not clear from either the complaint or the

---

[11] 21 C.F.R. § 101.54(e)(1) provides, "A relative claim using the terms 'more,' 'fortified,' 'enriched,' 'added,' 'extra,' and 'plus' may be used on the label or in labeling of foods to describe the level of protein, vitamins, minerals, dietary fiber, or potassium" provided that such a claim complies with various listed other requirements.

[12] 21 C.F.R. § 101.65(d)(2) provides, "You may use the term 'healthy' or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness,') as an implied nutrient content on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendation" if various conditions are met.

16

opposition if plaintiffs intend to assert claims based solely on BA's non-label advertising, and the Court notes that the regulation's plain language discusses the use of "health" based claims on food labels and labeling, and thus it is not obvious from the face of the regulation that it applies to non-label advertising. In any event, the Court will address that issue *infra* regarding leave to amend.

With regard to the "relative" claim, plaintiffs argue that "superior hydration" on the label, as well as non-label advertising such as "super," "best," "premium," and "100% RDI" of different vitamins "imply that there are more of these nutrients in BodyArmor than other sports drinks." *Id*. at 16. Plaintiffs argue that these descriptors are similar to the other "relative" words listed in the regulation, and therefore that they have alleged that BA has violated the fortification policy.

The Court is not persuaded by plaintiffs' arguments. Plaintiffs do not cite any authority for their assertion that 21 C.F.R. § 101.54(e)(1) is violated when a food manufacturer uses words that are similar to the specific words listed in that regulation. The regulation states, "A relative claim *using the terms* 'more,' 'fortified,' 'enriched,' 'added,' 'extra,' and 'plus' may be used on the label or in labeling of foods . . . ."; the regulation does not contain broadening language like "such as" or "including but not limited to."

## V.    Leave to Amend

Based upon the conclusions above, the Court finds that plaintiffs have not stated a claim under any of the statutes or theories alleged in the complaint. It is not clear to the Court whether plaintiffs will be able to state a claim in light of the Court's findings that the statements "Superior Hydration" and "More Natural Better Hydration" are puffery, that a reasonable consumer would not be misled by the BodyArmor label, and that plaintiffs have not adequately alleged that BA violated any FDA regulations.

However, the Court will grant plaintiffs leave to amend if they wish to crystallize their theories. The Court notes that the complaint contains numerous references to non-label advertising such as in-store displays, billboards, social media posts, and posts by third party reviewers. If plaintiffs wish to proceed on deceptive or misleading advertising claims (or related unfair or deceptive business acts claims) based on non-label marketing and advertising, plaintiffs must be

17

able to allege that they saw and relied on those specific advertisements to their detriment. Further, the Court is skeptical that such claims can be brought on a class basis.

## CONCLUSION

For the reasons stated in this order, the Court GRANTS defendant's motion to dismiss the complaint and GRANTS plaintiffs leave to amend. If plaintiffs wish to amend the complaint they shall do so by **June 22, 2020**. The initial case management conference is rescheduled to **September 4, 2020** at **2:30 p.m.**

**IT IS SO ORDERED**.

Dated: June 4, 2020

SUSAN ILLSTON
United States District Judge