1  J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
      borden@braunhagey.com
3  David H. Kwasniewski, Esq. (SBN: 281985)
      kwasniewski@braunhagey.com
4  Tracy O. Zinsou, Esq. (SBN: 295458)
      zinsou@braunhagey.com
5  BRAUNHAGEY & BORDEN LLP
   351 California Street, 10th Floor
6  San Francisco, CA 94104
   Telephone: (415) 599-0210
7  Facsimile: (415) 599-0210

8  ATTORNEYS FOR DEFENDANT
   BA SPORTS NUTRITION, LLC
9

10

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15  MARC SILVER, HEATHER PEFFER,          Case No: 3:20-cv-00633-SI
    DONOVAN MARSHALL, ALEXANDER
16  HILL, individually and on behalf of all others   **NOTICE OF MOTION AND MOTION**
    similarly situated,                    **OF DEFENDANT BA SPORTS**
17                                          **NUTRITION, LLC TO DISMISS THE**
              Plaintiffs,                   **FIRST AMENDED COMPLAINT**
18                                          **PURSUANT TO RULE 12(B)(6);**
         v.                                 **MEMORANDUM OF AUTHORITIES IN**
19                                          **SUPPORT THEREOF**
    BA SPORTS NUTRITION, LLC,
20                                          **Date:**      August 28, 2020
              Defendant.                    **Time:**      10:00 a.m.
21                                          **Judge:**     Hon. Susan Illston
                                            **Court Rm.:** 1
22
                                            Complaint filed: January 28, 2020
23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Friday, August 28, 2020 at 10:00 a.m., in Courtroom 1 of the above captioned Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Defendant BA Sports Nutrition, LLC ("BodyArmor") will and hereby does move this Court for an order dismissing the claims asserted by Plaintiffs Marc Silver, Heather Peffer, and Alexander Hill (collectively, "Plaintiffs") against BodyArmor in the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support of the Motion, the Declarations of Matthew Borden and Lee Soffer, and the Request for Judicial Notice in Support of the Motion, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated:  July 21, 2020

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP


By:   /s/ *Matthew Borden*
        Matthew Borden

*Attorney for Defendant*
BA Sports Nutrition, LLC

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

      A.     The Parties ............................................................................................... 2

              1.     BodyArmor ................................................................................. 2

              2.     Plaintiffs ..................................................................................... 2

              3.     The Recruitment of Plaintiffs to Bring this Case........................ 3

      B.     The Accused Product Labels ................................................................... 4

      C.     The Court's Order Dismissing Plaintiffs' Original Complaint................ 4

      D.     The FAC .................................................................................................. 6

ARGUMENT ......................................................................................................................... 7

I.     THE CLAIM REGARDING OFF-LABEL MARKETING THAT THE
       COURT ALLOWED PLAINTIFFS TO REPLEAD FAILS ON ITS FACE ................... 7

II.    PLAINTIFFS' NEW AND UNAUTHORIZED "FLAVOR" CLAIM IS
       MERITLESS ................................................................................................................. 9

III.   THE PUFFERY AND HALO CLAIMS THAT THE COURT ALREADY
       HELD FAILED AS A MATTER OF LAW STILL FAIL AS A MATTER
       OF LAW .................................................................................................................... 11

      A.     "Superior Hydration" and Similar Claims Are Puffery ......................... 12

      B.     Plaintiffs' Claims that BodyArmor's Statements Misled Them About
           Sugar or "Health" Are Implausible....................................................... 15

      C.     The Gatorade Claims Are Irrelevant...................................................... 16

IV.   PLAINTIFFS' CLAIMS ARE SEPARATELY BARRED BY THE FIRST
       AMENDMENT ......................................................................................................... 16

      A.     Plaintiffs' Regulation Does Not Survive *Central Hudson* ................... 17

      B.     Plaintiffs' Regulation Does Not Survive *NIFLA/Zauderer* ................... 18

              1.     Plaintiffs' Regulation Is an Unconstitutional Content-Based
                    Restriction on Speech ................................................................ 18

              2.     Plaintiffs' Regulation Does Not Fall under Either Exception
                    to *NIFLA* ................................................................................. 19

V.    PLAINTIFFS DO NOT STATE A CLAIM FOR UNJUST ENRICHMENT ................. 21

VI.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF......................... 22

BA SPORTS NUTRITION, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS

VII.    LEAVE TO AMEND SHOULD BE DENIED ................................................................. 24

CONCLUSION.................................................................................................................... 25

BA SPORTS NUTRITION, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Albrecht v. Lund*,
845 F.2d 193 (9th Cir. 1988) ............................................................................................. 24

*Apodaca v. Whirlpool Corp.*,
2013 WL 6477821*6 (C.D. Cal. Nov. 8, 2013) .................................................................. 14

*Ass'n v. San Francisco*,
916 F.3d 749 (9th Cir. 2019) ........................................................................................ 17, 20

*Atari Corp. v. 3D0 Co.*, No. C 94-20298 RMW (EAI),
1994 WL 723601 (N.D. Cal. 1994) .................................................................................... 14

*Barr v. American Association of Political Consultants, Inc.*,
— S. Ct. —, 2020 WL 3633780 (July 6, 2020) ............................................................ 17, 19

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .............................................................................................. 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 7, 8

*By Design, LLC v. Sammy's Sew Shop, LLC*,
2016 WL 6093778 (D. Kan. Oct. 19, 2016) ....................................................................... 15

*Central Hudson Gas & Electric Corporation v. Public Service Commission*,
447 U.S. 557 (1980) ........................................................................................................... 17

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ............................................................................................................. 23

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ......................................................................................................... 21

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
12 F. Supp. 2d 296 (S.D.N.Y. 1998) ................................................................................. 14

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 .................................................................................................................. 23, 24

*Ebin v. Kangadis Food Inc.*,
No. 13–CV–2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec.11, 2013) ............................ 22

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .............................................................................................. 21

*Figy v. Frito-Lay N. Am. Inc.*,
67 F. Supp. 3d 1075 (N.D. Cal. 2014) ............................................................................... 23

Finney v. Ford Motor Co.,
No. 17-cv-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) ................................ 14

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................................... 21

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
155 F. Supp. 3d 670 (S.D. Tex. 2015) ............................................................................... 15

*Guidance Endodontics, LLC v. Dentsply Intern., Inc.*,
708 F. Supp. 2d 1209 (D.N.M. 2010) ................................................................................ 15

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015) ............................................................................... 21

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ............................................................................... 22
In *CTIA-The Wireless Association v. Berkeley*,
  928 F.3d 832 (9th Cir. 2019) ........................................................................... 17, 20
*In re Boston Beer Co.*,
  198 F.3d 1370 (Fed. Cir. 1999) ............................................................................ 14
*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
  2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) ........................................................ 10
*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ................................................................... 22
*Laitram Mach., Inc. v. Carnitech A/S*,
  884 F. Supp. 1074 (E.D. La. 1995) ......................................................................... 8
*Larsen v. Trader Joe's Co.*,
  917 F. Supp. 2d 1019 (N.D. Cal. 2013) ................................................................ 10
*National Institute of Family and Life Advocates v. Becerra*,
  138 S. Ct.  (2018) ............................................................................................... 17
*NewCal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) .............................................................................. 13
*Nguyen v. Medora*,
  No. 14-cv-00618, 2015 WL 4932836 (N.D. Cal. Aug. 18, 2015) ......................... 23
*NIFLA*,
  138 S. Ct. ................................................................................................ 18, 19, 20
*Nikkal Indus., Ltd. v. Salton, Inc.*,
  735 F. Supp. 1227 (S.D.N.Y. 1990) ...................................................................... 15
*Oestreicher v. Alienware Corp.*,
  322 F. App'x 489 (9th Cir. 2009) ......................................................................... 13
*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .............................................................................................. 23
*Outdoor Techs., Inc. v. Vinyl Visions, LLC*,
  2006 WL 2849782 (S.D. Ohio 2006) ...................................................................... 8
*Paulino v. Conopco, Inc.*,
  2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ................................................... 21, 22
*Perfect Bar*,
  No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ..................... 5
*Police Dept. v. Mosley*,
  408 U.S. 92 (1972) ................................................................................................ 19
*Pom Wonderful LLC v. Tropicana Prod., Inc.*,
  No. CV 09-00566-DSF, 2010 WL 11519185 (C.D. Cal. Nov. 1, 2010) ................... 16
*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ..................................................................................... 18, 19
*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  632 F. Supp. 2d 362 (D. Del. 2009) ........................................................................ 8
*Romero v. Flowers Bakeries, LLC*,
  No. 14–cv–05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015) .................... 22
*Shaker v. Nature's Path Foods, Inc.*,
  2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ....................................................... 14
*Silva v. Smucker Nat. Foods, Inc.*,
  2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ....................................................... 22

*Sitt v. Nature's Bounty, Inc.*,
   2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ............................................................... 21

*SodexoMAGIC, LLC v. Drexel Univ.*,
   333 F. Supp. 3d 426 (E.D. Pa. 2018) ............................................................................ 21

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...................................................................................................... 18

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ...................................................................................... 12

*Steele v. Wegmans Food Markets, Inc.*, — F. Supp. 3d —, 19 Civ. 9227 (LLS),
   2020 WL 3975461 (S.D.N.Y. July 14, 2020) ................................................................ 10

*Sustainable Sourcing, LLC v. Brandstorm, Inc.*,
   2016 WL 3064055 (D. Mass. May 31, 2016) ................................................................ 15

*Truxel v. General Mills Sales*,
   No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ............................ 5

*United States v. Caronia*,
   703 F.3d 149 (2d Cir. 2012) ......................................................................................... 18

*Univ. of Fla. Research Found., Inc. v. Orthovita, Inc.*,
   1998 WL 34007129 (N.D. Fla. Apr. 20, 1998) ............................................................ 14

*Wayne W. Yetter v. Ford Motor Comp.*
   2019 WL 7020348 (N.D. Cal. Dec. 20, 2019) .............................................................. 14

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) (dismissing ........................................................ 22

*Weiss v. Trader Joe's Co.*,
   Case No. 8:18-cv-01130-JLS-GJS, 2018 WL 6340758 (N.D. Cal. Nov. 20, 2018) .......... 21

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985) ...................................................................................................... 17

Rules

Federal Rule of Civil Procedure 12(b)(1) ........................................................................... i

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... i, 7

Regulations

21 C.F.R. § 101.22(i)(1) .................................................................................................. 11

21 C.F.R. § 101.22(i)(1)(i) .............................................................................................. 11

21 C.F.R. § 101.22(i)(1)(iii) ............................................................................................ 11

81 Fed. Reg. 33,798 ........................................................................................................ 17

Other Authorities

McCarthy on Trademarks and Unfair Competition § 11:17 (5th ed.) ............................... 15

Case No. 3:20-cv-00633-SI

Defendant BA Sports Nutrition, LLC ("BodyArmor") respectfully submits this Memorandum in support of its Motion to Dismiss the First Amended Complaint for failure to state a claim.

## **INTRODUCTION**

In George Orwell's novel *1984*, the Party could rewrite the past by asserting that events and people never existed, and thereby gained the power to control the future.

In Plaintiffs' First Amended Complaint ("FAC"), Plaintiffs attempt to rewrite "the Court's findings that the statements 'Superior Hydration' and 'More Natural Better Hydration' are puffery, that a reasonable consumer would not be misled by the BodyArmor label" by pretending that they never existed.  (Order Granting Motion to Dismiss (Dkt. No. 40) ("Order") at 17.)  But litigation does not work that way.  Precedent matters.  And parties cannot ignore Court Orders simply because they wish the past (or the future) were different.

Most of the FAC is directed to rearguing that "superior hydration" is not puffery (*e.g.*, FAC ¶¶ 5-10, 48-58) and that the label is misleading (*e.g.*, FAC ¶¶ 11, 47, 59).  These claims contravene the Court's Order and fail for the reasons the Court already found – Plaintiffs cannot fabricate a false advertising case when none of the statements they have identified is untrue.  As the Court already found, "superior hydration" has no objective meaning, and Plaintiffs cannot claim to have been misled about the sugar content, when the sugar content is accurately and properly listed on the label.  BodyArmor should not have had to defend against such claims once, much less again, especially given that Plaintiffs' boundless theories of liability have been repeatedly rejected, and Plaintiffs themselves admittedly were recruited over the internet, rather than injured.[1]

The Court granted Plaintiffs leave to amend to see if they could state a claim "based on non-label marketing and advertising," but required that "plaintiffs must be able to allege that they saw and relied on those specific advertisements to their detriment."  (Order at 17-18.)  Yet two of the Plaintiffs do not claim to have read any such advertisement, and the third fails to explain which

---

[1] As Plaintiffs conceded in their briefing on the last motion to dismiss, Plaintiffs included convicted felons and serial litigants who were recruited through a misleading lawyer internet solicitation. (Dkt. No. 25.) The convicted sex offender, Plaintiff Marshall, dropped out of the case on April 7, 2020.  (Dkt. No. 25.)

1  of the avalanche of the materials cited in the FAC he supposedly relied on or how it supposedly

2  misled him – again in direct contravention of the Court's Order.

3     Plaintiffs also offer a new claim that the real reason they bought BodyArmor is that they

4  thought that flavors like "Tropical Punch" contained fruit juice.  This new made-up theory, which

5  contradicts their previous claims about why they bought the products, also fails.  Nobody believes

6  that BodyArmor® Tropical Punch is composed of tropical punch (whatever that means) or that

7  Strawberry Banana contains banana juice any more than anyone believes that orange soda contains

8  oranges.  These are just the flavors of the products, which Plaintiffs repeatedly bought over four

9  years because they loved the taste.

10    The FAC also fails for numerous other reasons identified in BodyArmor's prior motion,

11 including that they are barred by the First Amendment, their unjust enrichment claim is redundant,

12 and Plaintiffs lack standing to seek injunctive relief.

13    Plaintiffs have failed to allege any additional facts capable of rendering their claims

14 plausible.  Further amendment would be futile, and this case should be dismissed with prejudice.

15                              **FACTUAL BACKGROUND**

16    This motion is based on the factual allegations in the Complaint, documents and things

17 cited therein, as well as judicially noticeable public materials set forth in BodyArmor's Request for

18 Judicial Notice ("RJN").

19 **A.     The Parties**

20    **1.     BodyArmor**

21 Defendant BodyArmor was founded in 2011 with the goal of producing hydrating, nutrient-

22 enhanced beverages.  Unlike Gatorade, BodyArmor SuperDrink® is made with coconut water, pure

23 cane sugar, and natural flavors, as well as a proprietary blend of electrolytes and vitamins.

24 BodyArmor's product has now become one of the most popular sports drinks in the country.

25    **2.     Plaintiffs**

26    There are three plaintiffs in this case.  Only one of them resides near to where any of their

27 lawyers are based.

28

1   Plaintiff **Heather Peffer** is a twice convicted felon (manufacture of a controlled substance,

2   retail theft) with a separate conviction for receiving stolen property.  (RJN, Exs. 1-4.)  Ms. Peffer

3   allegedly lives in Pennsylvania.

4   Plaintiff **Marc Silver** resides in Santa Rosa, California.  He has previously been involved in

5   four unsuccessful lawsuits of various natures.  (RJN, Exs. 5-8.)

6   Plaintiff **Alexander Hill** lives in New York City.  (Compl. ¶ 22.)

7   **3.    The Recruitment of Plaintiffs to Bring this Case**

8   Rather than being injured, Plaintiffs appear to have been recruited through a misleading

9   advertisement.

10   On November 25, 2019, Plaintiffs' lawyers posted an ad on the TopClassActions website,

11   stating: "Join a Free BodyArmor Class Action Lawsuit Investigation."  (Declaration of Matthew

12   Borden ("Borden Decl."), Ex. 1.)  This statement was misleading because there was no true

13   investigation occurring.  The lawyers had already devised their claims, and it never costs any

14   money to participate in an investigation.  The lawyers were simply using the guise of an

15   "investigation" to recruit plaintiffs.[2]

16   Plaintiffs' lawyers' solicitation further stated: "Attorneys working with Top Class Actions

17   are investigating whether BA lacks sufficient scientific evidence to back up such claims, which

18   may render their labeling and advertising deceptive and unlawful."  (*Id.*)  This statement was also

19   misleading because Plaintiffs' lawyers did not need any information from Plaintiffs to conduct such

20   a purported inquiry because they simply intended to resurrect allegations made by Gatorade once

21   they had recruited Plaintiffs.

22   The solicitation further stated: "They are also investigating other important matters with

23   respect to their advertising, including the implication that BodyArmor SuperDrink is good for your

24   body and health."  (*Id.*)  This statement was doubly misleading because nothing on the label of the

25   product or its advertising states that it is "good for your body and health."  Further, Plaintiffs'

26

27   ---
[2] Courts have warned that using such websites to obtain "shills" to act as plaintiffs can give rise to
malicious prosecution claims.  *See Citizens of Humanity, LLC v. Hass*, No. D074790 (certified for
28   publication on March 16, 2020), Slip Op. at 17-18 & n.5 (using plaintiff who registered her name
with Top Class Actions or classaction.com).

1   lawyers have never commissioned any study that required participation from any of the Plaintiffs –

2   as they conceded in the last round of briefing on BodyArmor's last motion to dismiss.

3       **B.      The Accused Product Labels**

4           BodyArmor's labels comply with all FDA regulations and accurately state the contents of

5   the products.  Because the Complaint references the label on BodyArmor's products, but nowhere

6   depicts a complete version of the actual label, the Court may consider the actual label (shown

7   below) in dismissing Plaintiffs' claims as it did in its prior order.  (Order at 3.)



23          A true and correct copy of the labels is attached to the concurrently submitted Declaration

24  of Lee Soffer.  (Soffer Decl., Ex. 1.)

25      **C.      The Court's Order Dismissing Plaintiffs' Original Complaint**

26          Plaintiffs initiated this case on January 28, 2020.  (Dkt. No. 1.)  The original complaint

27  alleged various false advertising and common law claims, all of which were predicated on three

28  theories:  first, that the phrase "superior hydration" and similar language was inherently

1  misleading; second, that BodyArmor's overall marketing was misleading because BodyArmor has

2  more sugar than Plaintiffs' lawyers think it should; and third, that BodyArmor was unlawfully

3  fortified with vitamins and minerals in violation of various FDA regulations.

4       BodyArmor moved to dismiss all claims (Dkt. No. 20), and on June 4, 2020, the Court

5  granted this motion. (Dkt. No. 40.)  With respect to the "superior hydration" claim, the Court held:

6          [T]he statements "Superior Hydration" and "More Natural Better
           Hydration" are non-actionable puffery.  These are general, vague
7          statements about product superiority rather than a misdescription of a
           specific or absolute characteristic of the product.
8
9  (Order at 9.)  The Court went on to explain:

10         The Court finds it implausible that a reasonable consumer would
           view the BodyArmor label and other marketing about "superior,"
11         "more" or "better" and believe that BA was making a specific,
           verifiable claim about BodyArmor's superior hydrating attributes.
12
13 (Order at 9-10 (internal citations and quotations omitted).)  As for Plaintiffs' sugar theory, the

   Court, relying on *Clark v. Perfect Bar*, No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec.

14 21, 2018) and *Truxel v. General Mills Sales*, No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal.

15 Aug. 13, 2019), found Plaintiffs' claim "implausible" because "it requires that a reasonable

16 consumer ignore the prominently displayed Nutrition Facts disclosing the total amount of sugar, as

17 well as the ingredient list stating that "pure cane sugar" is the second ingredient."  (Order at 15.)

18 The Court further found that:

19         A reasonable consumer purchasing a sports drink (in such flavors as
           Fruit Punch, Berry Blast, Tropical Fruit and Grape) would not be
20         misled into thinking that simply because the label states that it
           provides "Superior Hydration" and contains vitamins and
21         electrolytes, that this necessarily means anything about the overall
           health benefits of the product given the disclosure of the sugar
22         content.

23 (*Id*.)  Finally, the Court concluded that Plaintiffs' claim based on a purported technical violation of

24 an FDA fortification regulation also failed as a matter of law because BodyArmor did not make any

25 of the "health" or "relative" claims prohibited by the FDA regulation.  (*Id*. at 16-17.)

26      In light of the Court's lengthy and extensive findings that the statements "Superior

27 Hydration" and "More Natural Better Hydration" were puffery; "that a reasonable consumer would

28

not be misled by the BodyArmor label," and that Plaintiffs failed to allege BodyArmor violated any FDA regulation, the Court limited leave to amend to whether Plaintiffs could state a claim based on off-label advertising, emphasizing that Plaintiffs had to be able to allege that they had relied on any such advertisement and why.  (Order at 17-18.)

**D.     The FAC**

Plaintiffs filed the FAC on July 7, 2020.  (Dkt. No. 41.)  Only one Plaintiff, Alexander Hill, asserts that he saw any off-label advertising.  In the four paragraphs (FAC ¶¶ 96-99) about Mr. Hill's review of off-label materials, he claims to have seen various store displays (FAC ¶ 96), although the displays depicted in the complaint appear to have been copied from the internet and were actually erected in places like Iowa, not New York City where Plaintiff Hill resides.  *E.g.*, http://www.shineentertainmentmedia.com/body-armor-gio (website from which Image L of the Complaint was taken, which states this in-store display appeared at the Hy-Vee Supermarket in Iowa); https://blog.catalpha.com/tips-to-better-point-of-purchase-displays (website from which Image K was taken, a tutorial on building better in-store product displays).  Plaintiff Hill also claims to have seen various social media postings, such as a post from the "Houston Moms Blog" (FAC ¶ 96), which was not made by BodyArmor.  He also claims to have viewed a television advertising campaign from two years ago in which NBA stars James Harden and Kristaps Porzingis engaged in various anachronistic activities like using a typewriter, wearing colonial dress, or communicating via carrier pigeon, and suggest Gatorade is equally outdated.  (FAC ¶ 98.)  Plaintiff Hill does not allege that he relied on any of these particular advertisements to make any of his purchase decisions or explain why they supposedly misled him.

The FAC also alleges that BodyArmor's labels are misleading because they describe the products as having various flavors – such as "Berry Lemonade," "Fruit Punch," or "Tropical Punch" – but do not contain "significant amounts of such fruits," in supposed violation of various FDA regulations.  The FAC alleges that Plaintiffs believed all the vitamins in BodyArmor came from these various fruits, though it does not specify which fruits correspond with which flavors or what quantity of fruits Plaintiffs expected to be in their sports drinks.

1   The remainder of the amendments to the pleading ignore the Court's Order and add various

2   statements related to Plaintiffs' dismissed puffery and halo claims.  The FAC adds discursions

3   about scientific studies and athlete anecdotes, none of which are referenced on the products or

4   which Plaintiffs claim to have seen, suggesting that drinking sports drinks can help serious athletes

5   (which Plaintiffs are not – they are described instead as "sports enthusiasts," (FAC ¶¶ 15, 24, 31)

6   like most Americans) prevent muscle cramps.  (FAC ¶¶ 53-58.)

7   Based on these allegations, the FAC asserts the same eight causes of action as the original

8   complaint.  (FAC ¶¶ 135-209.)

9   ## ARGUMENT

10   "Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

11   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

12   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

13   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)."  (Order at 5.)

14   **I.    THE CLAIM REGARDING OFF-LABEL MARKETING THAT THE COURT ALLOWED PLAINTIFFS TO REPLEAD FAILS ON ITS FACE**

15   In allowing Plaintiffs to replead their claims based on off-label marketing, the Court held

16   "plaintiffs must be able to allege that they saw and relied on those specific advertisements to their

17   detriment."  (Order at 17-18.)  Plaintiffs' new allegations fail to do so.

18   Like its predecessor, the FAC cites various off-label advertising without explaining which

19   particular statements any Plaintiff relied on, how any such statement was supposedly misleading, or

20   why any such statement compelled any of the Plaintiffs to buy the product.  Instead, the FAC

21   generally alleges that Plaintiff Hill may have seen certain advertisements, or only some of them, or

22   none at all but instead "substantially similar" ones.  (FAC ¶¶ 99-100.)  Leaving aside that Plaintiff

23   Hill's claim that he saw the materials depicted in the FAC is likely false (for example, one of the

24   in-store displays depicted in the FAC (Image L) was actually a display set up in a supermarket in

25   Iowa as part of a promotional event with soccer player Giovani Dos Santos,

26   http://www.shineentertainmentmedia.com/body-armor-gio), nothing in the ads referenced by

27

28

1   Plaintiff Hill is untrue, and the FAC offers no allegation of how any such statements misled

2   Plaintiff Hill and caused him to buy the beverage.

3         The FAC also cites to a social media post from the Houston Mom Blog (Image M), which

4   describes itself as "a locally focused parenting website written BY area moms, FOR area moms."

5   https://houston.citymomsblog.com/about/.  Even assuming Plaintiff Hill reads a Houston moms'

6   blog, this is not even a statement by BodyArmor.

7         Nor does any of the advertising referenced by Plaintiff Hill contain messages that are any

8   different than the "Superior Hydration" or "More Natural Better Hydration," that the Court already

9   dismissed as puffery.  Two of the in-store displays simply repeat "More Natural Better Hydration"

10  in English and Spanish; another says "Switch to BodyArmor Sports Drink"; the Houston Mom

11  Blog post says "Rethink Your Sports Drink," and another social media posts says "This Sports

12  Drink is Different."  These phrases are nothing more than general and truthful assertions that

13  BodyArmor is a good and different product, which lack any comparator.

14        Plaintiff Hill further alleges that he saw a two-year-old television advertising campaign.

15  (FAC ¶¶ 98-99.)  This campaign consisted of several short ads in which NBA stars behaved in

16  various anachronistic ways, like using a typewriter, a carrier pigeon, or wearing colonial dress.  (*Id.*

17  ¶ 98.)  These advertisements suggested that drinking Gatorade was as outdated as these behaviors.

18  Plaintiff Hill does not explain why this advertising supposedly fooled him into buying any

19  BodyArmor product.[3]  Nor could he.  To the extent there is any representation of fact in these

20  materials, it is that BodyArmor is newer than Gatorade.  That is true.  Gatorade has been on the

21  market since the 1960s; BodyArmor debuted in 2011.  Moreover, marketing a product as a "new

22  and improved" alternative is also "classic puffery."  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F.

23  Supp. 2d 362, 367 (D. Del. 2009) (marketing "new and improved" and "innovative" wiper blades

24  was merely puffery, as claims were not made with reference to any specific features" of products,

25  and statements "are opinions and cannot be proved to be false"); *Laitram Mach., Inc. v. Carnitech*

26  *A/*S, 884 F. Supp. 1074, 1083 (E.D. La. 1995) (statement that machines were "new and improved"

27

28  [3] Plaintiffs' assert that these ads "denigrate[d]" Gatorade.  (*Id.*)  It is unclear why Plaintiffs care one way or another about this.

1   is puffery); *Outdoor Techs., Inc. v. Vinyl Visions, LLC*, 2006 WL 2849782 *4 (S.D. Ohio 2006)

2   (phrases such as "best," "new and improved," or "redesigned and improved" have all been held to

3   be puffery).

4          In sum, notwithstanding the Court's Order, two Plaintiffs cannot make any allegation that

5   they relied on any of the off-label ads cited in the FAC.  As to Plaintiff Hill, he does not identify a

6   false statement, reliance, or causation, contrary to the Court's Order.

7   **II.      PLAINTIFFS' NEW AND UNAUTHORIZED "FLAVOR" CLAIM IS MERITLESS**

8          In addition to the amendments allowed by the Court, the FAC added some allegations

9   claiming that the "real" reason Plaintiffs bought the products was that they thought that each

10  product they bought (and continued to purchase for four years) contained the juice from every fruit

11  in the name of the product, *i.e.*, that Strawberry-Banana had banana juice in it.  (FAC ¶¶ 85-87.)

12  Although they have now abandoned their theory that BodyArmor committed a technical violation

13  of FDA regulations regarding fortification, which the Court rejected (Order at 16-17), Plaintiffs

14  attempt to fortify their new theory by citing different, and inapplicable, technical FDA regulations.

15  (FAC ¶¶ 82-94.)  These arguments – which are inconsistent with their previously stated reasons for

16  supposedly buying the products – all lack merit.

17         Most importantly, everyone knows that the name of a beverage often describes its flavor

18  and is not somehow a guarantee of its ingredients.  BodyArmor® Strawberry-Banana is the flavor

19  of the beverage in the same way that Dr. Pepper Cream Soda does not contain cream,[4] Snapple

20  Peach Tea does not contain peaches,[5] and San Pellegrino Tangerine and Wild Strawberry does not

21  contain tangerines or wild strawberries.[6]  This obviously includes Plaintiffs who each continued to

22  buy multiple varieties of BodyArmor for four years because they enjoyed the flavor knowing that it

23  did not contain any fruit juice.  Many of the product names, such as Blackout Berry and the tropical

24  and fruit punch flavors purchased by each of the Plaintiffs (FAC ¶¶ 14, 23, 33), do not even specify

25  any type of fruit Plaintiffs supposedly thought they were receiving.

26  _____

27  [4] https://www.drpepper.com/en/products/drpepper-diet-cream.

    [5] https://www.snapple.com/products/snapple-peach-tea.

28  [6] https://www.sanpellegrino.com/us/en/essenza-flavored-sparkling-water.

1   BodyArmor's labels call out in multiple locations that the drinks are "naturally flavored"

2   and the ingredient list properly discloses all of the ingredients – none of which is fruit juice.  Under

3   these circumstances, there is no possibility that Plaintiffs were somehow misled.

4        Courts have rejected similar claims as implausible.  For example, in *Steele v. Wegmans*

5   *Food Markets, Inc.*, — F. Supp. 3d —, 19 Civ. 9227 (LLS), 2020 WL 3975461 (S.D.N.Y. July 14,

6   2020), Judge Louis L. Stanton in the Southern District of New York found that it was not

7   misleading to market ice cream as "vanilla" despite having no vanilla beans in it because the label

8   disclosed it was naturally flavored:

> Of course [a reasonable consumer] is not looking for a bowl of
> vanilla….  Evidently there are various natural substances which have
> a vanilla flavor.  Those interested in the actual ingredients can read
> the list, which mentions neither vanilla beans nor extracts ….
>
> The Wegmans container does not mention vanilla beans, or bean
> extract, and even if vanilla or bean extract is not the predominant
> factor if the sources of the flavor are natural, not artificial, it is hard
> to see where there is deception.  What is misrepresented?  The ice
> cream is vanilla flavored.  The sources of the flavor are natural, not
> artificial.

15  *Id.* at *2.  The same logic applies here.  Plaintiffs were not looking for a bottle of fruit juice; if they

16  were, they could have bought one from the refrigerated aisle.[7]  Plaintiffs do not allege that

17  BodyArmor's products lack the flavors described on their labels.  The ingredients were fully

18  disclosed.  The sources of the flavor are natural.  Nothing was misrepresented.

19       Nor do any of the FDA regulations cited in the FAC require BodyArmor to include some

20  unspecified quantity of fruit juice in its products. Plaintiffs rely on an FDA regulation that

21  expressly "permits a manufacturer to use the name and image of a fruit on a product's packaging to

22  describe the characterizing flavor of the product even where the product does not contain any of

23  that fruit, or contains no fruit at all." *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1024 n.2

24  (N.D. Cal. 2013); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2017 WL

25  4676585, at *5 (C.D. Cal. Oct. 10, 2017).  When the "food contains no artificial flavor which

26  simulates, resembles or reinforces the characterizing flavor," the regulation requires that the label

27

28  ───────────────
[7] As noted below, Plaintiffs do not purportedly want fruit juice anyway, as fruit juice has more
sugar per serving than BodyArmor

1   "be accompanied by the common or usual name of the characterizing flavor."  21 C.F.R.

2   § 101.22(i)(1).  Plaintiffs do not allege that BodyArmor's sports drinks contain any artificial flavor,

3   and the labels clearly display the drinks' characterizing flavor.

4         Plaintiffs also allege that BodyArmor sports drinks do not contain a characterizing amount

5   of fruit, and it therefore violated a provision of the regulation that requires the fruit label to be

6   followed by the word "flavored."  (FAC ¶¶ 88, 90-91.)  But that requirement applies only "if the

7   food is one that is *commonly expected* to contain a characterizing food ingredient, e.g., strawberry

8   in 'strawberry shortcake.'"  21 C.F.R. § 101.22(i)(1)(i) (emphasis added).  Plaintiffs do not and

9   cannot allege that sports drinks are commonly expected to contain the actual fruits on which their

10   flavors are based.  Nor could they.  Almost no sports drinks are made with fruit juice, which is why

11   they are shelf stable and need not be sold in the refrigerated aisles, like fruit juice – as demonstrated

12   repeatedly in the images included in the FAC.  (FAC ¶ 96.)

13         Plaintiffs assert that "upon information and belief, BodyArmor contains unnamed

14   ingredients that function as inauthentic flavors simulating the taste of the named and imaged

15   fruits."  (*Id*. ¶ 89.)  To the extent that Plaintiffs are attempting to argue that BodyArmor's use of

16   both a characterizing flavor and other natural flavors requires it also include that information on the

17   label, this requirement likewise applies only to foods commonly expected to contain the

18   characterizing food ingredient, not sports drinks.  21 C.F.R. § 101.22(i)(1)(iii) ("the food shall be

19   labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section" containing

20   the "commonly expected" caveat).

21         Like the original complaint, the FAC fails to plausibly allege that BodyArmor has

22   committed any technical violation of any FDA regulation.

23   **III.   THE PUFFERY AND HALO CLAIMS THAT THE COURT ALREADY HELD
FAILED AS A MATTER OF LAW STILL FAIL AS A MATTER OF LAW**

24         The bulk of the amendments to the FAC add allegations related claims the Court already

25   dismissed as a matter of law.  These include dozens of allegations about studies on hydration and

26   sugar, athlete endorsements, and politicians' speeches (FAC ¶¶ 47-91), none of which are

27

28

1   referenced on the product labels.  Plaintiffs do not claim to have seen or relied on any of these new

2   references, and they do not somehow render any of BodyArmor's advertising misleading.

3       The Court already held that, as a matter of law, that "the statements 'Superior Hydration'

4   and 'More Natural Better Hydration' are non-actionable puffery. These are general, vague

5   statements about product superiority rather than a misdescription of a specific or absolute

6   characteristic of the product."  (Order at 9, citing *Southland Sod Farms v. Stover Seed Co.*, 108

7   F.3d 1134, 1145 (9th Cir. 1997).)

8       Similarly, relying on Judge Alsup's decision in *Perfect Bar* and Judge White's decision in

9   *Truxel* – both of which Plaintiffs disparaged and mischaracterized in their last round of briefing –

10  the Court held:  "The Court concludes that the complaint fails to state a claim that plaintiffs were

11  misled about the healthiness of BodyArmor because a reasonable consumer would not be deceived

12  about the nature of sports drink they were buying."  (Order at 14.)

13      Plaintiffs now repeat these identical claims in the FAC, as if the Court had never rejected

14  them.  To the extent the Court even reads any further, Plaintiffs' new allegations fail for same the

15  reasons the Court gave last time.

16  **A.    "Superior Hydration" and Similar Claims Are Puffery**

17      The Court has already held that "the statements 'Superior Hydration' and 'More Natural

18  Better Hydration' are non-actionable puffery."  (Order at 9, 11.)  Specifically, the Court held that it

19  is "implausible that a reasonable consumer would view the BodyArmor label and other marketing

20  about 'superior,' 'more' or 'better' and believe that BA was making a specific, verifiable claim

21  about BodyArmor's superior hydrating attributes."

22      As the Court already explained in rejecting Plaintiffs' puffery claims:

23          "Product superiority claims that are vague or highly subjective often
            amount to nonactionable puffery.  *Id.*  On the other hand, "[a]
24          specific and measurable claim of product superiority based on
            product testing is not puffery."  *Id.*
25
26  (Order at 8 (quoting *Southland*, 108 F.3d at 1145.)  The Court further explained that "[T]he

27  determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere

28

1    puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."  (Order at 8, citing

2    *NewCal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).)

3         The FAC adds allegations that hydration is an "objective" concept, because scientists have

4    studied it and because famous athletes like Kobe Bryant and Mike Trout truthfully said drinking

5    BodyArmor helped them keep hydrated and suffer fewer muscle cramps.  (FAC ¶¶ 51-57.)  These

6    allegations are irrelevant; the FAC does not allege that BodyArmor's labels reference these alleged

7    studies, make any claim of product superiority based on such studies, or that Plaintiffs saw, much

8    less relied on, the studies or athlete endorsements described in the FAC.  As it did in its Order

9    dismissing these claims at page 3, the Court may take judicial notice that BodyArmor's labels do

10   not reference any product testing or studies whatsoever.  That is the end of Plaintiffs' puffery

11   claim.  (Order at 8.)

12        Moreover, that scientists might be able to measure hydration in athletes does not mean that

13   general phrases like "superior hydration" or "more natural better hydration" are also objective or

14   measurable.  Modifying the term "hydration" with words like "superior" and "better" is precisely

15   what makes these phrases puffery, as the Court previously held.  (Order at 9.)  This principle has

16   been repeatedly affirmed by this Court in its Order dismissing these claims and many others.  For

17   example, in *Oestreicher v. Alienware Corp.*, Judge Patel dismissed as puffery the following claims

18   about a computer:  "faster, more powerful, and more innovative than competing machines," "higher

19   performance," "longer battery life," "richer multimedia experience," "faster access to data," and

20   "ensure optimum performance."  544 F. Supp. 2d 964, 973 (N.D. Cal. 2008).  These statements

21   involve measurable computer attributes, *e.g.*, processor speed, and at least one of them makes this

22   claim vis-à-vis "competing machines."  Her decision was affirmed by the Ninth Circuit.

23   *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009).

24        Judge Koh likewise dismissed a claim that a truck having "superior gas mileage and

25   performance to previous Ford models":

26              "[W]hen asked how the 2008 F-350 would perform in comparison
               with Plaintiff's prior 1996 Ford truck[,] the salesperson represented
27             that the '2008 F-350 is a better truck with better performance;
               guaranteed' " and that "the 2008 F-350 had superior gas mileage and
28

1   performance to previous Ford models."  These statements are
quintessential, non-actionable puffery.

2   *Wayne W. Yetter v. Ford Motor Comp.,* No. 19-CV-00877-LHK, 2019 WL 7020348 *18 (N.D. Cal.

3   Dec. 20, 2019).  These statements discuss product traits and make a comparison to other products.

4   But they are "quintessential, non-actionable puffery because the concepts of "superior gas

5   mileage," and "better performing" are typical vague, positive claims companies make about their

6   products.  Indeed, superior gas mileage to a previous Ford model is far more concrete than the

7   language at issue here, "superior hydration."  Consumers can look up the gas mileage of previous

8   models, a known, measurable fact, and make inferences about the new Fords.  In contrast, as this

9   Court has already found, "there is nothing specific" in the statement "superior hydration" that is

10   "measurable, capable of verification, or capable of being proved false."  (Order at 10-11.)  It is not

11   a comparison to anything, and, notwithstanding the numerous studies cited in the complaint,

12   Plaintiffs offer no benchmark anyone could reference to measure a beverage's hydration.

13   Countless other cases have reached the same result.  *E.g., Finney v. Ford Motor Co.,* No.

14   17-cv-06183-JST, 2018 WL 2552266, *8 (N.D. Cal. June 4, 2018) ("longest lasting diesel motor"

15   and "the longest lasting diesel in its class" were puffery); *Univ. of Fla. Research Found., Inc. v.

16   Orthovita, Inc.,* 1998 WL 34007129 *27 (N.D. Fla. Apr. 20, 1998) ("unless a claim that a product

17   is 'better' than a competitor's is 'backed-up' with false allegations that 'tests prove' superiority

18   when no such tests or only unreliable tests exist to support such a claim, the superiority claim

19   constitutes no more than unactionable puffery"); *Cytyc Corp. v. Neuromedical Sys., Inc.,* 12 F.

20   Supp. 2d 296, 304-05 (S.D.N.Y. 1998) ("the ThinPrep system offers a 'superior method of slide

21   preparation that produces improved diagnostic quality, resulting in better patient outcome'" is

22   puffery); *Shaker v. Nature's Path Foods, Inc.,* 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) (use of

23   "Optimum" on cereal package constituted non-actionable puffery); *In re Boston Beer Co.,* 198 F.3d

24   1370, 1372 (Fed. Cir. 1999) ("The Best Beer in America" was "puffery"); *Apodaca v. Whirlpool

25   Corp.,* 2013 WL 6477821*6 (C.D. Cal. Nov. 8, 2013) ("statements about dependability and

26   superiority," including comments such as "unequaled tradition of quality production" or "unrivaled

27   performance" are "too vague to be actionable"); *Atari Corp. v. 3D0 Co.,* No. C 94-20298 RMW

28   (EAI) 1994 WL 723601 *2 (N.D. Cal. 1994) ("the most advanced home gaming system in the

1   universe" was nonactionable puffery); *Nikkal Indus., Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1234

2   n.3 (S.D.N.Y. 1990) (claim that an ice cream maker was "better" than competition is puffery);

3   *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 683 (S.D. Tex. 2015) ("the

4   strictest safety standards possible" was puffery); *Guidance Endodontics, LLC v. Dentsply Intern.,*

5   *Inc.*, 708 F. Supp. 2d 1209, 1241 (D.N.M. 2010) ("world's best" dental equipment and "best in the

6   world" were puffery; "Whether one thing of another is the 'best' is a normative assessment that

7   involves weighing potentially infinite and sometimes immeasurable factors."); *By Design, LLC v.*

8   *Sammy's Sew Shop, LLC*, 2016 WL 6093778 (D. Kan. Oct. 19, 2016) (defendants' statements

9   regarding the "high quality" of their pet beds were subjective and constituted mere puffery);

10  *Sustainable Sourcing, LLC v. Brandstorm, Inc.*, 2016 WL 3064055 (D. Mass. May 31, 2016) ("the

11  purest salt on earth" was mere puffery and not a "technically verifiable" claim); *see also* 2

12  McCarthy on Trademarks and Unfair Competition § 11:17 (5th ed.) (collecting cases describing

13  puffery in the context of trademarks to include "best, friendly, dependable, preferred, greatest,

14  deluxe, supreme").

15       **B.**    **Plaintiffs' Claims that BodyArmor's Statements Misled Them About Sugar or "Health" Are Implausible**

16

17       The FAC adds no allegations of substance to support Plaintiffs' claims they were misled

    about BodyArmor's sugar content or "overall healthiness."  The Court already dismissed this

18  theory on at least three grounds – none of which is addressed in the FAC:

19
20           [1] The Court finds that this claim is implausible because it requires
           unsupported inferences – that "Superior Hydration" conveys
21          something more generally about overall healthiness and positive
           impact on one's well-being

22           [2] it requires that a reasonable consumer ignore the prominently
           displayed Nutrition Facts disclosing the total amount of sugar, as
23          well as the ingredient list stating that "pure cane sugar" is the second
           ingredient.
24
25           [3] A reasonable consumer purchasing a sports drink (in such flavors
           as Fruit Punch, Berry Blast, Tropical Fruit and Grape) would not be
26          misled into thinking that simply because the label states that it
           provides "Superior Hydration" and contains vitamins and
27          electrolytes, that this necessarily means anything about the overall
           health benefits of the product given the disclosure of the sugar
28          content.

(Order at 15 (brackets added).)  Just like last time:  (1) "superior hydration" is not a claim about the overall healthiness of the beverage, (2) the ingredients plainly list sugar, and the Nutrition Facts accurately state the amount of sugar – as they did in *Perfect Bar* and *Truxel*, and (3) simply because the labels make truthful statements about the vitamins and electrolytes in the product is not a basis for claiming that Plaintiffs were somehow misled about the sugar content of the products.

As noted in BodyArmor's prior motion to dismiss at 10-13, Courts have rejected Plaintiffs' amorphous "halo" theory because it can be used to generate a lawsuit over anything.  A 16 oz. glass of orange juice contains over 40 grams of sugar.  *See* https://www.fatsecret.com/calories-nutrition/usda/orange-juice.  This is *more sugar* than the 36 grams cited in the Complaint or the 28 grams on Body's Armor's current label.  Under Plaintiffs' made up rule, an orange juice company could be sued for putting a picture of a child playing in a yard on its label (or social media) because this could suggest that the product was "healthy."  The same theory could be applied to any food or beverage containing fat, carbs, too little protein, too much protein, too much sodium, not enough sodium, etc.

### C.     The Gatorade Claims Are Irrelevant

Plaintiffs again attempt to interject irrelevant NAD proceedings into this case.  As in its prior order, the Court should give no weight to these proceedings – because they are entitled to none.  *Pom Wonderful LLC v. Tropicana Prod., Inc.*, No. CV 09-00566-DSF, 2010 WL 11519185, at *4 (C.D. Cal. Nov. 1, 2010) ("[q]uasi-governmental agencies like the NAD" that "provide only informal and non-binding reports and opinions, and whose review process is not subject to any evidentiary or procedural safeguards … are inadmissible").

## IV.    PLAINTIFFS' CLAIMS ARE SEPARATELY BARRED BY THE FIRST AMENDMENT

Although the Court did not reach this issue on the last motion to dismiss, each cause of action in the Complaint is separately and independently barred by the First Amendment.  Plaintiffs' proposed state-law regulation punishing BodyArmor's truthful speech violates the First Amendment under any test.  There is no governmental interest in preventing BodyArmor from making truthful statements on its labels or compelling it to disclose Plaintiffs' lawyers' health

theories.  Nor is their regulation in any way tailored to achieving such interest; it is so nebulous that no business could comply with it, resulting in a substantial suppression of protected speech.

In *CTIA-The Wireless Association v. Berkeley*, 928 F.3d 832 (9th Cir. 2019), the Ninth Circuit stated that *Central Hudson* scrutiny applies "in commercial speech cases where the government acts to restrict or prohibit speech," and that the standard in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), as refined by *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2461 (2018) ("*NIFLA*"), applies to regulations that compel speech.  *See also Am. Bev. Ass'n v. San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc). *NIFLA*'s command that content-based regulations are subject to strict scrutiny even in the commercial speech context was recently affirmed by the Supreme Court in *Barr v. American Association of Political Consultants, Inc.*, — S. Ct. —, 2020 WL 3633780 (July 6, 2020) (invalidating provision of Telephone Consumer Protection Act that allowed robocalls to collect government-backed debt but not private debt as an unconstitutional content-based restriction on speech) ("*AAPC*").

Plaintiffs' complaint seeks to both punish BodyArmor for its speech and to compel a "corrective advertising campaign."  (Compl. ¶¶ 122, 132.)  Regardless of which standard is applied, Plaintiffs' claims cannot withstand scrutiny.

### A.    Plaintiffs' Regulation Does Not Survive *Central Hudson*

To the extent *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557 (1980), applies, Plaintiffs' claims fail.  Under Central Hudson, "the government may restrict or prohibit commercial speech that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial.  The restriction or prohibition must directly advance the governmental interest asserted, and must not be more extensive than is necessary to serve that interest."  *Am. Bev.*, 916 F.3d at 755 (citations and quotations omitted).

Plaintiffs' proposed regulation does not serve any substantial government interest.  After years of study and analyzing over 300,000 submissions, the FDA, which is responsible for regulating food advertising, rejected establishing a daily recommended value for sugar.  81 Fed.

Reg. 33,798.  It also rejected a proposal that products with added sugar carry a warning asserting they are "linked to obesity, Type II Diabetes, [and other health risks]" because it believes that such a statement is "not consistent with [its] review of the evidence" and because "some added sugars can be included as part of a healthy dietary pattern."  *Id.* at 33,829.  Because the FDA has considered, and rejected, regulating "health claims" based on sugar content, and because BodyArmor's labels truthfully disclose all ingredients, Plaintiffs' cannot meet their burden of showing a substantial government interest.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571-72 (2011); *see also United States v. Caronia*, 703 F.3d 149, 166-67 (2d Cir. 2012) (proscribing off-label drug use did not directly advance a substantial governmental interest because off-label use is "generally lawful" and the promotion was entirely true).

Nor is Plaintiffs' proposed regulation tailored to achieve any interest beyond litigation.  Plaintiffs' regulation has no limits.  It would allow anyone to sue BodyArmor on any theory of what a "healthy" sports drink should, or should not, have based on any daisy-chain of inferences.  Could BodyArmor truthfully state it contains electrolytes without fear of suit for implying the product is "healthy?"  Could BodyArmor truthfully explain how it is made with coconut water without someone inferring that coconuts are "healthy"?  Could BodyArmor put an image of someone playing a sport on the label of its sports drink?  Plaintiffs' amorphous rule would chill truthful speech and is the definition of overbreadth.

**B.      Plaintiffs' Regulation Does Not Survive *NIFLA/Zauderer***

To the extent *AAPC/NIFLA/Zauderer* applies, Plaintiffs' regulation fails because it is a content-based restriction that does not qualify for anything less than strict scrutiny.

**1.      Plaintiffs' Regulation Is an Unconstitutional Content-Based Restriction on Speech**

Regulations that "target speech based on its communicative content … are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *NIFLA*, 138 S. Ct. at 2371 (citing *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)) (quotation omitted).  "This stringent standard reflects the fundamental principle that governments have "'no power to restrict expression because of its message, its idea,

its subject matter, or its content.'"  *NIFLA*, 138 S. Ct. at 2371 (quoting *Reed*, 135 S. Ct. at 2226

(quoting *Police Dept. v. Mosley*, 408 U.S. 92, 95 (1972))); *see also AAPC*, 2020 WL 3633780 *6

("Under the Court's precedents, a law that is content-based" is "subject to strict scrutiny." (internal

quotation omitted)).

       In *NIFLA*, the Court held that a law mandating that private crisis pregnancy centers

operated by groups opposed to abortion disclose the availability of state-sponsored services,

including abortion, was content-based because it altered the content of the speech.  *NIFLA*, 138 S.

Ct. at 2371 ("By requiring petitioners to inform women how they can obtain state-subsidized

abortions – at the same time petitioners try to dissuade women from choosing that option – the

licensed notice plainly alters the content of petitioners' speech." (quotation omitted)).  Similarly

here, Plaintiffs seek to hold BodyArmor liable because its labels implied to them that BodyArmor

contains a "healthy" amount of sugar, when in their view, it does not.  This claim is based purely

on the (supposed) content of BodyArmor's advertising.

       Since Plaintiffs' regulation is content-based, it must survive strict scrutiny.  *Id.*  It cannot,

for the reasons stated above.

### 2.  Plaintiffs' Regulation Does Not Fall under Either Exception to *NIFLA*

       In *NIFLA*, the Court rejected the idea that content-based restrictions on "professional" or

"commercial" speech are generally subject to a lower level of scrutiny.  The Court confirmed its

reluctance to "mark off new categories of speech for diminished constitutional protection" or to

"exempt a category of speech from the normal prohibition on content-based restrictions."  138 S.

Ct. 2372 (citations and quotations omitted); *see also id.* ("This Court's precedents do not permit

governments to impose content-based restrictions on speech without persuasive evidence of a long

(if heretofore unrecognized) tradition to that effect." (citations and quotations omitted)).

       The Court acknowledged just two instances where commercial speech may be afforded less

protection:  "laws that require professionals to disclose factual, noncontroversial information;" and

regulations of "professional conduct, even though that conduct incidentally involves speech."  *Id.*

(collecting cases).  The second exception does not apply here because Plaintiffs are not claiming

BodyArmor engaged in some sort of professional malpractice.

The first exception is also inapplicable because Plaintiffs do not only seek to compel BodyArmor to disclose purely factual, noncontroversial information.  As noted above, there is excessive scientific debate, and no consensus, about sugar.

The Ninth Circuit recently examined this aspect of *NIFLA* in the context of an ordinance mandating a disclosure about radio-frequency ("RF") radiation emitted from cellphones.  In *CTIA*, the Court of Appeals concluded that a compelled disclosure which was "literally true," referenced the applicable federal regulations, and used language identical to the federal regulations, was subject to more deferential review.  928 F.3d at 847-48.  For the reasons above, nothing is "literally true" about the disclosures Plaintiffs would impose.

Indeed, nutrition guidance is constantly evolving and often disputed.  *See, e.g.*, R. Primack, *Researchers Now Have a Much More Nuanced Understanding of Whether We Should Eat Pasta*, WASH. POST (July 6, 2016), *available at*

https://www.washingtonpost.com/news/wonk/wp/2016/07/06/researchers-nowhave-a-much-more-nuanced-understanding-of-whether-we-should-eat-pasta/.  Just as with pasta, fat, salt, wine, coffee, and countless other nutrients and foods, the FDA and scientists continue to debate the impact of consuming sugar and how much sugar one should consume.  What makes food healthy, including its sugar content, is "anything but an 'uncontroversial' topic."  *NIFLA*, 138 S. Ct. at 2372.  Accordingly, as in *NIFLA*, "*Zauderer* has no application here."  *Id.*

Finally, even if *Zauderer* did apply, Plaintiffs' claims would still fail because they are not reasonably related to a substantial governmental interest, as *Zauderer* requires.  *See Am. Bev.*, 916 F.3d at 755 ("Under *Zauderer*, the government may compel truthful disclosures in commercial speech as long as the compelled disclosure is reasonably related to a substantial governmental interest." (internal citations and quotations omitted).  Plaintiffs offer no evidence or facts to support their theory that foods with a certain quantity of added sugar is unhealthy.  Nor do they provide any reason to believe consumers lack sufficient information to evaluate the healthiness of BodyArmor drinks given all the truthful disclosures on the product packaging.

In sum, the First Amendment is an additional separate and independent ground for dismissing all of Plaintiffs' claims with prejudice.

## V.   PLAINTIFFS DO NOT STATE A CLAIM FOR UNJUST ENRICHMENT

For the reasons above, BodyArmor's advertising is not misleading. There has thus been no injustice and so no enrichment.  Plaintiffs' unjust enrichment claims therefore fail.  *Weiss v. Trader Joe's Co.*, Case No. 8:18-cv-01130-JLS-GJS, 2018 WL 6340758 *8 (N.D. Cal. Nov. 20, 2018) (where false advertising claims concerning ionized water failed, tag-along unjust enrichment claim also failed); *see also Ebner v. Fresh, Inc.,* 838 F.3d 958, 968 (9th Cir. 2016) (unjust enrichment claim mooted where complaint failed to state a claim as to other causes of action); *SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 473 (E.D. Pa. 2018) ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim.")

Under New York law, "an unjust enrichment claim is available 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Paulino v. Conopco, Inc*., 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (quoting *Corsello v. Verizon N.Y., Inc*., 18 N.Y.3d 777, 790 (2012)).  "It is not a 'catchall cause of action to be used when others fail,' and is typically limited to instances where 'the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.'"  *Id*. (citation omitted).  "An unjust enrichment claim that merely, 'duplicates, or replaces, a conventional contract or tort claim' is insufficient." *Id*. (citation omitted).

Where, as here, an unjust enrichment claim is based on the same allegations as other claims, the claim should be dismissed as duplicative.  *See Sitt v. Nature's Bounty, Inc*., 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) (dismissing claim as duplicative where "Plaintiff's unjust enrichment claims under New York law are based on the same allegations as her claims of violations of GBL sections 349 and 350"); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015) (dismissing unjust enrichment claim with prejudice where it was "based on identical facts as the [GBL] Section 349 claim"); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (dismissing unjust enrichment claim relating to allegations of deceptive labeling and advertising of personal care

products); *Silva v. Smucker Nat. Foods, Inc.,* 2015 WL 5360022, at *12 (E.D.N.Y. Sept. 14, 2015) (dismissing unjust enrichment claim as duplicative of other claims, including GBL §§ 349 and 350); *Koenig v. Boulder Brands, Inc.,* 995 F. Supp. 2d 274, 290-291 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as duplicative in case alleging deceptive milk product labeling); *Paulino*, 2015 WL 4895234, at *3-4 (noting various "decisions involving the deceptive labeling of consumer goods have dismissed unjust enrichment claims as duplicative or otherwise unavailable at the motion to dismiss stage."); *Ebin v. Kangadis Food Inc.,* No. 13–CV–2311 (JSR), 2013 WL 6504547, at *7 (S.D.N.Y. Dec.11, 2013) (dismissing unjust enrichment claim as duplicative); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of contract and tort claims).  Accordingly, plaintiffs' unjust enrichment claim should be dismissed.

## VI.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

In their Prayer, Plaintiffs seek "injunctive relief."  (Compl. ¶ 132; p. 38 (Prayer for Relief).) Plaintiffs lack standing to do so. To establish standing to seek injunctive relief, a plaintiff must demonstrate "a real and immediate threat of repeated injury."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "In addition, the claimed threat of injury must be likely to be redressed by the prospective injunctive relief."  *Id.*  "In the context of a class action, '[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.'"  *Romero v. Flowers Bakeries, LLC*, No. 14–cv–05189-BLF, 2015 WL 2125004, *7 (N.D. Cal. May 6, 2015) (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).  Plaintiffs cannot establish such a threat, and their request for an injunction should therefore be dismissed for lack of standing.

First, Plaintiffs' entire complaint is based on old labels and advertising from years ago. (Soffer Decl. ¶ 4 )  BodyArmor has changed its advertising several times since then, completely independent of Plaintiffs' lawsuit, and now makes only one statement that Plaintiffs' challenge: "Superior Hydration." [8]  As discussed above, this statement is mere puffery, and Plaintiffs could

---

[8] The Complaint does not identify any specific changes Plaintiffs seek to BodyArmor's labeling, and it is unclear what they could expect to change.

1   not have relied on it.  Plaintiffs' claim for injunctive relief is moot.  *Figy v. Frito-Lay N. Am. Inc.*,

2   67 F. Supp. 3d 1075, 1085 (N.D. Cal. 2014) (dismissing claims for injunctive relief because

3   "[d]efendant has furnished two declarations showing the current labeling for the Products and

4   specifically stating that the allegedly offending labels were no longer being printed when Plaintiffs

5   filed their complaint"); *Nguyen v. Medora*, No. 14-cv-00618, 2015 WL 4932836, at *8 (N.D. Cal.

6   Aug. 18, 2015) ("even if Plaintiffs did offer evidence of injury-in-fact and redressability, they still

7   lack standing to pursue injunctive relief because Medora changed the packaging back in December

8   2013, before this suit was even filed").[9]

9       Second, Plaintiffs allege that they would not have purchased BodyArmor if they had

10  understood what they allegedly know now, that BodyArmor "does not provide them with a

11  nutritious beverage overall" and that it is, in their eyes, a "fortified junk food" that contains a

12  "tsunami of sugar."  (Compl. ¶¶ 17, 80.)  It is implausible that Plaintiffs would continue to

13  purchase BodyArmor given this belief.  Accordingly, they are unlikely to purchase the product

14  again and face no threat of repeated injury.  Plaintiffs' allegations to the contrary do not satisfy the

15  Ninth Circuit's ruling in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, cert. denied, 139 S. Ct.

16  640 (2018).

17      In *Davidson*, the Ninth Circuit held that "previously deceived" consumers such as Plaintiffs

18  may establish a threat of future injury in certain limited circumstances, by plausibly alleging either

19  (1) that they will not be able to rely on a product's advertising or labeling in the future and

20  therefore will not purchase the product, even though they would like to, or (2) that they might

21  purchase the product in the future because they reasonably, but incorrectly, believe that, although

22  the label remains the same, the product has been improved.  *Id.* at 969-70.

23      Plaintiffs attempt to meet the requirements of *Davidson* by making boiler-plate allegations

24  that if they "knew that BA's marketing was truthful and non-misleading, and lawful," they would

25  "purchase BodyArmor in the future."  They contend, however, that "[a]t present," they "cannot

26

27  [9] *See also City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S.
    488, 495–96 (1974)) ("Past exposure to illegal conduct does not in itself show a present case or

28  controversy regarding injunctive relief if unaccompanied by any continuing, present adverse
    effects.").

1   purchase the product because [they] cannot be confident that the marketing of the products is, and

2   will be, truthful and non-misleading, or lawful." (Compl. ¶¶ 27, 36, 44, 52.)

3        Plaintiffs' allegations are not plausible and do not satisfy *Davidson*. Throughout the

4   complaint, Plaintiffs belabor the amount of sugar in a serving of BodyArmor (an indication that

5   they've read the label and know how much sugar it presently contains) as the reason they do not

6   believe it is a "nutritious beverage overall." (Compl. ¶¶ 10-17, 72-80.) Unlike in *Davidson*,

7   Plaintiffs will be able to rely on the label in the future, because it has always correctly listed the

8   amounts of sugar and added sugar in each product. By the same token, Plaintiffs will not buy

9   BodyArmor under the mistaken belief that it has been reformulated with less sugar, because

10  Plaintiffs can readily read the Nutrition Facts to make this determination. This case is unlike the

11  situation in *Davidson* where the plaintiff could have erroneously believed that wipes labeled as

12  "flushable" had been improved and were now truly flushable, even though they had not been

13  before. 889 F.3d at 970-72. Here, Plaintiffs would presumably only purchase BodyArmor in the

14  future if it contained less or no sugar. Should BodyArmor change its formulation in the future (and

15  Plaintiffs allege no facts indicating that this may occur in any event), Plaintiffs can simply check

16  the label to determine if it contains the amount of sugar they find acceptable and "nutritious" –

17  whatever that means to them. Plaintiffs therefore face no immediate threat of future injury, and

18  their claim for injunctive relief should be dismissed.

19  **VII.    LEAVE TO AMEND SHOULD BE DENIED**

20       This Court has already granted Plaintiffs an opportunity to amend. The FAC fails to correct

21  the deficiencies identified in that order. Further leave to amend should therefore be denied.

22  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)

23

24

25

26

27

28

1

## <u>CONCLUSION</u>

2      For the foregoing reasons, the Complaint should be dismissed with prejudice.

3

4   Dated:  July 21, 2020                                          Respectfully Submitted,

5                                                                  BRAUNHAGEY & BORDEN LLP

6
                                                                   By:   /s/ Matthew Borden
7                                                                          Matthew Borden

8                                                                  *Attorney for Defendant*
9                                                                  BA Sports Nutrition, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28