# BRAUN**HAGEY** & BORDEN LLP

San Francisco & New York

**Matthew Borden, Esq.**
borden@braunhagey.com

October 6, 2020

<u>**VIA CM/ECF**</u>

Honorable Susan Illston
United States District Judge
450 Golden Gate Ave, 17th Floor
San Francisco, CA 94102

> Re:   **Response to Discovery Letter (ECF 62) –** *Silver, et al. v. BA Sports Nutrition,*
> *LLC*, **Case No. 3:20-cv-00633-SI (N.D. Cal.)**

Your Honor:

On behalf of Defendant BA Sports Nutrition, LLC ("BodyArmor"), we respectfully respond to Plaintiffs' discovery letter brief filed yesterday evening in contravention of the Court's Local Rules (*see* ECF 62). The letter seeks to prevent BodyArmor's subpoenas of relevant third-parties which were served almost two weeks ago, and to which Plaintiffs failed to object (the "Subpoenas"). For the reasons set forth below, the letter relief should be denied and the Subpoenas be enforced as written.

On September 25, 2020, BodyArmor served the Subpoenas seeking relevant, non-privileged communications and information regarding the recipients' involvement with BodyArmor's competitor, Gatorade (Request Nos. 4-5, 7-8), and their recruitment of plaintiffs (Nos. 1-3) – both of which occurred to foment this case. Instead of serving objections to the Subpoenas or seeking to confer in good faith, they waited until shortly before the responses were due, scheduled a phone call, did not raise the lone case they are relying or any specific objection, and then unilaterally filed their letter brief an hour later. During the call, Plaintiffs' counsel repeatedly yelled at one of our associates, despite the Court's express admonition not to engage in such attacks. This conduct has continued in communications to our firm, such as "more utter nonsense from BraunHagey" and in Plaintiffs' letter brief itself. This is not the way our firm comports itself and is contrary to the Court's Guidelines for Professional Conduct.

Setting aside the letter's procedural infirmities, its attempt to avoid discovery also fails. Information regarding Gatorade is relevant and discoverable – the competitor's presence, conduct and relationship was directly placed at issue by Plaintiffs in this proceeding. For example, Plaintiffs have repeatedly invoked Gatorade as a paradigm for proper marketing and made reference to the NAD proceedings (a private industry dispute resolution mechanism) between BodyArmor and Gatorade. (*See*, *e.g.*, Dkt. No. 48 at 4, 18 & n.25, 19; Dkt. No. 43, ¶¶ 1-2, 8-10, 97-99; Dkt. No. 1, ¶¶ 82-84.) Such materials are especially relevant in the putative class context and would be discoverable *regardless* of whether plaintiffs were trying to represent a class. *See, e.g.*, *Nelson v. Millennium Labs*, Case No. 2:12-cv-01301-SLG, 2013 WL 11687684, \*5-6 (D. Ariz. May 17, 2013) (ordering production of plaintiff's fee agreements because defendant asserted that market competitor was funding litigation).

**San Francisco**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax: (415) 599-0210

**New York**
7 Times Square, 27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

October 6, 2020
Page 2

Similarly, courts provide wide latitude in discovery related to adequacy under Rule 23. *See, e.g.*, *Brown v. Am. Airlines, Inc.*, 2011 WL 13217553 (C.D. Cal. July 13, 2011). Documents related to the recruitment of putative class plaintiffs are particularly relevant. *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, *2 (Apr. 25, 2007). In *Oreck*, for example, Judge Patel held that: "Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification." *Id.* (quoting *Meachum v. Outdoor World Corp.*, 171 Misc.2d 354, 654 N.Y.S.2d 240, 369 (1996)). Judge Patel specifically noted that a history of such conduct is relevant to this inquiry. *Id.*

Plaintiffs argue that the documents sought are covered by work product or attorney-client privilege. But obviously not all documents related to communications with Gatorade, a company that their lawyers do not claim to represent, are privileged. *See, e.g.*, *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007) (holding that "Mattel's question regarding who is paying Bryant's legal fees … is likewise not objectionable" and that "fee-payment arrangements are relevant to credibility and bias, and if asked in discovery, [plaintiff] must disclose who is paying his legal fees."). And the same holds true for materials related to recruitment. Plaintiffs have not made specific objections to any request. Had they done so, the parties could have met and conferred and litigated whatever disputes remained, if any.[1]

Plaintiffs also argue that BodyArmor should have tried to get the documents from other sources first. But the one case cited by Plaintiffs, *Fausto v. Credigy Services Corp.*, No. C 07-5658 JW (RS), 2008 WL 4793467, at *1 (N.D. Cal. Nov. 3, 2008), is not on point. *Fausto* dealt with "the presumption against the taking of litigation counsel's *deposition*," *id.* at *2 (emphasis added), which BodyArmor has not sought to do. *Brown v. Am. Airlines, Inc.* is more instructive. 2011 WL 13217553.  In *Brown*, the defendant subpoenaed plaintiffs' counsel for documents related to their history of class action litigation and "discipline history." *Id.* *1. In reversing a Magistrate's recommendation to deny the discovery, the Court distinguished *Shelton* (the Eighth Circuit decision on which *Fausto* relies), precisely because it was not a class action case, noting that filing a putative class case "puts adequacy of class counsel at issue."  *Id.* at *2 ("[I]n the context of class certification, …[t]he rights of unnamed individuals are largely in the hands of counsel for the named plaintiff….[T]he Court has the responsibility of protecting those unnamed class members from undue risk of inadequate advocacy. Thus, the Court takes Defendant's requested discovery particularly seriously.").

Finally, Plaintiffs' citation to *Anderson v. Ghaly*, No. 15-cv-05120-HSG, 2020 WL 3184494 (N.D. Cal. June 15, 2020) is inapt. *Anderson* is one of the many civil rights cases our firm has filed under § 1983 to protect the rights of our state's most vulnerable and neediest citizens.  The Governor was subpoenaed in that case because he was ultimately responsible for violating our clients' rights under color of state law.  That the Court in *Anderson* denied our discovery request has nothing to do with the subpoenas here. Plaintiffs' citation to this case is merely more vitriol against our firm – in contravention of the Court's express admonishment.

Respectfully submitted,

*/s/ Matthew Borden*

---

[1] Request No. 6 was inadvertently propounded and is withdrawn.