1  J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
      borden@braunhagey.com
3  David H. Kwasniewski, Esq. (SBN: 281985)
      kwasniewski@braunhagey.com
4  Tracy O. Zinsou, Esq. (SBN: 295458)
      zinsou@braunhagey.com
5  BRAUNHAGEY & BORDEN LLP
   351 California Street, 10th Floor
6  San Francisco, CA 94104
   Telephone: (415) 599-0210
7  Facsimile: (415) 599-0210

8  ATTORNEYS FOR DEFENDANT
   BA SPORTS NUTRITION, LLC

9

10

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15  MARC SILVER, HEATHER PEFFER,          Case No: 3:20-cv-00633-SI
    ALEXANDER HILL, individually and on behalf
16  of all others similarly situated,            **DEFENDANT BA SPORTS NUTRITION,**
                                                 **LLC'S OPPOSITION TO PLAINTIFFS'**
17              Plaintiffs,                       **MOTION TO QUASH SUBPOENAS**

18         v.                                     **Date:**      November 6, 2020
                                                 **Time:**      10:00 a.m.
19  BA SPORTS NUTRITION, LLC,                    **Judge:**     Hon. Susan Illston
                                                 **Ctrm.:**     1, 17th Floor
20              Defendant.
                                                 Complaint filed: January 28, 2020
21                                               FAC filed:       July 7, 2020

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

      A.     The Subpoenas ..................................................................................... 3

      B.     Plaintiffs Failed to Raise Issues in Dispute at Meet and Confer ............ 3

      C.     Plaintiffs' "Firehose of Incivility" ....................................................... 4

ARGUMENT .................................................................................................................. 6

I.      PLAINTIFFS FAILED TO MEET AND CONFER IN GOOD FAITH .......................... 6

II.     PLAINTIFFS DO NOT DISPUTE THAT THE SUBPOENAS SEEK
       RELEVANT, NON-PRIVILEGED DOCUMENTS .......................................... 7

      A.     Documents Related to Plaintiff Recruitment Are Relevant to
           Adequacy ........................................................................................... 8

      B.     Documents Related to Third-Party Funding and Participation in the
           Litigation Are Relevant and Discoverable ......................................... 12

      C.     The Documents Sought Are Not Privileged ......................................... 14

      D.     Plaintiffs Have Not Proven that Producing the Requested Information
           Would Be Unduly Burdensome ........................................................... 16

III.    PLAINTIFFS' ATTEMPT TO IMPOSE ADDITIONAL REQUIREMENTS
       THAT ARE NOT IN THE FEDERAL RULES FAILS .................................... 16

IV.    PLAINTIFFS' ATTACKS ON BODYARMOR'S COUNSEL ARE FALSE
       AND MISLEADING ................................................................................ 20

CONCLUSION ............................................................................................................. 22

DEF'S OPPO. TO MOTION TO QUASH SUBPOENAS

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Anderson v. Ghaly*,
   930 F.3d 1066 (9th Cir. 2019) ........................................................................................ 21

*Auscape Int'l v. Nat'l Geographic Soc'y*,
   No. 92 CIV.6441 LAK, 2002 WL 31250727 (S.D.N.Y. Oct. 8, 2002) .................................... 15

*Bodner v. Oreck Direct, LLC*,
   No. C 06-4756 MHP, 2007 WL 1223777 (Apr. 25, 2007) .......................................... 1, 8, 9

*Brown v. Am. Airlines, Inc.*,
   2011 WL 13217553 (C.D. Cal. July 13, 2011) ......................................................... 12, 17, 18

*Bryant v. Mattel, Inc.*,
   573 F. Supp. 2d 1254 (C.D. Cal. 2007) ............................................................................. 15

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*,
   299 F.R.D. 638 (E.D. Cal. 2014) ...................................................................................... 14

*Cardoza v. Bloomin' Brands, Inc.*,
   141 F. Supp. 3d 1137 (D. Nev. 2015) .................................................................................. 7

*Chevron Corp. v. Donziger*,
   No. 12–MC–80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ...................... 16

*Clark v. Hershey Co.*, No. C,
   18-06113 WHA, 2019 WL 913603 (N.D. Cal. Feb. 25, 2019) ............................................. 10

*Eisen v. Carlisle and Jacquelin*,
   391 F.2d 555 (9th Cir. 1968) ............................................................................................. 8

*Fangman v. Genuine Title, LLC*,
   2016 WL 3362538 (D. Md. June 7, 2016) ........................................................................ 15

*Gbarabe v. Chevron Corp.*,
   No. 14-CV-00173-SI, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ............................. 1, 12, 15

*Gordon v. Sonar Capital Mgmt. LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015) ................................................................................. 13

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*,
   No. C 15-00567 WHA, 2015 WL 4881073 (N.D. Cal. Aug. 14, 2015) ................................ 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 12

*In re Allergan, Inc*,
   2016 WL 5922717 (C.D. Cal. Sept. 23, 2016) ............................................................. 17, 19

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) ...................................................................................... 13

*In re Subpoena Issued to Dennis Friedman*,
   350 F.3d 65 (2d Cir. 2003) ...................................................................................... 17, 18, 19

*In re Yassai*,
   225 B.R. 478 (Bankr. C.D. Cal. 1998) .............................................................................. 16

*Index Newspapers LLC v. United States Marshal's Service*,
   __ F.3d. __, 2020 WL 5988501 (9th Cir. Oct., 9, 2020) ........................................................ 1

*Katziff v. Beverly Enterprises, Inc.*,
   2009 WL 10729569 (D. Mass. Apr. 17, 2009) .................................................................. 21

*Keilholtz v. Lennox Hearth Products Inc.,*
   268 F.R.D. 330 (N.D. Cal. 2010)..................................................................................... 9, 10

*Koerner v. Grigas,*
   328 F.3d 1039 (9th Cir. 2003) ............................................................................................ 8

*Kunkel v. Dill,* No. 1:09-CV-00686-LJO,
   2010 WL 4530225 (E.D. Cal. Nov. 2, 2010)...................................................................... 8

*Loop AI Labs Inc v. Gatti,*
   No. 15-CV-00798-HSG(DMR), 2016 WL 787924 (N.D. Cal. Feb. 29, 2016) .......................... 14

*Mahach-Watkins v. Depee,*
   No. C 05-1143 SI, 2007 WL 1394651 (N.D. Cal. May 10, 2007)....................................... 6, 7

*Meachum v. Outdoor World Corp.,*
   171 Misc.2d 354, 654 N.Y.S.2d 240 (1996)...................................................................... 1

*Miller v. Ghirardelli Chocolate Co.,*
   No. C 12-4936 LB, 2013 WL 6774072 (N.D. Cal. Dec. 20, 2013)...................................... 16

*Moheb v. Nutramax Labs., Inc.,*
   2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ................................................................. 9, 12

*Nelson v. Millennium Labs,*
   Case No. 2:12-cv-01301-SLG, 2013 WL 11687684 (D. Ariz. May 17, 2013) ............... passim

*Pamida, Inc. v. E.S. Originals, Inc.,*
   281 F.3d 726 (8th Cir. 2002) .......................................................................................... 19

*Phillips v. Indianapolis Life Ins. Co.,*
   No. 1:060-CV-1544-WTL-JMS, 2009 WL 1564384 (S.D. Ind. June 3, 2009).................... 17

*Rainsy v. Chevron Corp.,*
   No. 16-mc-80258-DMR, 2017 WL 5508913 (N.D. Cal. Nov. 17, 2017)............................ 22

*Sanchez v. Wal Mart Stores, Inc.,*
   2009 WL 1514435 (E.D. Cal. May 28, 2009) .................................................................... 9

*S.E.C. v. Small Business Capital Corp.,*
   No. 5:12-cv-03237 EJD, 2012 WL 6584953 (N.D. Cal. Dec. 17, 2012)............................ 20

*Schiller v. City of N.Y.,*
   245 F.R.D. 112 (S.D.N.Y. 2007) .................................................................................... 15

*Schneider v. Chipotle Mexican Grill, Inc.,*
   No. 16-cv-02200-HSG KAW, 2017 WL 3124014 (N.D. Cal. July 24, 2017) ..................... 11

*Shelton* and *Fausto v. Credigy Services Corp.,* No. C 07-5658 JW (RS),
   2008 WL 4793467 (N.D. Cal. Nov. 3, 2008) .................................................................... 17

*Shelton v. Am. Motors Corp.,*
   805 F.2d 1323 (8th Cir. 1986) .......................................................................... 16, 17, 18, 19

*Sipper v. Capital One Bank,*
   2002 WL 398769 (C.D. Cal. 2002).................................................................................. 13

*Stavrides v. Mellon Nat. Bank & Trust Co.,*
   60 F.R.D. 634 (W.D. Penn 1973)..................................................................................... 10

*Stone Brewing Co., LLC v. Miller Coors LLC.,*
   2019 WL 5677844.......................................................................................................... 20

*Stone Brewing Co., LLC v. Miller Coors LLC.,*
   No. 18cv331-BEN(LL), 2019 WL 4450754 (S.D. Cal. Sept. 17, 2019)............................. 20

*Susman v. Lincoln American Corp.,*
   561 F.2d 86 (7th Cir. 1977) ............................................................................................ 13

*Taylor v. Waddell & Reed, Inc.,*
   2011 WL 1979486 (S.D. Cal. May 20, 2011).................................................................... 15

*Walker v. B&G Foods, Inc.*, No. 15-cv-03772-JST,
  2019 WL 3934941 (N.D. Cal. Aug. 20, 2019) ........................................................................ 21
*White v. Experian Information Solutions*,
  993 F. Supp. 2d 1154 (C.D. Cal. 2014) ................................................................................ 12
*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) .................................................................................................... 8

Rules

Fed. R. Civ. Proc. 23(a)(4) ........................................................................................................... 8
Fed. R. Civ. Proc. 26(b) ............................................................................................................... 7
Rule 23 ................................................................................................................................. 8, 12

Other Authorities

L.R. 3-15 .................................................................................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEF'S OPPO. TO MOTION TO QUASH SUBPOENAS

Defendant BA Sports Nutrition, LLC ("BodyArmor") respectfully submits this Opposition to Plaintiffs' Motion to Quash.

**<u>INTRODUCTION</u>**

Plaintiffs' motion seeks to quash two subpoenas that request documents related to whether Plaintiffs were recruited and whether BodyArmor's competitor or another non-party is funding or assisting with the litigation (the "Subpoenas"). While Plaintiffs claim that "controlling law" precludes such discovery (Mot. at 1), they point to no such law and neglect to cite decisions such as *Gbarabe v. Chevron Corp.*, No. 14-CV-00173-SI, 2016 WL 4154849, (N.D. Cal. Aug. 5, 2016), where this Court compelled the very type of adequacy discovery that Plaintiffs claim is "extraordinary in [its] audacity." (Mot. at 3). *Id.* at *2 ("the litigation funding agreement is relevant to the adequacy determination and should be produced to defendant … the Court GRANTS Chevron's motion to compel and orders plaintiff to produce the litigation funding agreement to Chevron."); *see also Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG KAW, 2017 WL 3124014, *4 (N.D. Cal. July 24, 2017) (denying motion to quash deposition of Kaplan Fox investigator because whether he was soliciting plaintiffs was material to adequacy).

The motion, which Plaintiffs filed without properly meeting and conferring, seeks to avoid their obligation to produce evidence by making personal attacks against opposing counsel – which is exactly what the Court has already ordered Plaintiffs to stop doing. To be sure, BodyArmor's counsel has aggressively pursued the rights of many in the federal courts, *see*, *e.g.*, *Index Newspapers LLC v. United States Marshal's Service*, __ F.3d. __, 2020 WL 5988501 (9th Cir. Oct., 9, 2020) (enjoining Trump administration from targeting and dispersing journalists at Portland's Black Lives Matter protests), but it has not mistreated Plaintiffs or their lawyers. In contrast, Plaintiffs have been derisive in their communications, falsely tried to tarnish BodyArmor and its counsel in their papers, and yelled at one of BodyArmor's attorneys.

On the merits, Plaintiffs do not dispute any of the issues BodyArmor raised in its letter brief about the Subpoenas (Dkt. No. 64). Plaintiffs do not dispute that soliciting plaintiffs is grounds for denying class certification. (Letter Brief at 2 (citing *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, *2 (Apr. 25, 2007).) As Judge Patel held: "Solicitation of clients for the

commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification." *Id.* (quoting *Meachum v. Outdoor World Corp.*, 171 Misc.2d 354, 654 N.Y.S.2d 240, 369 (1996)).  Thus, discovery that may show that Plaintiffs were recruited rather than injured, or part of a pattern of recruiting plaintiffs to manufacture putative class actions, is material to issues Plaintiffs have raised in this case.  *Id.*  Plaintiffs also do not dispute that documents related to third-party participation in the litigation are discoverable for similar reasons; they go to adequacy, tend to show lack of injury and are relevant to cross-examining witnesses about bias at trial.  *Gbarabe*, 2016 WL 4154849, at *2.

Finally, Plaintiffs do not carry their burden of proving that complying with the Subpoenas would be difficult.  To the extent that they do not have responsive materials, compliance would be simple.  Based on an Eighth Circuit case called *Shelton*, Plaintiffs argue that BodyArmor is required to seek discovery from other sources first.  (Mot. at 4.)  But Plaintiffs do not disclose that other circuits disagree with *Shelton* as contrary to the Federal Rules, and no case has ever imposed such a requirement for putative class actions, where adequacy is a common issue.  Fabricating such a rule here would serve no purpose beyond making discovery more difficult and protracted.  Further, materials in the possession of Plaintiffs' lawyers are within Plaintiffs' possession, custody and control, which means that Plaintiffs have to produce them anyway (identical discovery was served on Plaintiffs).  But when BodyArmor offered to obtain these documents from Plaintiffs instead, Plaintiffs refused this proposal as well.  It is thus apparent that Plaintiffs are simply trying to obstruct and delay discovery on topics they admit are relevant.

For each of these reasons, Plaintiffs' motion should be denied, and they should be ordered to immediately comply with the subpoenas.

## **BACKGROUND**

Plaintiffs' statement of "facts" is largely devoted to attacks on counsel, which are dealt with in the last section of this brief, and offers little discussion of the subpoenas at issue or Plaintiffs' failure to object to the subpoenas and meet and confer about their objections.  Those facts are detailed below.

### A.     The Subpoenas

As soon as the Court allowed discovery, BodyArmor properly served subpoenas on Kaplan Fox & Kilsheimer LLP and Reese LLP ("Subpoenas") on September 25, 2020.  The Subpoenas did not seek depositions of any attorneys, but included a narrow set of document requests, eight of which remain at issue.[1]  (Declaration of Tracy O. Zinsou in Support of BodyArmor's Opposition to the Motion to Quash Subpoenas ("Zinsou Decl."), Ex. 1.)  The Subpoenas request communications regarding the solicitation of plaintiffs in this action and other similar putative class actions, communications with Gatorade, an industry competitor of BodyArmor, and communications regarding litigation funding.  (*Id.*)

### B.     Plaintiffs Failed to Raise Issues in Dispute at Meet and Confer

After receiving the Subpoenas, Plaintiffs' remained silent for a week and, then, on Friday, October 2, 2020, requested (without explanation or serving written objections) that "we meet and confer on Monday to discern whether you will withdraw the subpoena, or whether we need to proceed with a letter to the Court." (Zinsou Decl. ¶ 3, Ex. 2).  BodyArmor agreed to a meet and confer and offered to permit Plaintiffs an extension of two weeks to respond to the Subpoenas to ease any time pressure in working out any dispute.  (*Id.*, Ex. 2 at 2).

On Monday, October 5 at 8:08 am, prior to any meet and confer and without serving any objections, Plaintiffs sent an email insisting that they "do not intend to comply with an improper subpoena." (*Id.*, Ex. 2 at 10.) The email cited no authority for their position and demanded that BodyArmor provide "Defendant's section of a letter brief to the Court concerning the subpoena" that afternoon.  (*Id.*, Ex. 2 at 10).  BodyArmor responded that "Plaintiffs have not provided any authority for why they believe the subpoenas to be 'improper'" and noted that Plaintiffs' sudden demand to exchange letter brief sections on a few-hours' notice "was unreasonable and does not comport with the Court's rules" to meet and confer first.  (*Id.*, Ex. 2 at 9.)  Despite additional email

---

[1] As noted in Defendant's letter brief (Dkt. No. 64), Request No. 6 was inadvertently propounded and is withdrawn. Plaintiffs nevertheless continue to feature Request No. 6 throughout their brief as a purported example of why they believe the subpoenas are too broad and request supposedly privileged information.  (Mot. at 6, 9).

1   requests for Plaintiffs to share the legal authority for their challenge, Plaintiffs refused to provide

2   any.  (*Id.*, Ex. 2.)

3          On October 5 at 4:00 pm, BodyArmor had a call with Plaintiffs.  (Zinsou Decl. ¶ 6).  On the

4   phone call, Plaintiffs' lawyer repeatedly yelled at BodyArmor's counsel and refused to provide any

5   authority for Plaintiffs' general objection or provide any specific objections to the individual

6   document requests at issue.  (*Id.* ¶ 7).  BodyArmor again offered to extend the return date on the

7   Subpoenas by two weeks to allow more time for an informal resolution, but Plaintiffs refused.  (*Id.*

8   ¶ 7).  BodyArmor also noted on the call that similar requests had been served directly on Plaintiffs'

9   and stated that if Plaintiffs would commit to producing the requested documents directly, then any

10  duplicative documents would not need to be produced in response to the Subpoenas.  (*Id.* ¶ 7, Ex. 2

11  at 5).  Plaintiffs refused that offer.  (*Id.* ¶ 7, Ex. 2 at 5.)

12         Less than one hour after the meet and confer had ended, Plaintiffs filed their already-

13  prepared letter brief.  (Dkt. No. 62., Zinsou Decl. ¶ 11.)  Plaintiffs failed to raise any of the case

14  law or the specific objections detailed in their letter brief (and now their Motion) during the meet

15  and confer call.  (Zinsou Decl. ¶ 7, Ex. 2.)  They never served any objections to the Subpoenas

16  raising or preserving any of the issues in their motion.

17         **C.    Plaintiffs' "Firehose of Incivility"**

18         Plaintiffs claim, without citation, that BodyArmor has behaved uncivilly to their lawyers

19  and that they "do not invite or foment incivility in their cases."  (Mot. at 1.)  But just the opposite is

20  true.  Plaintiffs have been insulting in their communications and have yelled at and tried to

21  marginalize BodyArmor's counsel.

22         BodyArmor's counsel Tracy O. Zinsou, Esq. sent the Subpoenas to Plaintiffs along with a

23  letter offering to discuss deposition dates.  (Zinsou Decl., Ex. 3.)  When Plaintiffs responded a

24  week later, they sent an email, but did not include Ms. Zinsou.  (Id., Ex. 2 at 11.)  In their email,

25  they incorrectly stated that BodyArmor had "unilaterally" noticed the depositions, when in fact,

26  Ms. Zinsou's letter had expressly stated that "these deposition notices are subject to your clients'

27  availability" and offered to move the dates to accommodate Plaintiffs.  (*Id.*, Ex. 3)

28

In response, Plaintiffs accused Ms. Zinsou of "a firehose of incivility and aggression" even though she had never spoken with them before.  (Zinsou Decl., Ex. 2 at 10.)  When Ms. Zinsou attempted to discuss the Subpoenas over the phone, Plaintiff's lawyer yelled at her and spoke over her.  (Zinsou Decl. ¶ 8.)  Plaintiffs followed this with a series of emails to Ms. Zinsou that made more unnecessary attacks on her and our firm.  By way of example:

>>>> On Oct 6, 2020, at 8:47 AM, Maia Kats <MKats@kaplanfox.com> wrote:
>>>
>>> Tracy,
>>>
>>> This is more utter nonsense from BraunHagey.

(Zinsou Decl., Ex. 2.)  The communication went on to say "You try to manufacture events and a record through aggressive strategies and maneuvers to harangue and distract."  (*Id.*)  And it further accused her of a "record of incivility and frankly unfounded accusations."  (*Id.*)  It was followed by another email that read: "Addendum:  More nonsense," which was sent before Ms. Zinsou had a chance to response to the first email. (*Id.*)

These emails were not an isolated occurrence.  Plaintiffs continued, over several weeks, to needlessly attack, dismiss and marginalize counsel.  For example:

>> From: Maia Kats
>> Sent: Thursday, October 8, 2020 8:10 PM
>> To: Tracy Zinsou
>> Cc: Laurence King; Michael Reese; Mario M. Choi; Matt Borden; David Kwasniewski
>> Subject: Re: Meet and Confer
>>
>> Tracy -
>>
>> I'm going to ignore everything in your email except for dates.

(Zinsou Decl., Ex. 2 at.3.)  To cap off their improper conduct, Plaintiffs threatened Ms. Zinsou with sanctions – all for the crime of asking for three days in a row when Plaintiffs will agree to be deposed.  (Zinsou Decl., Ex. 2.)  During all these abusive encounters, Ms. Zinsou was professional, did not yell back or return Plaintiffs' threats, and simply asked for three contiguous deposition dates.  (*Id.*)  To date, Plaintiffs have not provided them.  (*Id.* ¶ 5, Ex. 4.)

# ARGUMENT

Plaintiffs' motion fails both procedurally and substantively.  As a threshold matter, the motion should be denied because Plaintiffs refused to meet and confer in good faith.  On the merits, Plaintiffs offer no evidence or even argument to dispute the relevance of the Subpoenas, which undisputedly go to adequacy under Rule 23(a)(4).  Plaintiffs likewise offer nothing to prove that the Subpoenas somehow seek privileged information, or would not be burdensome to comply with; in fact, they have not served any objections to the Subpoenas at all.  The only argument they make is that BodyArmor's requests are subject to some type of heightened burden of proof or procedures.  This argument, built from an Eighth Circuit case, is contrary to the Federal Rules and the way that other Circuits and courts have interpreted them, and has no bearing on putative "class" cases like this one.  Their main rhetorical tactic appears to be to try to distract the Court from the merits by attacking BodyArmor's counsel.  As shown in the last section, these attacks are false.

## I.      PLAINTIFFS FAILED TO MEET AND CONFER IN GOOD FAITH

Plaintiffs claim that they "take *no* pleasure in this motion" (Mot. at 1 (emphasis in original).)  But in fact, they did not meet and confer in good faith before bringing it, which is reason alone to deny their Motion.  Judge Illston Standing Order, No. 3 (requiring a "good faith effort" to "meet and confer in person, or, if counsel are located outside the Bay Area, by telephone, to attempt to resolve their dispute informally."); *see Mahach-Watkins v. Depee*, No. C 05-1143 SI, 2007 WL 1394651, at *1 (N.D. Cal. May 10, 2007) ("Plaintiff's failure to meet and confer is reason alone for denying plaintiff's motion.").

Instead of trying to discuss and narrow the disputes, Plaintiffs did just the opposite.  First, they never served any objections to the Subpoenas.  Thus, prior to going to Court, they had not provided to BodyArmor in any form, much less discussed with BodyArmor, any argument about overbreadth.  Their motion still argues about Request No. 6, which was duplicated from discovery served on Plaintiffs and inadvertently included, which BodyArmor withdrew in its letter brief (Letter Brief at 2.)  Similarly, prior to seeking the Court's intervention, Plaintiffs had not made any specific assertion of privilege for BodyArmor to agree or disagree with, and to date, have not done so.

1       Second, Plaintiffs' intention was always to file their motion, regardless.  Prior to meeting

2  and conferring, Plaintiffs demanded that BodyArmor exchange letter briefs concerning the dispute.

3  (Zinsou Decl., Ex. 2.) When BodyArmor insisted that Plaintiffs have a phone call to try to work

4  through issues first and requested a small scheduling accommodation, Plaintiffs first said that all of

5  their lawyers were unavailable and that "we will initiate an opposition to the subpoena with the

6  Court." (Zinsou Decl., Ex. 2 at 8.)  Plaintiffs backtracked shortly thereafter and agreed to speak,

7  but during the call they refused to engage in discussion of any specific objections to the requests in

8  the Subpoenas or the authority for their general objection to the Subpoenas as a whole.  (Zinsou

9  Decl., ¶¶ 8-10.)  Plaintiffs filed their letter brief less than an hour after the call, underscoring their

10  intention to ignore the meet and confer process.  (Zinsou Decl., ¶ 8-11.)

11       As this Court has held, Plaintiffs' failure to properly meet and confer is reason alone for

12  denying their motion.  *See Depee*, 2007 WL 1394651, at *1; *see also Cardoza v. Bloomin' Brands,*

13  *Inc.*, 141 F. Supp. 3d 1137, 1146 (D. Nev. 2015) ("The Court finds that the truncated discussion

14  during the meet-and-confer process was insufficient to meet the counsel's obligations to engage in

15  a meaningful discussion as to each discovery dispute with the same specificity and support during

16  that process as they would in briefing a subsequent motion.").

## II.    PLAINTIFFS DO NOT DISPUTE THAT THE SUBPOENAS SEEK RELEVANT, NON-PRIVILEGED DOCUMENTS

       Plaintiffs offer no evidence, or even argument, that the Subpoenas seek information that is

irrelevant or privileged.  For good reason.  The information sought is relevant to adequacy, which

Plaintiffs have placed at issue by filing this case as a putative class action, and seeks the type of

facts that courts have found relevant to – and indeed, dispositive of – class certification.

       Plaintiffs accuse BodyArmor of incivility for pursuing discovery about adequacy, but they

do not refute BodyArmor's due process right to obtain it.  Under the established standard for the

scope of discovery under the Federal Rules, "Parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case…"  Fed. R. Civ. Proc. 26(b)).  Plaintiffs do not dispute that the discovery at issue is

relevant and make no effort to explain how it would be disproportional to the needs of the case.

1   Having failed to make such objections in response to the Subpoenas, failed to raise them during the

2   meet-and-confer process, and failed to raise them in their moving papers, Plaintiffs cannot do so for

3   the first time in reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (finding that the

4   "district court need not consider arguments raised for the first time in a reply brief.") (citing

5   *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003); *Kunkel v. Dill*, No. 1:09-CV-00686-LJO,

6   2010 WL 4530225, at *1 (E.D. Cal. Nov. 2, 2010) (denying plaintiff's discovery motion because

7   plaintiff failed to properly set forth his arguments in his motion and "arguments made for the first

8   time in a reply are generally waived.")

9        The Subpoenas seek only eight narrow categories of documents, targeted at Plaintiffs'

10   lawyers' solicitation of Plaintiffs and other clients, communications with a market competitor of

11   BodyArmor, and litigation funding for this action. Each of these categories is undisputedly

12   relevant.

13        **A.    Documents Related to Plaintiff Recruitment Are Relevant to Adequacy**

14        Requests 1 to 3 seek documents relating to whether Plaintiffs were recruited rather than

15   injured and whether there has been recruitment of plaintiffs in other matters.[2]  These requests are

16   relevant to adequacy under Rule 23, which is a bedrock requirement of class certification. *See* Fed.

17   R. Civ. Proc. 23(a)(4); *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (9th Cir. 1968) ("as a

18   result of the sweeping changes in Rule 23, a court must now carefully scrutinize the adequacy of

19   representation in all class actions").

20        As Plaintiffs do not dispute, class certification should be denied when the putative class

21   plaintiff was recruited. *See Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL

22   1223777, at *2-3 (N.D. Cal. Apr. 25, 2007).  In *Bodner*, Judge Patel denied class certification for

23   lack of adequacy because she found that the plaintiffs had been recruited.  She found that plaintiff's

24   lawyer, and not plaintiff, was the "driving force behind" the litigation because the plaintiff admitted

---

25   [2] Request No. 1 seeks "All COMMUNICATIONS and DOCUMENTS REGARDING the

26   solicitation of, or advertisement to, prospective plaintiffs in this action; Request No. 2 seeks "All
     COMMUNICATIONS between YOU and topclassactions.com and/or the PERSONS

27   who own, control or run this website; Request No. 3 seeks "All COMMUNICATIONS and
     DOCUMENTS REGARDING the solicitation of, or advertisement to, prospective plaintiffs in

28   other actions." (Zinsou Decl., Ex. 1 at 4-5.)

1  that he was recruited by plaintiff's lawyer through a newspaper solicitation, all of plaintiff's

2  knowledge about the suit came from the lawyer, and plaintiff's lawyer had serially recruited

3  plaintiffs in past cases. *Id.* at *2. Under these circumstances, Judge Patel held that this type of

4  "class action" is improper because it is a lawsuit constructed by lawyers in search of a "client":

> That plaintiff's counsel constructed this lawsuit before it had a
> plaintiff cannot be denied. This fact is borne out not only by
> plaintiff's own admissions, but by plaintiff's counsel's previous
> abortive attempt to bring a seemingly identical lawsuit in another
> district. Indeed, counsel himself admitted at the hearing that he or his
> firm had the research performed on the product at issue and had a
> theory about the product's deficiencies. Then, armed with that
> information they went in search of a plaintiff …

10 *Id.* at *3.

11  Similarly, in *Sanchez v. Wal Mart Stores, Inc.*, the court concluded that plaintiff failed to

12  prove adequacy where she had been recruited by counsel. 2009 WL 1514435, at *3 (E.D. Cal. May

13  28, 2009). The court held: "The record here demonstrates that Plaintiff's counsel, and not Plaintiff,

14  is the driving force behind this action." *Id.* This was so because plaintiff only learned that she

15  allegedly had a claim against defendants after counsel "contacted her and told her so." *Id.* The

16  court rejected this "cart before the horse" approach to litigation finding it was "not the proper

17  mechanism for the vindication of legal rights." *Id.*; *see also Moheb v. Nutramax Labs., Inc.*, 2012

18  WL 6951904 (C.D. Cal. Sept. 4, 2012) (finding lack of adequacy where "Plaintiff became class

19  representative in this action through her long-time friendship with the mother of one of her counsel,

20  and that counsel had been researching the possibility of a class action with respect to Cosamin prior

21  to Plaintiff becoming a client.").

22  Plaintiffs argue that because BodyArmor was already able to find evidence that Plaintiffs'

23  lawyers had tried to solicit clients through its investigation, BodyArmor is not entitled to any

24  discovery on this subject. (Mot. at 3.) Like the defendant in *Bodner*, BodyArmor is entitled to

25  discovery that tends to prove that not only were Plaintiffs recruited, but their recruitment was part

26  of a broader pattern of constructing lawsuits and then finding plaintiffs to bring them. 2007 WL

27  1223777 at *2-3 (noting that "The instant action is nothing more than Westrup, Klick bringing its

28  show to the Northern District and continuing its practice of selecting stand-in plaintiffs").

Further, whether a plaintiff has been solicited can require proof of intent.  For example, in *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010), defendants asserted "that Plaintiffs' counsel sent an investigator 'door-to-door in a subdivision within this judicial district to recruit individuals to serve as class representatives.'"  *Id.* at 339.  "Plaintiffs' counsel respond[ed] that they approached homeowners as part of their investigation, and not as part of a solicitation effort."  *Id.*  Judge Wilken held that "Although Defendants' solicitation allegations are troubling, without further evidence" she would not find lack of adequacy.  *Id.*  Evidence that counsel had repeatedly recruited plaintiffs would have been particularly probative to resolving that question.

In addition to being undisputedly relevant, BodyArmor has reason to believe that its discovery is not a "fishing expedition" and will show recruitment.  While they were outside the materials that the Court could consider on a Rule 12(b)(6) motion, there is evidence that Plaintiffs were recruited here.  (Dkt. No. 20-1, Ex. 1 (advertisement posted by plaintiffs' lawyers on TopClassActions.com, entitled "BodyArmor SuperDrink Class Action Investigation").)  Courts have allowed discovery into plaintiff recruitment under identical circumstances.  For example, in *Clark v. Hershey Co.*, No. C 18-06113 WHA, 2019 WL 913603, at *2 (N.D. Cal. Feb. 25, 2019), Judge Alsup held that proving recruitment on a Rule 12(b)(1) motion was too fact-bound, but that questions as to whether plaintiffs were recruited through a website similar to the one that may have been used here (classactionrebates.com) could be raised via summary judgment after "discovery on the way in which plaintiffs came to counsel."  *See also Stavrides v. Mellon Nat. Bank & Trust Co.*, 60 F.R.D. 634, 637 (W.D. Penn 1973) ("It is apparent from the questions asked by defense counsel that they were seeking to discover if two types of misconduct had occurred: solicitation and maintenance. Those questions that appear reasonably calculated to lead to the discovery of information on those two subjects we will order answered.").

BodyArmor has additional reason to suspect a pattern of recruitment based on third-party research, which has documented a massive uptick in food and beverage lawsuits in the Northern District of California (causing it to be nicknamed "the Food Court") that has been caused, in part, by recruited plaintiffs.  As one journalist has explained, with the passage of the Private Securities

Litigation Reform Act, many lawyers that had previously been filing stock-drop suits began suing food and beverage companies instead.  Vanessa Blum, "Welcome to the Food Court," *The Recorder* (Mar. 01, 2013).  Many of these cases are brought by fake public interest organizations or plaintiffs that were recruited, rather than injured.  *See*, *e.g.*, *Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, No. C 15-00567 WHA, 2015 WL 4881073, at *3 (N.D. Cal. Aug. 14, 2015) (dismissing complaint for lack of standing because plaintiff was "a self-appointed inspector general roving the aisles of our supermarkets. He continues on a five-year litigation campaign against artificial trans-fat and partially-hydrogenated oil and has admitted that he has inspected products for those ingredients before.").[3]

In light of all the facts above, BodyArmor has a reasonable basis for believing that the Subpoenas will tend to lead to evidence that it needs to defend this case.

Finally, while Plaintiffs have castigated BodyArmor for its limited document requests and insinuate that there has been no repeated recruitment, Plaintiffs are well aware that Courts have specifically allowed even more intrusive discovery from their own lawyers.  For example, Magistrate Judge Kandis Westmore recently denied another motion to quash filed by Plaintiffs' lawyers, where they sought to preclude the deposition of their "investigator" who had allegedly recruited one of the plaintiffs in suit.  Judge Westmore denied the motion to quash and allowed the deposition to proceed because it was relevant to adequacy and whether the absent class members were sufficiently protected:

> The fact that Mr. Cosgrove, an employee of Kaplan Fox, was Plaintiff Parikka's primary source of information forming the basis of her claims in this action may present a conflict of interest. Here, Mr. Cosgrove has apparently provided information to Plaintiff Parikka

---

[3] While recruited plaintiffs have suffered no injury, the same cannot be said for the costs such cases impose on the federal courts and food companies. There has been a 850% rise in food litigation in the federal courts between 2008 and 2016. Cary Silverman and James Muehlberger, *The Food Court: Trends in Food and Beverage Class Action Litigation* at 1, 5 (Feb. 2017).  The Northern District of California has been the most popular venue for these cases for years, shouldering the burden of about 20% of food litigation cases nationwide. *Id*. at 2, 8. "While it takes minutes for plaintiffs' lawyers to cut-paste-and-file a complaint, the cost of defending against a 'routine' class action typically costs a company between $1 million and $17.5 million dollars, and can run far higher." Id. at 5, 45.  It is not uncommon for the named plaintiffs to be family members, employees, or others with close ties to the network of lawyers that file the complaints. *Id*. at 14.

1
2
3

that led her to seek representation from his employer. If Mr. Cosgrove is cultivating Plaintiff Parikka to be a class representative for purposes of certification, and ultimately out of loyalty to his employer, the interests of the absent class members to have their case vigorously prosecuted may be impacted.

4   *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG KAW, 2017 WL 3124014, at *4

5   (N.D. Cal. July 24, 2017).

6           Other courts have similarly allowed discovery related to adequacy that is much broader than

7   the documents requested in the Subpoenas, such as discovery into ethical violations by Plaintiffs'

8   lawyers or depositions from them – none of which BodyArmor is seeking in its subpoenas.  *See*,

9   *e.g.*, *White v. Experian Information Solutions*, 993 F. Supp. 2d 1154, 1170 (C.D. Cal. 2014)

10  ("unethical conduct, both before and during the litigation in question, is relevant to determining

11  whether counsel is adequate under Rule 23"); *Brown v. Am. Airlines, Inc.*, 2011 WL 13217553

12  (C.D. Cal. July 13, 2011) (finding Magistrate's order denying defendant's motion to compel

13  compliance with subpoena to opposing counsel seeking the "discipline information" of his firm as

14  "clearly erroneous" and ordering plaintiffs to comply with the subpoena because of the importance

15  of the adequacy requirement). The reason Courts have allowed such sweeping discovery into

16  adequacy derives from the constitutional due process concern that absent class members must be

17  afforded adequate representation "before entry of a judgment which binds them."  *Nutramax Labs.*,

18  2012 WL 6951904, at *5 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

19          For all these reasons, Requests Nos. 1-3 are reasonably calculated to lead to the discovery

20  of relevant evidence and Plaintiffs' motion to quash these requests should be denied.

21          **B.      Documents Related to Third-Party Funding and Participation in the Litigation Are Relevant and Discoverable**

22          The remaining requests in the Subpoenas are also relevant to adequacy.  In particular,

23  Request No. 8 seeks "All documents regarding litigation funding related to this case," which this

24  Court has held to be relevant in the class context.  In *Gbarabe v. Chevron Corp.*, the defendant

25  sought production of plaintiff's funding agreement and related documents because they were

26  relevant to determining adequacy of representation in a putative class action.  No. 14-CV-00173-SI,

27  2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) at *1.  This Court agreed and concluded that "the

28

DEF'S OPPO. TO MOTION TO QUASH SUBPOENAS

1    litigation funding agreement is relevant to the adequacy determination and should be produced to

2    defendant." *Id.*at *2. This Court also noted that the confidentiality provision of the funding

3    agreement did not prohibit disclosure, but even if it did, such a provision would not override

4    discovery obligations or a court order. *Id.* Tellingly, Plaintiffs neglect to cite this decision.

5          Similarly, Requests 4, 5, and 7 of the Subpoenas seek documents and communications with

6    Gatorade, BodyArmor's competitor.[4] These all, again, go to the heart of adequacy and are relevant

7    to whether Plaintiffs will protect the interests of the class or are potentially beholden to the interests

8    of a market competitor.  For example, in *In re Graphics Processing Units Antitrust Litig.*, 253

9    F.R.D. 478, 498 (N.D. Cal. 2008), Judge Alsup disqualified a representative plaintiff in a class

10   action alleging price fixing of graphics cards where the plaintiff was involved in a separate

11   litigation involving one of defendant's competitors and had "purportedly [] taken an inconsistent

12   position with this suit." *Id.* Judge Alsup explained that "[i]t appears as if [plaintiff] along with his

13   counsel have attempted to contrive litigation" and "[s]uch behavior amounts to an abuse of the

14   class action process." *Id. see also Sipper v. Capital One Bank*, 2002 WL 398769 (C.D. Cal. 2002)

15   ("the court emphatically disagrees with counsel's relevance argument and is surprised by class

16   counsel's attitude toward a matter of such importance. A central concern of the Rules of Civil

17   Procedure governing class actions is ensuring that the class action format is not hijacked by parties

18   or attorneys to their own ends at the expense of the other class members. Of particular concern,

19   "courts fear that a class representative who is closely associated with the class attorney would

20   allow settlement on terms less favorable to the interest of absent class members.") (citing *Susman*

21   *v. Lincoln American Corp.*, 561 F.2d 86, 91 (7th Cir. 1977)); *Gordon v. Sonar Capital Mgmt. LLC*,

22   92 F. Supp. 3d 193, 198-200 (S.D.N.Y. 2015) (collecting cases) (finding lack of adequacy where

23   plaintiff has financial relationship that might compromise his ability to "exercise independent

24

25

26   _____

     [4] Request No. 4: "All COMMUNICATIONS with GATORADE or the GATORADE SPORTS
27   SCIENCE INSTITUTE."; Request No. 5: "All DOCUMENTS REGARDING GATORADE or the
     GATORADE SPORTS SCIENCE INSTITUTE."; Request No. 7: "All COMMUNICATIONS with
28   NAD RELATED TO this case."  (Zinsou Decl., Ex. 1 at 2.)

1   judgment in those situations, such as settlement negotiations, in which the interests of the class and

2   counsel may diverge").

3        Here, Plaintiffs have repeatedly invoked Gatorade as a paradigm for proper marketing (*See,*

4   *e.g.*, Dkt. No. 48 at 4, 18 & n.25, 19; Dkt. No. 43, ¶¶ 1-2, 8-10, 97-99; Dkt. No. 1, ¶¶ 82-84.)  They

5   have likewise repeatedly made reference to the NAD proceedings (a private industry dispute

6   resolution mechanism) between BodyArmor and Gatorade, and mirrored Gatorade's arguments

7   against BodyArmor.  Plaintiffs have therefore put Gatorade at issue, and the Subpoenas seek to

8   uncover the role Gatorade is playing in this litigation.  *See, e.g.*, *Nelson v. Millennium Labs*, Case

9   No. 2:12-cv-01301-SLG, 2013 WL 11687684, *5-6 (D. Ariz. May 17, 2013) (ordering production

10  of plaintiff's fee agreements because defendant asserted that market competitor was funding

11  litigation).  If Plaintiffs have had no such communications with Gatorade, as they appear to

12  contend, then responding to the Subpoenas will be simple.

13       Plaintiffs cannot simply decline to participate in discovery on matters that do not conform

14  with their theory of the case.  They concede that the discovery sought may be "useful" but instead

15  argue that it is somehow not "crucial."  (Mot. at 10.)  However, Plaintiffs' perception of "what this

16  litigation is about" ignores that Plaintiffs themselves chose to file this litigation as a putative class

17  action.  Adequacy is one hurdle they must meet in challenging BodyArmor's truthful marketing.

18  The Subpoenas seek information that goes to the heart of the class certification inquiry, and

19  Plaintiffs do not contend otherwise.

20       **C.      The Documents Sought Are Not Privileged**

21       Plaintiffs make only a feeble attempt, citing no case law, to argue that the documents at

22  issue are covered by work product or attorney-client privilege.  (Mot. at 9.)  Plaintiffs' conclusory

23  statement that "many if not all the requests encompass" privileged documents fails to carry their

24  burden of proving that an applicable privilege applies.  (Mot. at 9.)  *See Loop AI Labs Inc v. Gatti*,

25  No. 15-CV-00798-HSG(DMR), 2016 WL 787924, at *6 (N.D. Cal. Feb. 29, 2016) (party asserting

26  privilege on a motion to quash bears the burden of proving that it applies); *California Sportfishing*

27  *Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 644 (E.D. Cal. 2014) (party seeking to

28  withhold information has burden of proving application of work product protection). The lone

1    example Plaintiffs misleadingly cite is Request No. 6 – the Request BodyArmor expressly

2    withdrew in its letter brief (ECF No. 64 at 2) as Plaintiffs acknowledge a few pages earlier.[5]  (Mot.

3    at 6, 9).  Plaintiffs do not even attempt to argue how any other Request seeks the production of

4    exclusively, or even any, privileged information.  Because they cannot.

5        First, litigation funding agreements, and any communications with Gatorade and the NAD,

6    third-parties who Plaintiffs' counsel do not claim to represent, are clearly not privileged.  *See, e.g.*,

7    *Gbarabe*, 2016 WL 4154849 at *2 (recognizing putative class counsel's concession that funding

8    agreement was not privileged and should therefore be produced); *Bryant v. Mattel, Inc.*, 573 F.

9    Supp. 2d 1254, 1274 (C.D. Cal. 2007) (holding that "Mattel's question regarding who is paying

10   Bryant's legal fees … is likewise not objectionable" and that "fee-payment arrangements are

11   relevant to credibility and bias, and if asked in discovery, [plaintiff] must disclose who is paying

12   his legal fees.").

13       The same holds true for materials related to recruitment of prospective plaintiffs.  *Auscape*

14   *Int'l v. Nat'l Geographic Soc'y*, No. 92 CIV.6441 LAK, 2002 WL 31250727, at *1 (S.D.N.Y. Oct.

15   8, 2002) (finding "letters to prospective clients to encourage their involvement in a class action" are

16   not privileged); *Taylor v. Waddell & Reed, Inc.*, 2011 WL 1979486 (S.D. Cal. May 20, 2011)

17   (finding plaintiff's lawyer's letter to putative class members and the responses not privileged or

18   work product); *Schiller v. City of N.Y.*, 245 F.R.D. 112, 117-18 (S.D.N.Y. 2007) (finding no

19   attorney-client relationship for pre-litigation questionnaires).  In *Fangman v. Genuine Title, LLC*,

20   2016 WL 3362538, *3 (D. Md. June 7, 2016) (collecting cases), the Court compelled plaintiffs to

21   produce "solicitation materials" and rejected the same arguments Plaintiffs make here.  The Court

22   rejected the claim "that solicitation materials sent by SGS to potential Plaintiffs or class members

23   are evidently prepared in anticipation of litigation and are, therefore, shielded from discovery by

24   the work-product doctrine."  *Id*.  First, the Court noted that such materials are provided when an

---

25   [5] Plaintiffs argue that Defendant's withdrawal was belated because it occurred after Plaintiffs filed
26   their letter brief.  However, Defendant would have withdrawn it earlier had Plaintiffs properly
     followed the Court's procedures.  Plaintiffs refused to make specific objections to any request
27   during the parties meet and confer or prior to filing their letter brief.  (Zinsou Decl. ¶ 9).  Had they
     done so, the parties could have conferred about specific objections and narrowed the dispute
28   earlier.

1   "attorney-client relationship had not yet been established." *Id.*  The Court further reasoned that

2   such materials do not contain mental impressions in any event.  *Id.*

3          Accordingly, Plaintiffs have not proven that any of the requests in the Subpoenas seek

4   privileged information.

5          **D.     Plaintiffs Have Not Proven that Producing the Requested Information Would
                    Be Unduly Burdensome**

6

7          Plaintiffs argue, without offering any evidence, that the discovery sought is categorically

8   burdensome.  (Mot. at 8).  As the party seeking to withhold relevant evidence, Plaintiffs bear the

9   burden of offering such proof.  *In re Yassai*, 225 B.R. 478, 483–84 (Bankr. C.D. Cal. 1998)

10  (denying motion to quash finding movants did not meet "heavy" burden in demonstrating undue

11  burden where they presented "no evidence pertaining to the time, cost, or inconvenience"); *Miller

12  v. Ghirardelli Chocolate Co.*, No. C 12-4936 LB, 2013 WL 6774072, at *2 (N.D. Cal. Dec. 20,

13  2013) ("On a motion to quash a subpoena, the moving party has the burden of persuasion under

14  Rule 45(c)(3) …") (citing *Chevron Corp. v. Donziger*, No. 12–MC–80237 CRB (NC), 2013 WL

15  4536808, at *4 (N.D. Cal. Aug. 22, 2013).  Plaintiffs have failed to do so.  They have not even

16  given any indication of what the actual burden of producing such a limited set of documents would

17  be.  Plaintiffs argue only that responding to the discovery would be a "time sink for counsel who

18  would otherwise be preparing Plaintiffs discovery of Defendant." *Id.*  Plaintiffs do not explain why

19  their two law firms and multiple attorneys of record are unable to both respond to discovery and

20  propound it.  To the contrary, Plaintiffs claim BodyArmor would be "sorely disappointed if the

21  subpoenaed documents were produced by Plaintiffs' counsel" suggesting that Plaintiffs are aware

22  of documents that are responsive to the Subpoenas and could easily produce them.  (Mot. at 11).

23         Plaintiffs have not shown any burden, and the Subpoenas are within the scope of

24  permissible discovery.  Accordingly, the documents should be produced.

25  **III.   PLAINTIFFS' ATTEMPT TO IMPOSE ADDITIONAL REQUIREMENTS THAT
            ARE NOT IN THE FEDERAL RULES FAILS**

26         In seeking to quash the Subpoenas, Plaintiffs argue that they are improper under

27  "controlling case law" (Mot. at 1.)  But Plaintiffs have cited no such precedent in the Ninth Circuit.

28  Plaintiffs invoke *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) and "its

progeny" (Mot. at 4), but none of these cases are binding on this Court, and in any event, all are inapplicable here for at least three reasons: (1) they are contrary to other circuit precedent and the plain language of the Federal Rules, (2) they have never been applied to putative class actions, where adequacy is an issue, and (3) *Shelton* was intended to protect the attorney-client relationship, not documents.

Foremost, the heightened standards set out by the Eighth Circuit in *Shelton* do not comport with the plain language of Rule 26.  For this reason, the Second Circuit and other courts have rejected applying *Shelton*, even where, unlike here, a party seeks to take the deposition of the other side's counsel.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting *Shelton* and finding that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship"); *Phillips v. Indianapolis Life Ins. Co.*, No. 1:060-CV-1544-WTL-JMS, 2009 WL 1564384, at *3 (S.D. Ind. June 3, 2009) (rejecting "*Shelton*'s heightened burden-of-proof rule" because it "finds no support in the plain text of the Federal Rules of Civil Procedure"); *In re Allergan, Inc*, 2016 WL 5922717, at *3 (C.D. Cal. Sept. 23, 2016) (rejecting *Shelton*, noting that "the Ninth Circuit has never adopted the *Shelton* framework" and that "*Shelton* is not universally accepted").  The remaining cases cited by Plaintiffs are largely out-of-Circuit district court cases (Mot. at 5), none of which is binding.

Equally importantly, no case has applied the *Shelton* rule in the context of a putative class action.  Neither *Shelton* nor any of the cases Plaintiffs cite (Mot. 4-5) have been applied in the class action context.  Although BodyArmor explained that *Shelton* and *Fausto v. Credigy Services Corp.*, No. C 07-5658 JW (RS), 2008 WL 4793467 (N.D. Cal. Nov. 3, 2008), do not apply on this basis in their Letter Brief, Plaintiffs fail to respond to this distinction in their Motion and do not address Judge Guilford's reasoning in *Brown v. Am. Airlines, Inc.*, which is more apt here.  2011 WL 13217553 (C.D. Cal. July 13, 2011).  In *Brown*, the defendant subpoenaed plaintiffs' counsel for documents related to their history of class action litigation and "discipline history." *Id.* *1.  In granting motions to compel the discovery, and reversing a Magistrate's recommendation to the

DEF'S OPPO. TO MOTION TO QUASH SUBPOENAS

contrary, the Court distinguished *Shelton*, precisely because it was not a class action case, noting that filing a putative class case "puts adequacy of class counsel at issue":

> But the key consideration is that this case is a class action. Defendant seeks information about class counsel to oppose a motion for class certification, a motion which puts adequacy of class counsel at issue. *Shelton* was not a class action case and is thus distinguishable…
>
> Further, in the context of class certification, the Court has ongoing concerns about the due process rights of absent class members. The rights of unnamed individuals are largely in the hands of counsel for the named plaintiff. When ruling on a motion for class certification, the Court has the responsibility of protecting those unnamed class members from undue risk of inadequate advocacy. Thus, the Court takes Defendant's requested discovery particularly seriously.

*Id.* at *2

Plaintiffs' argument that their "motivations for bringing this suit are not salient" to the relevance of the Subpoenas (Mot. at 9) is, therefore incorrect in the class action context.  And again, none of the cases Plaintiffs' cite for this proposition (Mot. at 8-9) is a putative class action. As explained in *Brown* and further above, adequacy of counsel and injury to the plaintiffs are crucial findings to be made in a putative class action in the context of class certification.  *Shelton* and its "progeny" say nothing about discovery directed at putative class counsel.

Additionally, *Shelton* was never intended to apply to subpoenas for documents. At issue in *Shelton* were specific questions asked during the deposition of defendant's in-house counsel concerning the existence or nonexistence of documents that the plaintiffs believed the defendant possessed but had not produced during discovery.  *Id.* at 1325–26.  The defendant's attorney did in fact appear for her deposition but refused to answer questions about her knowledge of the existence of the documents despite the magistrate judge's order to do so.  *Id.* at 1325. The district court held that the attorney's refusal to comply with the magistrate judge's orders warranted a default judgment against the defendant.  *Id.*  The Eighth Circuit reversed, finding that opposing counsel's testimony regarding her knowledge of certain relevant documents was privileged as work product and noting its concern that deposing opposing counsel could have a  "chilling effect" on candid communications between that counsel and his or her client.  *Id.* at 1327.

The *Shelton* rule arose out of a desire to protect the attorney-client relationship, and practically speaking, to shield trial counsel from the risk of disqualification by being turned into a witness at trial.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 70-71 (rejecting the *Shelton* rule and finding that the rule arose "out of concern that the relationship between attorneys and clients be protected" similar to the disruptive "practice of forcing another party's trial counsel to testify as a witness"); *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) (declining to extend *Shelton* and finding that "The *Shelton* test was intend to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.")  On the other hand, the *Shelton* court also "recognize[d] that circumstances may arise in which the court should order the taking of opposing counsel's deposition." *Id.*  And the Eighth Circuit expressly noted that the documents themselves that plaintiffs sought were ***not privileged***, and indeed, had mostly already been produced.  *Id.* (noting that trial counsel had indicated that the documents about which plaintiffs' counsel was inquiring had been previously produced and that it would be willing to answer the same questions through the depositions of other employees who were not attorneys).  Some courts have even suggested written discovery, such as interrogatories, as an alternative to taking the deposition of opposing counsel.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 71 ("These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition."); *In re Allergan, Inc*, No, 2016 WL 5922717 at *3 ("*Shelton* applied its three part test to an attempt to *depose* opposing trial counsel…It is not at all clear that *Shelton* extends to other forms of discovery.").

The *Shelton* rule, therefore, was not intended to protect documents, but instead to shield opposing counsel from having to testify about their mental impressions as related to those documents which might reveal their strategy.  The Subpoenas are entirely consistent with this reasoning.  BodyArmor does not seek to "dispense with interrogatories, document requests, and depositions of lay persons," and simply turn Plaintiffs' counsel into a witness to probe their "legal theories and strategy."  *Id.* at 1327.  Nor will the Subpoenas be disruptive to Plaintiffs' attorney-client relationship with its lawyers.  To the contrary, BodyArmor properly seeks the production of

relevant, non-privileged documents, as discussed in Section II above.  The Court should order

production of these documents.

## IV.     PLAINTIFFS' ATTACKS ON BODYARMOR'S COUNSEL ARE FALSE AND MISLEADING

As part of their effort to avoid producing documents, Plaintiffs apparently did a Westlaw

search for "sanctions" and the name of defense counsel to assail our firm.  In addition to being the

very type of irrelevant *ad hominem* attacks the Court warned Plaintiffs against, Plaintiffs' citations

are incomplete and misleading.

Plaintiffs represent that in *S.E.C. v. Small Business Capital Corp.*, No. 5:12-cv-03237 EJD,

2012 WL 6584953, at *1-2 (N.D. Cal. Dec. 17, 2012), the Court "den[ied] Defense counsel's

motion for sanctions."  (Mot. at 3.)  In that case, however, our firm represented the subject of an

SEC prosecution for the limited purpose of trying to unfreeze his funds so that he could retain us.

After our efforts proved unsuccessful, we moved to withdraw, and the client filed a pro se motion

for sanctions.  The motion was obviously signed by him, which Plaintiffs would have known had

they bothered to look.  (Declaration of Matthew Borden ("Borden Decl."), Ex. 1.)

Plaintiffs' citation to *In re ComUnity Lending* (Mot. at 3), is also misleading.  In that case,

we represented ERISA beneficiaries whose life savings had been taken by their former employer.

Magistrate Judge Lloyd recommended imposing evidentiary sanctions because Defendant had

withheld evidence and witnesses until after discovery had closed.  (Borden Decl., Exs. 2-3.)  At

trial, Judge Ware declined to adopt Magistrate Lloyd's recommendation because he decided that

the prejudice had been cured by Defendant's belated document production.

In *Stone Brewing Co., LLC v. Miller Coors LLC.*, No. 18cv331-BEN(LL), 2019 WL

4450754, at *7 (S.D. Cal. Sept. 17, 2019), a trademark dispute over our client's mark STONE,

Magistrate Judge Lopez granted in part and denied in part our client's motion to compel but

declined to impose sanctions.  What Plaintiffs do not explain (Mot at 2-3), is that six weeks later,

upon further consideration and argument, Judge Lopez granted our client's motion for monetary

discovery sanctions because Defendant had withheld critical materials without justification.  *Stone

Brewing Co., LLC v. Miller Coors LLC.*, 2019 WL 5677844, at *6 ("The Court finds monetary

DEF'S OPPO. TO MOTION TO QUASH SUBPOENAS

1  sanctions to be an appropriate less drastic sanction that will still serve to address the prejudice

2  Plaintiff has suffered from Defendant's misconduct.").

3  　　　Plaintiffs cite *Walker v. B&G Foods, Inc*., No. 15-cv-03772-JST, 2019 WL 3934941, at *4

4  (N.D. Cal. Aug. 20, 2019), as a case "denying Defense counsel's motion to sanction opposing

5  counsel." (Mot. at 2). This is also untrue. As seen from the Order, our firm did not file a sanctions

6  motion but instead indicated that the Court *could* impose sanctions for the improper filing under

7  Rule 11(c)(3). What Plaintiffs also neglect to mention is that when our firm actually did file a

8  motion to sanction Mr. Walker, that motion was granted by the Ninth Circuit. (Borden Decl., Ex.

9  4.) They also neglect to mention that Mr. Walker dismissed his case with prejudice, after

10  maintaining a baseless labeling lawsuit against our client for five years, when he could no longer

11  avoid appearing for deposition.

12  　　　*Katziff v. Beverly Enterprises, Inc*., 2009 WL 10729569 (D. Mass. Apr. 17, 2009), (Mot. at

13  3), predated the formation of our firm. The undersigned counsel represented a class of the oldest

14  and most vulnerable ERISA plan members who had incurred substantial losses to their investments

15  in the plan's stable value fund as a result of Defendants' mismanagement. In the order cited by

16  Plaintiffs, Magistrate Judge Sorokin granted in part and denied in part my clients' motion to

17  compel, "without prejudice to the extent it seeks sanctions," *id*. at *4, and denied Defendants'

18  motion for sanctions. With the threat of sanctions pending, Defendants finally produced the

19  smoking gun document that ended the case (a finding by the Department of Labor that they had

20  breached their fiduciary duties).

21  　　　*Anderson v. Ghaly*, (Mot. at 3), is a § 1983 case our firm brought against the State of

22  California for its refusal to enforce its own federally-mandated hearing decisions to protect the

23  state's poorest and neediest nursing home residents. *See Anderson v. Ghaly*, 930 F.3d 1066 (9th

24  Cir. 2019). After repeated negotiations with numerous state officials, we sent a letter to Governor

25  Newsom, asking him to change the state's unlawful practice. (Borden Decl., Ex. 5.) After the

26  Governor refused to do anything, we sent a subpoena asking what he had done to address the issues

27  we had raised, and the Court quashed the subpoena. There is nothing sinister about losing a motion

28  to quash, and our firm has a fine working relationship with the State's lawyers. For that matter, we

have a perfectly good relationship with President Trump's lawyers at Main Justice and the Office of the Solicitor General – with whom we are extremely ideologically opposed – none of whom have tried to bully our associates or engage in any of the other hostilities detailed above.

Finally, *Rainsy v. Chevron Corp.*, No. 16-mc-80258-DMR, 2017 WL 5508913, at *4 (N.D. Cal. Nov. 17, 2017) (Mot. at 3), is an international human rights case that we filed on behalf of the leader of the opposition party in Cambodia.  Our client has lived in exile since a grenade attack by the totalitarian ruler Hun Sen failed to kill him (but killed his bodyguard), and we sought documents from Chevron to defend against Hun Sen's *in absentia* prosecution against Mr. Sam for criminal "defamation."  Ultimately, we obtained some of the evidence we sought, did not obtain other evidence, and had other materials subjected to a protective order such that they cannot be filed publicly.

## **CONCLUSION**

For the foregoing reasons, the Motion to Quash should be denied.


Dated:  October 23, 2020

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP


By:    /s/ Matthew Borden
                Matthew Borden

*Attorneys for Defendant*
*BA Sports Nutrition, LLC*

DEF'S OPPO. TO MOTION TO QUASH SUBPOENAS