# Exhibit 2

Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

```
Howard Clark, Todd Hall,       )
Angela Pirrone,                )
                               )
          Plaintiffs,          )
                               )
  VS.                          )      NO. C 18-6113 WHA
                               )
The Hershey Company,           )
                               )
          Defendant.           )
_____)
```

San Francisco, California
Monday, March 4, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:          Law Offices of Ronald A. Marron
                         651 Arroyo Drive
                         San Diego, CA   92103

                   BY:  **MICHAEL T. HOUCHIN, ESQ.**


For Defendant:           BraunHagey & Borden
                         351 California Street, 10th Floor
                         San Francisco, CA   94105

                   BY:  **DAVID KWASNIEWSKI, ESQ.**
                        **MATTHEW BORDEN, ESQ.**



Reported By:             Vicki Eastvold, RMR, CRR
                         Official Reporter

<u>**Monday - March 4, 2019**</u>                                    <u>**9:34 a.m.**</u>

P R O C E E D I N G S

---oOo---

**THE CLERK:**  Calling Civil Action 18-6113, Clark versus the Hershey Company.

Counsel, please state your appearances for the record.

**MR. HOUCHIN:**  Good morning, Your Honor.  Michael Houchin on behalf of the plaintiffs and the proposed class.

**THE COURT:**  Thank you.

**MR. KWASNIEWSKI:**  Good morning, Your Honor.  David Kwasniewski on behalf of defendant, The Hershey Company.  And with me is Matthew Borden.

**THE COURT:**  Okay.  Welcome to everybody.

How can I help you today?

**MR. HOUCHIN:**  Well, Your Honor, I think there's two issues that we haven't been able to resolve.  We worked out a deposition schedule earlier.

The first issue is costs associated with the depositions that were supposed to take place last week.  It was Friday before the depositions were supposed to take place and The Hershey Company canceled the depositions.  And we have nonrefundable travel costs that we think that we should be entitled to reimbursement under Rule 30(g).

And I guess the second issues deals with staging of discovery.

1          **THE COURT:**  Is what?

2          **MR. HOUCHIN:**  Staging of discovery.  The Hershey

3     Company contends that they should produce documents related to

4     malic acid first.  We also want other documents like product

5     labels and sales information that we think is relevant to class

6     certification.

7          **THE COURT:**  Let's go to the first one.  What was the

8     reason that Hershey canceled the deposition?  Well, first of

9     all, who noticed the depositions?

10         **MR. HOUCHIN:**  The Hershey Company noticed them.  And I

11    guess I'll let defense counsel --

12         **THE COURT:**  And they noticed them for where?

13         **MR. HOUCHIN:**  One was supposed to be in New York City

14    where our New York client lives.  The second one, which was why

15    we filed the letter brief, there was a prior agreement where we

16    were going to take plaintiff Hall's deposition in New York City

17    the day after plaintiff Pirrone's deposition.  However, the --

18    Hershey Company noticed the deposition to take place in Los

19    Angeles instead of New York City.

20         **THE COURT:**  But did that before or after the

21    agreement?

22         **MR. HOUCHIN:**  That was after the agreement, Your

23    Honor.

24         **THE COURT:**  Is that true?

25         **MR. KWASNIEWSKI:**  No, Your Honor.

1          **THE COURT:**  What's your version?

2          **MR. KWASNIEWSKI:**  We, beginning of January, asked

3     plaintiffs for the availability of the plaintiffs for a

4     deposition.  Plaintiffs, after some back and forth, responded

5     by telling us that Pirrone was available in New York and

6     plaintiff Hall was available in New York.

7          We responded to that by saying initially we can go forward

8     on that basis.  30 minutes later we said:  Actually, hold that.

9     We want to talk about when the other plaintiff is available.

10    Because plaintiff Clark is in California and plaintiff Hall is

11    in California.  So if they're both available around the same

12    time, we want to coordinate that.

13         They didn't get back to us for two weeks.  When we finally

14    followed up, they said that plaintiff Clark was available in

15    San Francisco.  So we sent deposition notices for each of the

16    plaintiffs for the location where they reside.

17         And then in response to that, they announced that they

18    were not going to make plaintiff Hall available in New York.

19    That even though we had noticed his deposition they had made

20    travel plans in the interim, and they filed the letter brief.

21         And on top of that, they also hadn't responded to our

22    subpoena which we served in January.

23         So given their failure to produce documents and their

24    refusal to make plaintiff Hall available where we noticed him,

25    we withdrew the deposition notices.

1      **THE COURT:**  I'm sorry.  Were the airplane tickets on

2  your side purchased before or after the written notices of the

3  depositions?

4      **MR. HOUCHIN:**  We purchased them before, Your Honor.

5  After we were discussing about doing the depositions in New

6  York City.  We never discussed doing plaintiff Hall's

7  deposition in Los Angeles on that day, which would have been

8  February 26.

9      **THE COURT:**  But he says that even though he agreed, 30

10  minutes later he said:  Cancel the agreement.

11     Is that true?

12     **MR. HOUCHIN:**  Correct, Your Honor.  But then on Friday

13  afternoon, the Monday before the depositions (sic), they

14  canceled all of them.  We thought that they were still going to

15  proceed with plaintiff Pirrone's deposition in New York City.

16  By that time we'd already booked travel arrangements.

17     **THE COURT:**  Why didn't you do at least the New York

18  one?

19     **MR. KWASNIEWSKI:**  Well, Your Honor, we didn't think it

20  made sense to proceed with any of the depositions when one of

21  the witnesses wasn't going to appear and they hadn't produced

22  any of the documents we sought with our subpoena.

23     **THE COURT:**  What do you answer -- let's hold that

24  first thought.

25     What do you say about the documents part?

 1      **MR. HOUCHIN:**  Your Honor, we started talking about

 2  these depositions long before a subpoena was even served.  The

 3  subpoena was directed to our law firm and it's incredibly

 4  overbroad.  It deals with virtually no documents that the

 5  plaintiffs would have any personal knowledge of.

 6      We don't see why the documents would even be relevant to

 7  the plaintiffs' depositions.  They're seeking things like

 8  advertising from our law firm.  Something --

 9      **THE COURT:**  Counsel made it sound like these were

10  subpoenas directed to the plaintiffs.

11      **MR. HOUCHIN:**  No.  They subpoenaed our law firm.

12      **THE COURT:**  Why didn't you tell me it was directed to

13  the law firm?  Why did you hide that fact from me?

14      **MR. KWASNIEWSKI:**  Well, I'm not trying to hide that

15  fact, Your Honor.

16      **THE COURT:**  Why is it relevant to get documents out of

17  the law firm?

18      **MR. KWASNIEWSKI:**  Because one of the key issues in

19  this case is how the plaintiffs were recruited.  For example,

20  plaintiff Clark only filed -- only purchased the product after

21  his lawyer sent a demand letter to The Hershey Company.  So we

22  think there are real reasons here to doubt that the plaintiffs

23  suffered any actual injury.  And since the law firm is in

24  possession of its recruitment materials, that's why we targeted

25  them with the subpoena.

1          **THE COURT:**  When was the subpoena served?

2          **MR. KWASNIEWSKI:**  January 23.

3          **THE COURT:**  How long has that been?  Has anyone

4    brought a motion to quash that?

5          **MR. HOUCHIN:**  Yes, your Honor.  We filed the motion to

6    quash the subpoena in the Southern District of California where

7    our law firm is located.

8          **THE COURT:**  When was that filed?

9          **MR. HOUCHIN:**  That was filed last week or two weeks

10   ago.  I can't recall the exact date when it was filed, Your

11   Honor.

12         **THE COURT:**  Does your letter say when it was filed?

13         **MR. HOUCHIN:**  No, it doesn't, Your Honor.

14         **THE COURT:**  Do you know when it was filed?

15         **MR. KWASNIEWSKI:**  Yeah.  I have it right here, Your

16   Honor.

17      Yes.  That was filed on February 21.

18         **THE COURT:**  February 21.  When were the notices of

19   deposition of the plaintiffs?

20         **MR. HOUCHIN:**  They first served the notices in early

21   January.  That's when we started talking about scheduling the

22   depositions was through January and early February.

23         **THE COURT:**  And the three notices were for the LA, San

24   Francisco and New York.

25         **MR. HOUCHIN:**  Originally.  And then we said that we

1   would make plaintiff Hall available in New York, which would be

2   the day after plaintiff Pirrone's deposition.  We thought that

3   would be most convenient for the parties and their counsel.  I

4   think it was unreasonable to expect us to have to go from New

5   York City to Los Angeles the next day and then to San Francisco

6   the day after that.

7         THE COURT:  Well, put aside whether that's

8   unreasonable or not.  I'm just focusing on the date now.  The

9   date of the notices was what?

10        MR. KWASNIEWSKI:  We served the deposition notices on

11  February 19.

12        MR. HOUCHIN:  But those were the amended deposition

13  notices.

14        THE COURT:  Wait a minute.  When were the original

15  notices?

16        MR. KWASNIEWSKI:  That was back in January, I believe,

17  Your Honor.

18        THE COURT:  All right.  Give me that date, please.

19        MR. KWASNIEWSKI:  Yeah, I'm afraid I don't have that

20  date.

21        THE COURT:  All right.

22     Do you have it?

23        MR. HOUCHIN:  I don't have that date.  But I can tell

24  you, Your Honor, it was -- the deposition notices were served

25  before the subpoena was served.

1          **THE COURT:**  All right.   Sometime in January the

2    original notices.   When was the subpoena on your firm?

3          **MR. HOUCHIN:**  I believe that was served January 23,

4    Your Honor.

5          **THE COURT:**  And when was this telephone call in which

6    the alleged agreement took place?

7          **MR. HOUCHIN:**  We had a phone call -- I believe it was

8    on January 23, and then there was a series of email exchanges

9    dealing with the deposition.

10          **THE COURT:**  Was that before or after the subpoena?

11          **MR. HOUCHIN:**  I think the January 23 phone call was

12    actually the same day that the subpoena was --

13          **THE COURT:**  Yes, but before or after?

14          **MR. HOUCHIN:**  I believe before, Your Honor.  We had no

15    knowledge of the subpoena during the time of the phone call.

16          **THE COURT:**  All right.  Telephone call re what?

17          **MR. HOUCHIN:**  Deposition scheduling.

18          **THE COURT:**  In that phone call, was there any

19    reference to the subpoena that Hershey was going to be serving

20    on the plaintiff firm?

21          **MR. HOUCHIN:**  There was no mention of the subpoena

22    during that phone call.

23          **THE COURT:**  True, counsel?

24          **MR. KWASNIEWSKI:**  That's my understanding, Your Honor.

25          **THE COURT:**  All right.  What was the next step after

```
 1   the phone call on January 23?

 2           MR. HOUCHIN:  There was a series of email exchanges.

 3   And during one of those mail exchanges, counsel for defendants

 4   confirmed that Mr. Hall's deposition could take place in New

 5   York City the day after plaintiff Pirrone's deposition.

 6           THE COURT:  That was by email?  What date was that

 7   email?

 8           MR. HOUCHIN:  That email was dated February 1.

 9           THE COURT:  And who could -- which plaintiff could go

10   in New York?

11           MR. HOUCHIN:  Well, one of the plaintiffs resides in

12   New York.

13           THE COURT:  You said the guy in LA.  What's his name?

14           MR. HOUCHIN:  Plaintiff Hall, Your Honor.

15           THE COURT:  Hall?

16           MR. HOUCHIN:  Yes.  Todd Hall.

17           THE COURT:  H-A-L-L.

18           MR. HOUCHIN:  Yes.

19           THE COURT:  Hall could be New York.  What, on the next

20   day?

21           MR. HOUCHIN:  Yes.  The day after plaintiff Pirrone's.

22           THE COURT:  Then 30 minutes later there was a

23   cancellation of that.

24           MR. HOUCHIN:  We didn't understand it as a

25   cancellation.  What The Hershey Company asked was to set
```

1    plaintiff Clark's deposition.  Plaintiff Clark is the San

2    Francisco client.  We got back to counsel for Hershey and set

3    that deposition the day after plaintiff Hall's deposition was

4    supposed to take place that.  That would have been February 27.

5              THE COURT:  So who was the one that lives in New York?

6              MR. HOUCHIN:  Plaintiff Pirrone.

7              THE COURT:  How do you spell that?

8              MR. HOUCHIN:  P-I-R-R-O-N-E.

9              THE COURT:  Okay.  And what date were you talking

10   about in that email for the Hall and -- I'm sorry -- for the

11   Pirrone deposition?

12             MR. HOUCHIN:  That would be February 25 in New York

13   City.

14             THE COURT:  And when would Hall have been?

15             MR. HOUCHIN:  February 26 in New York City, the day

16   after.

17             THE COURT:  And when would Clark then have been?

18             MR. HOUCHIN:  February 27 in San Francisco.

19             THE COURT:  So that's what -- now, did Clark -- did

20   Hershey ever commit to Clark in San Francisco on February 27?

21             MR. HOUCHIN:  Yeah.  The week before the depositions

22   they served amended deposition notices for plaintiff Clark

23   noticing the deposition on February 27 in San Francisco as we

24   agreed to.  But then the Friday before the depositions were

25   supposed to take place they informed us that they were

1    canceling the depositions.

2         **THE COURT:**  Wait a minute.  Now, you got ahead of me a

3    bit.  Did you get back to -- in the email that happened on

4    February 1, what was said about Clark in San Francisco on

5    February 27?

6         **MR. HOUCHIN:**  We were confirming with our client his

7    availability.  And then I believe on or around February 14 we

8    got back to defense counsel saying that plaintiff Clark could

9    be available on February 27 as was discussed.

10        **THE COURT:**  So just up to February 14, had there ever

11   been any connection made between the subpoena that was served

12   on your law firm and whether or not these depositions would go

13   forward?

14        **MR. HOUCHIN:**  No.  There was no communications to that

15   effect.  In fact, it was in defendant's letter brief when they

16   first brought up the issue that they wanted the subpoena

17   documents for purposes of the plaintiffs' depositions.

18        **THE COURT:**  When were the amended notices?

19        **MR. HOUCHIN:**  The amended notices were served on

20   February 19.

21        **THE COURT:**  And those provided for what?

22        **MR. HOUCHIN:**  Those provided that plaintiff Pirrone's

23   deposition would take place on February 25 in New York as was

24   discussed.

25        The amended notice for Todd Hall had his deposition taking

place on February 26, but it noticed the location for Los

Angeles, which we never discussed.

     It was our understanding that they wanted to take

plaintiff Hall's deposition in New York City based on our prior

conversations and our email correspondence.  But when they

served the amended deposition notice for Todd Hall, that's the

first time that I guess they wanted to proceed with his

deposition in LA.

          **THE COURT:**  And what day was Clark in the amended

notices?

          **MR. HOUCHIN:**  In the amended notice, plaintiff Clark's

deposition was set to take place on February 27 in San

Francisco, which is what we discussed and what we agreed to.

          **THE COURT:**  So -- all right.  That's February 19.

What then happened?

          **MR. HOUCHIN:**  Shortly after the deposition notices

were served, on the same day I wrote an email to opposing

counsel notifying them that we didn't discuss doing plaintiff

Hall's deposition in Los Angeles.  I said that we could make

plaintiff Hall available in New York City on February 26 as we

discussed.

     The Hershey Company refused to take his deposition in New

York City and insisted that we travel to Los Angeles for his

deposition.  And that's why we filed the letter brief

requesting a protective order.

1          **THE COURT:**  When did you buy the airplane tickets?

2          **MR. HOUCHIN:**  We bought the airplane tickets, I

3    believe, about a week before the depositions were supposed to

4    take place -- or, I mean a week before they were noticed, I

5    believe, Your Honor.

6          **THE COURT:**  What day was that?

7          **MR. HOUCHIN:**  I don't have the exact date, but --

8          **THE COURT:**  Like February 12?

9          **MR. HOUCHIN:**  Sometime around then.  And we didn't

10   cancel the airline tickets because we thought that they were

11   still going to proceed with plaintiff Pirrone's deposition in

12   New York City.  And we never received notification that they

13   were going to cancel that deposition until the Friday before,

14   which would have been February 22, I believe.

15         **THE COURT:**  February 22.  What happened?

16         **MR. HOUCHIN:**  We received notification from The

17   Hershey Company that they're not moving forward with any of the

18   plaintiffs' depositions.

19         **THE COURT:**  When was the -- did Hershey give -- what

20   reason did Hershey give you on February 22?

21         **MR. HOUCHIN:**  I'll let defense counsel speak to that.

22         **THE COURT:**  Well, no.  You can speak to what they told

23   you.

24         **MR. HOUCHIN:**  Well, they told me that they didn't want

25   to proceed with any of the depositions since we weren't making

```
 1   plaintiff Hall available in Los Angeles.  I again reiterated
 2   that we booked nonrefundable travel accommodations and were
 3   still willing to make plaintiff Hall available in New York City
 4   the very next day after plaintiff Pirrone.  Plus, it doesn't
 5   make sense why they'd want to travel to Los Angeles the day
 6   after the deposition in New York when we're willing to make
 7   plaintiff Hall available in New York the very next day.
 8           THE COURT:  All right.
 9       Is that true?
10           MR. KWASNIEWSKI:  Well, I think there's a couple of
11   steps in that chronology that's mis --
12           THE COURT:  I'd like for you to clarify it.
13           MR. KWASNIEWSKI:  Sure.  So I think going back to the
14   correspondence before the amended depositions were served,
15   there was a preliminary statement saying that we can confirm
16   the depositions in New York.  30 minutes later we wrote back
17   and said:  Actually, before confirming them, can you let us
18   know about Mr. Clark's availability?  It will make most sense
19   to confirm all three depositions simultaneously so we have one
20   clear schedule.
21       After that we didn't hear from plaintiff's counsel for two
22   weeks.  We had to follow up again to try to learn Mr. Clark's
23   availability.
24       When they told us his availability and he would be
25   available in SF the day after Mr. Hall was available, we
```

 1    noticed Mr. Hall for Los Angeles and Mr. Clark for SF.  They

 2    responded saying they wouldn't make Mr. Hall available.  They

 3    filed their letter brief.  And on February --

 4         **THE COURT:**  But I thought you'd already had an

 5    agreement that you would produce Hall in New York on the 26th.

 6         **MR. KWASNIEWSKI:**  No, Your Honor.  We didn't agree to

 7    that.  Or, to the extent we did, we agreed to it for 30

 8    minutes.  But what we said --

 9         **THE COURT:**  Well, wait.  No.  The way you just pitched

10    it was that you agreed to that, and then you said:  Well, hold

11    that until we get Clark in the picture.  And you wanted to know

12    when he was available.  Eventually they said the 27th.

13         But why would that undo the New York part of having the

14    two depositions in New York?

15         **MR. KWASNIEWSKI:**  Well, what happened after that I

16    think is important.

17         So they filed their letter brief on the 21st.  And that

18    same day, the Court issued its order setting this discovery

19    conference.  What the Court didn't do was grant their motion

20    for a protective order.

21         So the next day we followed up to see if Mr. Hall would be

22    available in LA.  And they said that they would not make him

23    available in LA.  He would only be available in New York.

24         And on top of that, it was now a week after the response

25    deadline for the subpoena.  So based on -- and we hadn't heard

1  anything from them.  So based on their failure to respond to

2  the subpoena, and their refusal to make Mr. Hall available in

3  accordance with his deposition notice, we decided to take all

4  of the depositions off calendar.

5      The point here --

6          **THE COURT:**  Yeah, but meanwhile he's got tickets.

7          **MR. KWASNIEWSKI:**  Well, that -- we didn't learn about

8  that until after we asked for Mr. Hall to be made available in

9  LA.  They didn't consult with us on their travel arrangements,

10  and we heard nothing from them.

11          **THE COURT:**  Maybe the thing to do is just say you

12  don't get to take any of these people's depositions.  I don't

13  think you've been fair here.  I think you tricked him.  I think

14  you tricked the plaintiffs.

15          **MR. KWASNIEWSKI:**  Not at all, Your Honor.

16          **THE COURT:**  Yes, you did.  Yeah, you did.  You said

17  that the guy Hall would be -- you would take his deposition in

18  New York.  And then you reneged on that 30 minutes later and

19  then said:  Oh, well, let's roll Clark into this, too.  So they

20  eventually get back to you two weeks later and say Clark in San

21  Francisco.

22      And then you renege on it again and say:  No, no.  Now

23  we're going to do Hall in LA in order to run up his costs.

24      That's what's going on here.  You think I don't understand

25  that?  How many years do you think I practiced law?  I

understand how you want to run up their costs.  Maybe the

answer is you don't get to take their depositions at all as a

penalty for what you've done here.

    **MR. KWASNIEWSKI:**  Your Honor, we're not trying to

manipulate things or run up costs at all.  We thought it would

make more sense to depose everyone in the town where they live.

    **THE COURT:**  No.  Why is that?  That's ridiculous.  You

just want to run up his cost to go to LA.  That doesn't make

sense to depose him in LA if he's willing to come to New York

and save everybody the trouble.

    **MR. KWASNIEWSKI:**  Well, I don't see how that really

saves anyone any trouble.

    **THE COURT:**  It saves him the trouble of having to fly

to LA.  It saves you the trouble of having to fly to --

    No, but the big, giant company Hersheys has got plenty of

money to pay your law firm to go there.

    **MR. KWASNIEWSKI:**  Well, Your Honor, what we are really

trying -- the ultimate goal here is to try to structure these

depositions so that we can get testimony from each of the

plaintiffs sequentially.

    **THE COURT:**  And here's another thing.  You somewhere

in here say that they don't have the right to attend the other

guy's deposition.  You're crazy.  They're a party to the case

and they have the right to be there and hear them.  If you're

not a good enough cross-examiner to cross-examine the other

```
 1    plaintiff and get past the point that he heard the other,

 2    that's too bad, you're not a good enough cross-examiner.

 3    You're not going to get away with that.  They can attend every

 4    one of these depositions if they want.  They have a right to do

 5    that.  They're a party.

 6         MR. KWASNIEWSKI:  Your Honor, we're fine with that.

 7    We're not trying to stop that from happening.  That's a

 8    suggestion that they made for the first time in their letter

 9    brief.  And as we said in our letter brief, they're absolutely

10    free to do that.  We're not trying to prevent that from --

11         THE COURT:  Why, then, isn't it okay to take his

12    deposition in New York if he's willing to be there, after

13    you've agreed to do it?  Why isn't it okay?  Why do you insist

14    on going to LA?

15         MR. KWASNIEWSKI:  Well, Your Honor, we think it makes

16    the most sense for everyone involved to have the depositions

17    where the plaintiffs reside.  You know, we have offices in New

18    York with video capabilities and we can video conference in to

19    them.  But when the plaintiffs are in California we think it

20    makes more sense for us to quickly and easily travel to the

21    places where they actually live.

22         THE COURT:  No.  That is a ridiculous proposition.  It

23    is crystal clear you're doing this to run up the cost and

24    impose this burden on the plaintiffs.  That's all that's going

25    on here.  I'm very disappointed that the defense counsel in
```

this case and that Hersheys would do such a thing.

All right.  Here's the answer to this.  Do you want these depositions or not?

**MR. KWASNIEWSKI:**  Yes.

**THE COURT:**  All right.  You're going to pay for his cost to go to New York.  You're going to do it.  This is -- you did not behave in a proper way in this case.

These depositions are going to go forward in New York and you're not going to get any of the documents out of that law firm beforehand.  That came up after -- you never tied that in to this.  These depositions are going to go forward and you're not going to get away with that.  So you can take the depositions of those two people in New York.

Is he still available in New York?

**MR. HOUCHIN:**  Your Honor, during our meet and confer session earlier, we agreed to a new schedule.  Unfortunately, plaintiff Hall will probably have to be available in Los Angeles this time.

**THE COURT:**  All right.  Then your expenses to New York are going to be paid for by them.

**MR. HOUCHIN:**  Thank you, Your Honor.

**THE COURT:**  That's the order.  The others can now go forward in LA and San Francisco because you've screwed up the whole thing that they went to a lot of trouble to work out.  And then -- and you do not get -- you got to take those

1  depositions without the benefit of those documents from the law

2  firm.

3      Now, if the documents from the law firm wind up giving a

4  legitimate need to re-take their depositions, okay, I'll let

5  you go back -- at your expense, not at the plaintiffs', but

6  defense expense -- and get extra time to do that.

7      I want to say something.  I think in this case the

8  plaintiffs acted reasonably.  I don't think the defense acted

9  reasonably.  I think you were trying to run up their costs.

10  Now, I know that your law firm, and I know that Hersheys,

11  probably think these food cases are crapola and it is -- okay

12  that's the way you feel.  But that's not the way I feel.  I

13  feel that both sides are going to get fairly heard.  And it is

14  wrong to run up costs for the other side just to somehow punish

15  them.  That's not the way we do business in my court.

16      All right.  Is there anything more I can do --

17      What was that other issue you wanted me to rule on?

18          MR. HOUCHIN:  Yes.

19          THE COURT:  By the way, I'm not in any way -- don't go

20  down to the judge in LA and say that I've said that you win

21  that motion and they can't get those documents.

22          MR. HOUCHIN:  Of course, Your Honor.

23          THE COURT:  I'm not saying that at all.  I do not --

24  I'm not going to intimate any ruling on whether or not that

25  subpoena should be enforced or not.  That's not my job and I'm

1  not intimating that.

2      All right.  What was the other issue you wanted me to rule

3  on?

4      **MR. HOUCHIN:**  So The Hershey Company's discovery

5  responses were due on March 1.  It's my understanding that they

6  served them by email, but we haven't received the responses

7  yet.  I haven't reviewed them.

8      During our meet and confer conference earlier, defense

9  requested that we stage the responses where they would produce

10  documents related to malic acid first, and the product labels

11  and sales information later.

12      Plaintiffs aren't really --

13      **THE COURT:**  No.  We're not staging anything.  Here's

14  the other trick I've learned in this.  When you make your

15  motion for class certification, the defense game book number 1

16  is:  Oh, Judge, they don't have enough evidence to show that

17  this class is coherent.  Or, that there's a uniform method of

18  proof.  Or, -- and the answer to that is, if you dig deep

19  enough, well, they didn't produce them.  They wanted staged

20  discovery.

21      Well, no, we don't confuse the judge that way.  You get

22  all the documents.  No staged discovery.  All right?

23      What else can I help you with?

24      **MR. HOUCHIN:**  I believe that's everything, Your Honor.

25  Thank you.

1          **THE COURT:**  All right.

2     Yes, sir.

3          **MR. KWASNIEWSKI:**  So I think I understand what Your

4     Honor's answer is likely to be, but I would just like to raise

5     we had also discussed the 30(b)(6) deposition notice that

6     plaintiff served on Hershey.

7          Again, our proposal is to make the witnesses with

8     knowledge of the use of malic acid available this month in

9     advance of the April 10 briefing deadline.  And to make

10    witnesses with knowledge of --

11         **THE COURT:**  Is this in the paperwork here?

12         **MR. HOUCHIN:**  No, it's not, Your Honor.

13         **THE COURT:**  Then I'm not going to deal with it, if you

14    didn't raise this in the paperwork.

15         **MR. KWASNIEWSKI:**  That's fine, your Honor.

16         **THE COURT:**  You need to bring a fresh motion so it's

17    not coming out of the left field.

18         **MR. KWASNIEWSKI:**  That's fine, Your Honor.

19         **THE COURT:**  All right.  Are we done for today?

20         **MR. HOUCHIN:**  Yes.  Thank you, Your Honor.

21         **THE COURT:**  Thank you.

22                         ---oOo---

23

24

25

1

2

3                    **<u>CERTIFICATE OF REPORTER</u>**

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:   Tuesday, March 5, 2019

8

9

10     _____

11              Vicki Eastvold, RMR, CRR
                   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States District Court
For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  HOWARD CLARK, TODD HALL, and
ANGELA PIRRONE, individually and on

11  behalf of all others similarly situated,           No. C 18-06113 WHA

12         Plaintiffs,

13    v.                    **ORDER FOLLOWING**
**DISCOVERY HEARING**

14  THE HERSHEY COMPANY, a Delaware

15  corporation,

16         Defendant.

17

18       This order summarizes the rulings made on the record at today's discovery hearing.

19  Defendant shall pay the costs incurred by plaintiff Todd Hall in connection with the cancelled

20  New York deposition as well as any future costs incurred by plaintiff Hall should he wish to

21  attend plaintiff Angela Pirrone's deposition in New York.  Plaintiffs' depositions shall proceed

22  on the dates and locations agreed upon by the parties even if defendant has not yet received

23  documents pursuant to the subpoena served on plaintiffs' counsel's law firm.  Should defendant

24  need to depose plaintiffs a second time after receiving such documents, those depositions will

25  be at defendant's expense.

26      **IT IS SO ORDERED.**

27

28  Dated: March 4, 2019.

                                WILLIAM ALSUP
                                UNITED STATES DISTRICT JUDGE

1  Steven A. Zalesin (admitted *pro hac vice*)
   sazalesin@pbwt.com
2  Jane Metcalf (admitted *pro hac vice*)
   jmetcalf@pbwt.com
3  **PATTERSON BELKNAP WEBB & TYLER LLP**
   1133 Avenue of the Americas
4  New York, NY 10036
   Telephone: 212.336.2110
5  Facsimile: 212.336.2111

6  Gary T. Lafayette (SBN 88666)
   glafayette@lkclaw.com
7  Brian H. Chun (SBN 215417)
   bchun@lkclaw.com
8  **LAFAYETTE & KUMAGAI LLP**
   1300 Clay Street, Ste 810
9  Oakland, CA 94612
   Telephone: 415.357.4600
10 Facsimile: 415.357.4605

11 *Attorneys for Defendant The Hershey Company*

12 **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
13 **SAN FRANCISCO DIVISION**

14

15 HOWARD CLARK, TODD HALL,
   ANGELA PIRRONE,
16 individually and on behalf of all others
   similarly situated, and the general public,

17          Plaintiffs,

18              v.

19 THE HERSHEY COMPANY, a Delaware
   corporation,
20

21          Defendant.

Case No. 18-cv-06113-WHA

**NOTICE OF WITHDRAWAL AND
SUBSTITUTION OF COUNSEL FOR
DEFENDANT THE HERSHEY COMPANY;
[PROPOSED] ORDER**

Date: n/a
Judge: Hon. William Alsup

22

23          Pursuant to Local Rule 11-5, counsel for Defendant The Hershey Company ("Hershey")

24 hereby moves to withdraw Jonas Noah Hagey, Matthew Brooks Borden, and David Howard

25 Kwasniewski of BraunHagey & Borden LLP as counsel for Hershey in the above-captioned matter.

26 Patterson Belknap Webb & Tyler LLP and Lafayette & Kumagai LLP have appeared on Hershey's

27

28                                         NOTICE OF WITHDRAWAL AND
                                           SUBSTITUTION OF COUNSEL
                                           18-cv-06113-WHA

behalf, and will continue to represent Hershey, in this matter.  Hershey has consented to this withdrawal, and Plaintiffs do not oppose this motion.

Given that Hershey will continue to be represented by the law firms of Patterson Belknap Webb & Tyler LLP and Lafayette & Kumagai LLP, no delay or prejudice will result from the withdrawal.  Accordingly, counsel for Hershey respectfully requests that this Court enter the proposed order attached hereto permitting the withdrawal of BraunHagey & Borden LLP as counsel of record.

Dated:  April 16, 2019

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (Admitted *Pro Hac Vice*)
sazalesin@pbwt.com
Jane Metcalf (Admitted *Pro Hac Vice*)
jmetcalf@pbwt.com
1133 Avenue of the Americas
New York, New York  10036
Telephone (212) 336-2110
Facsimile (212) 336-2111

LAFAYETTE & KUMAGAI LLP
Gary T. Lafayette (SBN 88666)
glafayette@lkclaw.com
BRIAN H. CHUN (SBN 215417)
bchun@lkclaw.com
1300 Clay Street, Ste. 810
Oakland, California 94612
Telephone:  (415) 357-4600
Facsimile:  (415) 357-4605

By:____/s/ Steven A. Zalesin_____
        Steven A. Zalesin

Attorneys for The Hershey Company

**[PROPOSED] ORDER**

The Court hereby permits the withdrawal of Jonas Noah Hagey, Matthew Brooks Borden, and David Howard Kwasniewski of BraunHagey & Borden LLP as counsel for Defendant in the above-captioned matter.

**IT IS SO ORDERED.**

Dated: _____          By: _____
                                          Honorable William Alsup
                                          United States District Court Judge