

Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1560
Oakland, CA  94612
Phone:  415.772.4700
Fax:  415.772.4707
Email:  mail@kaplanfox.com
www.kaplanfox.com

January 13, 2021

**Via CM/ECF**
Honorable Susan Illston, U.S.D.J.
Phillip Burton Federal Building & U.S. Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Silver, et al. v. BA Sports Nutrition, LLC*, Case No. 3:20-cv-00633-SI
          Discovery Letter

Dear Judge Illston:

On behalf of Plaintiffs in the above-captioned matter, we respectfully write to seek input from the Court on a discovery matter that the parties are unable to resolve themselves. More specifically, we write concerning Plaintiff Mark Silver's deposition, which Defendant aborted in its final moments. In full disclosure, by threatening sanctions and improper conduct charges (unless Plaintiff Silver agrees to dismiss his action and pay defense fees), Defendant seeks to escalate this matter. Plaintiffs maintain, however, that the parties' dispute is at core a disagreement over a deposition, and as such, is properly addressed through the Court's letter procedures, at least initially, instead of instantly through warring sanctions motions—including for violation of Cal. R. Prof. Conduct 3.10. Plaintiffs have repeatedly offered to present Mr. Silver for further testimony, despite themselves believing that responsibility for the deposition outcome rests principally with Defendant. Defendant has rebuffed the offers and continued to press, for over a month, its threatened misconduct charges and dismissal demands.

On December 8, 2020, Defendant's counsel deposed Plaintiff Silver. So long as Defendant asked proper questions, the deposition proceeded smoothly—even when the topic, such as bad debts, was clearly perceived by Defendant to be injurious to Plaintiff. At other times, the deposition was less smooth, and more specifically as the questioning became increasingly repetitive, argumentative, leading (or misleading), harassing, and otherwise inappropriate, including because Defendant's counsel mischaracterized the deponent's prior testimony. At no time did Plaintiffs' counsel instruct the deponent not to answer. Indeed, he attempted to answer each question to the best of his ability.

During the deposition, which was conducted via zoom, the witness increasingly appeared befuddled, frustrated, and as later discovered, was *physically ailing and in need of medical attention*. He repeatedly expressed confusion, inability to answer questions as posed, answer them again adding new or different testimony, and frustration with Defense counsel's mischaracterization of his prior responses and argumentative posture. At times, Defendant's counsel was literally stuffing words in the deponent's mouth and claiming them as the deponent's own. For example, when questioned extensively about his first 20*14* purchase of BodyArmor, the deponent responded, *successively*, "I've already responded to that, haven't I?," "Other than what I have said, I can't remember," "I've stated exactly what caught my eye, why I bought it," "Already. Already said." (Silver Depo. 53:13-58:13.) Still, Defendant's counsel circled back again, this time with a series of unclear and shifting questions about that purchase to which the deponent, evincing extreme frustration, responded, "You know if you had me go back

...



over the list [a chart of reasons for the purchase *proposed by Defendant*] I couldn't tell you that I'd give you the same answer twice because it's really not the reason that I buy a product." Finally, exasperated, he exclaimed, "This list is very confusing to me because it makes absolutely no sense for my purchases." (Silver Depo. 61:5-87:17.)

There were also myriad leading (or misleading) questions such as, "Is it truthful to say that you view fruit juices as important to a healthful diet?," to which the deponent answered, "I can't answer that," only to be further questioned about the health attributes of fruit juice. Eventually he blurted out, "I am not an expert on fruit juice so I can't honestly tell you which are better or worse, but I made the statement that some are better and some are worse. I'm – I don't have the knowledge to tell you nor do I have the knowledge to tell you that that was an actual true statement. *It's just what you got me to say*." (Silver Depo. 89:1-99:15.) And, so on.

Defendant's counsel is well aware of the impropriety of such questioning, and also of the impropriety of threatening counsel opposing such questioning. Just a year ago, Defendant's lawyer was admonished by another court in this District for improper deposition questions and counseled in proper examination technique. Indeed, in *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 2018 WL 5795831 (N.D. Cal. Nov. 5, 2018), the court denied the motion of Defendant's counsel for sanctions against that plaintiff's counsel—for alleged interference with testimony, found that the deponent need *not* reappear, and schooled Defendant's counsel. *C.f., Clark v. The Hershey Co*., 2019 WL 913603 (N.D. Cal. Feb. 25, 2019) (Alsup, J.) (sanctioning Defendant's counsel here for "ridiculous" and "crazy" contentions concerning plaintiff depositions); *In re ComUnity Lending, Inc.*, 2011 WL 7479165 (N.D. Cal. June 6, 2011) (Ware, C.J.) (denying motion by Defendant's counsel here "to preclude [witness] from testifying based on Defendant's purported failure to produce him for deposition"). *Optronics* is on all fours with Mr. Silver's deposition (and much more).

With hindsight, instead of objecting, increasingly with statements, a better and wiser approach may have been to halt the examination *first*. For this, counsel apologizes to the Court. But if further examination is truly the goal of Defendant, any transgression by counsel can be readily remedied by continuing the deposition to cover the final topic in counsel's outline (assuming prior depositions are a roadmap). From Plaintiffs' standpoint, Defendant's conduct was extreme and outrageous, at and prior to deposition, for reasons that will be detailed if necessary. But it seems the far better route for the Court and for all, to simply get the deposition done and move on—along questioning lines modeled by court for Defendant's counsel in *Optronics*. Or even better yet, given the exhaustion of Plaintiff Silver, simply to move on and call the deposition done—as the court in *Optronics determined to be the best approach.*

                                              Respectfully submitted,

                                              KAPLAN FOX & KILSHEIMER LLP

                                              By:  /s/ *Maia C. Kats*
                                                      Maia C. Kats (*pro hac vice*)

cc:      All Counsel via CM/ECF