1    J. Noah Hagey, Esq. (SBN: 262331)
        hagey@braunhagey.com
2    Matthew Borden, Esq. (SBN: 214323)
        borden@braunhagey.com
3    David H. Kwasniewski, Esq. (SBN: 281985)
        kwasniewski@braunhagey.com
4    Tracy O. Zinsou, Esq. (SBN: 295458)
        zinsou@braunhagey.com
5    BRAUNHAGEY & BORDEN LLP
     351 California Street, 10th Floor
6    San Francisco, CA 94104
     Telephone: (415) 599-0210
7    Facsimile: (415) 599-0210

8    ATTORNEYS FOR DEFENDANT
     BA SPORTS NUTRITION, LLC
9

10

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15   MARC SILVER, ALEXANDER HILL,          Case No: 3:20-cv-00633-SI
     individually and on behalf of all others
16   similarly situated,                    **DEFENDANT BA SPORTS NUTRITION,**
                                             **LLC'S MOTION FOR SANCTIONS FOR**
17                Plaintiffs,                **VIOLATION OF COURT DISCOVERY**
                                             **ORDER AND FOR INTENTIONAL**
18         v.                                **INTERFERENCE WITH WITNESS**
                                             **TESTIMONY**
19   BA SPORTS NUTRITION, LLC,
                                             **Date:**    February 19, 2021
20                Defendant.                 **Time:**    10:00 a.m.
                                             **Judge:**   Hon. Susan Illston
21                                           **Ctrm.:**   1, 17th Floor

22                                           Complaint filed: January 28, 2020

23

24

25

26

27

28

                                                          Case No. 3:20-cv-00633-SI

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 19, 2021 at 10:00 a.m., in Courtroom 1 of the above captioned Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Defendant BA Sports Nutrition, LLC ("BodyArmor") will and hereby does move this Court for an order granting sanctions as follows: (1) Plaintiffs be required to pay the legal fees and costs BodyArmor incurred in connection with Plaintiff Silver's deposition and this Motion, (2) Plaintiff Silver be ordered to reappear for deposition at Plaintiffs' expense, and (3) the jury be instructed that Plaintiff Silver's lawyers interfered with his examination and suggested answers to him at his deposition, and that it may draw negative inferences from such conduct.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support of the Motion, the Declaration of Matthew Borden, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated: January 14, 2021

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: ___/s/ Matthew Borden_____
Matthew Borden
*Attorney for Defendant BA Sports Nutrition, LLC*

1

# **TABLE OF CONTENTS**

2   TABLE OF CONTENTS ........................................................................................................ I

3   TABLE OF AUTHORITIES ................................................................................................ III

4   INTRODUCTION ................................................................................................................. 1

5   FACTUAL BACKGROUND ................................................................................................ 3

6         A.    The Parties ................................................................................................. 3

7         B.    The Court's Order Dismissing the Original Complaint ............................ 3

8         C.    The First Amended Complaint and Order Denying BodyArmor's
                Second Motion to Dismiss ........................................................................ 4

9

10        D.    Plaintiffs' Depositions .............................................................................. 5

11               1.     Plaintiff Hill's Deposition ............................................................ 5

12               2.     Plaintiff Silver's Deposition ........................................................ 7

13        E.    BodyArmor's Efforts to Avoid Bringing this Motion ............................. 8

14  ARGUMENT ........................................................................................................................ 8

15  I.      PLAINTIFFS IMPROPERLY COACHED PLAINTIFF SILVER AND
      INTERFERED WITH HIS DEPOSITION ................................................................ 9

16        A.    Plaintiffs' Improper Objections that Mr. Silver Could "Not to
                Remember" What Influenced Him to Purchase BodyArmor Products ............... 10

17

18        B.    Plaintiffs' Improper Objections that Mr. Silver Could "Not
                Understand" Questions .......................................................................... 13

19        C.    Plaintiffs' Improper Efforts to Coach Plaintiff Silver About the
                Product Attributes Important to Him ..................................................... 16

20

21  II.     THE REQUESTED RELIEF IS WARRANTED ...................................................... 20

22        A.    Non-Monetary Relief ............................................................................. 20

23        B.    Monetary Relief ..................................................................................... 22

    CONCLUSION ................................................................................................................... 22

24

25

26

27

28

<u>**TABLE OF AUTHORITIES**</u>

**PAGE(S)**

**CASES**

*Am. Directory Serv. Agency v. Beam*, 1
   31 F.R.D. 635 (D.D.C. 1990) ................................................................................................. 9, 24

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................................................................... 23

*Armstrong v. Hussman Corp.*,
   163 F.R.D. 299 (E.D. Mo. 1995) ................................................................................................. 20

*Biovail Labs., Inc. v. Anchen Pharms., Inc.*,
   233 F.R.D. 648 (C.D. Cal. 2006) ................................................................................................. 10

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ...................................................................................................................... 21

*Cincinnati Ins. Co. v. Serrano*,
   2012 WL 28071 (D. Kan. Jan. 5, 2012) ........................................................................... 13, 14, 16

*Hernandez v. Barr*,
   2019 WL 4543101 (C.D. Cal. Apr. 12, 2019) ............................................................................ 15

*Innospan Corp. v. Intuit, Inc.*,
   No. C 10–04422 WHA, 2012 WL 1144272 (N.D. Cal. Apr. 4, 2012)........................................ 22

*Johnson v. Wayne Manor Apartments*,
   152 F.R.D. 56 (E.D. Pa. 1993) .............................................................................................. 10, 11

*McDonough v. Keniston*,
   188 F.R.D. 22  (D.N.H. 1998) .................................................................................................... 15

*Moore v. Gilead Sciences, Inc.*,
   No. C 07–03850 SI, 2012 WL 669531 (N.D. Cal. Feb. 29, 2012) .............................................. 23

*Ramirez v. T&H Lemont, Inc.*,
   845 F.3d 772 (7th Cir. 2016) ...................................................................................................... 22

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002) .................................................................................................. 22, 23

*S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC*,
   560 F. Supp. 2d 647 (N.D. Ill. 2008)......................................................................................... 10

*Sec. Nat'l Bank of Sioux City v. Abbott Labs.*,
  299 F.R.D. 595 (N.D. Iowa 2014), *rev'd on other grounds* 800 F.3d 936 (2015)................. passim

*Ty Inc. v. Softbelly's, Inc.*,
  517 F.3d 494 (7th Cir. 2008) ....................................................................................... 22

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
  982 F.2d 363 (9th Cir. 1992) .................................................................................... 21, 23

*United States v. Craft*,
  478 F.3d 899 (8th Cir. 2007) ....................................................................................... 10

*Young v. Office of U.S. Senate Sergeant at Arms*,
  217 F.R.D. 61 (D.D.C. 2003) ...................................................................................... 23

*Youngevity Int'l v. Smith*,
  2018 WL 747658 (S.D. Cal. Feb. 6, 2018) .................................................................. 22

**STATUTES**

21 C.F.R. §101.54(e)(1)............................................................................................... 3, 4

21 C.F.R. §101.65(d)(2) .............................................................................................. 3, 4

Fed. R. Civ. P. 30(c)(2)................................................................................................... 9

Defendant BA sports Nutrition, LLC ("BodyArmor") respectfully submits this motion for relief for Plaintiffs' coaching and interference with the deposition of Plaintiff Marc Silver.

## **INTRODUCTION**

Defendant BodyArmor seeks targeted relief to redress the improper objections, coaching and interferences at the recent deposition of putative class plaintiff Marc Silver.  On December 8, 2020, Mr. Silver was deposed for three hours before it was suspended due to Plaintiffs' persistent interference and obstruction.  Plaintiffs interjected more than 50 speaking objections, over 150 other objections (over 200 in total), answered questions presented to the deponent, and cut off the witness's answers.  At other times, Plaintiffs engaged in colloquies on the record apparently designed to coach the witness about his purported false advertising claims and the First Amended Complaint's ("FAC's") allegations.

BodyArmor attempted to redress these issues during the deposition professionally by politely asking Plaintiffs to stop making speaking objections.  After a break, BodyArmor also read Plaintiffs the relevant provisions of the Northern District Guidelines, which state, *inter alia*, that "Once a question is asked, a lawyer should not coach the deponent or suggest answers, whether through objections or other means."  Despite these reminders and the Court's Order that Plaintiffs review and follow the Guidelines (Dkt. No. 71.), the improper objections continued.

BodyArmor's principle concern at this juncture is the integrity of Plaintiff Silver's status as a claimant, particularly after two other named Plaintiffs dismissed their claims rather than testify under oath.[1]  The other remaining Plaintiff, Alexander Hill, was deposed the day before Plaintiff Silver and admitted facts that materially contradict allegations the Court relied upon in narrowly permitting the First Amended Complaint to proceed.  (Dkt. 55.)  Faced with the possibility of losing another plaintiff, Plaintiffs elected to frustrate Plaintiff Hill's deposition through coaching objections and instructions not to remember facts, as well as *ad hominem* attacks on BodyArmor's counsel which this Court previously ordered to cease.  (Dkt. No. 71.)

---

[1] Plaintiff Donovan Marshall dismissed his claims on April 7, 2020.  (Dkt. No. 25.)  Plaintiff Heather Peffer dismissed her claims on November 13, 2020. (Dkt. No. 83.)

MOTION FOR SANCTIONS

One particular exchange illustrates the point.  During the abbreviated deposition Mr. Silver admitted that he attempted to avoid consuming fruit juice:  "Q. And my question is: Do you try to avoid fruit juice for any reason? **A. Yes.**" (Declaration of Matthew Borden ("Borden Decl."), Ex. 1 at 96:18-97:18.)  When BodyArmor asked its next question, "Q. Why do you try to avoid fruit juice? ," Plaintiffs interrupted the answer and launched into the following speech: "I will not let you trick this -- this plaintiff. That is what you have done. … Nothing about you is simple. Let me be clear. You are a Coca-Cola Bodyarmor attorney. You are not simple. So do not pretend that you're not trying to trick him because you are." (*Id*.)  The only plausible explanation for such interference was to obstruct the witness's pending description of why he avoided consuming fruit juice, an admission that undermined one of the Court's reasons for denying BodyArmor's motion to dismiss – Plaintiffs' allegation that they purchased BodyArmor's products because they *wanted* fruit juice.  (Dkt. 55 [Order Denying Motion to Dismiss] at 1-2.)

These interactions happened repeatedly throughout the proceeding, typically when Plaintiff Silver was poised to contradict something in the FAC.  BodyArmor met and conferred with Plaintiffs during and after the deposition in an attempt to remedy the conduct.  When BodyArmor ultimately advised it would need to file this motion, Plaintiffs sought to front-run the application by filing their own "letter brief" to which BodyArmor will respond.  (Dkt. 84.)  But since motions for sanctions must be filed as standalone briefs under Local Rule 7-8, and because the conduct below cannot be adequately described in just three pages, BodyArmor is separately filing this motion.

For relief, BodyArmor respectfully asks that the Court enter the attached [Proposed] Order that (1) Plaintiffs be required to pay the legal fees and costs BodyArmor incurred in connection with Plaintiff Silver's deposition and this Motion, (2) Plaintiff Silver be ordered to reappear for deposition at Plaintiffs' expense, and (3) the jury be instructed that Plaintiff Silver's lawyers interfered with his examination and suggested answers to him at his deposition, and that it may draw negative inferences from such conduct.

# FACTUAL BACKGROUND

## A.    The Parties

This case was originally filed against Defendant BodyArmor on January 28, 2020. BodyArmor makes sports drinks enjoyed by a wide variety of leading professional athletes, including Megan Rapinoe, James Harden, Naomi Osaka, Trae Young, Ja Morant, and Ronald Acuña, Jr.  Unlike many competing sports drinks, BodyArmor's products at issue are made with coconut water, natural flavors, and a proprietary blend of electrolytes and vitamins, including potassium to fight muscle cramping.

The original Complaint claimed that the products were improperly labeled in three ways: first, that the products' use of the marketing slogan "superior hydration" misled Plaintiffs into buying the product (Compl. ¶¶ 22, 47); second, that the products have a technical labeling mistake which contradicts 21 C.F.R. §§ 101.54(e)(1), 101.65(d)(2) (Compl. ¶¶ 87-89); and third, that Plaintiffs bought the products because the labels misled them into believing they were healthy, when in fact they contained too much sugar (Compl. ¶¶ 11-16).

Only two putative class representatives remain in this case, Plaintiffs Hill and Silver.  (Dkt. 83.)  Each was solicited through a website called Topclassactions.com, which stated "Join a Free BodyArmor Class Action Lawsuit Investigation." (Dkt. 20-1.) Plaintiff Donovan Marshall was dismissed from this action in mid-2020.  (Dkt. 25.)  Plaintiff Heather Peffer was dismissed after BodyArmor noticed her deposition.  (Dkt. 83.)

## B.    The Court's Order Dismissing the Original Complaint

On March 23, 2020, BodyArmor moved to dismiss the case under Rule 12(b)(6).  (Dkt. 20.) On June 4, 2020, the Court granted BodyArmor's motion with leave to amend.  (Dkt. 40.)

First, with regard to Plaintiffs' claims about "superior hydration," the Court held:

> The Court finds it implausible that a reasonable consumer would view the BodyArmor label and other marketing about "superior," "more" or "better" and believe that BA was making a specific, verifiable claim about BodyArmor's superior hydrating attributes.

(Dkt. 40 at 9-10.)

Second, the Court held that Plaintiffs' technical labeling claim based on 21 C.F.R. §§ 101.54(e)(1), 101.65(d)(2) failed as a matter of law because BodyArmor's label and marketing do not use any of the terms listed in the regulations that would cause those regulations to apply.  (*Id.*at 16-17.)

Third, the Court rejected Plaintiffs' sugar theory.  Relying on Judge Alsup's opinion in *Clark v. Perfect Bar*, No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), aff'd, 2020 WL 4596823 (9th Cir. Aug. 11, 2020), and Judge White's opinion in *Truxel v. General Mills Sales*, No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019, the Court found Plaintiffs' claim "implausible" because "it requires that a reasonable consumer ignore the prominently displayed Nutrition Facts disclosing the total amount of sugar, as well as the ingredient list stating that 'pure cane sugar' is the second ingredient."  (Dkt. 40 at 15.)  The Court further found that:

> A reasonable consumer purchasing a sports drink (in such flavors as Fruit Punch, Berry Blast, Tropical Fruit and Grape) would not be misled into thinking that simply because the label states that it provides "Superior Hydration" and contains vitamins and electrolytes, that this necessarily means anything about the overall health benefits of the product given the disclosure of the sugar content.

(*Id.*)

Finally, as to Plaintiffs' claims relating to advertisements that were not on the labels of the product, the Court held that if Plaintiffs wanted to state a claim based on off-label advertising, "plaintiffs must be able to allege that they saw and relied on those specific advertisements to their detriment."  (Dkt. 40 at 17-18.)

**C.    The First Amended Complaint and Order Denying BodyArmor's Second Motion to Dismiss**

On July 7, 2020, Plaintiffs filed the First Amended Complaint ("FAC").  The FAC added a new claim that the pictures of fruit on the product labels caused Plaintiffs to believe that the products were made from fruit juice and that this caused them to buy the products.  (FAC ¶¶ 17, 26.)  It added further allegations claiming that Plaintiffs understood the term "superior hydration" to be an objective statement, capable of verification.  (FAC ¶¶ 51-55, 65.)  In a section entitled "Non-Label Deceptive Advertising Claims (Plaintiff Hill)," Plaintiff Hill further alleged that in-

1   store displays, billboards, television ads, Twitter and other social media detailed in Paragraphs 96-

2   100 and Images J-Q of the FAC, separately misled him into buying BodyArmor.  It specifically

3   alleged that Plaintiff Hill understood these non-label ads "to mean that capacity for superior

4   hydration was objective and variable and that BodyArmor was superior."  (FAC ¶ 100.)

5          In reliance on Plaintiffs' new allegations, the Court denied BodyArmor's motion to dismiss

6   the FAC.  (Dkt. 55 at 1-2.)  The Court relied on the fact that the FAC "contains new allegations

7   about the fruit-based labeling of the sports drink … and alleges that the plaintiffs 'believed that

8   BodyArmor drinks contained significant amounts of such fruits.'"  (Dkt. 55 at 1.)  It further stated:

9   "The FAC also expands on previous allegations that plaintiffs were misled by the labeling to

10  believe that the sports drinks provided health benefits because the labeling stated, inter alia, the

11  drinks contained various vitamins and provided 'superior hydration.'"  (*Id.*) Thereafter, discovery

12  commenced.

13         **D.      Plaintiffs' Depositions**

14         On December 7 and 8, 2020, BodyArmor took the depositions of Plaintiffs Hill and Silver.

15  As detailed below, Plaintiff Hill admitted that many of the material allegations of the FAC do not,

16  in fact, conform to his own understanding or belief.  Plaintiff Silver's deposition took place the

17  next day, defended by a different lawyer, the conduct of which is the subject of this Motion.

18                **1.      Plaintiff Hill's Deposition**

19         Plaintiff Hill's admissions help explain the events which transpired during Plaintiff Silver's

20  deposition the following day.

21         **Admissions Regarding Subjectivity of "Superior Hydration".**  Contrary to the FAC's

22  allegation that Plaintiff Hill understood BodyArmor's ads "to mean that superior hydration was

23  objective and variable" (FAC ¶ 100), Plaintiff Hill testified that "[m]y understanding of hydration

24  is not a measurable quality" (Borden Decl. Ex. 2 [Hill Dep.] at 72:10-11) and that "hydration is not

25  a measurable factor."  (*Id.* at 75:9.)[2]  Plaintiff Hill further admitted that he was unsure whether

26  "superior hydration" was on the label of the first product he bought.  (Hill Dep. at 119:8-16.)  All

27  _____
    [2] Mr. Silver offered similar testimony.  (Silver Dep. at 115:25-116:5 ["Q: What did you understand
28  Bodyarmor to be claiming that it was superior to? [objection] A: That I cannot tell you because I
    don't know the answer."].)

1   this testimony is inconsistent with the allegations Plaintiffs added when they amended the

2   complaint, and which the Court relied on in denying BodyArmor's motion to dismiss Plaintiffs'

3   "superior hydration" claims.  Indeed, Plaintiff Hill's testimony echoes the very reasons the Court

4   initially dismissed Plaintiffs' "superior hydration" claims before they amended them to include the

5   allegation that "superior hydration" was "objective."  (Dkt. 40 at 10:4-6 ["The Court finds it

6   implausible that a reasonable consumer would view the BodyArmor label and other marketing

7   about 'superior,' 'more' or 'better' and believe that BA was making a specific, verifiable claim

8   about BodyArmor's superior hydrating attributes."].)

9       **Admissions Regarding Reading the Ingredients and Nutrition Facts.**  Plaintiff Hill

10  testified that he read the Ingredients and Nutrition Facts before buying the product, and that he

11  believed, since high school, that Gatorade was unhealthy because it was "sugar water."  (Hill Dep.

12  at 16:9-14; 32-34:18-23, 37-38, 116.)  Plaintiff Hill further testified that he continued to buy

13  Gatorade and Powerade during the time he was drinking BodyArmor.  (*Id*. at 17.)  In light of this

14  testimony, the allegations that Plaintiffs added to the FAC that Plaintiff Hill was misled into

15  believing that BodyArmor "'contained significant amounts of such fruits,'" which the Court cited

16  in denying BodyArmor's motion to dismiss (Dkt. 55 at 1.), could not be accurate because fruit is

17  not listed in the ingredients.  (Dkt. 20-2 at 2.)  Further, Plaintiff Hill's claim that he was misled

18  about the sugar content of the product, and that he was misled about the "healthiness" of the

19  product cannot be accurate since he was aware of the sugar content of the product from reading the

20  Nutrition Facts, and he even believed that drinking a product with that much sugar was not healthy.

21  Further, since he kept drinking Gatorade and Powerade, the sugar content of BodyArmor cannot

22  have been material to him.

23      **Admissions Regarding Non-Label Advertising**. Contrary to the allegations in the FAC

24  that he relied on non-label ads to his detriment, Plaintiff Hill was unable to identify any non-label

25  advertisements that he relied on to his purported detriment.  For example, he testified:

26          Q. Have you -- have you seen any in-store displays regarding Body
            Armor?

27          A. At some point definitely.

28          Q. When did you see those?

A. I do not recall specific incidents, but I have definitely seen some displays at some point.

Q. What were in the displays?

A. It was -- I think it was warm beverages.

Q. Uh-huh.

A. It was warm beverages with maybe a Body Armor ad at the top.

Q. What did the ad say?

A. I do not recall specific things that were written in ads from five years ago.

(Hill Dep. at 27:8-21.)

Plaintiff Hill also admitted he never saw any of the YouTube or television ads cited in the FAC as having deceived him into purchasing BodyArmor's products.  (*Id*. at 25:25-26:13.)  He further testified that he did not rely on any of the athlete endorsements identified in the FAC.  (*Id*. at 26:14-20.)  And, he admitted that he had not relied on any of the social media content cited in the FAC.  (*Id*. at 26:21-27:7.)  These admissions came, notwithstanding the Court's directive in its Order granting BodyArmor's first motion to dismiss that "[i]f plaintiffs wish to proceed on deceptive or misleading advertising claims (or related unfair or deceptive business acts claims) based on non-label marketing and advertising, plaintiffs must be able to allege that they saw and relied on those specific advertisements to their detriment."  (Dkt. 40 at 17-18.)

### 2.    Plaintiff Silver's Deposition

On December 8, 2020, BodyArmor took the deposition of Plaintiff Silver.  During less than three hours on the record, Plaintiffs interjected with more than 200 objections.  Over 50 of these objections were improper speaking objections that repeatedly coached the witness not to remember facts, told the witness that he did not understand the questions, and made other improper objections so as to interfere with every substantive inquiry of Plaintiff Silver.  All of these objections are summarized in the chart attached as Exhibit 3 to the Declaration of Matt Borden.

In response, BodyArmor reminded Plaintiffs politely that speaking objections and coaching are not allowed and would end up before the Court.  (Silver Dep. at 27:23-28:3.)  BodyArmor also reminded Plaintiffs' lawyer, who is not admitted to practice law in California but who has been allowed to practice here on a *pro hac vice* basis, that her conduct was subject to the Northern

1   District of California Guidelines, which she claims to have "re-reviewed" in response to the

2   Court's prior October 29, 2020 Order (Dkt. 71.) in response to similar instances of discourteous

3   conduct.  (Silver Dep. at 100:2-16.)  When Plaintiffs' conduct persisted, BodyArmor suspended the

4   deposition.  (*Id*. at 124-125.)

5          **E.      BodyArmor's Efforts to Avoid Bringing this Motion**

6          After suspending the deposition, Plaintiffs asked to resume the deposition, with a different

7   lawyer defending it.  (Borden Decl., Ex. 4.)  Plaintiffs asserted that the Court "really doesn't want

8   to hear" about what happened at the deposition.  (*Id*.)

9          After obtaining the deposition transcript, on December 21, 2020, BodyArmor wrote

10  Plaintiffs a letter detailing the interference that occurred at Plaintiff Silver's deposition and asking

11  that Plaintiffs dismiss his claim and make BodyArmor whole for the legal fees and costs they had

12  forced BodyArmor to incur.  (Borden Decl., Ex. 5.)  The letter offered to meet and confer about

13  how to proceed.

14         In response, Plaintiffs sent an email stating that they were all on vacation.  (*Id*., Ex. 6.)  It

15  further accused BodyArmor of improperly questioning the witness and stated: "I note that you have

16  been counseled in the past by the Court regarding precisely the deposition techniques objected to in

17  the attached, and of course otherwise. *See, e.g.*, Optronic v. Ningbo." (*Id*.)  On December 24,

18  2020, Plaintiffs sent a letter reiterating these accusations without responding to the substance of

19  BodyArmor's letter of December 21, 2020.

20         The parties met and conferred by Zoom on January 7, 2021.  During the session,

21  BodyArmor asked Plaintiffs to agree to the relief set forth in this Motion.  (Borden Decl. ¶ 9.)

22  Plaintiffs would not do so.

23                                    **ARGUMENT**

24         Under Rule 30(d)(2), "The court may impose an appropriate sanction—including the

25  reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays,

26  or frustrates the fair examination of the deponent."  As set forth below, in this case, the improper

27  coaching and interference at Plaintiff Silver's deposition infected all of his testimony, violated

28

basic norms of practice in this Court and were used to undermine Body Armor's ability to test the

adequacy of Plaintiffs' allegations and purported status as class representatives.

## I.     PLAINTIFFS IMPROPERLY COACHED PLAINTIFF SILVER AND INTERFERED WITH HIS DEPOSITION

Plaintiffs' conduct during Plaintiff Silver's deposition violated the rules governing conduct

at depositions well known to legal practitioners everywhere.  Under the Rules of Civil Procedure

and the Northern District's Guidelines for Professional Conduct, a party may not make speaking

objections designed to coach a witness.  Fed. R. Civ. P. 30(c)(2) ("An objection must be stated

concisely in a nonargumentative and nonsuggestive manner."); Northern District Guideline 9(i) for

Depositions ("Once a question is asked, a lawyer should not coach the deponent or suggest

answers, whether through objections or other means."); [3] *see also id*. at (j)-(l); *Biovail Labs., Inc. v.

Anchen Pharms., Inc*., 233 F.R.D. 648 (C.D. Cal. 2006) (imposing sanctions on lawyer and witness

for obstructing deposition with improper objections); *Johnson v. Wayne Manor Apartments*, 152

F.R.D. 56, 59 (E.D. Pa. 1993) (sanctioning lawyer where "counsel improperly 'objected to the form

of the question' by either suggesting what he apparently believed to be an appropriate answer to his

client or himself testifying.").  Severely obstructing a deposition is essentially the same as refusing

to appear at all.  *S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC*, 560

F. Supp. 2d 647, 651 (N.D. Ill. 2008) ("counsel's deliberately obstructive objections during that

deposition constitutes a failure to comply with Plaintiffs' subpoena" and thus amounts to contempt).

Here, Plaintiffs improperly coached Plaintiff Silver and suggested answers to him by

repeatedly telling him that he did not remember answers to questions, that he did not understand

questions, and through other similar means – all of which contravene Rule 30 and the Northern

District Guidelines.  Plaintiffs directed these tactics to key areas of the case that are only known to

Plaintiff Silver, such as what supposedly influenced him to buy the product, what he understood the

term "superior hydration" to mean, and his understandings about fruit juice – one of the alleged

---

[3] The rules are the same in Washington, D.C., where Plaintiffs' lawyer is admitted to practice.  *See*,
*e.g.*, *Am. Directory Serv. Agency v. Beam*, 131 F.R.D. 635, 644 (D.D.C. 1990) (sanctioning lawyer
who "repeatedly interrupted opposing counsel's questions by interposing objections and demands
for clarification").

1 reasons he bought the product.  Plaintiffs' conduct was so pervasive that it tainted Plaintiff Silver

2 as a witness on virtually all the issues in this case.

3       **A.**    **Plaintiffs' Improper Objections that Mr. Silver Could "Not to Remember"**
**What Influenced Him to Purchase BodyArmor Products**

4

5      Plaintiffs repeatedly told Plaintiff Silver not to remember basic facts about his decisions to

6 purchase BodyArmor products.  Such instructions are improper.  *See*, *e.g.*, *United States v. Craft*,

7 478 F.3d 899, 901 (8th Cir. 2007) (affirming sentence enhancement for trying to influence to

8 witness to say "that he could not remember specific events").  Plaintiffs nonetheless elected to

9 remind Plaintiff Silver that his memory was infirm whenever he was poised to give unhelpful

10 testimony regarding his decision to purchase BodyArmor products.

11      A key issue in this case is whether Plaintiffs were actually induced to purchase

12 BodyArmor's products by any of the features they contend are misleading.  At his deposition,

13 Plaintiff Silver was asked questions about why he made such purchases, but Plaintiffs repeatedly

14 coached hiss answer by informing the witness that he did not remember that purchase.  For

15 example:

16       Q.  All right. So I'd like to -- to go back to that first purchase in 2014,
and I'd like you to describe it to me in a little bit of detail. And so
starting -- starting with my first question is going to be, what flavor
was it?

17

18       **MS. KATS:  Objection asked and answered.  He's already**
**explained that he doesn't remember his first purchase.**

19       MR. BORDEN: So, look, you don't need to make speaking
objections, counsel.

20

21       **MS. KATS: But you're asking him –**

22       MR. BORDEN: You're making this – you can object -- you're
making a speaking objection and it's improper for depositions.

23       **MS. KATS: You're violating these rules by going on and on when**
**he's told you he doesn't remember. …**

24       THE WITNESS: I cannot remember the first flavor that I tried.

25 (Silver Dep. at 27:15-28:13.)

26      Notably, the question was not duplicative of any prior question, and there is no excuse for

27 such interjection in any event. *See Wayne Manor Apartments*, 152 F.R.D. at 59 (imposing

28

1  sanctions where "counsel improperly 'objected to the form of the question' by either suggesting

2  what he apparently believed to be an appropriate answer to his client or himself testifying").

3          When BodyArmor asked follow-up questions, Plaintiffs continued to interject, hoping to

4  remind Plaintiff Silver that he lacked any memory of his decision to purchase BodyArmor's

5  product:

> Q.  So you said that you -- you saw some pictures of fruit on the
> paper board display and then you saw the language, "Superior
> hydration," and then you saw that language repeated on the label; is
> that correct?
>
> **MS. KATS: Objection. That is a mischaracterization of his
> testimony, and he's told you again and again that he cannot
> remember.**

10  (Silver Dep. at 31:23-32:5.)

11          The witness ultimately acknowledged, however, that he did have some memory of the first

12  purchase, but it was quickly interrupted by over three pages of spurious objections to the following

13  inquiry:

> Q.  Okay. I want to return back to – to Bodyarmor and -- and what
> made you decide to buy Bodyarmor in the first place?
>
> A Just the advertising box when I walked in caught my eye, and then
> seeing it in the cold box caught my eye as well. It seemed a little
> expensive but I figured I'd give it a try.
>
> Q And what in specific about that advertising made you want to buy
> it?

19  (*Id.* 53:13-21)  In response, Plaintiffs interceded with lengthy comments and reminders to Plaintiff

20  Silver that he lacked recall of those events, *e.g.*:

> **MS. KATS: "[I]f you can remember beyond what you said
> already …"**  (*Id.* 54:16-17)
>
> **MS. KATS: "[H]e has stated again and again that the cannot
> remember with clarity …"**  (*Id.* 56:17-18)
>
> **MS. KATS:  "I don't have to let you put words in his mouth …"**
> (*Id.* 54:12-13)
>
> **MS KATS:  "[T]estify to what you can remember and testify
> whether your memory was clear or not as to what you did in
> 2014 consistent with your earlier testimony."**  (*Id.* 57:17-20)

28

1   Plaintiffs even interjected in the middle of Plaintiff Silver's answers with the reminder "if

2 you can remember":

3      Q.  Okay. So what -- what can you remember that was on the label
       from your purchase that day in the Plumas Stop N Shop?

4      THE WITNESS: I can remember the --

5      **MS. KATS: Objection. If you can remember.**

6 (*Id.* 34:5-10.)

7      The example above is particularly telling because there is no legal objection to the question.

8 Plaintiffs simply cut off the witness and coached him not to remember, right when he began to

9 testify that "I can remember …."  Courts long have held that similar speaking objections are

10 sanctionable witness coaching.  *See*, *e.g.*, *Sec. Nat'l Bank of Sioux City  v. Abbott Labs*., 299 F.R.D.

11 595, 606 (N.D. Iowa 2014), *rev'd on other grounds* 800 F.3d 936 (2015) (sanctioning lawyer for

12 unlawfully coaching witness where "Counsel frequently concluded objections by telling the

13 witness, 'You can answer if you know' or something similar.").[4]

14      These efforts to prevent the witness from going off-script were so acute that Plaintiff

15 Silver's lawyer went so far as to answer for the witness:

16      Q. Okay. You liked it because it tasted good?

       **MS. KATS: Yes.**

17      THE WITNESS: Yes.

18 (Silver Dep. at 58:21-24.)

19      In sum, none of Plaintiffs' objections were proper.  The questions at issue were garden-

20 variety inquiries of a plaintiff in a false advertising case and go to the heart of Plaintiffs' claims:

21 what did Plaintiff perceive and understand from the product label and advertising that made him

22 want to buy the product?  Instead of allowing the truth to be told, Plaintiffs coached the witness to

23 the point of speaking for him.

24

25

26

27 _____

28 [4] Plaintiffs repeatedly used this technique.  (*E.g.*, Silver Dep. at 23:1-5 ["Q. Ms. Kats: Objection. You know, answer the question if you can answer it … A. Okay. Then I -- I can't say."].)

**B.**     **Plaintiffs' Improper Objections that Mr. Silver Could "Not Understand" Questions**

Plaintiffs also improperly interceded with objections that the witness might "not understand" a question.  "Instructions to a witness that they may answer a question 'if they know' or 'if they understand the question' are raw, unmitigated coaching, and are never appropriate." *Cincinnati Ins. Co. v. Serrano*, 2012 WL 28071, *5 (D. Kan. Jan. 5, 2012).  Courts repeatedly have sanctioned lawyers for objecting on grounds that the *lawyer* does not understand the question or for seeking "clarification" of questions when the witness has not asked for any clarification.  *See*, *e.g.*, *Sec. Nat'l Bank*, 299 F.R.D. at 605 (imposing sanctions on plaintiff's lawyer where "after Counsel's objection suggested that the question 'might' confuse the witness, the witness replied that he '[couldn't] be certain' as to what was being asked.") (brackets in original); *Serrano*, 2012 WL 28071 at *5 ("Only the witness knows whether she understands a question, and the witness has a duty to request clarification if needed.").[5]

For example, when Plaintiff Silver was asked about the core theory in his complaint, Plaintiffs objected that Plaintiff Silver did not understand the question, even though Plaintiff Silver had said no such thing:

> Q.  Are you claiming that the term "superior hydration" caused you any kind of injury? …
>
> **MS. KATS: Objection. He clearly doesn't understand …**

(Silver Dep. at 124:3-16.)  Making a speaking objection stating that the witness does not understand is improper.  Whether a witness understands the question is an issue for the witness to raise.  *Serrano*, 2012 WL 28071 at *5.  Plaintiffs' improper objection interfered with Plaintiff Silver's testimony on one of the most important issues in the case – the term "superior hydration" and whether it caused any purported harm to Plaintiff Silver (Plaintiff Hill already testified that this term did not harm him).

Plaintiffs repeated this tactic many times.  For example:

---

[5] Plaintiff Silver testified that he knew to ask for clarification if he did not understand a question. (Silver Dep. at 10:21-11:3 ["Q. So the other thing is that if you don't understand something, like what I just told you, please ask questions, get clarification from me, because otherwise, I'm going to presume that you understand my questions and you're going to be held to -- you know, the answers are going to be ones that are binding on you. Do you understand that?  A. Yes."].)

> Q.  How about protein content? …
>
> **MS. KATS: He doesn't understand what you're asking. I don't understand. Nobody understands …**

(Silver Dep. at 65:15-66:1.)

Plaintiffs even objected that the witness did not understand the question after the witness answered the question.  For example:

> Q.  Have you ever consciously tried to avoid drinking fruit juice?
>
> A.  Not that I'm aware of, no.
>
> **MS. KATS: I'm -- I'm going to put on the record that the -- the transcript won't reflect that you're laughing because you don't understand the question. So if you don't understand it, you need to state that.**
>
> THE WITNESS: Okay. I'm -- I don't know that it's not that I don't under -- well, maybe it is that I don't understand it, but, yeah, I think I'm missing something here."

(*Id.* at 95:23-96:9.)

As seen above, the witness understood and answered the question.  After Plaintiffs made a speaking objection, the witness took the guidance, and changed his testimony to state that he did not understand the question.  *See McDonough v. Keniston*, 188 F.R.D. 22, 24 (D.N.H. 1998) (imposing sanctions where "The effectiveness of this coaching is clearly demonstrated when the plaintiff subsequently adopts his lawyer's coaching"); *Hernandez v. Barr*, 2019 WL 4543101, *1 (C.D. Cal. Apr. 12, 2019) (plaintiff's lawyer violated Rule 30 by objecting as follows: "Objection. Form. Also for the record, she may not understand legal terminology which may be confusing to her.").

Plaintiffs also employed this technique to prevent Plaintiff Silver from testifying about his view about fruit juice.  This was a key issue given Plaintiffs' allegation that they bought the product because they thought in contained fruit juice, and that the fruit juice made the product "heathy," and the Court's reliance on this allegation in denying BodyArmor's second motion to dismiss.  (Dkt. 55 at 1.)  When Plaintiff Silver was asked about this key allegation, Plaintiffs interjected a speaking objection to coach him that he did not understand the question:

> Q.  Is it truthful to say that you view fruit juices as important to a healthy diet?
>
> A.  Oh.

1    MS. KATS: Objection.

2    THE WITNESS: I can't really answer that. I haven't really considered
     it, but, no.

3    BY MR. BORDEN:

4    Q. That statement is not truthful, correct?

5    MS. KATS: Objection. If you can answer this, if you understand the
     question, do, but if you don't, don't answer it.

6    What is your question, Matt?

7    (Silver Dep. at 89:1-12.)

8          The example above is telling.  To overcome BodyArmor's second motion to dismiss,

9    Plaintiffs represented that "they have favorable view of fruits and fruit juices as important to their

10   diet, and healthy."  (Dkt. 48 at 24:6-7.)  Under oath, however, Plaintiff Silver denied that this

11   representation was true.  When BodyArmor further inquired, Plaintiffs interposed an objection,

12   without any legal basis, suggesting to the witness that he did not understand the question.  The

13   legal grounds offered were "if you can answer this," which is improper witness coaching.  *Serrano*,

14   2012 WL 28071 at *5 ("Instructions to a witness that they may answer a question 'if they know' or

15   'if they understand the question' are raw, unmitigated coaching, and are never appropriate."); *Sec.*

16   *Nat'l Bank*, 299 F.R.D. at 607 ("When a lawyer tells a witness to answer 'if you know,' it not-so-

17   subtly suggests that the witness may not know the answer, inviting the witness to dodge or qualify

18   an otherwise clear question.").  Because Plaintiffs' purpose was to coach the witness, their lawyer

19   could not remember the question by the time the speaking objection was finished.

20         Plaintiffs' coup de grace for Plaintiff Silver's testimony that fruit juice was not materials to

21   him came after Mr. Silver admitted that he tried to avoid fruit juice.  Plaintiffs made a sequence of

22   speaking objections telling the witness what to say, talking over counsel, and engaging in the types

23   of attacks on counsel that the Court has repeatedly admonished Plaintiffs' lawyers about:

24   Q. And my question is: Do you try to avoid fruit juice for any
     reason?

25   A. Yes.

26   **MS. KATS: I am going --**

27   BY MR. BORDEN: Q Why do you try to avoid fruit juice?

28   **MS. KATS: I'm going to object because – …**

MR. BORDEN: You're not going to make another speaking objection.

**MS. KATS: You know what, Matt, I – I get to speak when I want to make an objection and when you've mischaracterized his testimony. I will not let you trick this -- this plaintiff. That is what you have done.**

MR. BORDEN: I am not tricking him.

**MS. KATS: Yes, you are.**

MR. BORDEN: It's a very simple question.

**MS. KATS: No, it's not simple. Nothing about you is simple. Let me be clear. You are a Coca-Cola Bodyarmor attorney. You are not simple. So do not pretend that you're not trying to trick him because you are.**

MR. BORDEN: I'm not trying to trick him.

**MS. KATS: I just told you umpteen times --**

MR. BORDEN: This is inappropriate improper (cross talk) --

**MS. KATS: -- he's not an expert – Now are you asking him his opinion.**

(Silver Dep. at 96:18-97:25.)

There is nothing improper about the questioning: "Q. Do you try to avoid fruit juice? A. Yes. Q. Why do you try to avoid fruit juice?" There is nothing in those questions that is trying to "trick" the witness. There is nothing in those questions asking Plaintiff Silver for an expert opinion or anything other than his own consumer preferences. The basis for the speech was Plaintiffs' knowledge that Plaintiff Silver would offer testimony inconsistent with his claim that he bought BodyArmor because he thought it contained fruit juice. Plaintiffs explained this to the witness by improperly saying that BodyArmor was trying to trick him, that BodyArmor's counsel is "not simple," and by inaccurately stating that BodyArmor's counsel works for Coca-Cola. In light of this conduct, it is highly unlikely that Plaintiff Silver will ever be able to testify accurately beyond his candid admission that he tried to avoid fruit juice.

**C.    Plaintiffs' Improper Efforts to Coach Plaintiff Silver About the Product Attributes Important to Him**

1    Plaintiffs made another barrage of improper objections when BodyArmor asked Plaintiff

2   Silver to fill out a chart asking the importance of various product attributes.[6]  The chart listed

3   attributes for BodyArmor's product, to which the witness was asked to assign relative weights of

4   importance to him.

5    Instead of allowing Plaintiff Silver to testify about the chart and complete it, Plaintiffs first

6   instructed the witness that he was confused about the line of questioning, which included a separate

7   objection to the question "do you understand what I just asked you?":

8         **MS. KATS: Hold on. I object. This is compound. I'm sensing that**
          **this witness is confused already by the nature of the questioning.**
9         **You're going to have to break it down, Matt. This is a really**
          **complex instruction.**
10
          MR. BORDEN: Do -- do you understand what I just told -- asked
11        you?

12        **MS. KATS: Objection.**

13        THE WITNESS: Not completely. It sounds like to me like you want
          me to give you a run down of the whole time that I was doing it and
14        the importance of each thing over the years.

15        BY MR. BORDEN:

16        Q. That's correct. And let's start with calorie content, and we'll --
          we'll work our way through it. How important was that to you in
17        2014?

18   (*Id*. at 61:5-21.)  After the witness understood and began filling out the chart, Plaintiffs again

19   interrupted the testimony with another objection:

20        **MS. KATS:  "[I]t's not clear to me what you're asking."**  (64:6.)

21    Such coaching is itself sanctionable.  *See Sec. Nat'l Bank*, 299 F.R.D. at 605 (imposing

22   sanctions on plaintiff's lawyer where "Counsel's objection suggested that the question 'might'

23   confuse the witness").

     In hopes of mitigating Plaintiffs' objections, BodyArmor told Plaintiffs they could have a

24   standing objection to the line of questioning around the chart, and Plaintiffs agreed:

25        **MS. KATS: Hold on. Objection. I am going to object to all of**
          **these questions because it's not clear to me what you're asking,**
26        **whether the natural flavors -- the advertising that there were**

27

28   ──────────────────
     [6] The day before, Mr. Hill had testified about a substantively identical chart without any difficulty.

**natural flavors or that it has natural flavors.  There's a whole
lack of foundation on all of these.**

MR. BORDEN: Okay. You can have a standing objection. (Cross
talk.)

**MS. KATS: I can have a standing objection to all of this exercise.**

MR. BORDEN: Okay. Good.

(Silver Dep. at 64:4-14.)

But despite having a standing objection, Plaintiffs continued to make multiple speaking

objections – some of which went on at length – throughout the questioning about the chart.  (*E.g.*,

*Id*. at 65:16-66:24.)  And despite the standing objection, Plaintiffs continued to intersperse

unspecified objections to individual questions (*e.g.*, *Id*. at 67:12-18):

Q. "… as a person buying the product, is protein content of
Bodyarmor something that -- that was interesting to you, that
mattered to you on a scale of 0 to 10?

A Zero.

**MS. KATS: Objection.**

(*See also Id*. at 77:5, 79:24, 80:5, 80:11, 81:17, 83:15.)  These interruptions included a triple

objection:

Q.  And -- and what is -- and -- and without trying to put words in
your mouth, it sounds like what you're saying is that you were
thinking about carbohydrate content more towards the end of the
2014 to 2018 period, but it wasn't a reason why you bought the
product. Is that what you're trying to say?

**MS. KATS: Objection. Objection. Objection.**[7]

(*Id*. at 68:24-69:7.)  Plaintiffs also included another objection styled:  "Objection because I want to

know what that means" (*Id*. at 68:1-3), which was virtually identical to the improper objection that

caused BodyArmor to grant a standing objection to prevent that type of coaching and interference.

Other speaking objections to the chart followed a similar pattern, including with invective

directed at counsel:  "if you want this chart to have any meaning, say -- spew out your question"

(*Id*. at 73:6-7); "So again, objection.  I -- why don't you ask a full question about antioxidant" (*Id*.

---

[7] Plaintiffs also asserted other improper objections that were intended to disrupt the testimony.
(*E.g.*, *Id*. at 88:20 ["MS. KATS:  Objection. Leading."]; 103:18 ["MS. KATS:  Objection. Leading
question."].)  It also included double objections.  (*E.g., Id.* at 77:17 [MS. KATS: Objection.
Objection"].)

at 70:10-11); "what do you mean?" (*Id.* at 70:21), "what are you asking" (*Id.* at 71:6), attempts to

testify for the witness (*Id.* at 71:14-15), objections on the ground that BodyArmor had "changed the

question" (*Id.* at 72:8-9 ["MS. KATS:  Objection.  You just changed the question, Matt."]),[8] an

objection styled "what are you asking about these" (*Id.* at 72:12-13), an objection that "you are just

going through all this sticking numbers on a chart as if they mean something" (*Id.* at 72:19-21), an

objection that "I am going to tell the client and instruct him to answer if he can remember and if he

is clear on the question" (*Id.* at 75:18-20), and cutting off the witness's testimony with "Objection.

Is there a question pending?" (*Id.* at 83:24-25.)  Leaving aside that each of these objections was

individually improper and sanctionable, taken together, "[t]hese excessive and unnecessary

interruptions are an independent reason to impose sanctions."  *Sec. Nat'l Bank*, 299 F.R.D. at 609.

Plaintiffs' coaching of Plaintiff Silver's testimony about the chart culminated in Plaintiffs

telling the witness that he never considered various factors in his purchase decision:

> Q.  Is there anything else, any other attribute of the product that went into your purchase decision at any point in the time that you bought the product?
>
> **MS. KATS: Objection. You have mischaracterized his testimony. He has never said – …**
>
> **MS. KATS:  He has never testified -- …**
>
> **MS. KATS: Do not answer this question. I'm going to state what I have to state and please do not – …**
>
> **MS. KATS: You are not supposed to falsify his testimony. He never said he considered these things. You are saying that. He said he didn't know.**
>
> **MS. KATS:  To the extent you're saying these went into his purchase decision, I object.**

(Silver Dep. at 84:16-87:17.)  Such an objection was an attempt to testify for the witness and evade

providing truthful responses, each prohibited under Rule 30.  *See*, *e.g.*, *Sec. Nat'l Bank*, 299 F.R.D.

at 607.

---

[8] *See Armstrong v. Hussman Corp.*, 163 F.R.D. 299, 303 n.16 (E.D. Mo. 1995) (sanctioning plaintiff's lawyer because "during Plaintiff's first deposition, Mr. Hyatt cautioned his client: 'He's asking you a different question.  Listen to the question he ask [sic].'").

In short, the only reason for these objections was to obstruct Plaintiff Silver's testimony. Any legitimate objection to the chart was already preserved by the standing objection that BodyArmor granted to prevent further coaching and interference. The chart, which was a means of assessing the factors that went into Plaintiff Silver's purchasing decision, go to the heart of his claims.

## II.     THE REQUESTED RELIEF IS WARRANTED

Rule 30 provides that a Court may impose an "appropriate sanction" for improper conduct at a deposition. Further, "Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002); *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir. 2008) ("Trying improperly to influence a witness is fraud on the court and on the opposing party"). The requested non-monetary relief and monetary sanctions are warranted under Rule 30 and the Court's inherent powers.

### A.     Non-Monetary Relief

Non-monetary relief is appropriate here. Unlike other cases, there is only one witness to Plaintiff Silver's claims – him. His memories about his purchases, his preferences, and the reasons why he bought the product are known only to him. By repeatedly coaching Plaintiff Silver on these issues, Plaintiffs effectively destroyed the only extant source of information on these critical topics. As Judge Alsup has explained, this type of witness coaching causes "incurable prejudice" to the truthfinding process. *Innospan Corp. v. Intuit, Inc.*, No. C 10–04422 WHA, 2012 WL 1144272, *4 (N.D. Cal. Apr. 4, 2012) ("Plaintiff's misconduct resulted in incurable prejudice to defendants. Defendants can never know what witnesses Yi and Lee's testimony would have been if they were not coached.").

Where a party has improperly sought to influence a witness's testimony, Courts have issued adverse inference instructions and even more drastic relief. *See, e.g., Youngevity Int'l v.*

*Smith*, 2018 WL 747658, *3 (S.D. Cal. Feb. 6, 2018) (issuing adverse inference instruction for trying to influence testimony of witness); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016) (affirming dismissal of plaintiff's case when he offered to pay witness in exchange for favorable testimony); *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 67 (D.D.C. 2003) (dismissal was appropriate for "tr[ying] to influence the testimony of another witness").

Courts have similarly issued adverse inference instructions for making evidence unavailable.  *See*, *e.g.*, *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 881 F. Supp. 2d 1132, 1138-1151 (N.D. Cal. 2012) (collecting cases); *DeGeorge*, 306 F.3d at 107-10 (reversing district court's denial of adverse inference instruction); *Moore v. Gilead Sciences, Inc.*, No. C 07–03850 SI, 2012 WL 669531, *5 (N.D. Cal. Feb. 29, 2012) (Illston, J.) ("The jury will be instructed that it can infer from the fact that Moore destroyed evidence in August 2008 that the evidence, if available, would have been favorable to Gilead and harmful to Moore").

Here, Plaintiffs have effectively destroyed or rendered unattainable substantial evidence related to their case.  For the reasons of basic fairness given in the cases above, and countless other cases pertaining to situations where a party has intentionally made evidence unobtainable, an adverse inference instruction should issue here.  Such an inference is proper when a party has intentionally eliminated relevant evidence.

Finally, while no showing of intent is necessary for sanctions under Rule 30, Courts have required a showing of intent for sanctions under the Court's inherent powers.  *Unigard Sec. Ins. Co.*, 982 F.2d at 368.  Intent easily exists here.

***First***, the Court ordered Plaintiffs' lawyers to read and adhere to the Northern District's Guidelines, and they submitted declarations stating that they had done so.  (Dkts. 72, 73, 74, 79, 80.)  Further, BodyArmor read the Guidelines to Plaintiffs during Plaintiff Silver's deposition and stated several times that the witness coaching was improper.  (Silver Dep. at 27:23-28:3, 56:23-25, 100:2-16.)  Under such circumstances, Plaintiffs were on actual notice of the Rules and the Court's Order and simply chose to disobey them.

***Second***, as detailed above, the objections were strategic.  The whole point of coaching a witness is to influence the testimony.  The objections occurred the day after Plaintiff Hill admitted

1    away his claims (*see* pages 5-7, supra), and in response to questions going to the heart of Plaintiff

2    Silver's claims.  (*See* pages 1-2, *supra*.)

3         **Third**, Plaintiffs understood how to make non-leading objections to preserve the record.

4    Sometimes, they would simply state "objection" (*See, e.g.*, Silver Dep. at 60:2-7) and other times,

5    they would object properly.  (*Id*. at 59:9-14 ["Objection. Compound question."]; *see also Id*. at

6    46:20 ["Objection to form."].)  This further shows that Plaintiffs' coaching objections were

7    strategic.

8         **Fourth**, Plaintiffs' lawyer has stated that she has been practicing law for over 30 years.

9    (Borden Decl. Ex. 4.)  Her experience forecloses any argument that she was unaware of how to

10   comport herself at a deposition.  Many practice guides and hornbooks specifically identify the

11   conduct at issue as violating Rule 30.  And the law in the District of Columbia, where Plaintiffs'

12   lawyer is admitted to practice, is no different than it is here.  *See*, *e.g*., *Beam*, 131 F.R.D. at 644

13   (sanctioning lawyer who "repeatedly interrupted opposing counsel's questions by interposing

14   objections and demands for clarification").

15        **Fifth**, as detailed above, the objections were pervasive and recurring.  Many were on

16   grounds, such as "leading," which make no sense in the context of the examination of adverse

17   witness – which, of course, may be leading.  (*E.g.*, Silver Dep. at 88:20.)  That further shows that

18   they were not somehow inadvertent.

19        **B.      Monetary Relief**

20        BodyArmor incurred at least $15,400 in legal fees and also incurred additional costs in

21   taking Plaintiff Silver's deposition.  (Borden Decl. ¶¶ 18, 20.)  BodyArmor additionally incurred at

22   least $22,132.50 in legal fees and costs in meeting and conferring with Plaintiffs, preparing its

23   demand letter on the issues, and preparing this Motion and accompanying declaration.  (Borden

24   Decl. ¶ 19.)  Body Armor will provide a declaration detailing any additional fees and expenses it

25   incurs preparing a reply in support of the instant motion.

26                                        **<u>CONCLUSION</u>**

27        For the foregoing reasons, BodyArmor's motion should be granted.

28

1   Dated:  January 14, 2021                  Respectfully Submitted,

2                                                BRAUNHAGEY & BORDEN LLP

3

4                                                By:    /s/ *Matthew Borden*
                                                       Matthew Borden

5

6                                              *Attorney for Defendant*
                                           *BA Sports Nutrition, LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SANCTIONS